# United States Court of Appeals

*for the*

# Fourth Circuit

GREGORY ALLEN BONNIE,

*Petitioner-Appellant,*

– v. –

WARDEN DUNBAR,

*Respondent-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT FLORENCE
HONORABLE DAVID C. NORTON, U.S. DISTRICT JUDGE

## BRIEF FOR PETITIONER-APPELLANT

JOHN L. WARREN III
LAW OFFICE OF BILL NETTLES
2008 Lincoln Street
Columbia, South Carolina 29201
(803) 814-2826
jw@billnettleslaw.com

– and –

PATRICIA LOUISE RICHMAN
  *Assistant Federal Public Defender*
OFFICE OF THE FEDERAL PUBLIC DEFENDER
  SOUTHERN DIVISION
6411 Ivy Lane, Suite 710
Greenbelt, Maryland 20770
(301) 344-0600
patricia_richman@fd.org

*Attorneys for Petitioner-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION .................................................................................. 1

STATEMENT OF JURISDICTION ..................................................... 3

STATEMENT OF THE ISSUES ............................................................ 3

STATEMENT OF THE CASE ............................................................... 3

    I.   The First Step Act of 2018 ........................................................ 3

    II.  Procedural Background ............................................................. 7

SUMMARY OF ARGUMENT .......................................................... 10

STANDARD OF REVIEW ................................................................ 12

ARGUMENT ...................................................................................... 12

    I.   The "best reading" of the FSA requires BOP to deem Mr. Bonnie eligible to earn FSA time credits, except while he is "serving a sentence" for a conviction under § 924(c). ................................... 12

        A.  The plain language of § 3632(d)(4)(D) directs this reading of the statute. ..................................................................... 14

        B.  Statutory context confirms this interpretation. ................... 23

        C.  The purpose of the FSA supports what the plain language and context dictate. ........................................................... 25

    II.  The text, structure, and purpose of § 3584 shows that it does not control eligibility determinations under the FSA. ................ 29

        A.  The text and statutory structure of § 3584 demonstrates that it does not apply to time credit eligibility under the FSA. .................................................................................. 30

        B.  Context confirms this reading. ............................................ 35

C. The compulsory language of the FSA distinguishes it from other credit and incentive programs, which delegate eligibility determinations for early-release to the BOP. ....... 39

III. If the statute is ambiguous, lenity requires the statute be construed in Mr. Bonnie's favor ................................................... 46

CONCLUSION ......................................................................... 49

REQUEST FOR ORAL ARGUMENT ..................................................... 49

CERTIFICATE OF COMPLIANCE ........................................................ 50

CERTIFICATE OF SERVICE .............................................................. 51

# TABLE OF AUTHORITIES

**Cases**

*Barber v. Thomas,*
　560 U.S. 474 (2010) ............................................................. 47

*Barrett v. U.S.,*
　423 U.S. 212 (1976) ............................................................. 21

*Bifulco v. United States,*
　447 U.S. 381 (1980) ............................................................. 48

*Borker v. Bowers,*
　No. CV 24-10045, 2024 WL 2186742 (D. Mass. May 15, 2024) ........... 22

*Brodie v. Pliler,*
　No. 22-CIV-3821, 2022 WL 16751908 (S.D.N.Y. Nov. 7, 2022) ........... 17

*Carr v. United States,*
　560 U.S. 438 (2010) ............................................................. 21

*Chevron U.S.A. Inc. v. Nat'l Res. Def. Council, Inc.,*
　467 U.S. 837 (1984) .............................................. 10, 12, 13

*Dep't of Homeland Sec. v. MacLean,*
　574 U.S. 383 (2015) ............................................................. 23

*Duncan v. Walker,*
　533 U.S. 167 (2001) ............................................................. 21

*Farm Lab. Org. Comm. v. Stein,*
　56 F.4th 339 (4th Cir. 2022) ................................................ 12

*Frommie v. Fed. Bureau of Prisons,*
　No. 4-22-cv-04082, 2022 WL 18399537 (D.S.D. Aug. 23, 2022) .... 45, 46

*Giovinco v. Pullen,*
　118 F.4th 527 (2d Cir. 2024) .......................................... 13, 46

*Huerta v. Cordova,*
　No. 4:23-cv-677, 2023 WL 8627542 (N.D. Tx. Dec. 13, 2023) .............. 45

*HuiHui v. Derr,*
    No. CV 22-00541, 2023 WL 4086073 (D. Haw. June 20, 2023)........... 16

*Keeling v. LeMaster,*
    No. 0:22-CV-00096, 2022 WL 17407966 (E.D. Ky. Dec. 2, 2022),
    *aff'd*, No. 22-6126, 2023 WL 9061914 (6th Cir. Nov. 22, 2023)........... 13

*Komando v. Luna,*
    No. 22-cv-425, 2023 WL 310580 (D.N.H. Jan. 13, 2023) ................5, 16

*Loper Bright Enter. v. Raimondo,*
    144 S. Ct. 2244 (2024) ................................................................13, 14

*Lopez v. Davis,*
    531 U.S. 230 (2001) ...................................................................40, 41

*Marbury v. Madison,*
    1 Cranch 137 (1803) ............................................................................ 14

*McNeill v. Ramos,*
    No. 5:22-hc-02134 (E.D.N.C. Apr. 12, 2023), *aff'd*, No. 23-6488, 2023
    WL 6442551 (4th Cir. Oct. 3, 2023) .................................................. 13

*Moreno v. Ives,*
    842 F. App'x 18 (9th Cir. 2020) ....................................................42, 45

*Niz-Chavez v. Garland,*
    593 U.S. 155 (2021) ........................................................................... 18

*Noe v. True,*
    No. 21-1373, 2022 WL 5080196 (10th Cir. Oct. 5, 2022) .................... 16

*Pugin v. Garland,*
    19 F.4th 437 (4th Cir. 2021), *aff'd*, 599 U.S. 600 (2023) .................... 47

*Rankin-et al v. Holinka,*
    No. 06-273, 2007 WL 495004 (D. Minn. Feb. 13, 2007)...................... 43

*Republic of Sudan v. Harrison,*
    139 S. Ct. 1048 (2019) ....................................................................... 14

iv

*Rosemond v. Hudgins*,
  92 F.4th 518 (4th Cir. 2024) ................................................................ 12

*Sharma v. Peters*,
  No. 2:24-CV-158, 2024 WL 4668135 (M.D. Ala. Nov. 4,
  2024) ........................................................................... 16, 30, 43, 44

*Sierra v. Jacquez*,
  No. 2:22-CV-1509, 2022 WL 18046701 (W.D. Wash. Dec. 27, 2022)... 17

*Silva v. Warden, FCC Coleman-Low*,
  No. 5:22-cv-629, 2024 WL 98212 (M.D. Fla. Jan. 9, 2024) ................. 45

*Sw. Airlines Co. v. Saxon*,
  596 U.S. 450 (2022) ................................................................. 14, 17

*Teed v. Warden Allenwood FCI Low*,
  No. 23-1181, 2023 WL 4556726 (3d Cir. Jul. 17, 2023) ...................... 13

*Turkiye Halk Bankasi A.S. v. United States*,
  598 U.S. 264 (2023) ............................................................................. 35

*Turner v. Keyes*,
  No. 22-CV-321, 2022 WL 17338577 (W.D. Wis. Nov. 30, 2022) .......... 47

*United States v. Bass*,
  404 U.S. 336 (1971) ............................................................................. 47

*United States v. Chapple*,
  847 F.3d 227 (5th Cir. 2017) .............................................................. 31

*United States v. Davis*,
  588 U.S. 445 (2019) ............................................................................. 47

*United States v. Gamble*,
  572 F.3d 472 (8th Cir. 2009) .............................................................. 31

*United States v. Johnman*,
  948 F.3d 612 (3d Cir. 2020) ................................................................ 19

*United States v. Llewlyn*,
  879 F.3d 1291 (11th Cir. 2018) .......................................................... 31

*United States v. Luongo,*
  11 F.3d 7 (1st Cir. 1993) ....................................................... 19

*United States v. Martin,*
  974 F.3d 124 (2d Cir. 2020) ................................................. 31

*United States v. Parker,*
  472 F. App'x 415 (7th Cir. 2012) ........................................ 31

*United States v. Perkins,*
  67 F.4th 583 (4th Cir. 2023) ............................................... 18

*United States v. Randall,*
  34 F.4th 867 (9th Cir. 2022) ........................................ 19, 20

*United States v. Vaquerano,*
  81 F.4th 86 (1st Cir. 2023) ................................................. 47

*United States v. Vaughn,*
  806 F.3d 640 (1st Cir. 2015) ........................................ 31, 32

*United States v. Venable,*
  943 F.3d 187 (4th Cir. 2019) ................................................. 4

*United States v. Wilson,*
  503 U.S. 329 (1992) .............................................................. 20

*Williams v. FCI Berlin,*
  No. 22-CV-564, 2023 WL 5961688 (D.N.H. Aug. 1, 2023) ................... 46

*Williams v. Taylor,*
  529 U.S. 362 (2000) .............................................................. 21

*Wold v. Fed. Bureau of Prisons,*
  No. 4:18-cv-04061, 2018 WL 4906273 (D.S.D. Oct. 9, 2018) ......... 42, 43

*Yufenyuy v. Warden,*
  659 F. Supp. 3d 213 (D.N.H. 2023) ................................... 16

**Statutes**

1 U.S.C. § 1 ............................................................................ 21

18 U.S.C. § 924(c) ................................................... *passim*

18 U.S.C. § 3013 ................................................. 18, 19

18 U.S.C. § 3561 ........................................................ 36

18 U.S.C. § 3566 ........................................................ 36

18 U.S.C. § 3571 ........................................................ 36

18 U.S.C. § 3574 ........................................................ 36

18 U.S.C. § 3582(c)(1)(A) ........................................... 6

18 U.S.C. § 3582(c)(2) .............................................. 31

18 U.S.C. § 3583(e)(3) .............................................. 33

18 U.S.C. § 3584 .................................................. *passim*

18 U.S.C. § 3584(c) ............................................... *passim*

18 U.S.C. § 3585 ........................................................ 46

18 U.S.C. § 3586 ........................................................ 36

18 U.S.C. § 3601 ........................................................ 36

18 U.S.C. § 3608 ........................................................ 36

18 U.S.C. § 3611 ........................................................ 36

18 U.S.C. § 3615 ........................................................ 36

18 U.S.C. § 3621 ........................................................ 37

18 U.S.C. § 3621(e) .................................................... 37

18 U.S.C. § 3621(e)(1)(C) ........................................... 37

18 U.S.C. § 3621(e)(2)(A) ........................................... 41

18 U.S.C. § 3621(e)(2)(B) ........................................... 41

18 U.S.C. § 3621(h) ........................................................... 38

18 U.S.C. § 3622 ............................................................... 37

18 U.S.C. § 3624 ............................................................... 37

18 U.S.C. § 3624(b)(1) ....................................................... 46

18 U.S.C. § 3624(c)(2) .......................................................... 7

18 U.S.C. § 3624(g) ........................................................... 39

18 U.S.C. § 3631 ........................................................ 37, 38

18 U.S.C. § 3631(a) ........................................................... 38

18 U.S.C. § 3632 .................................................... 4, 30, 38

18 U.S.C. § 3632(d)(4)(A) .................................. 5, 6, 15, 40

18 U.S.C. § 3632(d)(4)(C) .................................... 6, 38, 40

18 U.S.C. § 3632(d)(4)(D)(lviii) .................................. 16, 27

18 U.S.C. § 3632(d)(6) .......................................................... 6

18 U.S.C. § 3635 ............................................................... 37

18 U.S.C. § 3635(4) ..................................................... 5, 15

21 U.S.C. § 841 ...................................................... 1, 14, 22

21 U.S.C. § 841(b)(1)(B) ...................................................... 7

21 U.S.C. § 841(b)(1)(C) ............................................... 16, 27

21 U.S.C. § 846 ................................................. 1, 7, 14, 22

28 U.S.C. § 1291 ................................................................. 3

28 U.S.C. § 2241 ............................................................ 3, 9

34 U.S.C. § 60541(g)(5)............................................................23

34 U.S.C. § 60541(g)(5)(C)........................................................24

**Other Authorities**

A. Scalia & B. Garner, Reading Law (2012) ...........................................17

Black's Law Dictionary (12th ed. 2024) .................................................20

Black's Law Dictionary (10th ed. 2014) .................................................19

BOP Program Statement 5140.42 (April 10, 2015) ................................35

BOP Program Statement 5410.01, CN-2 (Mar. 20, 2023) ...............26, 27

BOP Program Statement 5880.30, Sentence Computation Manual
    (Old Law/Pre-CCCA of 1984) ..................................................34

Jessie Brenner & Stephanie Wylie, *Analyzing the First Step Act's
    Impact on Criminal Justice*, Brennan Center for Justice (Aug. 20,
    2024), https://tinyurl.com/yrmdz6mt .....................................26

Off. of Att'y Gen. U.S. Dep't of Justice, *The Attorney General's First
    Step Act Annual Report* (2024),
    https://www.ojp.gov/pdffiles1/nij/309223.pdf........................26

Treaty on the Execution of Penal Sentences, Mex.-U.S., Nov. 25,
    1976, 28 U.S.T. 7399 .............................................................34

U.S. Parole Commission, Rules and Procedures Manual.......................34

**Rules**

Fed. R. App. P. 32(a)(5) ...........................................................50

Fed. R. App. P. 32(a)(7)(B) .......................................................50

**Regulations**

28 C.F.R § 523.40 ..................................................................26

28 C.F.R. § 2.5 ...................................................................33

28 C.F.R. § 550.55(b)(5)......................................... 41, 42, 43, 45

45 Fed. Reg. 44924-02 (July 2, 1980) ....................................33

*Annual Determination of Average Cost of Incarceration Fee*, 88 Fed. Reg. 65405 (Sept. 22, 2023)...............................................28

**Legislative History**

164 Cong. Rec. S7838, 2018 WL 6693848 (daily ed. Dec. 19, 2018).........3

H.R. Rep. No. 115-699, at 22 (2018)............................................ 25, 26, 28

S. Rep. No. 98-225 (1983) ........................................................ 31, 36, 37

Senators Sheldon Whitehouse & John Cornyn, Comment Letter on Proposed FSA Time Credit Rule (Jan. 25, 2021), https://tinyurl.com/3cvx8hnv .............................................26

## INTRODUCTION

This case presents a straightforward question of statutory interpretation that compels reversal of the district court.

The following is undisputed:

Gregory Bonnie is serving two sentences: (1) a 120-month sentence, which consists of concurrent 120-month sentences for convictions under 21 U.S.C. § 846 and 21 U.S.C. § 841;[1] and (2) a 24-month sentence for violating a supervised release term imposed for earlier convictions for 21 U.S.C. § 846 and 18 U.S.C. § 924(c).[2] JA28–35, JA264–265.

If Mr. Bonnie was serving only the 120-month sentence for the drug offenses, he would be eligible to earn time credits against the sentence because the underlying drug offenses are not ineligible under the First Step Act of 2018. ("FSA"). Conversely, for the purpose of this motion, Mr. Bonnie does not dispute that, if he were serving only the 24-month revocation sentence, he would be ineligible to earn FSA time credits against that sentence. That is because § 924(c) is an ineligible offense under the FSA and revocation sentences are attributed to the original conviction.

---

[1] *United States v. Bonnie*, No. 2:19-cr-00060-DCN (D.S.C.).

[2] *United States v. Bonnie*, No. 2:04-cr-00546-DCN (D.S.C.).

The dispute is this: Does the 24-month § 924(c) revocation sentence taint the separately imposed 120-month drug sentence such that Mr. Bonnie is ineligible to earn FSA time credits for the entire 144-month sentence? The answer is no. The FSA provides that a prisoner is ineligible to receive time credits only "if the prisoner is serving a sentence for a conviction under" certain enumerated offenses. 18 U.S.C. § 3632(d)(4)(D). Based on the text of this provision, its context, and the purpose of the FSA, Bonnie is not "serving a sentence for a conviction under" § 924(c) when he is serving his consecutive 120-month sentence for the eligible drug offenses. *See id.*

Despite this, the BOP relied on an entirely separate statutory provision—18 U.S.C. § 3584(c)—that does <u>not</u> impact FSA credit eligibility to deny Mr. Bonnie eligibility to earn credits while he is serving his 120-month sentence for drug offenses, and the district court erred in affirming that decision. The plain language of the FSA precludes BOP from expanding the scope of exclusions beyond those specifically listed by Congress, and § 3584(c) does not authorize BOP to categorically expand the FSA's list of ineligible offenses.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over the proceedings below pursuant to 28 U.S.C. § 2241. That court entered summary judgment for Respondent-Appellee Warden Dunbar ("Respondent") on May 10, 2024. JA288. Petitioner-Appellant Gregory Allen Bonnie ("Mr. Bonnie") filed a timely notice of appeal on July 2, 2024. JA289. Therefore, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Does a 24-month revocation sentence for a § 924(c) supervised release violation taint the separately imposed 120-month drug sentence so that Mr. Bonnie is ineligible to earn FSA time credits for the entire 144-month sentence?

## STATEMENT OF THE CASE

### I.   The First Step Act of 2018

Described by a co-sponsor as "once-in-a-generation criminal justice reform," the First Step Act of 2018 combined front-end sentencing modifications with back-end prison reforms to combat overincarceration, reduce recidivism, and enhance public safety.[3] Chief among the FSA's

---

[3] 164 Cong. Rec. S7838, 2018 WL 6693848 (daily ed. Dec. 19, 2018) (statement of Sen. Chuck Grassley); *see also United States v. Venable,*

prison reforms was a new time credit system, intended to incentivize participation in evidence-based recidivism reduction programming and productive activities by awarding early release to the community. *See generally* JA153 (FSA § 101(a); 18 U.S.C. § 3632(d)(4)).[4]

Congress created guidelines for a "risk and needs assessment system" that would assign prisoners to programming, assess their risk of recidivism, and award credits towards early release. *See* 18 U.S.C. § 3632. Congress included mandatory time credits in the system as an "incentive to encourage prisoners to participate in programs, to reduce the risk that they will recidivate, with one goal being the cost savings associated with reduced recidivism and the transfer of eligible prisoners from BOP facilities into prerelease custody or supervised release."[5] The

---

943 F.3d 187, 188 (4th Cir. 2019) ("In late 2018, Congress enacted and the President signed into law the First Step Act, with the purpose of modifying prior sentencing law and expanding vocational training, early-release programs, and other initiatives designed to reduce recidivism.").

[4] The time-credit provisions of the First Step Act were codified in different places throughout the United States Code. For ease of reference, Petitioner has included an annotated version of the FSA in the Joint Appendix. *See* JA147–214.

[5] *See Komando v. Luna*, No. 22-cv-425-SE, 2023 WL 310580, at *1–2 (D.N.H. Jan. 13, 2023), *report and recommendation approved sub nom*, *Komando v. FCI Berlin, Warden*, No. 22-cv-425, 2023 WL 1782034

mandatory time-credit scheme requires BOP to award time credits to eligible prisoners at a rate of either 10 or 15 days of credit for every 30 days of "successful participation in evidence-based recidivism reduction programming or productive activities." JA153 (FSA § 101(a); 18 U.S.C. § 3632(d)(4)(A)). This mandate expansively applies to any person sentenced to imprisonment for a federal offense or in BOP custody, excluding only those individuals who are serving a sentence for specifically listed offenses. 18 U.S.C. § 3635(4) (defining "prisoner").

The FSA time-credit program was a major shift away from prior federal correctional incentive and reentry programs. In contrast to past credit programs, which vested BOP with significant discretion, the FSA requires BOP to provide time-credit incentives when certain statutory criteria are met. The FSA directs that federal prisoners who participate in and complete eligible evidence-based recidivism reduction programs and/or productive activities "shall" earn time credits pursuant to the calculation formula provided in the statute; that those credits "shall be applied toward time in prerelease custody or supervised release," and that

_____

(D.N.H. Feb. 6, 2023) (summarizing the FSA's prison reforms and their implementation by BOP).

a person "shall" be transferred to one of the two early release options. JA153–154 (FSA § 101(a); 18 U.S.C. § 3632(d)(4)(A), (C)). It also requires that the "incentives described in this subsection <u>shall</u> be in addition to any other rewards or incentives for which a prisoner may be eligible." JA158 (FSA § 101(a); 18 U.S.C. § 3632(d)(6)) (emphasis added). And rather than delegate to BOP the task of deciding who would and would not be eligible for credits, it directed that only people "serving a sentence for a conviction" under one of 68 discrete categories of offenses would be ineligible. JA154 (FSA § 101(a); 18 U.S.C. § 3632(d)(4)(D)).

In addition to creating the new time-credit program, Congress restricted BOP's discretion over certain early-release programs that predated the FSA. It ended BOP's absolute control over compassionate release. JA201 (citing FSA § 603(b); 18 U.S.C. § 3582(c)(1)(A)).[6] Congress also added language to the Second Chance Act requiring BOP to transfer

_____

[6] This amendment gave prisoners the ability to bring a reduction-in-sentence motion on their own behalf, after meeting certain requirements. Prior to this change, the BOP alone could file a motion for a reduction-in-sentence.

low-risk prisoners to home confinement. JA199 (FSA § 602; 18 U.S.C. § 3624(c)(2)).[7]

## II.    Procedural Background

In October 2005, Mr. Bonnie was sentenced in connection with convictions for a federal drug offense and a violation of 18 U.S.C. § 924(c). JA7. He was released from the BOP and began serving an eight-year term of supervised release on June 6, 2017. JA9, JA93–94.

In January 2019, Mr. Bonnie was charged in a drug-related indictment in the District of South Carolina. He pled guilty to violations of 21 U.S.C. § 841(b)(1)(B) and 21 U.S.C. § 846. JA30. He also admitted to violating the terms of his supervised release. JA28.

On April 21, 2021, the district court sentenced Mr. Bonnie to: (1) concurrent 120-month sentences for the drug offenses; and (2) a consecutive 24-month sentence for the supervised release violations. JA28–35. Although these sentences were imposed during the same sentencing

---

[7] This change added a directive to § 3624(c)(2) to require that "The Bureau of Prisons <u>shall</u>, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." (emphasis added).

hearing, the district court entered separate written judgments reflecting the two distinct cases. JA12–35.

BOP designated Mr. Bonnie to serve his sentences at the Satellite Prison Camp at FCI Williamsburg in South Carolina. *See* JA88. During his incarceration, Mr. Bonnie has diligently participated in recidivism reduction programming and productive activities. *See* JA216 (stating that Mr. Bonnie is employed by UNICOR and has completed five recidivism reduction programs as of March 2023); JA 219–20 (listing ongoing programs Mr. Bonnie was participating in as of March 2023). Moreover, according to the BOP's risk assessment tool, he poses a low risk of recidivism upon release. JA216.

Notwithstanding this programming and Mr. Bonnie's low risk of recidivism, BOP has determined that Mr. Bonnie is ineligible to earn FSA time credits. *See* JA48–63. The BOP does not dispute that the drug offenses for which Mr. Bonnie was sentenced are eligible for FSA time credits. Rather, the BOP maintains that Mr. Bonnie's consecutive 24-month revocation sentence renders him ineligible to earn FSA time credits at any point during his 144 months of imprisonment. *See* JA48–63.

After learning of BOP's determination, Mr. Bonnie began pursuing administrative remedies. Specifically, Mr. Bonnie requested that he be deemed eligible to earn FSA time credits while serving his 120-month drug sentence. *See* JA48–63. BOP denied Mr. Bonnie's request at every stage of the administrative process. *See* JA48–63.

On March 27, 2023, Mr. Bonnie filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. JA36–75. Respondent moved to dismiss the petition or for summary judgment, arguing that Mr. Bonnie is ineligible to earn FSA time credits. JA76–87. Its argument was premised primarily upon 18 U.S.C. § 3584(c), which provides that "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." *See* JA 80–86. Thereafter, the undersigned noticed an appearance as Mr. Bonnie's counsel-of-record and filed a reply in support of his petition. JA116–221.

On January 16, 2024, the magistrate judge issued a Report and Recommendation ("Report") that recommended granting the BOP's motion for summary judgment. JA222–236. Relying on § 3584(c) and non-binding cases brought by *pro se* litigants, the magistrate judge found that

"the BOP's aggregation of the consecutive sentences for the purpose of determining that [Mr. Bonnie] is ineligible to earn FSA time credits due to the disqualifying offense stemming from the § 924(c) conviction is proper." JA234. Alternatively, the magistrate judge noted that, if it "were to find ambiguity, the BOP's interpretation of [§ 3584(c)] is entitled to *Chevron* deference." JA234.

Mr. Bonnie, through his counsel, filed objections to the Report. JA237–255, to which the BOP replied, JA256–262. Although the matter was originally scheduled for oral argument, the district court instead adopted the Report in full and granted Respondent's motion for summary judgment based on the parties' written submissions. JA263–288.

Mr. Bonnie filed a timely notice of appeal from the district court's judgment. JA289.

## SUMMARY OF ARGUMENT

The district court erred in granting the BOP's motion for summary judgment.

***First***, the court erroneously construed the FSA to bar people serving sentences for eligible offenses from earning <u>any</u> credits towards early release if they are also required to serve a consecutive sentence for an

ineligible offense. The FSA's text is clear. It directs BOP to calculate credits on any permitted sentence, and consecutive sentences are different sentences. The district court reached its conclusion by giving little attention to the FSA's text, and instead focusing its analysis of Mr. Bonnie's claim on an entirely separate provision—18 U.S.C. § 3584. This violates the basic rule that statutory interpretation must begin with the language of the statute.

***Second***, the lower court fundamentally misconstrued the scope of 18 U.S.C. § 3584. That statute requires BOP to aggregate sentences for "administrative purposes." Congress has listed BOP's administrative responsibilities in Chapter 229, subchapter C of Title 18. But when Congress enacted the FSA, it <u>did not</u> give BOP absolute administrative control over the FSA credit program. Instead, it created a new subchapter which tasked the Attorney General and a list of institutional stakeholders with the implementation of the FSA credit program. And rather than give BOP control over eligibility determinations—as it had with prison incentive programs that predated the FSA—it limited ineligibility for early release to those "serving a sentence" for one of 68 types of conviction.

**Finally**, if the interaction between the FSA credit program and the aggregation statute is ambiguous, then the rule of lenity applies.

For these reasons, this Court should reverse the district court's order.

## STANDARD OF REVIEW

This Court reviews a question of statutory interpretation de novo. *Farm Lab. Org. Comm. v. Stein*, 56 F.4th 339, 346 (4th Cir. 2022). Likewise, "[t]he Court reviews de novo the district court's denial of § 2241 habeas corpus relief." *Rosemond v. Hudgins*, 92 F.4th 518, 523 (4th Cir. 2024).

## ARGUMENT

### I. The "best reading" of the FSA requires BOP to deem Mr. Bonnie eligible to earn FSA time credits, except while he is "serving a sentence" for a conviction under § 924(c).

In this case, the district court applied the familiar two-step framework established by *Chevron U.S.A. Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984), with confusing results. Initially, it concluded that "the plain text of the statutory provision" was ambiguous because it was silent as to the eligibility of prisoners convicted of multiple offenses. JA277. It then looked to what it described as the "statutory context" (18 U.S.C. § 3584) before appearing to defer to BOP's aggregation of terms of

imprisonment as "reasonable." JA278. But it then retreated from its ambiguity finding, declaring that the "plain text and statutory context" of the FSA compelled its holding. JA20. In a footnote, it noted that if it had reached the second step, it would have found BOP's interpretation reasonable."[8] JA286.

This Court need not trouble itself with *Chevron*'s twists and turns. Just over a month after the district court issued its ruling, the Supreme Court unequivocally ended the *Chevron* doctrine in *Loper Bright Enter. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024). *Loper* declares that "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires, *id.*, and

---

[8] The FSA time credit cases cited by the district court—all brought by *pro se* litigants—took conflicting approaches to *Chevron*. Many begin and end their analysis with 18 U.S.C. § 3584(c) with no explanation of why the text of the FSA itself does not govern eligibility. *See McNeill v. Ramos*, No. 5:22-hc-02134-M-RJ, ECF No. 7, at 9 (E.D.N.C. Apr. 12, 2023), *aff'd*, No. 23-6488, 2023 WL 6442551 (4th Cir. Oct. 3, 2023); *Teed v. Warden Allenwood FCI Low*, No. 23-1181, 2023 WL 4556726 (3d Cir. Jul. 17, 2023); *Keeling v. LeMaster*, No. 0:22-CV-00096, 2022 WL 17407966, at *2 (E.D. Ky. Dec. 2, 2022), *aff'd*, No. 22-6126, 2023 WL 9061914 (6th Cir. Nov. 22, 2023). Others found ambiguity, and deferred to the BOP's interpretation as reasonable. *See* JA286 (summarizing examples). The lone published appellate case to address this issue post-*Loper Bright*, *Giovinco v. Pullen*, 118 F.4th 527 (2d Cir. 2024) is discussed in greater detail below. *See infra* at 46 n. 25.

that it is the exclusive province of the judiciary to address questions of law in relation to an agency's actions, *id.* at 2266.

This holding reasserts the foundational role of the judiciary, emphasizing that "legal interpretation . . . has been, 'emphatically,' 'the province and duty of the judicial department' for at least 221 years." *Id.* at 2273 (quoting *Marbury v. Madison*, 1 Cranch 137, 177 (1803)). To determine the meaning of a statute, and resolve ambiguities if they exist, courts must "use every tool at their disposal to determine the best reading" of a statute. *Id.* "No matter how impenetrable," statutes "must have a single best meaning" and "if it is not the best, it is not permissible." *Id.*

Here, applying all the traditional tools of statutory construction confirms that Mr. Bonnie is eligible to earn time credits while he is serving his 120-month sentence for convictions under 21 U.S.C. §§ 841, 846.

### A. The plain language of § 3632(d)(4)(D) directs this reading of the statute.

Statutory interpretation always begins with the language of the statute. *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1056 (2019). The language is interpreted according to its "ordinary, contemporary, common meaning." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 456 (2022) (citation omitted).

Title I of the FSA, as codified at § 3632(d)(4)(A), provides that "a prisoner, except for an ineligible prisoner under subparagraph D, who successfully completes [programming] shall earn time credits . . . ." JA153. A "prisoner" is defined, in relevant part, as "a person who has been sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or a person in the custody of the Bureau of Prisons." 18 U.S.C. § 3635(4). And subparagraph (D) provides that a "prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction" for an offense listed as disqualifying him from earning time credits. 18 U.S.C. § 3632(d)(4)(D).[9]

A plain language analysis of these provisions demonstrates that the statute disqualifies people from earning FSA time credits only when they

---

[9] The provision, interlineated with the definition of prisoner, reads:

A [*person who **has been sentenced** to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or a person in the custody of the Bureau of Prisons*] is ineligible to receive time credits under this paragraph if the [*person who **has been sentenced** to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or a person in the custody of the Bureau of Prisons*] **is serving a sentence** *for a conviction* [for an enumerated disqualifying offense].

18 U.S.C. § 3632(d)(4)(D) (alterations added) (emphasis added).

are actually serving the specific sentence imposed for the specific disqualifying conviction and not merely when one disqualifying conviction adds a consecutive sentence to increase the prisoner's overall term of imprisonment. The "BOP must apply time credits to eligible prisoners who have earned them and cannot categorically make prisoners ineligible for such credits in a manner that contravenes the statutory scheme set forth in 18 U.S.C. § 3632." *Sharma v. Peters*, No. 2:24-CV-158-RAH-KFP, 2024 WL 4668135, at *9 (M.D. Ala. Nov. 4, 2024) (deeming FSA regulation invalid to the extent it creates categorical exclusions not found in the language of the statute).[10]

---

[10] Many courts have relied on the mandatory nature of the time-credit programs to reject BOP assertions that it is empowered to deem people ineligible for credits, or to bar the application of time credits, for reasons not listed in the FSA. *See, e.g.*, *Lallave v. Martinez*, 635 F. Supp. 3d 173, 189–190 (E.D.N.Y. 2022) (holding that 18 U.S.C. § 3632(d)(4)(D)(lviii) must be read narrowly to encompass only situations where an individual has been convicted of a penalty enhancement under 21 U.S.C. § 841(b)(1)(C)); *Yufenyuy v. Warden*, 659 F. Supp. 3d 213, 218 (D.N.H. 2023) (finding "28 C.F.R. § 523.42(a) cannot be applied to prevent [defendant] from earning time credits to which he is entitled under the plain language of the FSA"); *see also Noe v. True*, No. 21-1373, 2022 WL 5080196, at *10 (10th Cir. Oct. 5, 2022) (refusing to expand list of ineligible offenses to include a conspiracy conviction); *HuiHui v. Derr*, No. CV 22-00541 JAO-RT, 2023 WL 4086073, at *5 (D. Haw. June 20, 2023) ("Congress has directly spoken to the precise question of *when* a prisoner is ineligible for FSA [credits]."); *Komando*, 2023 WL 310580, at *5–6 (finding that the FSA's "final order of removal" ineligibility provision was

There are at least two reasons why the plain language supports this result:

First, in the time-credit provisions, Congress expressly distinguished between "a sentence" for a particular conviction and the overall "term of imprisonment." The definition of prisoner references a "term of imprisonment," 18 U.S.C. § 3635(4); the ineligibility provision, references "serving a sentence for a conviction," *id.* § 3632(d)(4)(D). This difference indicates that Congress intended to refer to different concepts. When Congress repeats words, phrases, or structures from one statutory provision to another, the presumption is that "the different term denotes a different idea." *Sw. Airlines*, 596 U.S. at 458 (quoting A. Scalia & B. Garner, Reading Law 170 (2012)). That these differences occur within the same statutory section—drafted and enacted by Congress at the same time—imparts even greater significance to this variation. *See United*

---

unambiguous and rejecting BOP assertion that it could expand FSA ineligibility to people with immigration detainers); *Sierra v. Jacquez*, No. 2:22-CV-01509, 2022 WL 18046701, at *2 (W.D. Wash. Dec. 27, 2022), *report and recommendation adopted*, No. C22-1509, 2023 WL 184225 (W.D. Wash. Jan. 13, 2023) (same); *Brodie v. Pliler*, No. 22-CIV-3821, 2022 WL 16751908, at *3 (S.D.N.Y. Nov. 7, 2022) (rejecting BOP's assertion that it could impose an 18-month prerelease cutoff for the accrual and application of time credits due to administrability issues).

*States v. Perkins*, 67 F.4th 583, 614 (4th Cir. 2023) (noting that the "synchronous enactment" of a statutory scheme "is of great moment for interpretive purposes").

Moreover, section 3632(d)(4)(D)'s differing use of "a sentence" and "for a conviction" supports the conclusion that each instance of offense-based ineligibility is tied to the sentence imposed for a single conviction, as opposed to all of the various sentences that could be imposed as part of a term of imprisonment when someone is convicted of multiple counts. 18 U.S.C. § 3632(d)(4)(D). As the U.S. Supreme Court explained in *Niz-Chavez v. Garland*, "Congress's decision to use the indefinite article 'a' . . . supplies some evidence" of the intent to use the term following the article "as a discrete, countable thing." *Niz-Chavez*, 593 U.S. 155, 163 (2021) ("To an ordinary reader . . . 'a' notice would seem to suggest just that: 'a' single document containing the required information, not a mishmash of pieces with some assembly required").

For example, courts construing the meaning of the phrase "convicted of <u>an</u> offense" in the special assessment statute, 18 U.S.C. § 3013 (emphasis added), have held that the phrase's "singular construction tells us that <u>each</u> 'offense' requires a separate assessment." *United States v.*

*Randall*, 34 F.4th 867, 876 (9th Cir. 2022) (emphasis in original); *see also United States v. Luongo*, 11 F.3d 7, 10 (1st Cir. 1993) ("And because the statute is phrased in the singular, its terms imply that each offense—each felony—calls for a separate special assessment, even when a single defendant is simultaneously convicted of multiple charges.").[11]

Not only does the use of an indefinite article indicate the singularity of the term it precedes, but courts have also held that the plain meaning of the term "convicted" or "conviction" when paired with an indefinite article supports the conclusion that the conviction must be interpreted in the singular. This is because "'convicted' as normally understood is an offense-specific term." *United States v. Johnman*, 948 F.3d 612, 617 (3d Cir. 2020) ("'Convicted,' . . . is the past participle of 'convict,' which means 'to find or declare guilty <u>of an offense or crime</u>[.]' *Convict*, Webster's Third New International Dictionary (3d ed. 1993); *accord Convict*, Black's Law Dictionary (10th ed. 2014) ("to find (a person) guilty of a criminal offense") (cleaned up) (emphasis in the original)); *accord Randall*, 34 F.4th

_____

[11] The Fourth Circuit does not seem to have a case directly on point. However, "[e]very circuit court has interpreted § 3013's assessment on a person "convicted of an offense" to apply separately to each count of conviction rather than to each offender. *Randall*, 34 F.4th at 875–76.

at 876 ("We also agree that 'convicted' is 'normally understood [a]s an offense-specific term."). For this reason, "'convicted of an offense is best read as applying to each separate conviction for a statutory violation.'" *Randall*, 34 F.4th at 876.

Looking to its plain meaning, "sentence" is likewise normally understood as an offense-specific, singular term. According to Black's Law Dictionary, "sentence" is defined as "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty." *Sentence*, Black's Law Dictionary (12th ed. 2024). "Sentence" is distinguished from "aggregate sentence," which is defined as "[t]he total sentence imposed for multiple convictions . . . ." *Aggregate Sentence*, Black's Law Dictionary (12th ed. 2024). Giving "sentence" its ordinary meaning—and when paired with the indefinite article and the language "for a conviction"—"a sentence" is best read to refer to a discreet judgment imposed for a singular conviction.

Second, within these provisions, Congress used different tenses to refer to a "sentence." Consistent with normal usage, courts frequently look to Congress's choice of verb tense to ascertain a statute's temporal reach. *United States v. Wilson*, 503 U.S. 329, 333 (1992).

Here, Congress defined "prisoner" as "a person who <u>has been</u> sentenced"—referring to an imposed sentence in the past or present-perfect tense, which "denot[es] an act that has been completed." *Barrett v. U.S.*, 423 U.S. 212, 216 (1976). In contrast, it used the present tense to specify the circumstance in which a person would be ineligible for credits: "if the prisoner <u>is</u> serving a sentence for a conviction under" an offense enumerated in § 3632(d)(4)(D). The Dictionary Act instructs that "words used in the present tense include the future as well as the present." 1 U.S.C. § 1. "By implication, then, the Dictionary act instructs that the present tense generally does not include the past." *Carr v. United States*, 560 U.S. 438, 448 (2010). These differences in word tense matter because it is a "cardinal principle of statutory construction" that every word within a statute is there for a purpose and should be given its due significance. *Williams v. Taylor*, 529 U.S. 362, 404 (2000); *Duncan v. Walker*, 533 U.S. 167, 174 (2001).

Despite this, the district court dismissed the differences between the language Congress used to define "prisoner" and the period of ineligibility as "meaningless." JA276. It made no attempt to reconcile Congress's use of different terms, language and tenses within the body of the

ineligibility provision, or to attribute them meaning. But these differences are critical. Indeed, they make plain that Mr. Bonnie is eligible for earned time credits under the FSA when he is serving his sentence on his drug offenses. *See Borker v. Bowers*, No. CV 24-10045-LTS, 2024 WL 2186742, at *2 (D. Mass. May 15, 2024) (expanding the scope of ineligibility under the FSA would "contravene the command of Congress, something the BOP cannot do").

Mr. Bonnie was sentenced to a term of imprisonment on May 27, 2021, in two separate judgments. JA28–35. One is a concurrent sentence for convictions for eligible offenses (21 U.S.C §§ 841, 846). The other is for a violation of a supervised release term imposed for a § 924(c) conviction—an ineligible offense. While Mr. Bonnie "is serving" the § 924(c) revocation sentence, he is ineligible to earn time credits under the plain language of the FSA. But after the completion of that sentence, he will no longer be "serving a sentence" for an ineligible conviction. Instead, he is "a prisoner" (*i.e.*, a person who has been sentenced to a term of imprisonment pursuant to a conviction for a federal criminal offense) who is not "ineligible" under subparagraph D (*i.e.*, he is not serving a sentence for an offense listed in § 3632(d)(4)(D)).

**B.     Statutory context confirms this interpretation.**

In other sections of the FSA, Congress used different language to explain who would be ineligible for other types of early-release programs amended or created in the Act. "Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another." *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015).

In Section 603 of the FSA, Congress expanded the Second Chance Act of 2007's pilot program for eligible elderly offenders to include eligible terminally ill offenders, among other changes.[12] JA199–203 (codified at 34 U.S.C. § 60541(g)(5)). Like the time-credit incentive, the expanded pilot program excludes certain inmates from eligibility. But rather than repeat the exclusionary language from the new time-credit program ("serving a sentence for a conviction"), Congress adapted its Second Chance Act definition of "eligible elderly offender."[13] Unlike the FSA time

---

[12] Congress also expanded the pool of those eligible for early transfer to home confinement under the "elderly offender" program to include people who were 60 years old (the prior age requirement was 65 years); had served two-thirds of their sentence (instead of 75 percent), and by striking the preexisting 10-year minimum requirement.

[13] *Compare* JA154 (FSA § 101(a)) *with* JA201 (FSA § 603)).

credit's exclusion provision, the terminally ill offender exclusion expressly applies to a person convicted of multiple offenses, so long as *any one* of the offenses is listed as a disqualifying offense:

> (D) ELIGIBLE TERMINALLY ILL OFFENDER. —The term 'eligible terminally ill offender' means an offender in the custody of the Bureau of Prisons who—
>
> "(i) is serving a term of imprisonment based on conviction for <u>an offense or offenses that do not include</u> any crime of violence (as defined in section 16(a) of title 18, United States Code), sex offense (as defined in section 111(5) of the Sex Offender Registration and Notification Act (34 U.S.C. 20911(5))), offense described in section 2332b(g)(5)(B) of title 18, United States Code, or offense under chapter 37 of title 18, United States Code[.]

JA201 (FSA § 603(a)(5)(B)) (emphasis added). In turn, the Second Chance Act explicitly defines "term of imprisonment" to include "multiple terms of imprisonment ordered to run <u>consecutively or concurrently</u>, which shall be treated as a single, aggregate term of imprisonment for purposes of this section." 34 U.S.C. § 60541(g)(5)(C) (emphasis added). Under these clear terms, an individual is not eligible for the terminally ill offender pilot project if he is serving a "term of imprisonment" that includes *any* excludable offense.

The contrast between the language Congress selected to describe eligibility for early-release programs within the four corners of the FSA

is conclusive. If Congress intended the same expansive exclusion for FSA time credits, it surely would have used the readily available language from the Second Chance Act to say so. Further, if Congress intended for "term of imprisonment" to trigger aggregation it would have stated so directly, as it did in the Second Chance Act (which, like the FSA, was enacted long after the aggregation statute). But instead, it provided that an otherwise eligible individual is ineligible to earn FSA time credits only while serving "a sentence" for the excludable offense. The court must give this difference meaning.

### C. The purpose of the FSA supports what the plain language and context dictate.

The FSA's purpose supports Mr. Bonnie's view. In enacting the FSA, Congress recognized an urgent need to address high rates of recidivism and to confront the reality that "the vast majority of federal prisoners will one day be released from BOP custody."[14] Congress understood that it is in "the fiscal interest of the government to reduce recidivism [and] in the public safety interest as well."[15] By creating a risk-and-needs system with a time-credit incentive, Congress hoped there would be a

---

[14] H.R. Rep. No. 115-699, at 22 (2018).

[15] *Id.*

"greater incentive to participate in evidence-based programs that prepare [prisoners] for productive lives after incarceration" and "reduce both prison costs and recidivism rates for incarcerated individuals."[16] Mr. Bonnie fits the mold of who Congress had in mind when it created the FSA

---

[16] Senators Sheldon Whitehouse & John Cornyn, Comment Letter on Proposed FSA Time Credit Rule (Jan. 25, 2021), https://tinyurl.com/3cvx8hnv (arguing for expansive application of the First Step Act credit program); *see also* H.R. Rep. No. 115-699, at 22 (2018) ("The data indicates that unless the government acts to reduce the recidivism rate among federal inmates, there is a strong possibility that former prisoners will recidivate and be rearrested or end up re-incarcerated. Not only is it in the fiscal interest of the government to reduce recidivism, it is in the public safety interest as well. It is estimated that the implementation of this bill will create significant cost savings.").

So far, the data bears this out. In 2024, the DOJ reported that as of January 28, 2024, the recidivism rate for people eligible to earn time credits was less than 10 percent, compared to an overall recidivism rate of 46.2 percent for all people released from BOP facilities in 2018. *See* Jessie Brenner & Stephanie Wylie, *Analyzing the First Step Act's Impact on Criminal Justice*, Brennan Center for Justice (Aug. 20, 2024), https://tinyurl.com/yrmdz6mt (citing Off. of Att'y Gen. U.S. Dep't of Justice, *The Attorney General's First Step Act Annual Report* 40–44 (2024), https://www.ojp.gov/pdffiles1/nij/309223.pdf. Importantly, eligibility for time credits does not guarantee early release. To earn and apply the credits, a person must diligently participate in all programming and productive activities recommended by BOP and abide by the rules of those programs and activities. *See* BOP Program Statement 5410.01, CN-2 (Mar. 20, 2023); *see also* 28 C.F.R § 523.40, *et seq.* Refusal to complete the BOP needs assessment or participate in the programs they recommend disqualifies a person from earning or applying credits. BOP Program Statement 5410.01, CN-2. So does placement in the special housing unit for

credit program. According to the FSA Recidivism Risk Assessment Tool, he poses a low risk of recidivism upon release. JA216 (Risk Assessment Score Sheet). He has diligently participated in programming since he arrived in BOP on April 21, 2021, has maintained employment, and has already completed five recidivism reduction programs. JA216–220.

*Lallave v. Martinez* is instructive as to the FSA's purpose. 635 F. Supp. at 189–90. In *Lallave*, the court rejected BOP's effort to expand a different ineligibility provision of 18 U.S.C. § 3632(d)(4)(D) as unlawful.[17] *Id.* The *Lallave* court noted that the "FSA's legislative history suggests

_____

disciplinary reasons. *Id.* These requirements protect public safety by ensuring that only those who diligently participate in programming as BOP recommends will receive the benefit of early release.

[17] In *Lallave*, BOP deemed the petitioner ineligible under 18 U.S.C. § 3632(d)(4)(D)(lviii), which excludes people "serving a sentence for a conviction under . . . section 401(a) of the Controlled Substances Act (21 U.S.C. 841) relating to manufacturing or distributing a controlled substance in the case of a conviction for an offense described in subparagraph (A), (B), or (C) of subsection (b)(1) of that section for which death or serious bodily injury resulted from the use of such substance." But the *Lallave* petitioner was not convicted under the statutory penalty enhancement; instead, she received a sentencing guidelines enhancement for "death or serious bodily injury." *Lallave*, 635 F. Supp. 3d at 189. The *Lallave* court held that the "eligibility provision is intended to apply specifically to individuals who were convicted of the penalty enhancement contained in 21 U.S.C. § 841(b)(1)(C)" and "Petitioner was not." *Id.* at 190. Therefore, "BOP . . . violated the First Step Act by failing to award Petitioner earned time credits." *Id.*

that, among other things, the congressional intent was to 'control correction spending' and 'manage the prison population.'" *Id.* (quoting H.R. Rep. No. 115-699, at 22 (2018)). The court concluded that "in view of this goal of reducing the prison population, the court is inclined to read the eligibility provisions narrowly, consistent with its textual interpretation, to exclude only the individuals reasonably included in the text." *Id.*

The *Lallave* court correctly concluded that allowing BOP to write into the FSA the discretion to expand ineligibility beyond the clear limits of the Act is contrary to the FSA's goal of incentivizing prisoners to engage in these beneficial programs and activities.

Allowing BOP to deem Mr. Bonnie ineligible for time credits here would also be inconsistent with the FSA's clearly stated purpose. The BOP's eligibility determination has deprived Mr. Bonnie—and others similarly situated—of one-year earlier release to supervised release. In 2022, the average annual cost of incarceration for a person was $42,672. *See Annual Determination of Average Cost of Incarceration Fee*, 88 Fed. Reg. 65405, 65406 (Sept. 22, 2023). There is no doubt that BOP's inter-

pretation will <u>increase</u>, rather than <u>reduce</u>, correctional costs, an outcome directly at odds with Congress's stated purpose in the FSA to control correctional spending.

## II. The text, structure, and purpose of § 3584 shows that it does not control eligibility determinations under the FSA.

Rather than reconcile the meaningful variations within § 3632(d)(4)(D) and the four corners of the FSA itself, the lower court—like the courts on which it relied—focused on a statute in the "backdrop," 18 U.S.C. § 3584(c), which provides that "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." The lower court assumed that all aspects of the "provision of time credits is an administrative function of the BOP." JA276.

The district court erred. The text, structure, and history of § 3584 and its surrounding provisions shows that, whereas other aspects of imprisonment are administrative functions of BOP, determining eligibility for FSA time credits is not. Unlike past prison correctional programs, the FSA did not include a "broad delegation to the BOP to manage prisoner's sentences." JA281. As a result, § 3584 does not empower BOP to expand the carefully delineated list of ineligibility provisions included at 18

U.S.C. § 3632(d)(4)(D) through sentence aggregation. "The BOP must apply time credits to eligible prisoners who have earned them and cannot categorically make prisoners ineligible for such credits in a manner that contravenes the statutory scheme set forth in 18 U.S.C. § 3632." *See Sharma*, 2024 WL 4668135, at *9.

## A. The text and statutory structure of § 3584 demonstrates that it does not apply to time credit eligibility under the FSA.

Section 3584 is the Sentencing Reform Act's ("SRA") provision addressing "multiple sentences of imprisonment." Subsection (a) gives courts the authority to impose sentences for offenses concurrently or consecutively. Subsection (b) preserves the integrity of each distinct offense in explaining that, for "each offense" for which a term of imprisonment is being imposed, the court shall consider the factors set forth in § 3553(a). And subsection (c) explains that multiple sentences will be "treated for administrative purposes as a single, aggregate term of imprisonment."

Section 3584 does not provide that multiple sentences, especially those imposed to run consecutively, will lose their separate character. To the contrary, as explained in Senate Report No. 98-225, the focus on "each

offense" in § 3584(b) was meant to convey that "[a]lthough similar offenses committed in the course of a single criminal episode would ordinarily be appropriate subjects for concurrent sentences, there may be instances in which the just punishment purpose of sentencing might require the imposition of distinct, separately identifiable sentences for each of the particular offenses the defendant is found to have committed." S. Rep. No. 98-225, at 128 (1983). As for subsection (c), the report explains that under this provision, "consecutive terms of imprisonment shall be treated as an aggregate for administrative purposes, thus simplifying administration." *Id.*

In other contexts, circuit courts across the country have rejected a reading of 18 U.S.C. § 3584 that would impermissibly expand aggregation.[18] For example, in *United States v. Vaughn*, 806 F.3d 640, 643–44 (1st Cir. 2015), the First Circuit held that consecutive sentences could

---

[18] The most common example is that courts have uniformly held that aggregation cannot interfere with the judicial purpose of resentencing under 18 U.S.C. § 3582(c)(2). *See, e.g., United States v. Martin*, 974 F.3d 124, 136 (2d Cir. 2020); *United States v. Llewlyn*, 879 F.3d 1291, 1296 (11th Cir. 2018); *United States v. Chapple*, 847 F.3d 227, 230 (5th Cir. 2017); *United States v. Vaughn*, 806 F.3d 640, 643–44 (1st Cir. 2015); *United States v. Parker*, 472 F. App'x 415, 417 (7th Cir. 2012); *United States v. Gamble*, 572 F.3d 472, 474–75 (8th Cir. 2009).

not be aggregated for a resentencing to apply retroactive guidelines amendments. There, the defendant had two sentences: one eligible for reduction under the retroactive amendments, and the other that was not. *Id.* at 642 & n.1. He had completed the eligible sentence prior to seeking a sentencing reduction. *Id.* at 643. Nonetheless, he asked the Court to consider his sentences as one aggregated term of imprisonment, which would be eligible for reduction. *Id.* at 643–45. The *Vaughn* court refused. It explained that "the issue at hand is judicial, not administrative" because "[a] sentence reduction under § 3582(c)(2) . . . involves discretionary decision-making by the district court." *Id.* at 643–44. The court reasoned that a contrary ruling "would essentially rewrite the statute to extend aggregation to *all* purposes." *Id.* at 644.

As *Vaughn* instructs, section 3584(c) *cannot* mean that an individual serves the entire "aggregate term of imprisonment" as the sentence on each of the multiple sentences. If it did, then consecutive sentences would often result in individuals serving sentences far in excess of the statutory maximum for the offense. Here, as noted in the Petition, Mr. Bonnie "cannot <u>serve</u> a term of imprisonment that exceeds the statutory maximum of five years for his" supervised release violation. JA38. If Mr.

Bonnie were actually serving a twelve-year sentence for his supervised-release violation, his sentence would be seven years longer than authorized by statute.[19] The reason that § 3584(c) does not render these sentences illegal is because each sentence remains apportioned to the offense for which it was imposed, even if "treated"—for administrative purposes—as a single, aggregate term of imprisonment. In other words, each sentence remains distinct under law.

BOP and the Parole Commission's practice with respect to parole is instructive. Like time credits, eligibility for parole is determined by the statute of conviction—not by BOP. The Parole Commission has long aggregated sentences for the purposes of calculating "good time" and for setting a parole eligibility date. *See* 28 C.F.R. § 2.5 (codifying longstanding interpretation of 18 U.S.C. §§ 4161, 4205(a)); *see also* 45 Fed. Reg. 44924-02 (July 2, 1980) (Final Rule). But this aggregation does *not* deprive the sentences of their distinct parole implications: the aggregation

---

[19] 18 U.S.C. § 3583(e)(3) (setting a statutory maximum term of five years imprisonment for a violation of a condition of supervised release if the offense that resulted in the term of supervised release is a class A felony).

of a parolable sentence with a non-parolable sentence does not render the entire sentence non-parolable.[20]

BOP also de-aggregates sentences to comply with a bilateral international treaty that allows certain types of sentences imposed in the United States on Mexican nationals to be served in Mexico. *See* Treaty on the Execution of Penal Sentences, Mex.-U.S., Nov. 25, 1976, 28 U.S.T. 7399. In relevant part, the transfer treaty bars Mexican nationals who are serving U.S. imposed sentences for immigration offenses from eligibility to serve their sentence in Mexico. *Id.*, art. II(4). But BOP has not interpreted the treaty to mean that aggregation of an immigration sentence with a non-immigration sentence renders a person ineligible for transfer. Instead, BOP policy provides that:

> An inmate may not be eligible for return to his/her country of citizenship for service of the sentence or commitment imposed in a United States court when . . . (d) The inmate is a Mexican citizen or national who is currently serving a sentence for committing an immigration offense, *unless he/she is serving*

---

[20] Instead, the parole eligibility date is set after the completion of the non-parolable sentence (less good time) plus the minimum of the parolable sentence. *See* U.S. Parole Commission, Rules and Procedures Manual § 2.2-04 note (describing parole eligibility for aggregated parolable and non-parolable sentence); BOP Program Statement 5880.30, Sentence Computation Manual (Old Law/Pre-CCCA of 1984) at VII-20 (same).

> *a sentence for multiple offenses and the immigration portion of the sentence has already been served.*

BOP Program Statement 5140.42 (April 10, 2015) (emphasis added). As is true in the context of parole and treaty transfers from the United States to Mexico, the aggregation of a sentence for an FSA-credit eligible offense with a sentence for an ineligible offense does not render the entire sentence ineligible.

## B. Context confirms this reading.

This Court has a duty to construe statutes in their entirety, not as isolated provisions. *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 275 (2023). Consequently, the Court must read the words Congress enacted "in their context and with a view to their place in the overall statutory scheme." *Id.* A statute's position in the U.S. Code can define its reach. *See id.* at 274 (determining that a statute spoke to civil immunity because it was in a section of the U.S. Code discussing civil procedure). Here, the placement of the aggregation provision shows that it does not control eligibility decisions under the First Step Act of 2018.

In the SRA, Congress created and consolidated a series of provisions relating to sentencing and imprisonment in Title 18. Chapter 227

"sets forth the basic considerations governing the imposition of sentences," and chapter 229 covers the implementation of the "various types of sentences imposed under" chapter 227. *See* S. Rep. No. 98-225, at 111, 129 (1983). The aggregation provision, which directs that "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment," is included in chapter 227. *See* 18 U.S.C. § 3584(c).

Congress carefully delineated the interplay between these two chapters, specifying that "the implementation of a sentence of imprisonment is governed by the provisions of subchapter C of chapter 229 . . . ." 18 U.S.C. § 3586.[21] In that subchapter (the "imprisonment subchapter") Congress specified that it had "simplif[ied] the administration of the prison system," by placing "custody of federal prisoners directly in the

---

[21] Each subchapter in chapter 227 is implemented by its counterpart in chapter 229. For example: Chapter 227, subchapter B describes how a judge should impose probation. 18 U.S.C. §§ 3561–3566. The implementation of a probationary sentence is then governed by chapter 229, subchapter A. *See* 18 U.S.C. §§ 3601–3608. Similarly, chapter 227, subchapter C describes how judges should impose fines. 18 U.S.C. §§ 3571–3574. The administration of fines is governed by chapter 229, subsection B. *See* 18 U.S.C. §§ 3611–3615.

Bureau of Prisons rather than in the Attorney General." S. Rep. No. 98-225, at 141 (1983). Consistent with this purpose, each provision of the imprisonment subchapter addresses matters within the unique control and authority of BOP, such as designation, 18 U.S.C. § 3621, temporary release, 18 U.S.C. § 3622, and release, 18 U.S.C. § 3624.

Notably, Congress placed the provisions governing other credit programs in the imprisonment subchapter. The SRA created the "good time credit" (GTC) program, explaining that it hoped these "new provisions" would be easier to "administer." S. Rep. No. 98-225, at 147 (1983). Later, in 1994, Congress amended Subchapter C to create the RDAP program, granting BOP the discretion to reduce successful participants' "period . . . in custody" by up to one year. 18 U.S.C. § 3621(e)(1)(C). Like the GTC program, Congress placed RDAP in the imprisonment subchapter. *See id.* § 3621(e).

But when Congress passed the First Step Act in 2018, it <u>did not</u> house provisions related to eligibility in the imprisonment subchapter. Instead, Congress created a <u>new</u> subchapter entitled "Risk and Needs Assessment." *See* 18 U.S.C. §§ 3631–3635 (the "credit-system subchapter"). There, Congress directed the Attorney General, not the BOP, to

"carry out" the new risk-needs assessment system in consultation with a long list of institutional stakeholders, including the Administrative Office of the U.S. Courts, the National Institute of Justice and a newly created "Independent Review Committee." *Id.* § 3631(a). In the credit-system subchapter, Congress carefully assigned tasks to the Attorney General, prescribed who the Attorney General was required to consult with, and established various implementation deadlines. *See id.* §§ 3631–3632.

The credit-system subchapter anticipated that once created, the "System" would provide incentives and rewards, including time credits. *Id.* § 3632(d)(4). It also mandated that once the "System" had provided time credits, the Director of the Bureau of Prisons would then be required to transfer the prisoner into pre-release custody of supervised release. *Id.* § 3632(d)(4)(C).

Importantly, Congress separately amended the imprisonment subchapter to list the BOP's specific FSA-implementation responsibilities, which included the roll out of the System, expansion of evidence-based recidivism reduction programs, and the provision of programming to all prisoners. *Id.* § 3621(h). It also directed that the BOP would be required

to award credits to eligible prisoners, as directed by the System. *Id.* § 3624(g).

This structure demonstrates that Congress deliberately placed substantial components of the FSA credit program—including the precursor question of eligibility—<u>outside</u> of BOP's administrative control, as defined by the imprisonment subchapter, including eligibility determinations. Despite this, the district court looked to "Congress's broad delegation to the BOP to manage prisoner's sentences, including the calculation of an inmate's term of imprisonment," to find that § 3584(c) applies to FSA eligibility decisions. JA281. But as illustrated above, Congress made no such delegation to the BOP with respect to the FSA credit program. To the contrary, it carefully placed control of significant aspects of the FSA credit program <u>outside</u> of BOP's discretion and control.

**C.  The compulsory language of the FSA distinguishes it from other credit and incentive programs, which delegate eligibility determinations for early-release to the BOP.**

The lower court opinion rests on the erroneous assumption that eligibility determinations for early release is always an administrative function of BOP. That assumption derives from cases that have affirmed aggregation in the context of prison credit and incentive programs that

are fundamentally different then the FSA. But, as the structural differences discussed *supra* illustrate, those programs vest BOP with broad administrative discretion and control, whereas the FSA does not. *See, e.g. Lopez v. Davis*, 531 U.S. 230, 242 (2001) (noting that BOP was "*the* agency empowered to administer the [RDAP] early release program" (emphasis added)). In contrast, the FSA explicitly divested BOP of control of key aspects of the incentive program—including eligibility. *See supra* at 37–39.

The differences between RDAP and the FSA credit program illustrate this point. *See* JA 252–254. Unlike the FSA, which provides that a prisoner "*shall* earn time credits," that they "*shall* be applied," and that when the time comes, the Director "*shall* transfer" individuals into prerelease custody or supervised release, 18 U.S.C. §§ 3632(d)(4)(A), (C) (emphasis added), the early-release authority of the BOP under the RDAP program is fully discretionary. The RDAP statute provides that:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a [residential substance abuse] treatment program *may* be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B) (emphasis added). In *Lopez v. Davis*, 531 U.S. at 241, the Supreme Court read this as a broad grant of authority to BOP, explaining that "Congress' use of the permissive 'may' in § 3621(e)(2)(B) contrasts with the legislators' use of a mandatory 'shall' in the very same section." "Sensibly read, the grant of discretion in § 3621(e)(2)(B) to decide whether to reduce a sentence parallels the grant of discretion in § 3621(e)(2)(A) to retain a prisoner who successfully completes drug treatment 'under such [custodial] conditions as the Bureau deems appropriate.'" *Id.* (quoting 18 U.S.C. § 3621(e)(2)(A)). "When an eligible prisoner successfully completes drug treatment, the Bureau thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment." *Id.*

Moreover, the text of BOP's RDAP ineligibility provision, 28 C.F.R. § 550.55(b)(5), is starkly different from the FSA statutory ineligibility provision, 18 U.S.C. § 3632(d)(4)(D). BOP's RDAP regulation provides, in relevant part, that "[i]nmates who have a *current felony conviction*" for certain types of offenses will, in the exercise of the Director's discretion, be categorically ineligible for early release. 28 C.F.R. § 550.55(b)(5) (em-

phasis added).[22] BOP aggregates ineligible and eligible offenses to determine an inmate's "current [felony] conviction." *Moreno v. Ives*, 842 F. App'x 18, 21 (9th Cir. 2020). People with consecutive sentences for a qualifying and disqualifying conviction are wholly ineligible for RDAP's early release provision. *See id.*

Courts who have affirmed aggregation with respect to RDAP early-release eligibility did so because "Congress delegated the authority to make [eligibility] determinations to BOP," and explicitly vested the BOP with the administration of RDAP. *Id.* at 21. For example, in *Moreno*, the court explained that:

> BOP's determination here that Mr. Moreno's 2012 conviction was "current" was based on its interpretation of its own regulation, 28 C.F.R. § 550.55(b)(5)(ii), which is an exercise of discretion allowed under 18 U.S.C. § 3621(e)(2)(B).

*Id.* Similarly, in *Wold v. Fed. Bureau of Prisons*, No. 4:18-cv-04061-VLD, 2018 WL 4906273 (D.S.D. Oct. 9, 2018), the court approved RDAP aggregation because it "flow[ed] logically and directly from Congress' mandate regarding aggregation of sentences and administration of the RDAP pro-

---

[22] *See also* 28 C.F.R. § 550.58 (2008) ("inmates whose current offense is . . .").

gram," and noted that "the BOP's exercise of its discretion has been approved by the Supreme Court in *Lopez*." *Id.* at *6 (emphasis added). The *Wold* court stressed that because the Supreme Court had recognized that Congress designated BOP to administer the RDAP early-release program, it was "clear that administering RDAP is an 'administrative purpose' as that phrase is used in § 3584(c).'" *Id.* at *8; *see also Rankin-et al v. Holinka*, No. 06-273, 2007 WL 495004, at *2 (D. Minn. Feb. 13, 2007) ("According to *Lopez*, the BOP can establish categories of prisoners who are automatically barred from receiving a sentence reduction under § 3621(e)(2)(B), even though they may meet the eligibility requirements of the statute itself.").

FSA time credits are different. FSA ineligibility (set by statute, not regulation) is based not on whether individuals "*have* a current felony conviction," 28 C.F.R. § 550.55(b)(5) (emphasis added), but on whether an individual "*is serving* a sentence for a conviction under" enumerated provisions of law, 18 U.S.C. § 3632(d)(4)(D) (emphasis added). In contrast to the RDAP program, BOP "cannot categorically make prisoners ineligible" for FSA time credits. *Sharma*, 2024 WL 4668135, at *9. "Instead, the statute [18 U.S.C. § 3632] only requires the BOP to determine that an

eligible inmate has successfully participated in and completed programming based on their [risk score] and complied with the program's requirements." *Id.*

As discussed above, unless sentences are running concurrently, a defendant is not "serving a sentence for a conviction under" one provision of law at the same time he is "serving a sentence for a conviction under" a different one. Again, § 3584(c)'s provision that multiple sentences be "treated for administrative purposes as a single, aggregate term of imprisonment" does not mean that an individual is actually *serving the sentence* for all the offenses of conviction for the entire period. Section 3584(c) cannot be read to categorically expand § 3632(d)(4)(D)'s statutory ineligibility provision to individuals who have served in the past, or will serve in the future, a sentence for a conviction for an ineligible offense. Had Congress intended that sort of expansive ineligibility, it would have said so.

Finally, the district court's assertion that Congress legislated against the backdrop of "widely used and understood definitions" arising from the interaction between the RDAP and aggregation statute misses the mark. At the time of the FSA's enactment in late 2018, there were

only a scattershot of unpublished district court decisions that allowed the BOP to disqualify people from RDAP as a result of sentence aggregation. *See, e.g.*, *Frommie v. Fed. Bureau of Prisons*, No. 4-22-cv-04082-LLP, 2022 WL 18399537, at *4 (D.S.D. Aug. 23, 2022), *report and recommendation adopted*, 2022 WL 18399536 (D.S.D. Nov. 30, 2022) (citing three unpublished district court opinions examining RDAP eligibility and sentence aggregation).[23] The district court placed heavy reliance on *Moreno v. Ives*, but the Ninth Circuit did not issue that unpublished opinion until two years <u>after</u> the FSA was signed into law. And even if this limited body of law could establish "widely used and understood definitions," JA280, it did so regarding terms—like "current felony conviction," 28 C.F.R. § 550.55(b)(5), which Congress chose not to adopt in the FSA.

The lower court—like many it relied on—erred by failing to distinguish between the FSA credit program and prior correctional programs.[24]

---

[23] Undersigned counsel has been unable to identify a single published circuit level decision district court decision analyzing this issue prior to the passage of the First Step Act of 2018.

[24] *See, e.g.*, *Huerta v. Cordova*, No. 4:23-cv-677-P, 2023 WL 8627542, at *3 (N.D. Tx. Dec. 13, 2023) (citing cases construing the RDAP statute to conclude that determining eligibility for early release eligibility is a "discretionary administrative function"); *Silva v. Warden, FCC Coleman-Low*, No. 5:22-cv-629-WFJ-PRL, 2024 WL 98212, at * 2 (M.D. Fla. Jan. 9, 2024) (citing cases relating to the provision of time credits authorized

That BOP can exercise its discretion to aggregate in connection with eligibility determinations for those discretionary programs makes no difference when it comes to the FSA.[25]

## III. If the statute is ambiguous, lenity requires the statute be construed in Mr. Bonnie's favor.

Finally, if this Court determines that the interplay between § 3584(c) and the FSA time credit eligibility statute, 18 U.S.C.

---

under programs that pre-dated the FSA); *Williams v. FCI Berlin*, No. 22-CV-564-JL, 2023 WL 5961688, at *3 (D.N.H. Aug. 1, 2023), *report and recommendation adopted,* 2023 WL 5959740 (D.N.H. Sept. 13, 2023) (same); *Frommie*, 2022 WL 18399537, at *4 (same).

[25] The sole published appellate case to address this issue, *Giovinco v. Pullen*, 118 F.4th 527 (2d Cir. 2024) also depends on cases interpreting aggregation in the context of other credit programs to affirm application of the provision to BOP's administration of the FSA time credits. In addition to RDAP, *Giovinco* cited post-FSA enactment cases discussing time-served credits and good-time credits. *Id.* at 531. Neither compel a different result. First, time-served credits are included within the same subchapter as the aggregation provision. *See* 18 U.S.C. §§ 3584–85. Second, the good-time credit program is also distinguishable from the FSA. Like the RDAP program, the administration of the good-time credit program is wholly in BOP's control. *See id.* § 3624(b)(1). As discussed *supra*, the good-time credit provision was included in the imprisonment subchapter, which Congress created to clearly identify BOP's administrative responsibilities. The authorizing statute grants BOP the discretion to grant up to 54 days a year for "exemplary compliance with institutional disciplinary regulations." *Id.* And the crediting disbursement language confirms that BOP may award credit "as the Bureau deems to be appropriate." *Id.* Like RDAP, the GTC-credit program is fundamentally different than the FSA credit program.

§ 3632(d)(4)(D), is ambiguous, then this Court should find that the rule of lenity counsels against aggregation because aggregation imposes serious, penal consequences. *See Turner v. Keyes*, No. 22-CV-321-WMC, 2022 WL 17338577, at *4 (W.D. Wis. Nov. 30, 2022) (finding that the rule of lenity "appears to favor" a defendant's interpretation of § 3632(d)(4)(D)); *see also Barber v. Thomas*, 560 U.S. 474, 488 (2010) (assuming without deciding that the good-time credit statute could be construed as imposing a criminal penalty).

Under the rule of lenity, doubts in a criminal statute are resolved in favor of the defendant. *United States v. Bass*, 404 U.S. 336, 348 (1971). While the rule of lenity is focused on criminal statutes, it also applies to their "functional equivalent[s]." *Pugin v. Garland*, 19 F.4th 437, 444 (4th Cir. 2021), *aff'd*, 599 U.S. 600 (2023); *see United States v. Vaquerano*, 81 F.4th 86, 93 n.2 (1st Cir. 2023) (affirming that the rule of lenity applies to Sentencing Guidelines). The rule of lenity is founded on the principle that "the power of punishment is vested in the legislative, not in the judicial department." *United States v. Davis*, 588 U.S. 445, 464–65 (2019). This policy of lenity means that the Court will not interpret a statute "so as to increase the penalty that it places on an individual when such an

interpretation can be based on no more than a guess as to what Congress intended." *Bifulco v. United States*, 447 U.S. 381, 387 (1980).

If this Court determines that the interplay between § 3584(c) and the § 3632(d)(4)(D) is ambiguous, this Court should find that the rule of lenity counsels against allowing § 3584(c) to impact eligibility for FSA time credits. Indeed, § 3632(d)(4)(D) qualifies as the "functional equivalent" of a criminal statute because it, like other penal statutes, sets out a specific punishment for criminal behavior by denying an otherwise mandatory incentive to those convicted of certain, carefully enumerated offenses. *See* 18 U.S.C. § 3632(d)(4)(D). Consequently, a person who is convicted of an ineligible offense certainly spends longer in prison than one who is not.

At the end of the day, if Mr. Bonnie is not allowed to earn FSA time credits he *will* spend longer in prison than if he were allowed to earn those credits. Such a serious, penal consequence cannot be based on "a guess as to what Congress intended." *Bifulco*, 447 U.S. at 387. Therefore, if the Court finds ambiguity between § 3584(c) and § 3632(d)(4)(D), this Court should find that the rule of lenity counsels against aggregation.

## CONCLUSION

Mr. Bonnie respectfully requests that this Court reverse the decision below and direct the district court to issue a writ of habeas corpus that directs BOP to classify him as eligible to earn FSA time credits.

## REQUEST FOR ORAL ARGUMENT

Mr. Bonnie respectfully requests oral argument as this appeal raises an important and novel question of law.

Respectfully submitted,

s/ John L. Warren III
John L. Warren III
Law Office of Bill Nettles
2008 Lincoln Street
Columbia, South Carolina 29201
(803)-814-2826
JW@billnettleslaw.com

Patricia Richman
Office of the Federal Public Defender
for the District of Maryland
6411 Ivy Lane
Greenbelt, MD 20770
(301) 344-0600
patricia_richman@fd.org

*Counsel for Gregory Allen Bonnie*

**Dated:** November 20, 2024

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the typeface require-ment of Fed. R. App. P. 32(a)(5) because it was prepared using Microsoft Word's proportionally spaced Century Schoolbook typeface, with 14-point font.

I also certify that the brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 10,348 words, exclusive of the cover page, table of contents, table of authorities, certificates of counsel, signature block, and certificate of service.

<u>s/ John L. Warren III</u>
John L. Warren III

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system on November 20, 2024. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ John L. Warren III
John L. Warren III
