**NO. 24-6665**

# United States Court of Appeals

*for the*

# Fourth Circuit

GREGORY ALLEN BONNIE,

*Petitioner-Appellant,*

– v. –

WARDEN DUNBAR,

*Respondent-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT FLORENCE
HONORABLE DAVID C. NORTON, U.S. DISTRICT JUDGE

## JOINT APPENDIX

KIMBERLY VARADI HAMLETT
  *Assistant U.S. Attorney*
OFFICE OF THE UNITED STATES
  ATTORNEY
151 Meeting Street, Suite 200
Charleston, South Carolina 29401
(843) 266-1673
kimberly.hamlett@usdoj.gov

*Attorney for Respondent-Appellee*

JOHN L. WARREN III
LAW OFFICE OF BILL NETTLES
2008 Lincoln Street
Columbia, South Carolina 29201
(803) 814-2826
jw@billnettleslaw.com

– and –

PATRICIA LOUISE RICHMAN
  *Assistant Federal Public Defender*
OFFICE OF THE FEDERAL PUBLIC DEFENDER
  SOUTHERN DIVISION
6411 Ivy Lane, Suite 710
Greenbelt, Maryland 20770
(301) 344-0600
patricia_richman@fd.org

*Attorneys for Petitioner-Appellant*

CP COUNSEL PRESS   (800) 4-APPEAL • (810895)

## TABLE OF CONTENTS

**Page**

Docket Sheet ............................................................................................ JA1

Judgment for No. 04-546, filed November 10, 2005 ..................................... JA7

Transcript of Proceeding, dated April 21, 2021 ........................................... JA12

Judgment for Revocation, No. 04-546, filed May 27, 2021 ........................... JA28

Judgment for No. 19-60, filed May 27, 2021 ............................................... JA30

Petition for Writ of Habeas Corpus, filed March 27, 2023 ........................... JA36

    Exhibit A:  Administrative Remedy Filings ............................................ JA47

    Exhibit B:  Administrative Remedy Filings ............................................ JA56

    Exhibit C:  Judgment for Revocation, No. 04-546,
    filed May 27, 2021 ............................................................................... JA64

    Exhibit D:  Judgment for No. 19-60, filed May 27, 2021 ......................... JA67

    Exhibit E:  Excerpt of Transcript of Proceeding, dated April 21,
       2021  ............................................................................................ JA70

Response to Petition and Motion to Dismiss or for Summary Judgment,
filed May 31, 2023 ..................................................................................... JA76

    Exhibit 1:  Declaration of J. Carter ....................................................... JA88

        Attachment A: SENTRY Sentencing Monitoring
        Computation Data ....................................................................... JA89

        Attachment B:  SENTRY Administrative Remedy
        Generalized Retrieval ................................................................. JA95

Petitioner's Reply to Respondent's Response to Petition and Motion to Dismiss, or for Summary Judgment, filed August 13, 2023 ........................... JA116

    Exhibit A:  First Step Act of 2018, P1 115-391, December 21, 2018, 132 Stat 5194 ................................................................ JA147

    Exhibit B:  FSA Recidivism Risk Assessment and Other Documents ................................................................................. JA215

Report and Recommendation, filed January 16, 2024.................................... JA222

Objections to Report and Recommendation, filed January 16, 2024 .............. JA237

Respondent's Reply to Petitioner's Objections to Report and Recommendation, filed March 12, 2024 ......................................................... JA256

Order Adopting Report and Recommendation, filed May 9, 2024 ................. JA263

Summary Judgment Order, filed May 10, 2024 ............................................. JA288

Notice of Appeal, filed July 2, 2024 .............................................................. JA289

ii

8/26/24, 11:07 PM                                           CM/ECF - scd

APPEAL,CLOSED,TER-Inmate

# U.S. District Court
## District of South Carolina (Florence)
## CIVIL DOCKET FOR CASE #: 4:23-cv-01215-DCN

Bonnie v. Dunbar
Assigned to: Honorable David C Norton
Case in other court: 4CCA, 24-06665
Cause: 28:2241 Petition for Writ of Habeas Corpus (Federal)

Date Filed: 03/27/2023
Date Terminated: 05/10/2024
Jury Demand: None
Nature of Suit: 530 Habeas Corpus (General)
Jurisdiction: Federal Question

**Petitioner**

**Gregory Allen Bonnie**
*also known as*
Gregory Allen Bonnie#21082

represented by **John LaFitte Warren , III**
Law Office of Bill Nettles
2008 Lincoln Street
Columbia, SC 29201
803-814-2826
Email: jw@billnettleslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia Louise Richman**
Federal Public Defender's Office (MD)
6411 Ivy Lane
Greenbelt, MD 20770
301-344-0600
Fax: 301-344-0019
Email: patricia_richman@fd.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**Warden Dunbar**

represented by **Barbara Murcier Bowens**
US Attorneys Office
1441 Main Street
Suite 500
Columbia, SC 29201
803-929-3000
Fax: 803-252-2759
Email: barbara.bowens@usdoj.gov
*TERMINATED: 12/15/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marshall Prince**
US Attorneys Office

JA1

CM/ECF - scd

1441 Main Street
Suite 500
Columbia, SC 29201
803-929-3000
Fax: 803-254-2943
Email: marshall.prince@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/27/2023 | 1 | PETITION for Writ of Habeas Corpus, filed by Gregory Allen Bonnie. (Attachments: # 1 Supporting Documents, # 2 Envelope)(dsto, ) (Entered: 03/30/2023) |
| 03/27/2023 | 2 | TRUE DIVISION FOR TRIAL: Florence. (dsto, ) (Entered: 03/30/2023) |
| 03/30/2023 | 4 | Case Reassigned to Honorable David C Norton. Honorable Henry M Herlong, Jr no longer assigned to the case. (bshr, ) (Entered: 03/30/2023) |
| 03/30/2023 | 5 | ***DOCUMENT MAILED 4 Case Reassigned placed in U.S. Mail from Columbia Clerks Office to Gregory Allen Bonnie #11192-171 FCI Williamsburg P.O. Box 380 Salters, SC 29590 (bshr, ) (Entered: 03/30/2023) |
| 03/31/2023 | 7 | **PROPER FORM ORDER: Case to be brought into proper form by 4/21/2023. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. Signed by Magistrate Judge Thomas E Rogers, III on 03/31/2023. (dsto, )** (Entered: 03/31/2023) |
| 03/31/2023 | 8 | ***DOCUMENT MAILED: 7 Proper Form Order w/NEF and AO240, placed in U.S. Mail from Florence Clerks Office to Gregory Allen Bonnie, #11192-171, FCI Williamsburg, PO Box 380, Salters, SC, 29590 (dsto, ) (Entered: 03/31/2023) |
| 04/03/2023 | 9 | Filing fee: $5.00, receipt number 300104172 (dsto, ) (Entered: 04/03/2023) |
| 04/11/2023 | 12 | **ORDER authorizing service of process by clerk. Directing petitioner to notify the clerk in writing of any change of address. Return and Memorandum due 5/31/2023. Signed by Magistrate Judge Thomas E Rogers, III on 04/11/2023. (Attachments: # 1 2241 Petition)(dsto, )** (Entered: 04/11/2023) |
| 04/11/2023 | 13 | ***DOCUMENT MAILED: 12 Order 2241 Federal Habeas w/NEF, placed in U.S. Mail from Florence Clerks Office to Gregory Allen Bonnie, #11192-171, FCI Williamsburg, PO Box 380, Salters, SC, 29590 (dsto, ) (Entered: 04/11/2023) |
| 04/11/2023 | 14 | ***DOCUMENT MAILED 12 Order 2241 Federal Habeas, placed in U.S. Mail from Florence Clerks Office to US Attorney General, 950 Pennsylvania Ave., NW, Room B-103, Washington, DC, 20530 (by certified by 7018-1830-0001-8538-6744) (dsto) (Entered: 04/11/2023) |
| 04/21/2023 | 15 | CERTIFIED MAIL RECEIPT re 12 Order 2241 Federal Habeas, served on US Attorney General on April 18, 2023. (dsto, ) (Entered: 04/21/2023) |
| 05/15/2023 | 16 | NOTICE of Appearance by Barbara Murcier Bowens on behalf of Warden Dunbar (Bowens, Barbara) (Entered: 05/15/2023) |
| 05/19/2023 | 17 | MOTION to Appoint Counsel by Gregory Allen Bonnie. Response to Motion due by 6/2/2023. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Envelope)No proposed order.Motions referred to Thomas E Rogers, III.(dsto, ) (Additional attachment(s) added on 6/6/2023: # 2 |

JA2

| | | |
|---|---|---|
| | | Financial Statement, # 3 Envelope) (dsto, ). (Additional attachment(s) added on 6/13/2023: # 4 Financial Affidavit, # 5 Envelope) (dsto, ). (Entered: 05/19/2023) |
| 05/30/2023 | 18 | **TEXT ORDER: Petitioner shall file a financial statement from the BOP within 14 days of the date of this Order. The Clerk is directed to docket the statement as a supplement to the pending Motion to Appoint Counsel. Response due June 14, 2023. Signed by Magistrate Judge Thomas E Rogers, III on 05/30/2023. (dsto, )** (Entered: 05/30/2023) |
| 05/30/2023 | 19 | ***DOCUMENT MAILED: 18 TEXT Order, placed in U.S. Mail from Florence Clerks Office to Gregory Allen Bonnie, #11192-171, FCI Williamsburg, PO Box 380, Salters, SC, 29590 (dsto, ) (Entered: 05/30/2023) |
| 05/31/2023 | 20 | MOTION to Dismiss *or*, MOTION for Summary Judgment ( Response to Motion due by 6/14/2023. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. ) by Warden Dunbar. (Attachments: # 1 Exhibit 1, Declaration of J. Carter)No proposed order.Motions referred to Thomas E Rogers, III. (Bowens, Barbara) (Entered: 05/31/2023) |
| 05/31/2023 | 21 | **TEXT ORDER: The Respondent has filed a Motion to Dismiss or in the alternative Motion for Summary Judgment in this action (ECF # 20 ). Petitioner has previously filed a Motion for Appointment of Counsel and the court is awaiting Petitioner's financial information in order to rule on Petitioner's pending motion. Petitioner's response to Respondent's Motion to Dismiss is extended until 15 days after the court files its order granting or denying Petitioner's Motion to Appoint Counsel (ECF # 17 ). Signed by Magistrate Judge Thomas E Rogers, III on 05/31/2023. (dsto, )** (Entered: 05/31/2023) |
| 05/31/2023 | 22 | ***DOCUMENT MAILED: 21 TEXT Order, placed in U.S. Mail from Florence Clerks Office to Gregory Allen Bonnie, #11192-171, FCI Williamsburg, PO Box 380, Salters, SC, 29590 (dsto, ) (Entered: 05/31/2023) |
| 06/01/2023 | 24 | RESPONSE in Opposition re 17 MOTION to Appoint Counsel Response filed by Warden Dunbar.Reply to Response to Motion due by 6/8/2023 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Bowens, Barbara) (Entered: 06/01/2023) |
| 06/13/2023 | 26 | MOTION for Extension of Time to File Response to 20 MOTION to Dismiss *or* MOTION for Summary Judgment, by Gregory Allen Bonnie. Response to Motion due by 6/27/2023. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Envelope)No proposed order.Motions referred to Thomas E Rogers, III.(dsto, ) (Entered: 06/13/2023) |
| 06/13/2023 | 27 | **TEXT ORDER: Your motion for Extension of Time (ECF # 26 ) is deemed moot as the court's Order of May 31, 2023, extended the time to respond to the Motion to Dismiss/Summary Judgment "until 15 days after the court files its order granting or denying Petitioner's Motion to Appoint Counsel." (ECF No. 21). Signed by Magistrate Judge Thomas E Rogers, III on 06/13/2023.(dsto, )** (Entered: 06/13/2023) |
| 06/13/2023 | 28 | ***DOCUMENT MAILED: 27 TEXT Order on Motion for Extension of Time to File Response, placed in U.S. Mail from Florence Clerks Office to Gregory Allen Bonnie, #11192-171, FCI Williamsburg, PO Box 380, Salters, SC, 29590 (dsto, ) (Entered: 06/13/2023) |
| 06/28/2023 | 30 | NOTICE of Appearance by John LaFitte Warren, III on behalf of Gregory Allen Bonnie (Warren, John) (Entered: 06/28/2023) |

JA3

CM/ECF - scd

| 06/29/2023 | 31 | MOTION for Extension of Time to File Response/Reply as to 20 MOTION to Dismiss *or* MOTION for Summary Judgment by Gregory Allen Bonnie. Response to Motion due by 7/13/2023. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.Motions referred to Thomas E Rogers, III.(Warren, John) (Entered: 06/29/2023) |
|---|---|---|
| 06/29/2023 | 32 | NOTICE of Request for Protection from Court Appearance by John LaFitte Warren, III for August 3, 4, 7, and 21-25, 2023 (Warren, John) (Entered: 06/29/2023) |
| 06/29/2023 | 33 | **TEXT ORDER finding as moot 17 Motion to Appoint Counsel; granting 31 Motion for Extension of Time to File Response to 20 MOTION to Dismiss *or* MOTION for Summary Judgment. The response is now due August 14, 2023. Signed by Magistrate Judge Thomas E Rogers, III on 06/29/2023.(dsto, )** (Entered: 06/29/2023) |
| 07/13/2023 | 34 | MOTION to Appear Pro Hac Vice by Patricia Richman by Gregory Allen Bonnie. Response to Motion due by 7/27/2023. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit Application and Affidavit for Pro Hac Vice Admission, # 2 Exhibit Certificate of Good Standing)Proposed order is being emailed to chambers with copy to opposing counsel.Motions referred to Thomas E Rogers, III.(Warren, John) (Entered: 07/13/2023) |
| 07/13/2023 | 35 | Consent MOTION Waiver of Pro Hac Vice Fee re 34 MOTION to Appear Pro Hac Vice by Patricia Richman by Gregory Allen Bonnie. Response to Motion due by 7/27/2023. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. Proposed order is being emailed to chambers with copy to opposing counsel.Motions referred to Thomas E Rogers, III.(Warren, John) (Entered: 07/13/2023) |
| 07/21/2023 | 36 | **TEXT ORDER: A motion and Application/Affidavit for Admission Pro Hac Vice, (ECF No. 34 ) has been filed in this case. The motion to appear Pro Hac Vice is granted and it is hereby ordered that Applicant Patricia L. Richman be granted admission pro hac vice in this case. Signed by Magistrate Judge Thomas E Rogers, III on 07/21/2023.(dsto, )** (Entered: 07/21/2023) |
| 07/21/2023 | 37 | **TEXT ORDER finding as moot 35 Motion Waiver of Pro Hac Vice Fee. Signed by Magistrate Judge Thomas E Rogers, III on 07/21/2023.(dsto, )** (Entered: 07/21/2023) |
| 08/13/2023 | 39 | RESPONSE in Opposition re 20 MOTION to Dismiss *or* MOTION for Summary Judgment *and Reply to Respondent's Response to Petition for Writ of Habeas Corpus [ECF No. 1]* Response filed by Gregory Allen Bonnie.Reply to Response to Motion due by 8/21/2023 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Attachments: # 1 Exhibit First Step Act, Pub. L. No. 115-391, # 2 Exhibit Gregory Allen Bonnie - FSA Risk Assessment Score Sheet)(Warren, John) (Entered: 08/13/2023) |
| 08/21/2023 | 40 | MOTION for Extension of Time to File Response/Reply by Warden Dunbar. Response to Motion due by 9/5/2023. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.Motions referred to Thomas E Rogers, III.(Bowens, Barbara) (Entered: 08/21/2023) |
| 08/21/2023 | 41 | **TEXT ORDER granting 40 Motion for Extension of Time to File Reply to Response without opposition to 20 MOTION to Dismiss *or* MOTION for Summary Judgment . Reply is now due August 28, 2023. Signed by Magistrate Judge Thomas E Rogers, III on 08/21/2023.(dsto, )** (Entered: 08/21/2023) |
| 08/28/2023 | 43 | REPLY to Response to Motion re 20 MOTION to Dismiss *or* MOTION for Summary Judgment Response filed by Warden Dunbar. (Bowens, Barbara) (Entered: 08/28/2023) |

JA4

| | | |
|---|---|---|
| 12/05/2023 | 44 | NOTICE of Request for Protection from Court Appearance by John LaFitte Warren, III for January 8, 2024 (After 12 PM); January 10, 2024 (Before 2 PM); January 16, 2024 (After 12 PM); January 18-19, 2024; January 22-February 5, 2024; February 12, 2024; February 28-March 1, 2024; June 27, 2024; October 10, 2024 (Warren, John) (Entered: 12/05/2023) |
| 12/14/2023 | 45 | NOTICE of Appearance by Marshall Prince on behalf of Warden Dunbar (Prince, Marshall) (Entered: 12/14/2023) |
| 12/14/2023 | 46 | MOTION to Substitute Attorney by Warden Dunbar. Response to Motion due by 12/28/2023. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.Motions referred to Thomas E Rogers, III.(Prince, Marshall) (Entered: 12/14/2023) |
| 12/15/2023 | 47 | **TEXT ORDER granting 46 Motion to Substitute Attorney. Signed by Magistrate Judge Thomas E Rogers, III on 12/15/2023.(dsto, ) (Entered: 12/15/2023)** |
| 01/16/2024 | 50 | **REPORT AND RECOMMENDATION recommending that Respondent's motion for summary judgment (ECF No. 20 ) be GRANTED and this claim dismissed. Objections to R&R due by 1/30/2024. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. Signed by Magistrate Judge Thomas E Rogers, III on 01/16/2024. (Attachments: # 1 Notice of Right to File Objections)(dsto, ) (Entered: 01/16/2024)** |
| 01/17/2024 | 51 | Consent MOTION for Extension of Time *to File Objections to the Report and Recommendation* by Gregory Allen Bonnie. Response to Motion due by 1/31/2024. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Warren, John) (Main Document 51 replaced on 1/17/2024 to correct case number). (dsto, ) (Entered: 01/17/2024) |
| 01/18/2024 | 52 | **ORDER granting 51 Motion for Extension of Time. Objections to the Report and Recommendation are due 2/13/2024. Signed by Honorable David C Norton on 1/18/2024.(eric, ) (Entered: 01/18/2024)** |
| 02/13/2024 | 54 | OBJECTION to 50 Report and Recommendation by Gregory Allen Bonnie. Reply to Objections due by 2/27/2024 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Warren, John) (Entered: 02/13/2024) |
| 02/23/2024 | 55 | MOTION for Extension of Time to File Response/Reply as to 54 Objection to Report and Recommendation by Warden Dunbar. Response to Motion due by 3/8/2024. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Prince, Marshall) (Entered: 02/23/2024) |
| 02/26/2024 | 56 | **ORDER granting 55 MOTION for Extension of Time to File Response/Reply as to 54 Objection to Report and Recommendation , 50 REPORT AND RECOMMENDATION re 20 MOTION to Dismiss *or* MOTION for Summary Judgment filed by Warden Dunbar. Replies due by 3/12/2024. Signed by Honorable David C Norton on 2/26/2024.(eric, ) (Entered: 02/26/2024)** |
| 03/12/2024 | 58 | REPLY by Warden Dunbar to 54 Objection to Report and Recommendation. (Prince, Marshall) Modified on 3/13/2024 to correct event code.(dsto, ) (Entered: 03/13/2024) |
| 03/19/2024 | 59 | NOTICE of Hearing on Motion 50 REPORT AND RECOMMENDATION and 54 Objections: Hearing set for 4/9/2024 11:00 AM in Hon. Sol Blatt, Jr., Courtroom, J. Waties Waring Judicial Cntr, 83 Meeting St, Charleston before Honorable David C Norton. (hcor, ) (Entered: 03/19/2024) |
| 03/21/2024 | 60 | NOTICE OF RESCHEDULED HEARING Hearing set for 4/9/2024 11:00 AM cancelled and rescheduled to: Motion 50 REPORT AND RECOMMENDATION and 54 Objections |

JA5

|  |  |  |
|---|---|---|
|  |  | Hearing set for 4/24/2024 11:00 AM in Hon. Sol Blatt, Jr., Courtroom, J. Waties Waring Judicial Cntr, 83 Meeting St, Charleston before Honorable David C Norton. (hcor, ) (Entered: 03/21/2024) |
| 03/21/2024 | 61 | NOTICE of Request for Protection from Court Appearance by John LaFitte Warren, III for May 29, 2024 - June 3, 2024; June 21, 2024; June 27, 2024 (Warren, John) (Entered: 03/21/2024) |
| 03/25/2024 | 62 | **TEXT ORDER granting protection from court appearances to John LaFitte Warren III for 5/29-6/3/2024, 6/21/2024, and 6/27/2024. Signed by Honorable David C Norton on 3/25/2024. (eric, )** (Entered: 03/25/2024) |
| 04/22/2024 | 64 | NOTICE of Cancellation of Hearing: Hearing set for 4/24/2024 11:00 AM (hcor, ) (Entered: 04/22/2024) |
| 05/09/2024 | 65 | **ORDER adopting 50 Report and Recommendation; granting 20 Motion for Summary Judgment. Signed by Honorable David C Norton on May 9, 2024. (juwh,)** (Entered: 05/09/2024) |
| 05/10/2024 | 66 | SUMMARY JUDGMENT is entered as to respondent Warden Dunbar and this petition is dismissed. (dsto, ) (Entered: 05/10/2024) |
| 07/02/2024 | 67 | NOTICE OF APPEAL as to 66 Summary Judgment, 65 Order on Report and Recommendation, Order on Motion for Summary Judgment by Gregory Allen Bonnie. - The Docketing Statement form, Transcript Order form and CJA 24 form may be obtained from the Fourth Circuit website at www.ca4.uscourts.gov (Warren, John) (Entered: 07/02/2024) |
| 07/09/2024 | 68 | Transmittal Sheet for Notice of Appeal to USCA re 67 Notice of Appeal, The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (dsto, ) (Entered: 07/09/2024) |
| 07/26/2024 | 70 | ASSEMBLED INITIAL ELECTRONIC RECORD TRANSMITTED TO FOURTH CIRCUIT COURT OF APPEALS re 67 Notice of Appeal, Electronic record successfully transmitted. (dsto, ) (Entered: 07/26/2024) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/26/2024 23:07:29 | | |
| **PACER Login:** | JohnLWarren | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 4:23-cv-01215-DCN |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |
| **Exempt flag:** | Exempt | **Exempt reason:** | Exempt CJA |

JA6

DAO 245B (SCD Rev. 12/03) Sheet 1 - Judgment in a Criminal Case

# United States District Court
## District of South Carolina

RECEIVED
USDC CLERK, CHARLESTON, SC

2005 NOV 10  A 10 55

UNITED STATES OF AMERICA

vs.

GREGORY ALLEN BONNIE

**JUDGMENT IN A CRIMINAL CASE**
(For Offenses Committed On or After November 1, 1987)

Case Number: 2:04-546 (1)

US Marshal's Number: 11192-171

DAVID BORNHORST
Defendant's Attorney

**THE DEFENDANT:**

■  pleaded guilty to counts 1 AND 6 OF THE SUPERSEDING INDICTMENT on OCTOBER 12, 2004
☐  pleaded nolo contendere to count(s) on which was accepted by the court.
☐  was found guilty on count(s) on after a plea of not guilty.

Accordingly, the court has adjudicated that the defendant is guilty of the following offense(s):

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 21:841(a)(1),(b)(1)(B),(b)(1)(C), 846 and 851 | Please see indictment | 03/25/04 | 1 |
| 18:924(c)(1)(A)(i) | Please see indictment | 03/25/04 | 6 |

The defendant is sentenced as provided in pages 2 through 5 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.
☐  The defendant has been found not guilty on count(s)
■  Counts 2-5 of the Superseding Indictment and the Original Indictment are dismissed on the motion of the United States.
☐  Forfeiture provision is hereby dismissed on motion of the United States Attorney.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant shall notify the court or United States attorney of any material change in the defendant's economic circumstances.

OCTOBER 21, 2005
Date of Imposition of Judgment

Signature of Judicial Officer

P. MICHAEL DUFFY, US DISTRICT JUDGE
Name and Title of Judicial Officer

Nov 10, 2005
Date

45B (SCD Rev. 12/03) Judgment in a Criminal Case

Sheet 2 - Imprisonment

JA7

DEFENDANT: <u>GREGORY ALLEN BONNIE</u>
CASE NUMBER: <u>2:04-546</u> (1)

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of <u>ONE HUNDRED EIGHTY (180) MONTHS. Pursuant to U.S.S.G. § 5G1.2(e), said term shall consist of ONE HUNDRED TWENTY (120) MONTHS as to Count 1 and SIXTY (60) MONTHS as to Count 6, said terms to run consecutively. The defendant shall pay a special assessment fee of $200.00, due beginning immediately.</u>

■ The court makes the following recommendations to the Bureau of Prisons: That the defendant be designated to a Federal Correctional Institution close to Louisville, Kentucky and that he be enrolled in the 500 Hour Drug Treatment Program, if available. The Court also recommends that he enroll in a vocational program.

■ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:
   ☐ at a.m./p.m. on.
   ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:
   ☐ before 2 p.m. on
   ☐ as notified by the United States Marshal.
   ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this Judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____, with a certified copy of this Judgment.

_____
UNITED STATES MARSHAL

By _____
Deputy United States Marshal

JA8

AO 245B (SCD Rev. 12/03) Judgment in a Criminal Case
   Sheet 3 - Supervised Release

DEFENDANT: GREGORY ALLEN BONNIE
CASE NUMBER: 2:04-546 (1)

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of EIGHT (8) YEARS. Said term to consist of EIGHT (8) YEARS as to Count 1 and FIVE (5) YEARS as to Count 6, said terms to run concurrently. Upon release from imprisonment, the defendant shall comply with the mandatory and standard conditions and the following special conditions: 1. The defendant shall participate in a program of testing and treatment for substance abuse as directed by the US Probation Officer, until such time he is released from the program by the US Probation Officer.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter.

☐ The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☑ The defendant shall not possess a firearm, destructive device, or any other dangerous weapon.

☑ The defendant shall cooperate in the collection of DNA as directed by the Probation Office.

☐ The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the Probation Office. (Check, if applicable)

☐ The defendant shall participate in an approved rehabilitation program for domestic violence. (Check, if applicable)

       If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

       The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). The defendant shall also comply with the additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to controlled substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

JA9

USCA4 Appeal: 24-6665    Doc: 26    Filed: 11/20/2024    Pg: 13 of 292

AO 245B (SCD Rev. 12/03) Judgment in a Criminal Case
Sheet 4 - Criminal Monetary Penalties

DEFENDANT: GREGORY ALLEN BONNIE
CASE NUMBER: 2:04-546 (1)

## CRIMINAL MONETARY PENALTIES

> The defendant will make all checks and money orders
> payable to the "**Clerk, U.S. District Court**" unless otherwise directed by the court.

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **Totals:** | $  200.00 |  |  |

☐ The determination of restitution is deferred until  An *Amended Judgment in a Criminal Case* will be entered after such determination.

☐ The defendant shall make restitution (including community restitution) to the following payees in the amount listed on the next page.

> If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment unless specified in the priority order or percentage payment column on the next page.  However, pursuant to 18 U.S.C. § 3664(8), all nonfederal victims must be paid in full prior to the United States receiving payment.

**SEE VICTIM(S) LIST ON THE NEXT PAGE**

☐ If applicable, restitution amount ordered pursuant to plea agreement . . . . . . . . . . . . . . . . **$**

☐ The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. §3612(f).  All of the payment options on Sheet 5, Part B, may be subject to penalties for default and delinquency pursuant to 18 U.S.C. §3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐    The interest requirement is waived for the ☐ fine and/or ☐ restitution.

☐    The interest requirement for the ☐ fine and/or ☐ restitution is modified as follows:

\*\*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

JA10

AO 245B    (SCD Rev. 12/03) Judgment in a Criminal Case
          Sheet 5- Criminal Monetary Penalties

DEFENDANT: GREGORY ALLEN BONNIE
CASE NUMBER: 2:04-546 (1)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

A  ■  Lump sum payment of $ 200.00 due immediately

    ☐ not later than , or

    ☐ in accordance with  ☐ C,  ☐ D, or  ☐ E below; or

B  ☐  Payments to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ E below); or

C  ☐  Payments in (e.g., equal, weekly, monthly, quarterly)  installments of $ over a period of (e.g., months or years), to commence after the date of this judgment; or

D  ☐  Payments in (e.g., equal, weekly, monthly, quarterly)  installments of $ over a period of (e.g., months or years), to commence (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E  ☐  Payment during the term of supervised release will commence within (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of court, unless otherwise directed by the court.

The Defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

    Defendant and Co-Defendant names and case numbers (including defendant number), total amount, joint and several amount, and corresponding payee, if applicable.

☐ The defendant shall pay the cost of prosecution.
☐ The defendant shall pay the following court cost(s):
☐ The defendant shall forfeit the defendant's interest in property as directed in the Preliminary Order of Forfeiture, filed _____ and the said order is incorporated herein as part of this judgment:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest, (7) penalties, and (8) costs, including cost of prosecution and court costs.

JA11

```
                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF SOUTH CAROLINA

* * * * * * * * * * * * * * * *
UNITED STATES OF AMERICA       *
                               *    Case No. 2:19-CR-60
vs.                            *              2:04-CR-546
                               *
GREGORY ALLEN BONNIE           *    April 21, 2021
* * * * * * * * * * * * * * * *

             REPORTER'S OFFICIAL TRANSCRIPT OF THE
                   SENTENCING HELD BEFORE
                THE HONORABLE DAVID N. NORTON
                 UNITED STATES DISTRICT JUDGE
                       APRIL 21, 2021

                       APPEARANCES:

FOR THE GOVERNMENT:

     Jamie Lea Nabors Schoen
     US Attorney's Office
     151 Meeting Street
     Suite 200
     Charleston, SC  29401
     843.727.4381

FOR THE DEFENDANT:

     Alicia Vachira Penn
     Federal Public Defender's Office (Chas)
     PO Box 876
     Charleston, SC  29402
     843.727.4148



Official Court Reporter:      Tana J. Hess, CRR, FCRR, RMR
                              U.S. District Court Reporter
                              Middle District of Florida
                              Tampa Division
                              801 N. Florida Avenue
                              2nd Floor
                              Tampa, FL  33602
                              813.301.5207
                              tana_hess@flmd.uscourts.gov

Proceedings recorded by mechanical stenography using
computer-aided transcription software.
```

Tana J. Hess, CRR, RMR, FCRR
U.S. District Court Reporter
District of South Carolina

JA12

(Call to order of the Court.),

THE COURT:  All right.  Start off by apologizing to everybody.  Somebody asked me to go to lunch at a restaurant for the first time in a year, and I couldn't turn it down, and the service is not near as good as it used to be.  So I'm sorry to keep y'all waiting.

All right.  We're here on sentencing on case number 19-60 and supervised release violation in 04-546.  Mr. Bonnie is here from the Dorchester County Jail on video.  Ms. Schoen is here by video.  Ms. Penn is here by video.  Probation officer Kelli Frye is here by video, and Todd Propes is here by telephone.

All right.  Ms. Penn, have you consulted with Mr. Bonnie his right to have a later in-person sentencing if he wanted one?

MS. PENN:  Yes, Your Honor, I have.

THE COURT:  And have you explained the reason we're doing this by video today is because of the COVID-19 emergency proceedings?

MS. PENN:  Yes.

THE COURT:  Having advised Mr. Bonnie of his right to have a later in-person sentencing or proceed by video at this time, it's my understanding that he wishes to go forward here today by video?

MS. PENN:  That's correct, Your Honor.

Tana J. Hess, CRR, RMR, FCRR
U.S. District Court Reporter
District of South Carolina

JA13

THE COURT: Go ahead and swear Mr. Bonnie for me, please.

COURTROOM DEPUTY: Yes. Mr. Bonnie, please raise your right hand and be sworn.

(Defendant sworn.)

THE COURT: Okay. All right. Mr. Bonnie, you're obviously aware we're doing your sentencing by video here today, but I want to make sure that you're aware that if you wanted to wait, we could have a later sentencing in court live if you wanted one.

THE DEFENDANT: Yes, sir.

THE COURT: And you're aware the reason we're doing this by video is because of the health risks associated with the COVID-19 virus?

THE DEFENDANT: Yes, sir.

THE COURT: And you've asked -- you've consulted with Ms. Penn and received her advice about whether to go forward here today?

THE DEFENDANT: Yes, sir.

THE COURT: You understand this is going to be your only sentencing hearing with regard to your supervised release and your current charges?

THE DEFENDANT: Yes, sir.

THE COURT: Do you consent to having these sentencings here by video today?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  I find that Mr. Bonnie has been advised by his client -- or by his lawyer about his right to have a later in-person proceeding, that he has consented to go forward here today by video.

All right.  Let's see.  We'll go forward with 19-60 at this time which is the -- it's the -- Mr. Bonnie pled guilty to Counts 1 and 10 back on December 18th of 2019, pursuant to a written plea agreement.  I accepted his plea at that time.  I then asked probation office to prepare a presentence report, which has been prepared and submitted to both counsel for the Government and the Defendant.  It's my understanding everybody has had plenty of time to go over the presentence report, and there are no objections to it; is that correct?

MS. SCHOEN:  That's correct from the Government.

MS. PENN:  No objections from the defense, Your Honor.

THE COURT:  Okay.  Mr. Bonnie, did you have plenty of time go over your presentence report on this current charge with your lawyer?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  All right.  Inasmuch as all parties have had access to the report and there are no objections to it, I'll ask the clerk to file it under seal.  In

the event of an appeal, the clerk will make it available to counsel for appellate purposes.

Additionally, the probation office made a recommendation which will remain under seal until further order of the Court.

In view of the fact that there are no objections to the factual statements contained in the presentence report, I'll adopt those statements as the findings of fact for the purposes of sentencing.

Having done so, it looks like the guidelines are offense level 27, criminal history category III, which is 87 to 108 months imprisonment, but since there's a mandatory minimum of 10 years, the guideline range becomes 120 months.  Count 1, five years supervised release.  Count 10, four to five years supervised release, and a $200 special assessment.

Does anyone have any objection to the facts or the guidelines in 19-60?

MS. PENN:  None from the defense, Your Honor.

MS. SCHOEN:  None from the Government either.

THE COURT:  All right.  Now, as far as the supervised release, which is case number 04-546, a supervised release violation report has been prepared and submitted to both counsel for Government and the Defendant.  I understand that everybody has had plenty of time to go over the supervised release violation report, and there are no objections to it; is

Tana J. Hess, CRR, RMR, FCRR
U.S. District Court Reporter
District of South Carolina

JA16

that correct?

MS. PENN:  None from the defense, Your Honor.

MS. SCHOEN:  None from the Government.

THE COURT:  Okay.  Mr. Bonnie, did you have plenty of time to go over your supervised release violation report also?

THE DEFENDANT:  Yes, sir.

THE COURT:  Inasmuch as all parties have had access to the report and there are no objections to it, I'll ask the clerk to file it under seal.  In the event of an appeal, the clerk will make it available to counsel for appellate purposes.

Additionally, the probation office made a recommendation on 04-546, which will remain under seal until further order of the Court.

In view of the fact there are no objections -- these are admitted violations, right, Ms. Penn?

MS. PENN:  They are, Your Honor.

THE COURT:  In view of the fact that these are admitted violations, I'll adopt the supervised release violation report as the findings of fact for the purposes of sentencing.

Having done so, it looks like it's a Grade A violation, criminal history category VI, which is 51 to 63 months imprisonment, a revocation and reimposition of supervised release, and the policy statements listed to be ordered to serve consecutively to the sentence that he's going

Tana J. Hess, CRR, RMR, FCRR
U.S. District Court Reporter
District of South Carolina

JA17

to serve.

Does anyone have any objections to the facts or the guidelines for the supervised release violation report, which is 04-546?

**MS. PENN:**  The defense does not, Your Honor.

**MS. SCHOEN:**  No, Your Honor.

**THE COURT:**  Okay.  Does the Government have any position with regard to the sentences?

**MS. SCHOEN:**  Your Honor, the Government requests a guideline sentence in this case.  120 months is the mandatory minimum.

As a housekeeping matter, the Government moves to dismiss the 851 sentencing enhancement pursuant to paragraph 8 in the plea agreement.  That makes 120 months the mandatory minimum instead of the 180 months.

The dismissal is based on the assistance that Mr. Bonnie provided that is very early on; actually prior to the Indictment, cooperated with the Government.  His statements, corroborated by other evidence, were used in the grand jury and in search warrants and provided in discovery, and had this case proceeded to trial, Mr. Bonnie would have testified in -- pursuant to those statements.  And so based on that, the Government is dismissing the sentencing enhancement.

The 120-month sentence is appropriate given the Defendant's substantial criminal history, that he committed

Tana J. Hess, CRR, RMR, FCRR
U.S. District Court Reporter
District of South Carolina

this serious offense while on supervised release, and the serious nature of a methamphetamine and heroin drug trafficking ring.

THE COURT:  Okay.  All right.  Ms. Penn, I'd be glad to hear from you and Mr. Bonnie if he wants to say anything. I've received and read your sentencing memorandum, but anything you want to add and anything Mr. Bonnie wants to say, I'd be glad to hear from him.

MS. PENN:  Thank you, Your Honor.  I'd just like to reiterate that Mr. Bonnie has already been punished extraordinarily.  I mean, of course, not just that while he has been incarcerated awaiting the disposition of his case that he has had the horrible experience of taking his mother off of life support from a phone in Dorchester County detention.  And in addition to this, his brother also died unexpectedly six months after he was arrested.

But what makes all of this worse in many ways is that Mr. Bonnie had a period of time where he was successful, where he had a job, where he had a girlfriend who loved him, and his job was a good one.  He was making plenty of money. His boss was thrilled with him, and he was on a real path to a salaried position with benefits and with all of the things that any of us could want in life.

And what -- although his decisions were his own, and he does not shirk responsibility for them, there's no doubt

that his susceptibility to drug addiction, his exposure to drugs from a young age, his watching his mother be essentially a functioning drug addict and dealer, once he started to slip and once his carpal tunnel started acting up and he saw his earnings going away and he started panicking about money, about his physical fragility, that he turned to drugs, and that's what got him here.

So Mr. Bonnie is -- has a lot of great qualities, and it's hard not to look at him and look at his life and look at all the ways this could have gone differently, and nobody understands that better than him; that this could have been a success story. He could have come out of prison and never looked back, and instead, the fact that he is here and he is essentially committed to a 10-year sentence in his own mind is great punishment indeed.

So, Your Honor, what we would ask -- what we are asking the Court for is a sentence of 10 years. This is a significant sentence. It's a decade. It is the mandatory minimum, and one of the ways we would like the Court to get there is to acknowledge that his guideline range without the mandatory minimum is 87 to 108 months, and to get to the 10 years, we ask that his sentence be run concurrently with his supervised release violation sentence because they're based on the same conduct. It's drugs and then his actual underlying charge.

I think this sentence takes this into account, and it also acknowledges that Mr. Bonnie has accepted this fate, that he is ready to move past it.  He wants to get it behind him, and that there is potential for his future; that we are not throwing away the key, that after 10 years he will be released, and I really do believe that he will thrive if given appropriate training and treatment.  I think he would have crushed Bridge Court, had he been accepted into it.  All the things that Bridge Court does, Mr. Bonnie would benefit from and would do very well in, and any potential programs that are available when he is released, such as REAL Court or Turning Leaf or any of those programs I believe he would thrive in, and those would help him become the citizen that he can be.

Your Honor, that's all I have to say.  I would ask Mr. Bonnie to speak at this point, if he wishes to.

THE COURT:  Okay.  Mr. Bonnie, you have a right to saying anything you'd like with regard to your sentence.  If you'd like to say anything, I'd be glad to hear from you.  If you don't want to say anything, you don't have to.

THE DEFENDANT:  Yes, sir.  I'd like to say that I'm ashamed, and I spent 15 years turning myself from a young punk to a respectable man and a father, and to fail, it's embarrassing.

And, you know, I had everything -- my son, my home, my career -- and I lost the use of my hands, and I

couldn't brush my teeth, couldn't pull up my pants, and physically I was hurt, but mentally I was struggling.

At the same time, I went through (audio fades). My mother was placed on a ventilator. I lost my job because of my hands, and I spun out of control. I mean, these are not excuses because I know as a man, there is no excuse, but these are obstacles in my life that I didn't overcome. And since then, I lost my mom, my brother, my uncle, my father figure. I never got to say goodbye or I love you. Took my mom off life support from jail, and I should have been there holding her hand. That's something I have to live with for the rest of my life.

And now I've seen three people pass from the COVID, and it's scary. It's scary not knowing if I'll ever hug my son again, if I'll ever pet a dog, walk to a refrigerator, or will I die alone in prison. It's scary.

And right now I'd like to apologize to Charleston as whole, and just please know that I'm better than this. That's it.

THE COURT: Okay. Thank you. All right. Anything else, Ms. Penn?

MS. PENN: No, Your Honor.

THE COURT: Okay. I'll go ahead and -- where does he want to serve his sentence, Ms. Penn? Have you talked about that?

MS. PENN:  We have, Your Honor.  He requests either Jesup or Butner.

THE COURT:  All right.  I'll recommend that. Anything else he wants me to recommend while he's in serving his sentence?

MS. PENN:  Just whatever programs, especially geared toward drug addiction, that he might be eligible for.

THE COURT:  The 500-hour RDAP program, assuming he's still --

MS. PENN:  Yes, please.

THE COURT:  Okay.  I'll recommend that, too.  Okay.

Did you want to say anything about the supervised release or -- I know that's covered in your sentencing memorandum, but I didn't know whether you wanted to add anything on that or not.

MS. PENN:  No.

THE COURT:  Okay.  All right.  Ms. Schoen, anything else?

MS. SCHOEN:  Your Honor, we would just ask that the preliminary order of forfeiture for $33,509 be incorporated into the JNC.

THE COURT:  Okay.  All right.  Okay.  Now as far as the sentence in 19-60, which Congress passed rather than I passed, having calculated and considered the Advisory Sentencing Guidelines and the relevant statutory factors of 18

Tana J. Hess, CRR, RMR, FCRR
U.S. District Court Reporter
District of South Carolina

JA23

United States Code 3553(a), it's the judgment of the Court the Defendant, Gregory Allen Bonnie, is hereby committed to the custody of the Bureau of Prisons for a term of 120 months, which is 120 months as to Counts 1 and 10 concurrent. No fine. $200 special assessment. Upon release, five years supervised release, which is five years as to Counts 1 and 10 to run concurrent.

While on supervised release, the mandatory standard conditions; the following special conditions: Shall participate in a mental health program and follow the rules and regulations of their program. Probation officer, in consultation with the treatment provider, will supervise his participation in the program, like the provider, location, modality, duration, or intensity. I don't know whether it's included under that, but I would recommend that he be considered for the Bridge or REAL Court program or whatever is available to those who are just getting out of prison.

Mr. Bonnie, according to the sentencing memorandum, flourishes in a structured environment. It's when he doesn't have a structured environment is when he goes off the rails. I think all the courses he's done over the years while he's in prison are remarkable, so he needs a structured environment. He's going to have a structured environment while he's in jail. He needs a structured environment to transition back to society.

Tana J. Hess, CRR, RMR, FCRR
U.S. District Court Reporter
District of South Carolina

JA24

He should submit to substance abuse testing and treatment to determine if he's used prohibited substance based on his substance abuse history. The mental health is based on his prior mental health treatment needs. Should not use or possess any controlled substances without a valid prescription. If you do have a valid prescription, you just disclose the prescription information to the probation office and follow the instructions on the prescription, justified by his extensive prescription drug and substance abuse history. Must contribute to the cost of any such treatment and testing programs not to exceed an amount deemed reasonable by the Court-approved United States Probation Officer's Sliding Scale for Services, and he shall cooperate in securing any third-party payments, such as insurance or Medicaid. This is justified in an effort to help offset the government testing and treatment expenses as well as increase Mr. Bonnie's investment in his treatment and other services.

Does anyone have any objection to the sentence in 19-60?

MS. PENN: The defense does not.

MS. SCHOEN: Nothing from the Government.

THE COURT: Okay. Now, as far as the supervised release sentence in 04-546, the previously imposed term of supervised release is hereby revoked. Pursuant to the Sentencing Reform Act of 1984 and considering the applicable

Tana J. Hess, CRR, RMR, FCRR
U.S. District Court Reporter
District of South Carolina

JA25

Chapter 7 policy statements in the guidelines manual as well as the statutory factors applicable to revocation of sentence under 18 United States Code 3553(a) and 3583(e), it's the judgment of the Court that the Defendant, Gregory Allen Bonnie, is hereby committed to the custody of the Bureau of Prisons for a term of 24 months, which is 24 months as to Counts 1 and 6 concurrent.  This term shall run consecutively to the term of imprisonment in 19-60.  There will be no term of supervised release to follow that sentence.

Does anyone have any objection to the form of that sentence?

MS. PENN:  None from the defense.

MS. SCHOEN:  No, Your Honor.

THE COURT:  All right.  Mr. Bonnie, you've got -- and what's the date of incarceration, Ms. Penn, so he can get credit from that date?

MS. PENN:  I think it's since 2018, Your Honor.

THE COURT:  All right.  Just give it to Catina so she can make sure the Bureau of Prisons gives him credit for everything that he deserves to have credit, okay?

MS. PENN:  Yes, sir.  Thank you.

THE COURT:  All right.  Mr. Bonnie, you've got 14 days from today to appeal from this sentence.  If you can't afford a lawyer, I'll appoint Ms. Penn to represent you, okay?  Thank you.

Tana J. Hess, CRR, RMR, FCRR
U.S. District Court Reporter
District of South Carolina

JA26

**MS. PENN:** Thank you, Your Honor.

(End of proceedings.)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

REPORTER TRANSCRIPT CERTIFICATE

I, Tana J. Hess, Official Court Reporter for the United States District Court, District of South Carolina, certify, pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcription of the stenographic notes taken by the undersigned in the above-entitled matter (Pages 1 through 16 inclusive) and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States of America.

_____
Tana J. Hess, CRR, RMR, FCRR
Official Court Reporter
United States District Court
District of South Carolina
Date:  May 16, 2022

JA27

AO 245D (SCDC Rev. 09/19) Judgment in a Criminal Case for Revocations
Sheet 1

# UNITED STATES DISTRICT COURT
## District of South Carolina

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>GREGORY ALLEN BONNIE | **JUDGMENT IN A CRIMINAL CASE**<br>(For **Revocation** of Probation or Supervised Release)<br><br>Case No.     2:04-cr-000546-DCN<br>USM No.     11192-171<br><br>Alicia V. Penn AFPD<br>Defendant's Attorney |

**THE DEFENDANT:**

■ admitted guilt to violation of condition(s) _____ of the term of supervision.

☐ was found in violation of condition(s) count(s) _____ after denial of guilt.

The defendant is adjudicated guilty of these violations:

| Violation Number | Nature of Violation | Violation Ended |
|---|---|---|
| 1 | Failure to Refrain From Use of Controlled Substances | |
| 2 | New Criminal Conduct | 10/25/18 |
| 3 | New Criminal Conduct | 1/1/19 |

The defendant is sentenced as provided in pages 2 through ___2___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has not violated condition(s) _____ and is discharged as to such violation(s) condition.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

Last Four Digits of Defendant's Soc. Sec. No.:     7423

Defendant's Year of Birth:     1977

City and State of Defendant's Residence: _____

April 21, 2021
Date of Imposition of Judgment

_Signature of Judge_

David C. Norton, U.S. District Judge
Name and Title of Judge

May 27, 2021
Date

JA28

AO 245D (SCDC Rev. 09/19)  Judgment in a Criminal Case for Revocations
Sheet 2— Imprisonment

Judgment — Page    2    of    2

DEFENDANT:        GREGORY ALLEN BONNIE
CASE NUMBER:      2:04-cr-000546-DCN

## IMPRISONMENT

The defendant's term of supervised release is hereby REVOKED and the defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of TWENTY-FOUR (24) months; said term consists of 24 months as to each of Counts 1 and 6, to run concurrently.  This term shall run consecutively to the term of imprisonment ordered in Docket Number: 2:19-cr-00060-003.  There shall be no term of supervised release to follow.

☐   The court makes the following recommendations to the Bureau of Prisons:

☒   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

    ☐   at _____   ☐   a.m.   ☐   p.m.   on _____ .

    ☐   as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐   before 2 p.m. on _____ .

    ☐   as notified by the United States Marshal.

    ☐   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ with a certified copy of this judgment.

UNITED STATES MARSHAL

By _____

_____
DEPUTY UNITED STATES MARSHAL

JA29

AO 245C (SCDC Rev. 09/19) Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## District of South Carolina

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| vs. | Case Number: 2:19-CR-00060-DCN-3 |
| | USM Number: 11192-171 |
| GREGORY ALLEN BONNIE | Alicia V. Penn, AFPD |
| | Defendant's Attorney |

**THE DEFENDANT:**

■ pleaded guilty to Counts 1 and 10.
☐ pleaded nolo contendere to count(s) _____ which was accepted by the court.
☐ was found guilty on count(s) ____ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21:846, 21:841(b)(1)(A) | Please see 3rd Superseding Indictment | 10/24/18 | 1 |
| 21:841(b)(1)(B) | Please see 3rd Superseding Indictment | 10/24/18 | 10 |

The defendant is sentenced as provided in pages 2 through 6 of this judgment.   The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐     The defendant has been found not guilty on count(s)_____.
☐     Count(s) ☐ is ☐ are dismissed on the motion of the United States.

☐     Forfeiture provision is hereby dismissed on motion of the United States Attorney.

    It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.   If ordered to pay restitution, the defendant must notify the court and United States attorney of any material changes in economic circumstances.

April 21, 2021
Date of Imposition of Judgment

Signature of Judge

DAVID C. NORTON , U.S. DISTRICT JUDGE
Name and Title of Judge

May 27, 2021
Date

JA30

AO 245C (SCDC Rev. 09/19) Judgment in a Criminal Case
Sheet 2 - Imprisonment                                                                                                      Page 2

DEFENDANT: GREGORY ALLEN BONNIE
CASE NUMBER: 2:19-CR-00060-DCN-3

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of ONE HUNDRED TWENTY (120) months; *said term consists of 120 months as to each of* **Counts One and Ten**, *to run concurrently*. This term shall run consecutively to the term of imprisonment ordered in Docket Number 2:04-546.   The defendant shall pay a $200.00 special assessment fee, due beginning immediately.

■      The court makes the following recommendations to the Bureau of Prisons: The defendant shall be designated to FCI Jesup or FCI Butner. He shall be screened for enrollment in the Bureau of Prisons 500 Hour Intensive Drug Treatment Program should he become eligible during his period of incarceration. He shall receive credit for time served from 10/24/2018.

■      The defendant is remanded to the custody of the United States Marshal.

☐      The defendant shall surrender to the United States Marshal for this district:
       ☐ at _____    ☐ a.m.    ☐ p.m. on _____.
       ☐ as notified by the United States Marshal.

☐      The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:
       ☐ before 2 p.m. on _____.
       ☐ as notified by the United States Marshal.
       ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this Judgment as follows:


Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.

                                          _____
                                                   UNITED STATES MARSHAL


                                 By _____
                                          DEPUTY UNITED STATES MARSHAL

JA31

AO 245C (SCDC Rev. 09/19) Judgment in a Criminal Case
Sheet 3 - Supervised Release

Page 3

DEFENDANT: GREGORY ALLEN BONNIE
CASE NUMBER: 2:19-CR-00060-DCN-3

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of five (5) years; *said term consists of 5 years as to each of* **Counts One and Ten** *to run concurrently*. While on supervised release, the defendant shall comply with the mandatory and standard conditions of supervision and the following special conditions. 1. You must participate in a mental health treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program (provider, location, modality, duration, intensity).   2. You must submit to substance abuse testing to determine if you have used a prohibited substance. 3. You must not use or possess any controlled substances without a valid prescription. If you do have a valid prescription, you must disclose the prescription information to the probation officer and follow the instructions on the prescription.   4. You must contribute to the cost of such testing and treatment programs not to exceed the amount determined reasonable by the Court approved U.S. Probation Office's "Sliding Scale for Services," and you will cooperate in securing any applicable third-party payment, such as insurance or Medicaid. 5. The defendant shall be screened for participation in BRIDGE COURT or REAL COURT, and if deemed eligible, successfully complete the program.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance.   You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. § 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ■ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. §20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program of domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

JA32

AO 245C (SCDC Rev. 09/19) Judgment in a Criminal Case
Sheet 3A- Supervised Release

Page 4

DEFENDANT: GREGORY ALLEN BONNIE
CASE NUMBER: 2:19-CR-00060-DCN-3

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision.   These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.    You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2.    After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3.    You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4.    You must answer truthfully the questions asked by your probation officer.

5.    You must live at a place approved by the probation officer.   If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change.   If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6.    You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7.    You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation excuses you from doing so.   If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so.   If you plan to change where you work or anything about your work (such as your position or job responsibilities), you must notify the probation officer at least 10 days before the change.   If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8.    You must not communicate or interact with someone you know is engaged in criminal activity.   If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9.    If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10.    You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11.    You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12.    If the probation officer determines, based on your criminal record, personal history or characteristics, that you pose a risk to another person (including an organization), the probation officer, with the prior approval of the Court, may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

13.    You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions.   For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at www.uscourts.gov.

Defendant's Signature _____    Date _____

JA33

AO 245C (SCDC Rev. 09/19) Judgment in a Criminal Case
Sheet 5 - Criminal Monetary Penalties                                                    Page 5

DEFENDANT: GREGORY ALLEN BONNIE
CASE NUMBER: 2:19-CR-00060-DCN-3

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $200.00 | $ | $ | | |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.   However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTALS | $_____ | $_____ | |

☐ Restitution amount ordered pursuant to plea agreement    $_____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. §3612(f).   All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. §3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:
　　☐　The interest requirement is waived for the ☐ fine  ☐ restitution.
　　☐　The interest requirement for the ☐ fine   ☐  restitution is modified as follows:


* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

JA34

AO 245C (SCDC Rev. 09/19) Judgment in a Criminal Case
Sheet 6 - Schedule of Payments
Page 6

DEFENDANT: GREGORY ALLEN BONNIE
CASE NUMBER: 2:19-CR-00060-DCN-3

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A ■ Lump sum payment of $200.00 special assessment due immediately.

    ☐ not later than _____, or

    ☐ in accordance with ☐ C, ☐ D, or ☐ E, or ☐ F below: or

B ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C ☐ Payment in equal _____(weekly, monthly, quarterly) installments of $_____
over a period of _____ (*e.g., months or years*), to commence _____ (*e.g., 30 or 60 days*) after the date of this judgment; or

D ☐ Payment in equal _____(*e.g., weekly, monthly, quarterly*) installments of $___
over a period of _____(*e.g., months or years*), to commence _____ (*e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within (*e.g., 30 or 60 days*) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.   All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several
  Case Number
  Defendant and Co-Defendant Names
  *(including defendant number)*

| | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate. |
|---|---|---|---|
| | | | |

☐ The defendant shall pay the cost of prosecution.
☐ The defendant shall pay the following court cost(s):
☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

As directed in the Preliminary Order of Forfeiture, filed _____ and the said order is incorporated herein as part of this judgment.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA Assessment (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment (9) penalties, and (10) costs, including cost of prosecution and court costs.

JA35

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

Gregory Allen Bonnie, #11192-171
     Petitioner,

vs.

Warden Dunbar,
     Respondent.

## PETITION FOR WRIT OF HABEAS COURPUS PURSUANT TO 28 U.S.C. § 2241

The petitioner Gregory Allen Bonnie moves Pro-se under 28 U.S.C. § 2241 to challenge the Federal Bureau of Prisons interpretation of 18 U.S.C. § 3584(c) and the denial of First Step Act (FSA) "time credits".

Petitioner has exhausted the FBOP Administrative Remedy Process on two seperate occasions, Exhibit's (A & B). Because petitioner is acting pro-se, he prays this court will liberally construe his petition.

A petition seeking habeas relief under 28 U.S.C. § 2241 is appropriate if the petitioner is challenging the fact or duration of his confinement. Here, the subject of petitioner's request for habeas relief falls squarely within the ambit of 2241 because he is not attacking his underlying conviction, but only the length of his 24 month Supervised Release Violation (SRV) sentence as calculated by the FBOP and the fact that the FBOP will not allow him to earn FSA time credits and possible earlier release from his 120 month Post - FSA "eligible" sentence.

## Background

October 2005, Petitioner was convicted of a Federal Narcotics Offense and a 924(c) Firearms offense, Docket No. 2:04-CR-546(1). Petitioner was sentenced to a 120 month term of imprisonment and 8 years of supervised release for the narcotics

1.

JA36

offense. Petitioner was also sentenced to a 60 month term of imprisonment for the 924(c) firearms offense with 5 years of supervised release to follow. The terms of imprisonment were mandated by statue consecutive to one another. Petitioner's terms of supervised release were ran concurrent for a total supervised release term of 8 years. Petitioner remained incarcerated in the Federal Bureau of Prisons (FBOP) for approximately 13 years and was released via good conduct time (GCT) June 6, 2017. These are petitioner's PRIOR convictions and will be referenced as the (old case).

October 2018, Petitioner violated the terms of his supervised release, (old case). Petitioner was subsequently indicted on new federal narcotic offenses, ie the (new case) Docket No. 2:19-cr-00060-DCN-3.

April 2021, Petitioner was sentenced to a 120 month term of imprisonment and 5 years of supervised release for the (new case). Petitioner was also sentenced to a 24 month term of imprisonment for petitioner's supervised release violation, ie (old case). These sentences were ordered consecutive to one another. Each of these sentences are assigned to seperate judgment and commitment orders. Exhibits (C & D).

## Discussion

Petitioner was committed to the FBOP July 7, 2021. Petitioner has a 120 month First Step Act (FSA) "Eligible" sentence.

Petitioner also has a 24 month Supervised Release Violation (SRV) "Ineligible" sentence.

Because the FBOP incorrectly interprets 18 U.S.C. § 3584(C), petitioner is being denied FSA "Time Credits". Time credits that will reduce the petitioner's sentence by 12 months. The FBOP has "aggregated" petitioner's 120 month FSA "Eligible" sentence with his 24 month FSA "Ineligible" sentence, to render petitioner FSA "Ineligible" for the entire 144 month aggregated term of imprisonment.

2.

JA37

Petitioner agrees with the fact that the FBOP does have the authority to aggregate two sentences for administrative purposes. However, the petitioner can not serve a term of imprisonment that exceeds the statutory maximum of five years for his SRV. There must be a starting point and stopping point for petitioners 24 month SRV, or the FBOP will incarcerate the petitioner beyond the statutory maximum sentence permitted by law.

## ISSUE ONE

December 2018 Congress enacted the FSA. The FSA allows "eligible" inmates to earn time credits for participation in Evidence Based Recidivism Reduction Programs (EBRR's) and Productive Activities. Pursuant to the FSA, petitioner is "eligible" to earn time credits for his 120 month sentence. Petitioner is "ineligible" to earn time credits for his 24 month supervised release violation. According to the FBOP's determination, petitioner is "ineligible" to earn time credits at all. The FBOP has used 18 U.S.C. § 3584(c) which pre-dates the FSA by approximately 36 years to make this determination. FBOP's interpretation of 18 U.S.C. § 3584(c) is incorrect and rest on a predicate legal error an erroneous construction of § 3584(c) and is therefore "invalid".

Nothing in the language of the statue supports the FBOP's position that § 3584(c) requires it to treat the aggregate term of incarceration as fully applicable to each count of conviction that is, to treat the petitioner as if he is serving, in effect, concurrent sentences on each conviction that are each equal to the total term of imprisonment. Such reading makes no sense, because it would regularly attribute to an individual offense of conviction a total sentence that would exceed the statutory maximum for that offense. Under the BOP's view, the petitioner is serving a 24 month supervised release violation from 2018 until 2029 even though the statutory maximum term of imprisonment for a Class A supervised release violation is five (5) years (18 U.S.C. § 3583(e)(3). A reading of § 3584(c) that would produce such a legally flawed result cannot be correct.

3.

JA38

Indeed, nothing in the language of FSA suggests that the statue says anything about the relationship between an aggregated term of imprisonment and each constituent individual charge that produced it. On the contrary, the clear import of the FSA is that an individual may earn FSA time credits if his sentence is "Eligible". Assigning portions of a total term of incarceration to specified offenses is not an "administrative purpose," it is a judicial function performed at sentencing.

The FSA nor Section 3584(c) speak to the charge - allocation issue and it does not replace the court's allocation, as reflected in the sentencing orders, with concurrent, identical aggregate sentences on each and every charge.

Petitioner was sentenced to two seperate terms of imprisonment ordered in two seperate judgments. At no time did the Court order petitioner's sentences "together". In fact, in both judgments the court ordered petitioner's sentences consecutive to one another. This was ordered by the court to comport with U.S.S.G. 7B1.3(f), 18 U.S.C. § 3553(a) and 3583(e). Sentencing Transcript (Exhibit E).

Petitioner would like to provide the court with two scenarios for consideration:

1. If petitioner committed a drug offense and a 924(c) offense and was sentenced at the same time (with one judgment), it would be acceptable for the FBOP to aggregate these sentence because the statutory maximum term or imprisonment for neither offense would ever be exceeded.

2. If petitioner was sentenced to his new 120 month sentence and also sentenced to "one" day for his supervised release violation. Would petitioner serve that "one" day for 120 months?

### ISSUE TWO

The FBOP stands on it's position that multiple sentences are aggregated in accordance with 18 U.S.C. § 3584(c). Although, the

4.

JA39

FBOP has chosen which class of people it chooses to enforce it's aggregation practice upon. This is unconstitutional and discrimatory to the petitioner. FBOP's Program Statement: 5140 42 Cn-1 Date: 4/19/19 Transfer of offenders to or from Foreign Countries reads :(d) "The inmate is a Mexican citizen or national who is "currently" serving a sentence for committing an immigration offense, unless he/she is serving a sentence for multiple offenses and the immigration <u>portion</u> of the sentence has already been served".

For clarity, in order to be "<u>eligible</u>" for a treaty transfer a non - US citizen must serve a <u>portion</u> of his/her multiple (supposedly aggregated sentences). But the petitioner whom is a US citizen is told he cannot earn FSA time credits for the 120 month "<u>eligible</u>" <u>portion</u> of his multiple sentences  Why is this?

## CONCLUSION

Due to the FBOP's erroneous interpretation of § 3584(c) the petitioner is losing approximately 15 days a month of "time credits" that can be applied to petitioner's release from custody. If § 3584(c) were set aside and his two sentences were tracked separately. Petitioner would earn "time credits" for his 120 month FSA "eligible" sentence, in accordance with the Congressional intent of the FSA. It is clear that once the FBOP's legal error concerning § 3584(c) is corrected, petitioner will begin to earn time credits for his FSA "eligible" sentence

Petitioner asks this court to not allow him to <u>serve</u> a term of imprisonment that is greater than the statutory maximum sentence for a Class A supervised release violation. The only way to avoid this, is for the FBOP to dedicate a starting date and stopping date for petitioner's SRV  When this function is administered the petitioner will not <u>serve</u> a term of imprisonment that exceeds 18 U S C. § 3583(e)(3).

5.

JA40

Petitioner also requests appointment of counsel to better articulate the procedural aspects of this petition and any responses that may follow  Petitioner is an indigent pro-se litigant with no knowledge of the legal rules governing Habeas Petitions

Respectfully submitted this 23rd Day of March 2023.

I declare, certify, verify, and state under the penalty of perjury that the foregoing is true and correct.

By: _____

Gregory Allen Bonnie
#11192-171
SCP Williamsbug
P.O  Box 380
Salters  SC 29590

6.

JA41

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I have served a copy of the foregoing instruments to the Clerk of this Court, via properly addressed U S. mail, with first-class postage prepaid affixed thereto, by placing them into the internal mail system as made available to inmates for legal mail, at the Federal Correctional Institution, SCP Williamsburg. Mr. Bonnie further requests that a copy of his motion be forwarded to all interested parties via the CM/ECF system, as he is detained, indigent, and has no other means.

Done this 23rd day of March, 2023.

Respectfully Submitted,

x _____

Gregory Allen Bonnie
Reg. #:11192-171
SCP Williamsburg
P.O. Box 340
Salters, SC 29590

RECEIVED
US DC CLERK, COLUMBIA, SC
2023 MAR 27 PM 2: 55

JA42

INTENTIONALLY BLANK

```
COLBN   540*23 *            SENTENCE MONITORING          *     12-08-2021
PAGE 001        *            COMPUTATION DATA            *     12:09:10
                             AS OF 12-08-2021

REGNO..: 11192-171 NAME: BONNIE, GREGORY ALLEN


FBI NO...........: 793976VA2          DATE OF BIRTH: 02-05-1977  AGE:  44
ARS1.............: COL/A-DES
UNIT.............: A-1                QUARTERS.....: A10-024U
DETAINERS........: NO                 NOTIFICATIONS: NO

HOME DETENTION ELIGIBILITY DATE: 07-13-2028

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  01-13-2029 VIA GCT REL


----------------------CURRENT JUDGMENT/WARRANT NO: 020 ----------------------

COURT OF JURISDICTION...........: SOUTH CAROLINA
DOCKET NUMBER...................: 2:19-CR-00060-DCN-3
JUDGE...........................: NORTON
DATE SENTENCED/PROBATION IMPOSED: 04-21-2021
DATE COMMITTED..................: 07-07-2021
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

              FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $200.00        $00.00        $00.00       $00.00

RESTITUTION...: PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $00.00

-----------------------CURRENT OBLIGATION NO: 010 ---------------------------
OFFENSE CODE....:  391     21:846 SEC 841-851 ATTEMPT
OFF/CHG: 21:846,21:841(B)(1)(A) CONSPIRACY TO POSSESS WITH INTENT TO
         DISTRIBUTE & DISTRIBUTE METHAMPHETAMINE & HEROIN (CT.1)
         21:841(B)(1)(B) POSSESSION WITH INTENT TO DISTRIBUTE
         METHAMPHETAMINE & HEROIN (CT.10)

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:   120 MONTHS
 TERM OF SUPERVISION............:     5 YEARS
 DATE OF OFFENSE................: 10-24-2018




G0002      MORE PAGES TO FOLLOW . . .
```

JA44

```
COLBN   540*23 *          SENTENCE MONITORING          *   12-08-2021
PAGE 002          *         COMPUTATION DATA           *   12:09:10
                            AS OF 12-08-2021
```

REGNO..: 11192-171 NAME: BONNIE, GREGORY ALLEN

```
-----------------------CURRENT JUDGMENT/WARRANT NO: 030 -----------------------
```

```
COURT OF JURISDICTION...........: SOUTH CAROLINA
DOCKET NUMBER...................: 2:04-CR-000546-DCN
JUDGE...........................: NORTON
DATE SENTENCED/PROBATION IMPOSED: 10-21-2005
DATE SUPERVISION REVOKED........: 04-21-2021
TYPE OF SUPERVISION REVOKED.....: REG
DATE COMMITTED..................: 07-07-2021
HOW COMMITTED...................: COMMIT OF SUPERVISED REL VIOL
PROBATION IMPOSED...............: NO
```

```
                   FELONY ASSESS  MISDMNR ASSESS   FINES        COSTS
NON-COMMITTED.:    $200.00        $00.00           $00.00       $00.00
```

```
RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO       AMOUNT:  $00.00
```

```
------------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE.....:  130      18:924(C) FIREARMS LAWS         FSA INELIGIBLE
OFF/CHG: 21:841(A)(1),(B)(1)(B),(B)(1)(C),846&841 CONSPIRACY TO
         MANUFACTURE, POSSESSION WITH INTENT TO DISTRIBUTE, AND
         DISTRIBUTION OF METHAMPHETAMINE & COCAINE (CT.1) 18:924(C)(1)
         (A)(I) USE OR CARRYING OF A FIREARM DURING & IN RELATION TO A
         DRUG TRAFFICKING CRIME (CT.6) *SRT VIOL*
```

```
SENTENCE PROCEDURE.............: SUPERVISED RELEASE VIOLATION PLRA
SENTENCE IMPOSED/TIME TO SERVE.:    24 MONTHS
RELATIONSHIP OF THIS OBLIGATION
 TO OTHERS FOR THE OFFENDER....: CS TO JDGMT 020
DATE OF OFFENSE................: 03-25-2004
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

JA45

```
   COLBN  540*23 *          SENTENCE MONITORING        *    12-08-2021
   PAGE 003 OF 003 *          COMPUTATION DATA         *    12:09:10
                            AS OF 12-08-2021

   REGNO..: 11192-171 NAME: BONNIE, GREGORY ALLEN


   -----------------------CURRENT COMPUTATION NO: 020 -----------------------

   COMPUTATION 020 WAS LAST UPDATED ON 06-10-2021 AT DSC AUTOMATICALLY
   COMPUTATION CERTIFIED ON 06-23-2021 BY DESIG/SENTENCE COMPUTATION CTR

   THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
   CURRENT COMPUTATION 020: 020 010, 030 010

   DATE COMPUTATION BEGAN..........: 04-21-2021
   AGGREGATED SENTENCE PROCEDURE...: AGGREGATE GROUP 800 PLRA
   TOTAL TERM IN EFFECT............:    144 MONTHS
   TOTAL TERM IN EFFECT CONVERTED..:    12 YEARS
   AGGREGATED TERM OF SUPERVISION..:     5 YEARS
   EARLIEST DATE OF OFFENSE........: 03-25-2004

   JAIL CREDIT.....................:    FROM DATE      THRU DATE
                                      10-24-2018     04-20-2021

   TOTAL PRIOR CREDIT TIME.........: 910
   TOTAL INOPERATIVE TIME..........: 0
   TOTAL GCT EARNED AND PROJECTED..: 648
   TOTAL GCT EARNED................: 162
   STATUTORY RELEASE DATE PROJECTED: 01-13-2029
   ELDERLY OFFENDER TWO THIRDS DATE: 10-24-2026
   EXPIRATION FULL TERM DATE.......: 10-23-2030
   TIME SERVED.....................:    3 YEARS     1 MONTHS     15 DAYS
   PERCENTAGE OF FULL TERM SERVED..:  26.0
   PERCENT OF STATUTORY TERM SERVED:  30.5

   PROJECTED SATISFACTION DATE.....: 01-13-2029
   PROJECTED SATISFACTION METHOD...: GCT REL





   G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

JA46

EXHIBIT A

CUC 1330.17.B

October 24, 2013

Attachment A

## INFORMAL RESOLUTION FORM

NOTICE TO INMATE: Bureau of Prisons Program Statement 1330.16 requires that except as provided in 542.13(b) an inmate shall first present an issue of concern informally to staff and staff shall informally attempt to resolve the issue prior to submitting a BP-9. A separate form must be used for each issue.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

INSTRUCTIONS: Counselors will complete and attach this form to each Request for Administrative Remedy Form (BP-9) submitted, if not informally resolved.

| Gregory Bonnie | 11192-171 | B-3 | [signature] |
|---|---|---|---|
| Inmate Name | Register No. | Qtrs./Unit | Inmate Signature |

1.    Specific complaint (one 8 ½" x 11" continuation page may be attached):

See Continuation page. A 24 MONTH SUPERVISED RELEASE VIOLATION CAUSING FSA INELIGIBILITY

2.    What efforts have been made by the inmate to resolve the complaint informally? To whom has the inmate spoken?

I HAVE SPOKEN TO NUMEROUS UNIT TEAM MEMBERS.

3.    What action does the inmate wish to be taken to correct the issue?

I REQUEST FSA ELIGIBILITY FOR THE 120 MONTH PORTION OF MY SENTENCE

Correctional Counselor's Comments (including actual steps taken to resolve):

You have been advised by unit team you are ineligible. You can contact DSCC for further review -

CSW T. Butler

| [signature] | 9/29/21 | Staff Circle One: | |
|---|---|---|---|
| Correctional Counselor | Date | Informally Resolved | Not Informally Resolved |

Unit Manager's Review

| [signature] | 9/29/21 |
|---|---|
| Unit Manager | Date |

Distribution by Correctional Counselor:

1. If complaint is informally resolved, maintain original on file in the Unit.

2. If complaint is not informally resolved, attach original to BP-9 Form and forward to Administrative Remedy Clerk for processing.

| | Inf. Resolution Form Issued to Inmate | Inf. Resolution Form Returned to Counselor | BP-9 Issued to Inmate | BP-9 Returned to Counselor | BP-9 Delivered to Admin Remedy Clerk |
|---|---|---|---|---|---|
| Date: | 9/14/21 | 9/15/21 | 9/29/21 | 10/5/21 | 10/6/21 |
| Time: | 1030 | 1040 | 230 | 900 | 845 |
| Counselor: | Mendoza | Mendoza | Mendoza | Mendoza | Mendoza |

JA48

USCA4 Appeal: 24-6665     Doc: 26     Filed: 11/20/2024     Pg: 52 of 292

## CONTINUATION PAGE

After speaking with Case Manager Mrs. Fernandez (B-3), Case Manager Mrs. Butler (B-1), Unit Managers Mrs. O'Brien (B-3) and Mr. Jiminez (C-1), I am being told my 24-month supervised release violation, Docket Number: 2:04-cr-000546-DCN is making me (FSA ineligible) for my entire 144-month sentence. Although my new criminal offense Docket Number: 2:19-cr-00060-DCN-3 is (FSA eligible). See sentence monitoring computation data sheet, as of 8-31-21, Pg. 1-2.

Relief Requested: I need to know when my 24-month supervised release violation starts and stops. I need to know how a 24-month sentence can extend over the course of 144 months. I need to know when I can start earning FSA "Time Credits."

JA49

U.S. DEPARTMENT OF JUSTICE                          REQUEST FOR ADMINISTRATIVE REMEDY
Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: __Bonnie, Gregory__    __11192-171__    __B-3__    __FCC  Coleman  Low__
      LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A– INMATE REQUEST**

As stated in the BP-8, I respectfully request FSA Time Credit eligibility for the 120-month (eligible) portion of my sentence.

I need to know when my 24-month supervised release violation starts and stops. I need to know how a 24-month sentence can extend over the course of 144 months. I need to know when I can start earning FSA "Time Credits."

__10/5/21__                                  __H. B____ ___
DATE                                         SIGNATURE OF REQUESTER

**Part B– RESPONSE**

Rec'd 06OCT21

                                             WARDEN OR REGIONAL DIRECTOR
DATE

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

SECOND COPY: RETURN TO INMATE                CASE NUMBER: 1096877-F1

                                             CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

DATE                                         RECIPIENT'S SIGNATURE (STAFF MEMBER)

JA50

**Response to Administrative Remedy Case Number:    1096877-F1**

This is in response to your Request for Administrative Remedy receipted on October 06, 2021 in which you are requesting First Step Act (FSA) credit.  Specifically, you are requesting the FSA be applied to your 120-month sentence from the United States District Court of South Carolina.

An investigation into this matter reveals you received a Federal sentence on October 21, 2005, in the United States District Court of South Carolina, Case Number 2:04-546 for 180-months.  You were released on June 6, 2017, on supervision.  On April 21, 2021, you received a Supervised Release Violation in the United States District Court of South Carolina, Case Number 2:04-546 for 24-months to run consecutive to a new sentence (2:19-CR-00060-DCN-3).  On April 21, 2021, you were sentenced to a new sentence in the United States District Court of South Carolina, Case Number 2:19-CR-00060-DCN-3, for 120-months to run consecutive to your Supervised Release Violation, Case Number 2:04-546.  Since both sentences were ordered to run consecutive to each other, the sentences were aggregated and the sentences are currently running together.

The First Step Act of 2018 (FSA) allowed for GCT earnings to be made retroactive, but applicable only to sentences not yet satisfied as of the effective date of the FSA; therefore, any sentences satisfied prior to the effective date of the FSA are not eligible to receive additional GCT credits.  As your previous sentence, Case Number 2:04-546, was satisfied well before the effective date of the FSA, July 19, 2019, you are not entitled to receive any additional GCT credits toward that term of confinement.  Since both sentences are consecutive to each other and are aggregated, you are not eligible for FSA credit.  Your computation has been reviewed and audited by the Designation and Sentence Computation Center (DSCC) in Grand Prairie, Texas, as accurate.

Therefore, based on the above information, your Request for Administrative Remedy is **Denied**.

If you are dissatisfied with this response, you may appeal by filing a BP-10 to the Bureau of Prisons, Southeast Regional Office, Attn: Regional Director, 3800 Camp Creek Parkway, SW, Building 2000, Atlanta, Georgia 30331-6226, within 20 calendar days from the date of this response.

Kathy B. Lane, Warden                    Date  10/19/2021

JA51

U.S. Department of Justice

**Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: **Bonnie, Gregory** | **11192-171** | **B-3** | **FCC Coleman Low**

LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

### Part A - REASON FOR APPEAL

I am appealing Warden Kathy P. Lane's Administrative Remedy Response (Remedy Case # 109877-F1) for the following reasons:

1) I did not ask for "GCT" earnings for any proir sentence;

2) Neither Unit Team nor the Warden answered my relief requested; and

3) I am not seeking any "GCT" or "Time Credits" at all!

Relief requested:

1) I need to know when my 24-month "supervised release vioation" starts and ends. See Docket No.: 2:04-546. I need to know how my 24 month (SRV) can extend over the course of 144 months;

2) I need to know when I can start earning FSA "Time Credits" for Docket No.: 2:19-cr-00060-DCN-3;

3) I request FSA "Time Credit" eligibility for the 120-month eligible portion of my current term of incarceration, Docket No.: 2:19-cr-00060-cr-DCN-3, which is a FSA-eligible offense; and

4) I am seeking time credit eligiblity for my 120-month FSA Time Credit eligible sentence.

11/5/2021
DATE

_Y. Bonnie_
SIGNATURE OF REQUESTER

### Part B - RESPONSE

RECEIVED
NOV 17 2021
REGIONAL COUNSEL'S OFFICE-SERO
BUREAU OF PRISONS

_____    _____
DATE    REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE    CASE NUMBER: 109687-R1

### Part C - RECEIPT

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

SUBJECT: _____

_____
DATE

_____
SIGNATURE, RECIPIENT OF REGIONAL APPEAL

JA52

Regional Administrative Remedy Appeal No. 1096877-R1
Part B - Response

This is in response to your Regional Administrative Remedy receipted
November 17, 2021, wherein, you are appealing the Warden's response to your
Institution Administrative Remedy, wherein, you request additional Good Conduct Time
(GCT) in accordance with the First Step Act.   As relief, you are requesting for a review
of the amount of GCT applied to your term of imprisonment, taking into consideration
your initial term of incarceration.   As relief, you request to have GCT applied for your
prior custody time.

A review of your allegation determined the Warden's response adequately addressed
the concerns raised in your Institution Administrative Remedy.   As the First Step Act
is implemented, the Designation and Sentence Computation Center (DSSC)
recalculates the sentence time for inmates who are eligible.   As the calculation is
completed, they will adjust the Good Conduct Time.   While this change may result in
additional credit for inmates, it is not applicable to prior terms of incarceration.   Your
sentence computation was reviewed pursuant to the First Step Act, resulting in a
projected release date of January 13, 2029.

In accordance with Program Statement 5880.28, Sentence Computation Manual
(CCCA OF 1984), "A revocation of a term of supervised release cannot begin to run, or
commence, any earlier than the date on which it is revoked.   A supervised release
revocation term, for calculation purposes, shall be treated the same as any other NL
[New Law] sentence and may be aggregated with other NL [New Law] sentences
following the same aggregation policy as discussed previously in the manual."
Conversely, your sentences cannot be aggregated because the first one was imposed,
and served, prior to the new term of imprisonment being imposed.

Accordingly, your Regional Administrative Remedy Appeal is denied.   If dissatisfied with
this response, you may appeal to the Office of General Counsel, Bureau of Prisons, 320
First Street, NW, Washington, D.C., 20534.   Your appeal must be received in the Office
of General Counsel within 30 calendar days of the date of this response.

1/19/2022
Date

Regional Director, SERO

U.S. Department of Justice

**Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: BONNIE GREGORY A         11192-171      A-1      FCI COLEMAN (LOW)
LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

Part A - REASON FOR APPEAL  I AM APPEALING THE REGIONAL ADMINISTRATIVE REMEDY RESPONSE, REMEDY CASE #109877-FI) FOR THE FOLLOWING REASONS:
I DID NOT ASK FOR "GCT" EARNINGS FOR ANY PRIOR SENTENCE,
I AM NOT SEEKING ANY "GCT" OR TIME CREDITS AT ALL.

RELIEF REQUESTED:
I NEED TO KNOW WHEN MY 24 MONTH SUPERVISED RELEASE VIOLATION STARTS AND ENDS, SEE DOCKET No: 2:04-546.
I NEED TO KNOW WHEN I CAN START EARNING FSA TIME CREDITS FOR DOCKET No. 2:19-CR-00060.
I REQUEST TIME CREDIT ELIGIBILITY FOR THE 120 MONTH ELIGIBLE PORTION OF MY CURRENT TERM OF INCARSERATION, DOCKET No: 2:19-CR-00060-DCN-3 WHICH IS AN FSA-ELIGIBLE OFFENSE.

2/2/22
DATE

Y.B.
SIGNATURE OF REQUESTER

Part B - RESPONSE

_____         _____
        DATE                              GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE                CASE NUMBER: _____

Part C - RECEIPT
                                          CASE NUMBER: _____

Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION
SUBJECT: _____

_____         _____
    DATE                      SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

JA54

RECEIVED

JUN 0 1 2022

BY: By inmate

Administrative Remedy No. 1096877-A1
Part B – Response

This is in response to your Central Office Administrative Remedy
Appeal, wherein you request the date your Supervised Release
Violation began when you begin earning First Step Act Time
Credits, and Time Credit eligibility for your new sentence for
Docket number, 2:19-CR-00060-DCN-3.

A review of your file reveals you were arrested on
October 24, 2018, by the United States Marshal Service and
Berkeley County Sheriff's Office, for violation of your
Supervised Release. You were charged with Conspiracy to Possess
With Intent to Distribute Heroin, a Schedule I Controlled
Substance, and Methamphetamine, a Schedule II Controlled
Substance.

On April 21, 2021, you were sentenced in the United States
District Court, District of South Carolina to a 24-month term of
imprisonment for a Supervised Release Violation in Case Number
2:04-cr000546-DCN.  The Court ordered your Supervised Release
Violation to run consecutive to your charges in Case Number
2:19-CR-00060-003.  On the same day, you were sentenced in the
United States District Court for the District of South Carolina
to a 120-month term of imprisonment for Count 1, Conspiracy to
Possess With Intent to Distribute Heroin, a Schedule I
Controlled Substance, and Methamphetamine, a Schedule II
Controlled Substance, in violation of Title 21, United States
Code, Sections 841(a)(1) and 841(b)(1)(A). Also, you were
sentenced for Count 10, Knowingly, Intentionally, and Unlawfully
did Possess With Intent to Distribute a Quantity of Heroin, a
Schedule I Controlled Substance, and 50 Grams or More of a
Mixture or Substance Containing a Detectable Amount of
Methamphetamine, a Schedule II Controlled Substance in violation
of Title 21, United States Code, 841(a)(1), 841(b)(1)(B), and
841(b)(1)(C).

You received credit toward your sentence from October 24, 2018,
the date you were arrested, through April 20, 2021, the day
prior to imposition of your Supervised Release Violation and new
charges in Case Number, 2:19-CR-00060-DCN-3.

A review of your sentence determined that Title 21, United
States Code, 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C) is an
Ineligible Offense.  As an Ineligible Offense, Federal Time
Credits will not be applied.

Accordingly, your appeal is denied.

JA55

EXHIBIT   B

WIL 1330.13A
Administrative Remedy
October 17, 2006

Attachment A

### DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT

Bureau of Prisons Program Statement 1330.13, Administrative Remedy Program, (December 22, 1995), requires, in most cases, that inmates attempt informal resolution of grievances prior to the filing a formal written complaint. This form will be used to document your efforts toward informally resolving your grievance.

Inmate Name: GREGORY A. BONNIE Reg. No.: 11192-171    Unit: CAMP

Specific Complaint and Requested Relief: I HAVE A 24 MONTH SUPERVISED RELEASE SENTENCE. I AM TOLD THIS SENTENCE WILL LAST UNTIL 2029. THE MAXIMUM TERM OF INCARSERATION FOR A SUPERVISED RELEASE VIOLATION IS 5 YEARS. I WAS SENTENCED TO 24 MONTHS. CASE NO: 2:04-CR-000546-DCN

I WANT TO KNOW WHEN MY 24 MONTH SENTENCE STARTS AND STOPS. I WANT TO KNOW THE EXACT DATES.

Efforts Made by Inmate to Informally Resolve Grievance (be specific): I HAVE SPOKE WITH NUMEROUS BOP STAFF MEMBERS INCLUDING CMC MORRIS.

Comments: You have an aggregated sentence of 24 months for a supervised release violation and 120 months on new charges. The Federal judge specifically ordered the sentence to run consecutive. You are receiving 910 days of jail credit with a PRD of 1-13-2029. Your cases are aggregated legally per program statement 2880-28 page 1-33.

_____  1-7-22        _____  6/15/2022
Correctional Counselor Review / Date     Unit Manager Review / Date

_____  6/7/22
Inmate Signature / Date

JA57

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

REQUEST FOR ADMINISTRATIVE REMEDY

Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.

From: **Bonnie Gregory A**    **11192-171**    **CAMP**    **FCI Williamsburg**

LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A- INMATE REQUEST**

I AM APPEALING ADMINISTRATIVE REMEDY RESPONSE DATED 6/8/22 FOR THE FOLLOWING REASON:

I WANT TO KNOW WHEN MY 24 MONTH SUPERVISED RELEASE VIOLATION SENTENCE BEGINS AND ENDS, CASE NO: 2:04-CR-000546-DCN. A 24 MONTH SENTENCE CAN NOT BEGIN IN 2018 AND LAST UNTIL 2029. I WANT THE EXACT DATE MY 24 MONTH SENTENCE STARTED AND THE EXACT DATE IT WILL BE SATISFIED.

**6/13/22**
DATE

SIGNATURE OF REQUESTER

**Part B- RESPONSE**

> Received
>
> JUL  5 2022
>
> REGIONAL COUNSEL'S OFFICE - SERO
> BUREAU OF PRISONS

_____    _____
DATE                WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE    CASE NUMBER: _____

CASE NUMBER: **1123430-F1**

**Part C- RECEIPT**

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____        _____
DATE            RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP-229(13)
APRIL 1982

JA58

REQUEST FOR ADMINISTRATIVE REMEDY
Part B - Response

Admin. Remedy Case #:<u>1123430-F1</u>

This is in response to your Request for Administrative Remedy, dated June 13, 2022, in which you request the end date of your 24 month supervised release sentence.

A review of your file shows you were sentenced on April 21, 2021, to 24 months on your supervised release violation for case number 2:04-cr-000546-DCN and 120 months for case number 2:19-CR-00060-DCN-3. The federal judged specified in your judgment that the terms of imprisonments were to run consecutive to each. Your sentences were aggregated for total of 144 months with a projected release date of 01-13-2029.

Program Statement 5880.28, <u>Sentence Computation Manual</u>, dated February 14, 1997, page 1-33, section c, states in part: Federal courts sometime order a **portion** of the federal sentence to run concurrently with or consecutively to another federal sentence or a non-federal sentence. The Bureau of Prisons will attempt to accommodate a court's intent as fully as possible. Since the possible number of ways of imposing a **portion** of a sentence concurrently with or consecutively to another sentence are numerous, staff should refer such sentences to the RISA for assistance. Subsection (c) of Section 3584 provides the rules for the treatment (calculation) of multiple sentences and states, **Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment.** This statement means that <u>SRA</u> sentences, including a term of imprisonment that results from a revocation of supervised release or probation, shall be aggregated to form a single sentence for computation purposes. Accordingly, your Request for Administrative Remedy is denied.

If you are not satisfied with this decision, you may appeal to the Regional Director at Bureau of Prisons, Southeast Regional Office, 3800 Camp Creek Parkway, S.W., Building 2000, Atlanta, Georgia, 30331-6226. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.

_____          6/22/22_____
R.S. Dunbar, Warden                       Date

JA59

U.S. Department of Justice

Federal Bureau of Prisons

Regional Administrative Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: BONNIE GREGORY A.    11192·171    CAMP    FCI WYCHANSBURG
LAST NAME. FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

Part A - REASON FOR APPEAL

I AM APPEALING REMEDY # 1123430-F1 DATED 6/22/22, FOR THE FOLLOWING REASONS:

1) I WANT TO KNOW WHEN MY 24 MONTH SUPERVISED RELEASE VIOLATION SENTENCE STARTS AND STOPS. A 24 MONTH SENTENCE CAN NOT LAST FROM 2018 UNTIL 2029.

2) I WANT TO KNOW WHEN THIS SENTENCE STARTS AND END, SO I KNOW WHEN I CAN EARN FAST STEP ACT TIME CREDITS, FOR MY 120 MONTH FSA ELIGIBLE SENTENCE.

7/14/22
DATE

SIGNATURE OF REQUESTER

Part B - RESPONSE

Received

JUL 2 0 2022

REGIONAL COUNSEL'S OFFICE - SERO
BUREAU OF PRISONS

_____    _____
DATE    REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE    CASE NUMBER: 1123430

Part C - RECEIPT

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____    _____
DATE    SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)

JA60

Regional Administrative Remedy Appeal No. 1123430-R2
Part B - Response

This is in response to your Regional Administrative Remedy receipted July 20, 2022, wherein, you are appealing the Warden's response to your request regarding Good Time Credits (GTC) in accordance with the First Step Act.   As relief, you are requesting for a review of the amount of Good Conduct Time applied to your term of imprisonment, taking into consideration your initial term of incarceration.   As relief, you request to have GTC applied for your prior custody time.

A review of your allegation determined the Warden's response adequately addressed the concerns raised in your Institution Administrative Remedy.   As the First Step Act is implemented, the Bureau of Prisons recalculates the sentence time for inmates who are eligible.   As the calculation is completed, they will adjust the Good Conduct Time. While this change may result in additional credit for inmates, it is not applicable to prior terms of incarceration.

An investigation into this matter reveals you were sentenced to a term of 180 months imprisonment, in U.S. District Court of South Carolina.   You were released from that term of imprisonment on June 16, 2017.   You violated the terms of your Supervised Release and were sentenced to 24 months imprisonment on April 21, 2021. In accordance with Program Statement 5880.28, Sentence Computation Manual (CCCA OF 1984), "A revocation of a term of supervised release cannot begin to run, or commence, any earlier than the date on which it is revoked.   A supervised release revocation term, for calculation purposes, shall be treated the same as any other NL [New Law] sentence and may be aggregated with other NL [New Law] sentences following the same aggregation policy as discussed previously in the manual." Conversely, your sentences cannot be aggregated because the first one was imposed, and served, prior to the new term of imprisonment being imposed.

Accordingly, your Regional Administrative Remedy Appeal is denied.   If dissatisfied with this response, you may appeal to the Office of General Counsel, Bureau of Prisons, 320 First Street, NW, Washington, D.C., 20534.   Your appeal must be received in the Office of General Counsel within 30 calendar days of the date of this response.

8/29/2022

Regional Director, SERO

JA61

U.S. Department of Justice                          Central Office Administrative Remedy Appeal

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Bonnie Gregory A          11192·171      CAMP      FCI Williamsburg
      LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.        UNIT        INSTITUTION

Part A - REASON FOR APPEAL  I am appealing regional response to remedy #1123430-F1

F1)I did not ask for any FSA time credits. #2)I want to know when my
upervised release violation starts and stops. #3)My supervised release
24 month violation should not make me ineligible to earn FSA time
redits on my NEW post FSA sentence. #4)A 24 month violation can
ot stretch for 11 years. I have a 120 month FSA eligible sentence,
nd a 24 month violation. When does my 24 month violation start
nd stop?

9/7/22                                    B. R. D
_____                          _____
     DATE                               SIGNATURE OF REQUESTER

Part B - RESPONSE


_____                 _____
        DATE                                   GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE                     CASE NUMBER: _____

Part C - RECEIPT                               CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION
SUBJECT:_____

_____                         _____
     DATE                               SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

                                                                      BP-231(13)
                                                                      JUNE 2002

JA62

Administrative Remedy No. 1123430-A1
Part B - Response

This is in response to your Central Office Administrative Remedy
Appeal, wherein you claim your 24-month violation sentence
cannot stretch for 11 years.  For relief, you request to know
the start and stop dates of your supervised release term of
imprisonment.

A review of your record revealed that on April 21, 2021, you were
sentenced in United States District Court for the District of
South Carolina, Case No. 2:19-CR-00060-DCN-3, to a 120-month term
of imprisonment for Conspiracy to Possession with Intent to
Distribute and Distribute Methamphetamine and Heroin, Count-1;
and Possession with Intent to Distribute Methamphetamine and
Heroin, Count-10.  The respective judgment ordered, "This term
shall run consecutively to the term of imprisonment ordered in
Docket Number 2:04-546."  Additionally, the court revoked your
supervised release in Case No. 2:04-cr-000546-DCN and sentenced
you to a 24-month term of imprisonment.  The judgment in Case No.
Case No. 2:04-cr-000546-DCN ordered, "This term shall run
consecutively to the term of imprisonment ordered in Docket
Number: 2:19-cr-00060-003."

Pursuant to 18 U.S.C. § 3584(c), "Multiple terms of imprisonment
ordered to run consecutively or concurrently shall be treated
for administrative purposes as a single, aggregate term of
imprisonment."  Appropriately, your terms of imprisonment in
Case Nos. 2:19-CR-00060-DCN-3 and 2:04-cr-000546-DCN have been
aggregated to produce a single 144-month term of imprisonment.
Your 144-month term of imprisonment commenced on April 21, 2021,
the date of imposition in accordance with Program Statement
5880.28, Sentence Computation Manual (CCCA of 1984), and the
provisions of 18 U.S.C. § 3585(a).  Consistent with 18 U.S.C.
§ 3585(b), you have received 910 days prior custody credit for
time spent in official detention from October 24, 2018 through
April 20, 2021.  Currently you are projected to earn a total of
648 days of Good Conduct Time (GCT) credit resulting in a
statutory release date of January 13, 2029, via GCT release.

Your sentence has been computed as directed by federal statute,
Program Statement 5880.28, Sentence Computation Manual (CCCA of
1984), and the intent of the sentencing court.

Accordingly, this response is for informational purposes only.


11-15-2022
_____          _A. Connors_____
Date                               Ian Connors, Administrator
                                   National Inmate Appeals

JA63

EXHIBIT C

AO 245D (SCDC Rev. 09/19) Judgment in a Criminal Case for Revocations
Sheet 1

# UNITED STATES DISTRICT COURT
District of South Carolina

| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|---|
| v. | ) | (For Revocation of Probation or Supervised Release) |
| | ) | |
| | ) | |
| GREGORY ALLEN BONNIE | ) | Case No.    2:04-cr-000546-DCN |
| | ) | USM No.    11192-171 |
| | ) | Alicia V. Penn AFPD |
| | ) | Defendant's Attorney |

**THE DEFENDANT:**

■ admitted guilt to violation of condition(s) _____ of the term of supervision.

☐ was found in violation of condition(s) count(s) _____ after denial of guilt.

The defendant is adjudicated guilty of these violations:

| Violation Number | Nature of Violation | Violation Ended |
|---|---|---|
| 1 | Failure to Refrain From Use of Controlled Substances | |
| 2 | New Criminal Conduct | 10/25/18 |
| 3 | New Criminal Conduct | 1/1/19 |

The defendant is sentenced as provided in pages 2 through ___2___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has not violated condition(s) _____ and is discharged as to such violation(s) condition.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

Last Four Digits of Defendant's Soc. Sec. No.:    7423

Defendant's Year of Birth:    1977

City and State of Defendant's Residence:

_____

April 21, 2021
Date of Imposition of Judgment

Signature of Judge

David C. Norton, U.S. District Judge
Name and Title of Judge

May 27, 2021
Date

**JA65**

AO 245D (SCDC Rev. 09/19) Judgment in a Criminal Case for Revocations
Sheet 2— Imprisonment

| | | Judgment — Page __2__ of __2__ |
|---|---|---|
| DEFENDANT: | GREGORY ALLEN BONNIE | |
| CASE NUMBER: | 2:04-cr-000546-DCN | |

## IMPRISONMENT

The defendant's term of supervised release is hereby REVOKED and the defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of TWENTY-FOUR (24) months; said term consists of 24 months as to each of Counts 1 and 6, to run concurrently. This term shall run consecutively to the term of imprisonment ordered in Docket Number: 2:19-cr-00060-003. There shall be no term of supervised release to follow.

☐ The court makes the following recommendations to the Bureau of Prisons:

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m. on _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

_____

Defendant delivered on _____ to _____

at _____ with a certified copy of this judgment.

UNITED STATES MARSHAL

By _____

_____
DEPUTY UNITED STATES MARSHAL

JA66

EXHIBIT D

AO 245C (SCDC Rev. 09/19) Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## District of South Carolina

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| vs. | Case Number: 2:19-CR-00060-DCN-3 |
| | USM Number: 11192-171 |
| GREGORY ALLEN BONNIE | <u>Alicia V. Penn, AFPD</u><br>Defendant's Attorney |

**THE DEFENDANT:**

■   pleaded guilty to Counts 1 and 10.
☐   pleaded nolo contendere to count(s) _____which was accepted by the court.
☐   was found guilty on count(s) ____after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21:846, 21:841(b)(1)(A) | Please see 3rd Superseding Indictment | 10/24/18 | 1 |
| ~~21:841(b)(1)(B)~~ | ~~Please see 3rd Superseding Indictment~~ | ~~10/24/18~~ | ~~10~~ |

The defendant is sentenced as provided in pages 2 through <u>6</u> of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐   The defendant has been found not guilty on count(s)_____.

☐   Count(s) ☐is ☐ are dismissed on the motion of the United States.

☐   Forfeiture provision is hereby dismissed on motion of the United States Attorney.

    It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of any material changes in economic circumstances.

<u>April 21, 2021</u>
Date of Imposition of Judgment


<u>                             </u>
Signature of Judge

<u>DAVID C. NORTON , U.S. DISTRICT JUDGE</u>
Name and Title of Judge

<u>May 27, 2021</u>
Date

JA68

AO 245C (SCDC Rev. 09/19) Judgment in a Criminal Case

Sheet 2 - Imprisonment                                                              Page 2

DEFENDANT: GREGORY ALLEN BONNIE
CASE NUMBER: 2:19-CR-00060-DCN-3

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of ONE HUNDRED TWENTY (120) months; *said term consists of 120 months as to each of Counts One and Ten, to run concurrently.* This term shall run consecutively to the term of imprisonment ordered in Docket Number 2:04-546.  The defendant shall pay a $200.00 special assessment fee, due beginning immediately.

■    The court makes the following recommendations to the Bureau of Prisons: The defendant shall be designated to FCI Jesup or FCI Butner. He shall be screened for enrollment in the Bureau of Prisons 500 Hour Intensive Drug Treatment Program should he become eligible during his period of incarceration. He shall receive credit for time served from 10/24/2018.

■    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:
☐ at _____ ☐ a.m. ☐ p.m. on _____
☐ as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:
☐ before 2 p.m. on _____.
☐ as notified by the United States Marshal.
☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this Judgment as follows:

Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

JA69

EXHIBIT E

United States Code 3553(a), it's the judgment of the Court the Defendant, Gregory Allen Bonnie, is hereby committed to the custody of the Bureau of Prisons for a term of 120 months, which is 120 months as to Counts 1 and 10 concurrent.  No fine. $200 special assessment.  Upon release, five years supervised release, which is five years as to Counts 1 and 10 to run concurrent.

While on supervised release, the mandatory standard conditions; the following special conditions:  Shall participate in a mental health program and follow the rules and regulations of their program.  Probation officer, in consultation with the treatment provider, will supervise his participation in the program, like the provider, location, modality, duration, or intensity.  I don't know whether it's included under that, but I would recommend that he be considered for the Bridge or REAL Court program or whatever is available to those who are just getting out of prison.

Mr. Bonnie, according to the sentencing memorandum, flourishes in a structured environment.  It's when he doesn't have a structured environment is when he goes off the rails.  I think all the courses he's done over the years while he's in prison are remarkable, so he needs a structured environment.  He's going to have a structured environment while he's in jail.  He needs a structured environment to transition back to society.

Tana J. Hess, CRR, RMR, FCRR
U.S. District Court Reporter
District of South Carolina

JA71

He should submit to substance abuse testing and treatment to determine if he's used prohibited substance based on his substance abuse history. The mental health is based on his prior mental health treatment needs. Should not use or possess any controlled substances without a valid prescription. If you do have a valid prescription, you just disclose the prescription information to the probation office and follow the instructions on the prescription, justified by his extensive prescription drug and substance abuse history. Must contribute to the cost of any such treatment and testing programs not to exceed an amount deemed reasonable by the Court-approved United States Probation Officer's Sliding Scale for Services, and he shall cooperate in securing any third-party payments, such as insurance or Medicaid. This is justified in an effort to help offset the government testing and treatment expenses as well as increase Mr. Bonnie's investment in his treatment and other services.

Does anyone have any objection to the sentence in 19-60?

MS. PENN: The defense does not.

MS. SCHOEN: Nothing from the Government.

THE COURT: Okay. Now, as far as the supervised release sentence in 04-546, the previously imposed term of supervised release is hereby revoked. Pursuant to the Sentencing Reform Act of 1984 and considering the applicable

Tana J. Hess, CRR, RMR, FCRR
U.S. District Court Reporter
District of South Carolina

JA72

Chapter 7 policy statements in the guidelines manual as well as the statutory factors applicable to revocation of sentence under 18 United States Code 3553(a) and 3583(e), it's the judgment of the Court that the Defendant, Gregory Allen Bonnie, is hereby committed to the custody of the Bureau of Prisons for a term of 24 months, which is 24 months as to Counts 1 and 6 concurrent. This term shall run consecutively to the term of imprisonment in 19-60. There will be no term of supervised release to follow that sentence.

Does anyone have any objection to the form of that sentence?

MS. PENN: None from the defense.

MS. SCHOEN: No, Your Honor.

THE COURT: All right. Mr. Bonnie, you've got -- and what's the date of incarceration, Ms. Penn, so he can get credit from that date?

MS. PENN: I think it's since 2018, Your Honor.

THE COURT: All right. Just give it to Catina so she can make sure the Bureau of Prisons gives him credit for everything that he deserves to have credit, okay?

MS. PENN: Yes, sir. Thank you.

THE COURT: All right. Mr. Bonnie, you've got 14 days from today to appeal from this sentence. If you can't afford a lawyer, I'll appoint Ms. Penn to represent you, okay? Thank you.

Tana J. Hess, CRR, RMR, FCRR
U.S. District Court Reporter
District of South Carolina

JA73



**JA74**



**JA75**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Gregory Allen Bonnie, *a/k/a* *Gregory Allen Bonnie #21082*, | ) Civil Action Number: 4:23-cv-01215-DCN-TER |
| | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| Warden Dunbar, | ) |
| | ) |
| Respondent. | ) |
| _____ | ) |

**RESPONSE TO PETITION AND MOTION TO DISMISS,
OR FOR SUMMARY JUDGMENT**

COMES NOW the Respondent, Warden of the Federal Correctional Institution (FCI) Williamsburg, by and through Adair F. Boroughs, United States Attorney, and by counsel, Barbara M. Bowens, Assistant United States Attorney for the District of South Carolina, and hereby moves to dismiss the Petition for Writ of Habeas Corpus, or for summary judgment. The grounds for this motion are further explained in the following Memorandum in Support.

**MEMORANDUM IN SUPPORT**

**I.  STATEMENT OF THE CASE**

Gregory Allen Bonnie (Petitioner), Federal Register Number 11192-171, is an inmate incarcerated at the Satellite Prison Camp located adjacent to FCI Williamsburg.  ECF No. 1.[1]  On November 10, 2005, Petitioner was sentenced in the United States District Court for the District of South Carolina to a 120-month term of incarceration for violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), (b)(1)(C), 846, and 851, Conspiracy to Manufacture, Possession With Intent to

---

[1] Petitioner's place of incarceration and release date can be verified on the BOP Public Website at https://www.bop.gov by utilizing the Inmate Locator.

JA76

Distribute, and Distribution of Methamphetamine and Cocaine and a 60-month consecutive term for violation of 18 U.S.C. § 924(c)(1)(A)(i), Use or Carrying of a Firearm During and in Relation to a Drug Trafficking Crime. *See* Case No. 2:04-cr-546-DCN (D.S.C.). He was released on June 6, 2017, to a term of supervised release. *See* **Ex. 1, Declaration of J. Carter, Attachment A, Sentence Monitoring Computation Data.** Petitioner's supervision was revoked on April 21, 2021, based upon new criminal charges upon which he was indicted, and for the failure to refrain from the use of controlled substances. *See* Case No. 2:04-cr-546-DCN. Petitioner was sentenced to 24-months' imprisonment on the supervised release revocation, which was ordered to run consecutively to the 120-month sentence imposed for the new criminal conduct in Criminal Action No. 2:19-cr-00060-003 for violation of 21 U.S.C. §§ 841 (b)(1)(A), (b)(1)(B) and 846, Conspiracy to Possess With Intent to Distribute and Distribution of Methamphetamine and Heroin, and Possession With Intent to Distribute Methamphetamine and Heroin. *See id*; *see also* Case No. 2:19-cr-00060-DCN-3 (D.S.C.). Petitioner's projected release date, via applied jail credits and Good Conduct Time Release, is January 13, 2029.

Petitioner filed the instant action on March 27, 2023, alleging that the BOP is denying him time credits for Evidence-Based Recidivism Reduction Programming in light of the First Step Act (FSA), 18 U.S.C. § 3632(d)(4)(A). ECF No 1. Petitioner alleges that the BOP is improperly aggregating his two sentences to preclude him from applying First Step Act time credits, and that the BOP incorrectly interprets 18 U.S.C. § 3584(c). ECF No. 1, p. 2. He asserts that the sentences should be viewed separately for the purposes of the FSA, because he has both an eligible and an ineligible offense for purposes of earning FSA time credits. *Id.* at p. 3-4. Prior to filing the instant case, Petitioner exhausted administrative remedies with BOP. *See* **Ex. 1, Decl. of Carter, and Att. B, SENTRY Administrative Remedy Generalized Retrieval.** For the reasons below, this

2

JA77

action must be dismissed.

## II.  STANDARD OF REVIEW

### A. Summary Judgment Standard

The Supreme Court has recognized the appropriateness of summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure in habeas cases. *See Blackledge v. Allison*, 431 U.S. 63, 80 (1977); *see also Maynard v. Dixon*, 943 F.2d 407 (4th Cir. 1991).  A court should grant summary judgment when "there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding whether there is a genuine issue of material fact, all justifiable factual inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once it makes that showing, the opposing party may not rest upon mere allegations or denials; rather, he must, by affidavits or other means permitted by Rule 56, set forth specific facts showing there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Celotex Corp.*, 477 U.S. at 322.  Further,

JA78

while federal courts must liberally construe *pro se* pleadings to allow the development of a potentially meritorious case, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), that does not mean that courts can ignore a clear failure in the pleadings to allege facts which set forth a federal claim or that courts may assume the existence of genuine issues of material fact, *see Rice v. Nat'l Sec. Council*, 244 F. Supp. 2d 594, 596 (D.S.C. 2001) (citing *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990)).

### B. Habeas Corpus

Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the legality or duration of his custody. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). The primary means of attacking the validity of a federal conviction and sentence is through a motion pursuant to 28 U.S.C. § 2255, while a petition for habeas corpus under section 2241 is the proper method to challenge the computation or execution of a federal sentence. *See United States v. Little*, 392 F.3d 671, 678–79 (4th Cir. 2004).

A petitioner may bring a petition for a writ of habeas corpus under § 2241 if he is "attack[ing] the computation and execution of the sentence rather than the sentence itself." *United States v. Miller*, 871 F.2d 488, 490 (4th Cir. 1989) (per curiam); *see also Diaz v. Warden, FCI Edgefield*, No. 4:17-cv-00093-RBH, 2017 WL 2985974, at *2 (D.S.C. July 13, 2017) (noting a section 2241 petition "is the proper means for a federal prisoner to challenge the BOP's sentencing calculations"). A section 2241 petition must be brought against the warden of the facility where the prisoner is being held, *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004), and "in the district of confinement rather than in the sentencing court," *Miller*, 871 F.2d at 490. *See also* 28 U.S.C. § 2242.

JA79

## III. THE LAW AND ANALYSIS

### A.  The BOP determines sentence credits.

BOP has exclusive jurisdiction to determine sentence credits for inmates.  "After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence."  *United States v. Wilson*, 503 U.S. 329, 335 (1992).  The district court cannot award sentencing credits.  *United States v. Pineyro*, 112 F.3d 43, 45 (2d Cir. 1997); *United States v. Cobleigh*, 75 F.3d 242, 251 (6th Cir. 1996); *United States v. McGee*, 60 F.3d 1266, 1272 (7th Cir. 1995); *United States v. Checchini*, 967 F.2d 348, 349–50 (9th Cir. 1992).  Instead, an inmate must exhaust his administrative remedies, and only then, if dissatisfied, may he seek review via a section 2241 habeas petition.  *See*, *e.g.*, *Reno v. Koray*, 515 U.S. 50, 53 (1995) (describing procedural history of inmate's challenge to BOP credit determination); *see also United States v. Nyhuis*, 211 F.3d 1340, 1345 (11th Cir. 2000); *Rogers v. United States*, 180 F.3d 349, 357 (1st Cir. 1999); *Checchini*, 967 F.2d at 350; *United States v. Gabor*, 905 F.2d 76, 78 n.2 (5th Cir. 1990).

### B.    Petitioner's eligibility for credits under the First Step Act has been properly determined.

The First Step Act of 2018 was signed into law on December 21, 2018.  *See* 18 U.S.C. § 3632.  The FSA provides, among other things, that inmates who successfully complete evidence-based recidivism reduction programming or productive activities earn time credits at a rate described in the statute.  18 U.S.C. § 3632(d)(4).  The time credits can then be applied to effectuate an earlier placement in prerelease custody or supervised release.  18 U.S.C. § 3632(d)(4)(C).  However, 18 U.S.C. § 3632(d)(4)(D) provides an extensive list of offenses which render an inmate "ineligible to receive [FSA] time credits," if the inmate is "serving a sentence for a conviction" of any of the enumerated offenses.  One of the enumerated disqualifying offenses is "Section 924(c),

5

JA80

relating to unlawful possession or use of a firearm during and in relation to any crime of violence or drug trafficking crime." 18 U.S.C. § 3632(d)(4)(D)(xxii). The corresponding BOP regulations state "[i]f the inmate is serving a term of imprisonment for an offense specified in 18 U.S.C. § 3632(d)(4)(D), the inmate is not eligible to earn FSA Time Credits." 28 C.F.R. § 523.41(d)(2). *See also Allen v. Hendrix*, 2:19-CV-00107-BSM-JTR, 2019 WL 8017868 *3 (E.D. Ark. Dec. 13, 2019) (conviction under 18 U.S.C. § 924(c) rendered inmate ineligible to earn any time credits for completing evidence-based recidivism reduction programs).

Petitioner asserts that he is entitled to FSA credits because he has two sentences – one supervised release revocation based upon section 924(c), which is the disqualifying offense under FSA, and one sentence for drug offenses, which is, on its own, an eligible offense for purposes of FSA. ECF No. 1. Petitioner thus argues that he should be entitled to FSA credits for the portion of his sentence imposed for the eligible offense, because the BOP is improperly aggregating his sentences. *Id.* Additionally, Petitioner asserts that because of the aggregation of the sentences and the lack of a definitive start and stop date on each sentence, he is effectively serving a longer term for the supervised release revocation than what was imposed by the sentencing court. *Id*.

The BOP is responsible for calculating sentences imposed by the sentencing courts. Under 18 U.S.C. § 3584(c), "multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." BOP's Program Statement 5880.28, *Sentence Computation Manual,* states, "SRA [Sentencing Reform Act] sentences, including a term of imprisonment that results from a revocation of supervised release or probation, shall be aggregated to form a single sentence for computation purposes." P.S. 5880.28, p. 1-33; *see also United States v. Wilson*, 503 U.S. at 333-35. In accordance with 18 U.S.C. § 3584(c) and BOP policy, the BOP prepared a sentence computation for Petitioner and

6

JA81

aggregated the sentences, resulting in a total term of imprisonment of 144 months.  *See* **Ex. 1, Decl. of Carter, and Att. A, Sentence Monitoring Computation Data.**  Petitioner is ineligible to earn FSA time credits due to the section 924(c) conviction upon which he is serving the supervised release revocation term.  *Id*.

Courts have widely upheld the BOP's determination that an aggregate term of imprisonment comprised of both an ineligible and an eligible offense under the FSA precludes a prisoner from earning time credits under the FSA on the aggregate term.  *See Sok v. Eischen*, Case No. 22-cv-458 (ECT/LIB), 2022 WL 17156797 (D. Minn. Oct. 26, 2022), *report and recommendation adopted,* 2022 WL 17128929 (D. Minn. Nov. 22, 2022) (noting "[c]ourts have consistently held that sentence calculation by the BOP and the BOP's administration of incentives which reduce the length of a prisoner's term of imprisonment are administrative functions of the BOP subject to § 3584(c)" and finding aggregate sentence including section 924(c) sentence rendered inmate ineligible to earn FSA time credits); *Giovinco v. Pullen*, No. 3:22-CV-1515 (VAB), 2023 WL 1928108, at *2-3 (D. Conn. Feb. 10, 2023) (holding BOP's interpretation of section 3632(d)(4)(D) is reasonable in light of long-standing obligation to aggregate sentences for administrative purposes and noting that 18 U.S.C. § 3584 was enacted in 1984 and had Congress wanted inmates to receive FSA time credits for the portion of their sentences attributed solely to eligible offenses, it would have included such language in the First Step Act); *Goodman v. Sage*, No. 4:22-CV-00981, 2022 WL 18028148 at *3 and n.25 (M.D. Pa. Dec. 30, 2022) (924(c) sentence was part of single aggregate term and thus ineligible to receive FSA time credits; collecting cases); *see also Chambers v. Warden Lewisburg USP*, 852 F. App'x 648, 650 (3d Cir. 2021) ("BOP was permitted to aggregate Chambers' otherwise-consecutive sentences into a single unit for purely administrative purposes, such as . . . calculating GCT . . . ."); *United States v. Martin*, 974 F.3d

7

JA82

124, 136 (2d Cir. 2020) (finding "administrative purposes" referenced in section 3584(c) are described in, "among other provisions, 18 U.S.C. § 3585, which authorizes the BOP to provide inmates with credit towards their sentence for various reasons, including for time spent in detention prior to commencement of the sentence"); *United States v. Wilson*, 503 U.S. at 335, ("After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence.").

In *Rose v. Yates*, No. 2:22-cv-00214 BSM/PSH, 2023 WL 3198298, *1-3 (E.D. Ark. May 2, 2023), *report and recommendation adopted*, 2023 WL 3601186 (E.D. Ark. May 23, 2023), the Eastern District of Arkansas recently considered this issue and found in favor of BOP. In *Rose*, the petitioner was serving a 36-month term of imprisonment for armed robbery (not listed as a disqualifying offense under the FSA) and a consecutive 84-month term for a firearms offense, which was disqualifying under the FSA. *Rose*, 2023 WL 3198298 at *1. The petitioner argued that time credits should be awarded for the 36-month armed robbery sentence, and that the language of section 3632(d)(4)(D) stating "sentence" in the singular, required BOP to bifurcate the sentences and calculate his time credits accordingly. *Id.* The Court found that the argument had to be "squared with the language of 18 U.S.C. § 3584(c)," providing for the aggregation of sentences for administrative purposes. *Id.* The *Rose* court found BOP's interpretation of section 3632(d)(4)(D) reasonable in light of its "long-standing obligation to aggregate sentences for administrative purposes." *Rose*, 2023 WL 3198298 at *1-2. As such, Rose's section 924(c) sentence, as part of his "single, aggregate term of imprisonment," rendered him statutorily ineligible to receive FSA time credits. *Id.* at *3.

In the instant case, the fact that Petitioner's ineligible sentence is based upon a supervised release revocation term does not change the outcome. Two district courts recently considered

cases with facts closely aligned to those in the instant case and agreed with the BOP's interpretation.

In *Dahda v. Hudson*, the District of Kansas considered a petitioner's habeas action challenging BOP's determination that he was ineligible to receive FSA time credits due to an aggregate prison term that included a supervised release revocation sentence based upon a section 924(c) conviction. Case No. 23-3008-JWL, 2023 WL 2815920 (D. Kan. Mar. 7, 2023). Mr. Dadha argued in part that he had already completed his prison term for the section 924(c) offense. *Dadha*, 2023 WL 2815920 at *1. The Court noted that the revocation sentence made Dadha ineligible and held that aggregation of the sentences was proper and that, even if the FSA were considered ambiguous, BOP's interpretation was entitled to *Chevron* deference. *Id*. at *2 (*citing Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 843–845, 866 (1984) and *Lopez v. Davis*, 531 U.S. 230 (2001)). Moreover, the Court held that "the revocation sentence is a prison sentence imposed for the original offenses for which the term of supervised release was ordered, *see* 18 U.S.C. § 3583(e)(3), including the disqualifying Section 924(c) offense," and concluded that BOP properly found petitioner ineligible to receive FSA credits.[2]  *Id*. at *2-3. In considering the prisoner's argument that he had already completed the section 924(c) portion of his sentence, the Court disagreed, not only based upon the aggregation requirement, but also because:

---

[2] 18 U.S.C. § 3583(e) provides in pertinent part that the court may:

> (3) revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post release supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release . . . .

Petitioner is thus serving additional time for the section 924(c) conviction.

9

JA84

> petitioner's interpretation would be difficult for the BOP to apply, as the BOP would be required not only to assign an order to the offenses or sentences, but also to determine start and stop times for each partial sentence, while applying various credits at the same time. Thus, because the BOP's interpretation of the FSA's eligibility requirements is a reasonable one, the Court is bound to apply it here.

*Id.* at 2 (internal citations omitted).

In the instant case, Petitioner similarly argues that he is effectively overserving his supervised release revocation term due to the aggregation of the sentences. However, as illustrated, aggregation of the sentences fulfills the requirement of section 3584(c), and the alternative would be difficult for BOP to apply. "[T]he Attorney General, through the BOP, has the responsibility for administering the sentence." *U.S. v. Wilson*, 503 U.S. at 335.

The Eastern District of Kentucky also recently considered a habeas petition based on facts identical to those at issue in the instant case -- where the aggregate term was comprised of: (1) an ineligible supervised release revocation term based upon a section 924(c) conviction, and (2) an eligible drug offense under 21 U.S.C. § 841(a). *Ledford v. Lemaster*, Case No. 23-30-DLB, 2023 WL 2905376 (E.D. Ky. Mar. 28, 2023). The Court upheld BOP's aggregation principle, noting it had been widely used and upheld even in other areas where statutes provide sentence credits for program completion, including the BOP's Residential Drug Abuse Treatment Program (RDAP) completion and resulting eligibility for sentence reduction under section 3621(e). *Id*. at *2-3. Considering the revocation term, the *Ledford* court relied upon a similar Ninth Circuit case, quoting as follows:

> a term of supervised release imposed by a sentencing court- although distinct from a term of imprisonment-, is, as a matter of law, a component of the overall sentence imposed on a defendant's conviction. Indeed, the Supreme Court has recognized that post-revocation penalties related to the original offense of conviction. Thus, revocation of supervised release is a reinstatement of the sentence for the underlying crime, not a punishment for the conduct that led to the revocation in the first place.

10

JA85

*Ledford*, 2023 WL 2905376 at *2 (quoting *Moreno v. Ives*, 842 F. App'x 18, 20-22 (9th Cir. 2020)).

The *Ledford* court found the BOP correctly determined the petitioner was not eligible to earn FSA credits, holding, "Courts have consistently applied this line of reasoning to reject the very argument *Ledford* makes here: that the mandatory aggregation required by Section 3584(c) should be disregarded for purposes of FSA eligibility." 2023 WL 2905376 at *3 (citing cases).

Petitioner is ineligible to earn the Earned Time Credits which he seeks in this action, pursuant to the principle of aggregation and pursuant to the First Step Act. As such, this action must be dismissed, or summary judgment granted in favor of the Respondent.

## CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus must be dismissed, or summary judgment granted to the Respondent.

Respectfully submitted,

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY

By:    *s/Barbara M. Bowens*
Barbara M. Bowens (#4004)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, South Carolina 29201
May 31, 2023    Telephone: (803) 929-3000

11

JA86

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that she has caused the attached **RESPONSE TO PETITION AND MOTION TO DISMISS, OR FOR SUMMARY JUDGMENT** to be served by an employee of the Office of the United States Attorney for the District of South Carolina who is a person of such age and discretion as to be competent to serve papers.

Therefore, on May 31, 2023, a copy of the foregoing document will be filed via the court's CM/ECF system and will be served by U.S. mail to the name and address listed below from the United States Attorney's Office, 1441 Main Street, Suite 500, Columbia, South Carolina 29201.

Gregory Allen Bonnie
Reg No. 11192-171
FCI Williamsburg
P.O. Box 380
Salters, SC 29590

s/Barbara M. Bowens
BARBARA M. BOWENS (#4004)
Assistant United States Attorney

12

JA87

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Gregory Allen Bonnie, #11192-171, *a/k/a Gregory Allen Bonnie, #21082* Petitioner, | ) ) ) | C/A No.: 4:23-1215-DCN-TER |
| v. | ) ) | |
| Warden Dunbar, | ) ) | |
| Respondent. | ) ) ) | |

## DECLARATION OF J. CARTER

In accordance with the provisions of Section 1746 of Title 28, United States Code, I, J. Carter, do hereby make the following declaration:

1.    I am the Paralegal Specialist for the South Carolina Consolidated Legal Center, located at the Federal Correctional Institution (FCI), Edgefield, South Carolina.

2.    As a Paralegal Specialist, I have access to information regarding inmates in the custody of the Federal Bureau of Prisons (BOP). This information includes, but is not limited to, access to the BOP's SENTRY computer database, which tracks the status, activities, administrative remedies, and disciplinary actions of inmates in federal custody.

3.    Gregory Allen Bonnie, (Petitioner), Federal Register Number 11192-171, is a federal inmate currently designated by the BOP to the Satellite Prison Camp located adjacent to FCI Williamsburg in Salters, South Carolina.

4.    A review of SENTRY shows that Petitioner exhausted administrative remedies regarding First Step Act time credits related to his current sentence.

Attached are true and accurate copies of the following documents, which have been redacted where necessary due to privacy and security concerns:

Attachment A: SENTRY Sentence Monitoring Computation Data for Gregory Allen Bonnie, Reg No. 11192-171, as of April 13, 2023
Attachment B: SENTRY Administrative Remedy Generalized Retrieval for Gregory Allen Bonnie, Reg No. 11192-171

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of May, 2023.

J. Carter, Paralegal Specialist
South Carolina Consolidated Legal Center

Page 1 of 1

**EXHIBIT 1**

JA88

```
  EDGL5  540*23 *            SENTENCE MONITORING          *    04-13-2023
PAGE 001        *             COMPUTATION DATA            *    11:01:24
                             AS OF 04-13-2023


REGNO..: 11192-171 NAME: BONNIE, GREGORY ALLEN


FBI NO...........: 793976VA2          DATE OF BIRTH: ████████   AGE:  46
ARS1.............: WIL/A-DES
UNIT.............: 4 SCP               QUARTERS.....: G01-501L
DETAINERS........: NO                  NOTIFICATIONS: NO

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.

HOME DETENTION ELIGIBILITY DATE....: 07-13-2028

THE INMATE IS PROJECTED FOR RELEASE: 01-13-2029 VIA GCT REL


--------------------CURRENT JUDGMENT/WARRANT NO: 020 ----------------------

COURT OF JURISDICTION...........: SOUTH CAROLINA
DOCKET NUMBER...................: 2:19-CR-00060-DCN-3
JUDGE...........................: NORTON
DATE SENTENCED/PROBATION IMPOSED: 04-21-2021
DATE COMMITTED..................: 07-07-2021
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

              FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.:  $200.00        $00.00       $00.00      $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO     AMOUNT:  $00.00

------------------------CURRENT OBLIGATION NO: 010 -------------------------
OFFENSE CODE....:  391     21:846 SEC 841-851 ATTEMPT
OFF/CHG: 21:846,21:841(B)(1)(A) CONSPIRACY TO POSSESS WITH INTENT TO
         DISTRIBUTE & DISTRIBUTE METHAMPHETAMINE & HEROIN (CT.1)
         21:841(B)(1)(B) POSSESSION WITH INTENT TO DISTRIBUTE
         METHAMPHETAMINE & HEROIN (CT.10)

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:   120 MONTHS
 TERM OF SUPERVISION............:     5 YEARS
 DATE OF OFFENSE................: 10-24-2018




 G0002      MORE PAGES TO FOLLOW . . .
```

**Attachment A**

JA89

4:23-cv-01215-DCN  Date Filed 05/31/23  Entry Number 20-1  Page 3 of 28

```
EDGL5  540*23 *            SENTENCE MONITORING            *     04-13-2023
PAGE 002       *            COMPUTATION DATA              *     11:01:24
                            AS OF 04-13-2023


REGNO..: 11192-171 NAME: BONNIE, GREGORY ALLEN



---------------------CURRENT JUDGMENT/WARRANT NO: 030 -----------------------

COURT OF JURISDICTION...........: SOUTH CAROLINA
DOCKET NUMBER...................: 2:04-CR-000546-DCN
JUDGE...........................: NORTON
DATE SENTENCED/PROBATION IMPOSED: 10-21-2005
DATE SUPERVISION REVOKED........: 04-21-2021
TYPE OF SUPERVISION REVOKED.....: REG
DATE COMMITTED..................: 07-07-2021
HOW COMMITTED...................: COMMIT OF SUPERVISED REL VIOL
PROBATION IMPOSED...............: NO

                 FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.:  $200.00         $00.00         $00.00       $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO     AMOUNT:  $00.00

------------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  130      18:924(C) FIREARMS LAWS        FSA INELIGIBLE
OFF/CHG: 21:841(A)(1),(B)(1)(B),(B)(1)(C),846&841 CONSPIRACY TO
         MANUFACTURE, POSSESSION WITH INTENT TO DISTRIBUTE, AND
         DISTRIBUTION OF METHAMPHETAMINE & COCAINE (CT.1) 18:924(C)(1)
         (A)(I) USE OR CARRYING OF A FIREARM DURING & IN RELATION TO A
         DRUG TRAFFICKING CRIME (CT.6) *SRT VIOL*

 SENTENCE PROCEDURE.............: SUPERVISED RELEASE VIOLATION PLRA
 SENTENCE IMPOSED/TIME TO SERVE.:   24 MONTHS
 RELATIONSHIP OF THIS OBLIGATION
  TO OTHERS FOR THE OFFENDER....: CS TO JDGMT 020
 DATE OF OFFENSE................: 03-25-2004




 G0002      MORE PAGES TO FOLLOW . . .
```

JA90

```
EDGL5  540*23 *             SENTENCE MONITORING           *    04-13-2023
PAGE 003          *          COMPUTATION DATA             *    11:01:24
                             AS OF 04-13-2023


REGNO..: 11192-171 NAME: BONNIE, GREGORY ALLEN


------------------------CURRENT COMPUTATION NO: 020 ------------------------

COMPUTATION 020 WAS LAST UPDATED ON 06-10-2021 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 06-23-2021 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 020: 020 010, 030 010

DATE COMPUTATION BEGAN..........: 04-21-2021
AGGREGATED SENTENCE PROCEDURE...: AGGREGATE GROUP 800 PLRA
TOTAL TERM IN EFFECT............:   144 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    12 YEARS
AGGREGATED TERM OF SUPERVISION..:     5 YEARS
EARLIEST DATE OF OFFENSE........: 03-25-2004

JAIL CREDIT.....................:   FROM DATE     THRU DATE
                                    10-24-2018    04-20-2021

TOTAL PRIOR CREDIT TIME.........: 910
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 648
TOTAL GCT EARNED................: 216
STATUTORY RELEASE DATE PROJECTED: 01-13-2029
ELDERLY OFFENDER TWO THIRDS DATE: 10-24-2026
EXPIRATION FULL TERM DATE.......: 10-23-2030
TIME SERVED.....................:    4 YEARS     5 MONTHS    21 DAYS
PERCENTAGE OF FULL TERM SERVED..:  37.2
PERCENT OF STATUTORY TERM SERVED:  43.7

PROJECTED SATISFACTION DATE.....: 01-13-2029
PROJECTED SATISFACTION METHOD...: GCT REL
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

JA91

```
 EDGL5  540*23 *          SENTENCE MONITORING            *    04-13-2023
PAGE 004        *           COMPUTATION DATA             *    11:01:24
                          AS OF 06-06-2017


REGNO..: 11192-171 NAME: BONNIE, GREGORY ALLEN


FBI NO...........: 793976VA2            DATE OF BIRTH:              AGE:  46
ARS1.............: WIL/A-DES
UNIT.............: 4 SCP                QUARTERS.....: G01-501L
DETAINERS........: NO                   NOTIFICATIONS: NO

HOME DETENTION ELIGIBILITY DATE: 12-06-2016

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE:  06-06-2017 VIA GCT REL


                   RELEASE AUDIT COMPLETED ON 04-01-2016 BY DSCC
-----------------------PRIOR JUDGMENT/WARRANT NO: 010 -----------------------

COURT OF JURISDICTION...........: SOUTH CAROLINA
DOCKET NUMBER...................: 2:04-546(1)
JUDGE...........................: DUFFY
DATE SENTENCED/PROBATION IMPOSED: 10-21-2005
DATE COMMITTED..................: 01-27-2006
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO


              FELONY ASSESS  MISDMNR ASSESS  FINES         COSTS
NON-COMMITTED.: $200.00        $00.00        $00.00        $00.00

RESTITUTION...: PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $00.00

--------------------------PRIOR OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  391     21:846 SEC 841-851 ATTEMPT
OFF/CHG: 21:841(A)(1), (B)(1)(B), (B)(1)(C), 846 & 851 CONSPIRACY TO
         MANUFACTURE, POSSESSION WITH INTENT TO DISTRIBUTE, AND
         DISTRIBUTION OF METHAMPHETAMINE AND COCAINE (CT 1).

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:   120 MONTHS
 TERM OF SUPERVISION............:     8 YEARS
 CLASS OF OFFENSE...............: CLASS A FELONY
 DATE OF OFFENSE................: 03-25-2004




 G0002      MORE PAGES TO FOLLOW . . .
```

JA92

```
EDGL5  540*23 *            SENTENCE MONITORING          *     04-13-2023
PAGE 005       *             COMPUTATION DATA           *     11:01:24
                           AS OF 06-06-2017


REGNO..: 11192-171 NAME: BONNIE, GREGORY ALLEN



---------------------------PRIOR OBLIGATION NO: 020 ---------------------------
OFFENSE CODE....:  130     18:924(C) FIREARMS LAWS        FSA INELIGIBLE
OFF/CHG: 18:924(C)(1)(A)(I) USE OR CARRYING OF A FIREARM DURING AND IN
         RELATION TO A DRUG TRAFFICKING CRIME (CT 6).

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:   60 MONTHS
 TERM OF SUPERVISION............:    5 YEARS
 CLASS OF OFFENSE...............: CLASS A FELONY
 RELATIONSHIP OF THIS OBLIGATION
  TO OTHERS FOR THE OFFENDER....: CS TO 010
 DATE OF OFFENSE................: 03-25-2004

--------------------------PRIOR COMPUTATION NO: 010 --------------------------

COMPUTATION 010 WAS LAST UPDATED ON 07-28-2016 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 06-23-2006 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 010:   010 010, 010 020

DATE COMPUTATION BEGAN..........: 10-21-2005
AGGREGATED SENTENCE PROCEDURE...: AGGREGATE GROUP 800 PLRA
TOTAL TERM IN EFFECT............:  180 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:   15 YEARS
AGGREGATED TERM OF SUPERVISION..:    8 YEARS
EARLIEST DATE OF OFFENSE........: 03-25-2004

JAIL CREDIT.....................:   FROM DATE    THRU DATE
                                    03-25-2004   10-20-2005
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

JA93

```
EDGL5  540*23 *            SENTENCE MONITORING            *     04-13-2023
PAGE 006 OF 006 *            COMPUTATION DATA             *     11:01:24
                           AS OF 06-06-2017


REGNO..: 11192-171 NAME: BONNIE, GREGORY ALLEN


TOTAL PRIOR CREDIT TIME.........: 575
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 657
TOTAL GCT EARNED................: 657
STATUTORY RELEASE DATE PROJECTED: 06-06-2017
ELDERLY OFFENDER TWO THIRDS DATE: 03-25-2014
EXPIRATION FULL TERM DATE.......: 03-25-2019
TIME SERVED.....................:   13 YEARS     2 MONTHS     13 DAYS
PERCENTAGE OF FULL TERM SERVED..:  88.0
PERCENT OF STATUTORY TERM SERVED: 100.0

ACTUAL SATISFACTION DATE........: 06-06-2017
ACTUAL SATISFACTION METHOD......: GCT REL
ACTUAL SATISFACTION FACILITY....: CAT
ACTUAL SATISFACTION KEYED BY....: BBC

DAYS REMAINING..................: 657
FINAL PUBLIC LAW DAYS...........: 0

REMARKS.......: COMP UPDTD FOR DIS AT DSCC ON 6-13-06.5-26-15 UPDTD DIS GCE
                E/RJR. 07-28-16 DIS GCT E/RPL.
```

```
G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

JA94

```
EDGL5            *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      04-13-2023
PAGE 001 OF                                                         10:20:40
     FUNCTION: L-P SCOPE: REG    EQ 11192-171    OUTPUT FORMAT: FULL
-------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
DT RCV: FROM _____ THRU _____ DT STS: FROM _____ THRU _____
DT STS: FROM ___ TO ___ DAYS BEFORE "OR" FROM ___ TO ___ DAYS AFTER DT RDU
DT TDU: FROM ___ TO ___ DAYS BEFORE "OR" FROM ___ TO ___ DAYS AFTER DT TRT
STS/REAS: _____ _____ _____ _____ _____ _____ _____ _____ _____ _____
SUBJECTS: ____ ____ ____ ____ ____ ____ ____ ____ ____ ____ ____ ____ ____ ____
EXTENDED: _ REMEDY LEVEL: _ _            RECEIPT: _ _ _ "OR" EXTENSION: _ _ _
RCV  OFC : EQ ____       ____        ____       ____       ____       ____
TRACK:  DEPT: _____ _____ _____ _____ _____ _____
        PERSON: ___       ____       ____       ____       ____       ____
          TYPE: ___       ____       ____       ____       ____       ____
EVNT FACL: EQ ____       ____       ____       ____       ____       ____
RCV FACL.: EQ ____       ____       ____       ____       ____       ____
RCV UN/LC: EQ _____ _____ _____ _____ _____ _____
RCV QTR..: EQ _____ _____ _____ _____ _____ _____
ORIG FACL: EQ ____       ____       ____       ____       ____       ____
ORG UN/LC: EQ _____ _____ _____ _____ _____ _____
ORIG QTR.: EQ _____ _____ _____ _____ _____ _____
```

```
G0002        MORE PAGES TO FOLLOW . . .
```

**Attachment B**

JA95

```
  EDGL5              *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     04-13-2023
PAGE 002 OF      *                FULL SCREEN FORMAT               *     10:20:40


REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP                QTR.: G01-501L   RCV OFC: BEN
REMEDY ID: 403712-F1      SUB1: 21AM SUB2:       DATE RCV:   02-15-2006
UNT  RCV..:UNIT A-4     QTR RCV.: A42-218L       FACL RCV: BEN
UNT  ORG..:UNIT A-4     QTR ORG.: A42-218L       FACL ORG: BEN
EVT FACL.: BEN    ACC LEV:  BEN  1                      RESP DUE:  TUE  03-07-2006
ABSTRACT.: RE:INCIDENT REPORT EXPLUNDED
STATUS DT: 02-24-2006   STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.: 1429400   RCT: P EXT:   DATE ENTD: 02-15-2006
REMARKS..:




REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP                QTR.: G01-501L   RCV OFC: BEN
REMEDY ID: 403713-F1      SUB1: 21AM SUB2:       DATE RCV:   02-15-2006
UNT  RCV..:UNIT A-4     QTR RCV.: A42-218L       FACL RCV: BEN
UNT  ORG..:UNIT A-4     QTR ORG.: A42-218L       FACL ORG: BEN
EVT FACL.: BEN    ACC LEV:  BEN  1                      RESP DUE:  TUE  03-07-2006
ABSTRACT.: RE:INCIDENT REPORT BE EXPLUNGED
STATUS DT: 02-24-2006   STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.: 1429398   RCT: P EXT:   DATE ENTD: 02-15-2006
REMARKS..:










  G0002        MORE PAGES TO FOLLOW . . .
```

JA96

```
   EDGL5            *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *    04-13-2023
  PAGE 003 OF       *              FULL SCREEN FORMAT              *    10:20:40


  REGNO: 11192-171 NAME: BONNIE, GREGORY
  RSP OF...: WIL UNT/LOC/DST: 4 SCP              QTR.: G01-501L   RCV OFC: BEN
  REMEDY ID: 412308-F1      SUB1: 26AM SUB2:     DATE RCV:   05-04-2006
  UNT  RCV..:UNIT A-4     QTR RCV.: A42-218L     FACL RCV: BEN
  UNT  ORG..:UNIT A-4     QTR ORG.: A42-218L     FACL ORG: BEN
  EVT FACL.: BEN    ACC LEV:                     RESP DUE:
  ABSTRACT.:
  STATUS DT: 05-04-2006  STATUS CODE: REJ STATUS REASON: INF
  INCRPTNO.:          RCT:   EXT:   DATE ENTD: 05-04-2006
  REMARKS..:




  REGNO: 11192-171 NAME: BONNIE, GREGORY
  RSP OF...: WIL UNT/LOC/DST: 4 SCP              QTR.: G01-501L   RCV OFC: BEN
  REMEDY ID: 412341-F1      SUB1: 26AM SUB2:     DATE RCV:   05-05-2006
  UNT  RCV..:UNIT A-4     QTR RCV.: A42-218L     FACL RCV: BEN
  UNT  ORG..:UNIT A-4     QTR ORG.: A42-218L     FACL ORG: BEN
  EVT FACL.: BEN    ACC LEV:                     RESP DUE:
  ABSTRACT.: RE:PAIN MEDICATION
  STATUS DT: 05-05-2006  STATUS CODE: REJ STATUS REASON: INF
  INCRPTNO.:          RCT:   EXT:   DATE ENTD: 05-05-2006
  REMARKS..:
```

```
  G0002       MORE PAGES TO FOLLOW . . .
```

JA97

```
EDGL5              *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *    04-13-2023
PAGE 004 OF       *              FULL SCREEN FORMAT              *    10:20:40


REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP              QTR.: G01-501L   RCV OFC: BEN
REMEDY ID: 415851-F1      SUB1: 26AM SUB2:     DATE RCV:   06-07-2006
UNT  RCV..:UNIT A-4     QTR RCV.: A42-218L      FACL RCV: BEN
UNT  ORG..:UNIT A-4     QTR ORG.: A42-218L      FACL ORG: BEN
EVT FACL.: BEN    ACC LEV:  BEN  1 SER  1 BOP  2   RESP DUE:  TUE  06-27-2006
ABSTRACT.: RE:TO HAVE HIS KNEE FIXED.
STATUS DT: 06-23-2006  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: P EXT:   DATE ENTD: 06-07-2006
REMARKS..:




REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP              QTR.: G01-501L   RCV OFC: SER
REMEDY ID: 415851-R1      SUB1: 26AM SUB2:     DATE RCV:   07-05-2006
UNT  RCV..:UNIT A-4     QTR RCV.: A42-218L      FACL RCV: BEN
UNT  ORG..:UNIT A-4     QTR ORG.: A42-218L      FACL ORG: BEN
EVT FACL.: BEN    ACC LEV:  BEN  1 SER  1 BOP  2   RESP DUE:  FRI  08-04-2006
ABSTRACT.: RE:TO HAVE HIS KNEE FIXED.
STATUS DT: 07-26-2006  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: P EXT:   DATE ENTD: 07-07-2006
REMARKS..:
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

JA98

```
  EDGL5              *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     04-13-2023
PAGE 005 OF       *                FULL SCREEN FORMAT                *     10:20:40


REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP                QTR.: G01-501L   RCV OFC: BOP
REMEDY ID: 415851-A1      SUB1: 26AM SUB2:       DATE RCV:   08-14-2006
UNT  RCV..:UNIT A-2     QTR RCV.: A21-124L       FACL RCV: BEN
UNT  ORG..:UNIT A-4     QTR ORG.: A42-218L       FACL ORG: BEN
EVT FACL.: BEN    ACC LEV:  BEN  1 SER  1 BOP  2   RESP DUE:
ABSTRACT.: RE:TO HAVE HIS KNEE FIXED.
STATUS DT: 08-15-2006  STATUS CODE: REJ STATUS REASON: IRQ RSA
INCRPTNO.:           RCT:   EXT:   DATE ENTD: 08-15-2006
REMARKS..:




REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP                QTR.: G01-501L   RCV OFC: BOP
REMEDY ID: 415851-A2      SUB1: 26AM SUB2:       DATE RCV:   09-05-2006
UNT  RCV..:UNIT A-2     QTR RCV.: A21-124L       FACL RCV: BEN
UNT  ORG..:UNIT A-4     QTR ORG.: A42-218L       FACL ORG: BEN
EVT FACL.: BEN    ACC LEV:  BEN  1 SER  1 BOP  2   RESP DUE:  SUN  10-15-2006
ABSTRACT.: RE:TO HAVE HIS KNEE FIXED.
STATUS DT: 10-17-2006  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:           RCT: P EXT:   DATE ENTD: 09-22-2006
REMARKS..:










  G0002       MORE PAGES TO FOLLOW . . .
```

JA99

```
   EDGL5              *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     04-13-2023
PAGE 006 OF        *                FULL SCREEN FORMAT                *     10:20:40


REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP                QTR.: G01-501L   RCV OFC: BEN
REMEDY ID: 457305-F1      SUB1: 26AM SUB2:       DATE RCV:   06-26-2007
UNT  RCV..:UNIT A-2     QTR RCV.: A21-127L       FACL RCV: BEN
UNT  ORG..:UNIT A-2     QTR ORG.: A21-127L       FACL ORG: BEN
EVT FACL.: BEN    ACC LEV:  BEN  1 SER  1 BOP  1   RESP DUE:  MON  07-16-2007
ABSTRACT.: RE:PROPER TEST AND X-RAY DONE.
STATUS DT: 07-10-2007  STATUS CODE: CLG STATUS REASON: GRT
INCRPTNO.:          RCT: D EXT:   DATE ENTD: 06-26-2007
REMARKS..:




REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP                QTR.: G01-501L   RCV OFC: SER
REMEDY ID: 457305-R1      SUB1: 26AM SUB2:       DATE RCV:   07-24-2007
UNT  RCV..:UNIT A-2     QTR RCV.: A21-127L       FACL RCV: BEN
UNT  ORG..:UNIT A-2     QTR ORG.: A21-127L       FACL ORG: BEN
EVT FACL.: BEN    ACC LEV:  BEN  1 SER  1 BOP  1   RESP DUE:  SAT  09-22-2007
ABSTRACT.: REQUESTS TESTS AND X-RAYS FOR DIZZINESS AND SWELLING
STATUS DT: 09-05-2007  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:          RCT: D EXT: D DATE ENTD: 07-24-2007
REMARKS..:




   G0002       MORE PAGES TO FOLLOW . . .
```

JA100

```
EDGL5            *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *    04-13-2023
PAGE 007 OF      *              FULL SCREEN FORMAT              *    10:20:40


REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP              QTR.: G01-501L   RCV OFC: BOP
REMEDY ID: 457305-A1      SUB1: 26AM SUB2:     DATE RCV:   09-19-2007
UNT  RCV..:UNIT A-2      QTR RCV.: A21-127L     FACL RCV: BEN
UNT  ORG..:UNIT A-2      QTR ORG.: A21-127L     FACL ORG: BEN
EVT FACL.: BEN   ACC LEV:  BEN  1 SER  1 BOP  1   RESP DUE:  MON  10-29-2007
ABSTRACT.: REQUESTS TESTS AND X-RAYS FOR DIZZINESS AND SWELLING
STATUS DT: 10-22-2007  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: P EXT:   DATE ENTD: 09-20-2007
REMARKS..:




REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP              QTR.: G01-501L   RCV OFC: BEN
REMEDY ID: 467647-F1      SUB1: 26BM SUB2:     DATE RCV:   09-26-2007
UNT  RCV..:UNIT A-2      QTR RCV.: A21-127L     FACL RCV: BEN
UNT  ORG..:UNIT A-2      QTR ORG.: A21-127L     FACL ORG: BEN
EVT FACL.: BEN   ACC LEV:  BEN  1 SER  1          RESP DUE:  TUE  10-16-2007
ABSTRACT.: RE: TO SEE DOCTOR TO DISCUSS LAB RESULTS.
STATUS DT: 10-16-2007  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: P EXT:   DATE ENTD: 09-26-2007
REMARKS..:











G0002       MORE PAGES TO FOLLOW . . .
```

JA101

```
   EDGL5              *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *    04-13-2023
PAGE 008 OF       *                 FULL SCREEN FORMAT             *    10:20:40


REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP              QTR.: G01-501L   RCV OFC: SER
REMEDY ID: 467647-R1      SUB1: 26BM SUB2:     DATE RCV:   10-25-2007
UNT  RCV..:UNIT A-2     QTR RCV.: A21-127L     FACL RCV: BEN
UNT  ORG..:UNIT A-2     QTR ORG.: A21-127L     FACL ORG: BEN
EVT FACL.: BEN    ACC LEV:  BEN  1 SER  1           RESP DUE:  SAT  11-24-2007
ABSTRACT.: REQUESTS TO SEE DOCTOR TO DISCUSS LAB RESULTS
STATUS DT: 11-19-2007  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:         RCT: P EXT:   DATE ENTD: 10-25-2007
REMARKS..:




REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP              QTR.: G01-501L   RCV OFC: TDG
REMEDY ID: 528123-F1      SUB1: 26AM SUB2:     DATE RCV:   02-26-2009
UNT  RCV..:UNIT D      QTR RCV.: D06-006U      FACL RCV: TDG
UNT  ORG..:UNIT D      QTR ORG.: D06-006U      FACL ORG: TDG
EVT FACL.: TDG    ACC LEV:  TDG  1                  RESP DUE:  WED  03-18-2009
ABSTRACT.: LUMPS IN NECK/REQ TO SEE DOCTOR
STATUS DT: 03-17-2009  STATUS CODE: CLG STATUS REASON: GRT
INCRPTNO.:         RCT: P EXT:   DATE ENTD: 02-26-2009
REMARKS..:
```

```
   G0002      MORE PAGES TO FOLLOW . . .
```

JA102

```
  EDGL5            *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *    04-13-2023
PAGE 009 OF      *                FULL SCREEN FORMAT              *    10:20:40


REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP                QTR.: G01-501L   RCV OFC: TDG
REMEDY ID: 587591-F1      SUB1: 26BM SUB2:       DATE RCV:   04-28-2010
UNT  RCV..:UNIT D       QTR RCV.: D06-006L      FACL RCV: TDG
UNT  ORG..:UNIT D       QTR ORG.: D06-006L      FACL ORG: TDG
EVT FACL.: TDG    ACC LEV:  TDG  1 SER  3          RESP DUE:  TUE  05-18-2010
ABSTRACT.: REQ TO BE SEEN BE DR OR ENT FOR SWOLLEN GLAND
STATUS DT: 05-12-2010   STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: P EXT:   DATE ENTD: 04-28-2010
REMARKS..:




REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP                QTR.: G01-501L   RCV OFC: SER
REMEDY ID: 587591-R1      SUB1: 26BM SUB2:       DATE RCV:   05-25-2010
UNT  RCV..:UNIT D       QTR RCV.: D06-006L      FACL RCV: TDG
UNT  ORG..:UNIT D       QTR ORG.: D06-006L      FACL ORG: TDG
EVT FACL.: TDG    ACC LEV:  TDG  1 SER  3          RESP DUE:
ABSTRACT.: REQ TO BE SEEN BE DR OR ENT FOR SWOLLEN GLAND
STATUS DT: 06-09-2010   STATUS CODE: REJ STATUS REASON: QUA RSR
INCRPTNO.:          RCT:   EXT:   DATE ENTD: 06-09-2010
REMARKS..:










  G0002       MORE PAGES TO FOLLOW . . .
```

JA103

```
EDGL5              *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     04-13-2023
PAGE 010 OF      *                  FULL SCREEN FORMAT            *     10:20:40


REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP              QTR.: G01-501L   RCV OFC: SER
REMEDY ID: 587591-R2      SUB1: 26BM SUB2:     DATE RCV:   06-29-2010
UNT  RCV..:UNIT D       QTR RCV.: D06-006L     FACL RCV: TDG
UNT  ORG..:UNIT D       QTR ORG.: D06-006L     FACL ORG: TDG
EVT FACL.: TDG    ACC LEV:  TDG  1 SER  3         RESP DUE:
ABSTRACT.: REQ TO BE SEEN BE DR OR ENT FOR SWOLLEN GLAND
STATUS DT: 06-30-2010  STATUS CODE: REJ STATUS REASON: SIG RSR
INCRPTNO.:         RCT:   EXT:   DATE ENTD: 06-30-2010
REMARKS..:




REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP              QTR.: G01-501L   RCV OFC: SER
REMEDY ID: 587591-R3      SUB1: 26BM SUB2:     DATE RCV:   07-27-2010
UNT  RCV..:UNIT D       QTR RCV.: D06-006L     FACL RCV: TDG
UNT  ORG..:UNIT D       QTR ORG.: D06-006L     FACL ORG: TDG
EVT FACL.: TDG    ACC LEV:  TDG  1 SER  3         RESP DUE:  SAT  09-25-2010
ABSTRACT.: REQ TO BE SEEN BY DR OR ENT FOR SWOLLEN GLAND
STATUS DT: 08-30-2010  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:         RCT: P EXT: P DATE ENTD: 07-27-2010
REMARKS..:




G0002        MORE PAGES TO FOLLOW . . .
```

JA104

```
  EDGL5              *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *    04-13-2023
PAGE 011 OF      *                 FULL SCREEN FORMAT              *    10:20:40


REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP                QTR.: G01-501L   RCV OFC: BOP
REMEDY ID: 587591-A1      SUB1: 26BM SUB2:       DATE RCV:   10-14-2010
UNT  RCV..:UNIT D       QTR RCV.: D06-006L       FACL RCV: TDG
UNT  ORG..:UNIT D       QTR ORG.: D06-006L       FACL ORG: TDG
EVT FACL.: TDG   ACC LEV:  TDG  1 SER  3         RESP DUE:
ABSTRACT.: REQ TO BE SEEN BY DR OR ENT FOR SWOLLEN GLAND
STATUS DT: 11-09-2010  STATUS CODE: REJ STATUS REASON: UTA IRQ RAP OTH RSA
INCRPTNO.:          RCT:    EXT:   DATE ENTD: 11-09-2010
REMARKS..: YOU MUST PROVIDE STAFF VERIFICATION ON BOP
           LETTERHEAD DOCUMENTING THAT THE UNTIMELY
           FILING OF THIS APPEAL WAS NOT YOUR FAULT.


REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP                QTR.: G01-501L   RCV OFC: MCD
REMEDY ID: 658231-F1      SUB1: 26DM SUB2: 26AM DATE RCV:   09-26-2011
UNT  RCV..:UNIT A3      QTR RCV.: A05-105LH      FACL RCV: MCD
UNT  ORG..:UNIT A3      QTR ORG.: A05-105LH      FACL ORG: MCD
EVT FACL.: MCD    ACC LEV:                       RESP DUE:
ABSTRACT.: I/M STATES UNABLE TO GET PRESCRIPTION FILLED
STATUS DT: 09-28-2011  STATUS CODE: REJ STATUS REASON: INF
INCRPTNO.:          RCT:    EXT:   DATE ENTD: 09-28-2011
REMARKS..: YOU MUST ATTEMPT INFORMAL RESOLUTION ON A PROPER
           FORM AND ATTACH IT TO YOUR BP-9.




  G0002        MORE PAGES TO FOLLOW . . .
```

JA105

```
  EDGL5              *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *    04-13-2023
PAGE 012 OF       *                FULL SCREEN FORMAT              *    10:20:40


REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP                 QTR.: G01-501L   RCV OFC: MCD
REMEDY ID: 659416-F1        SUB1: 26DM SUB2:       DATE RCV:   10-06-2011
UNT  RCV..:UNIT A3      QTR RCV.: A05-105LH     FACL RCV: MCD
UNT  ORG..:UNIT A3      QTR ORG.: A05-105LH     FACL ORG: MCD
EVT FACL.: MCD    ACC LEV:  MCD  1                    RESP DUE:  WED  10-26-2011
ABSTRACT.: I/M REQUESTING PRESCRIPTIONS RECEIVED FROM MED TRIP
STATUS DT: 10-12-2011   STATUS CODE: CLO STATUS REASON: WDN
INCRPTNO.:          RCT: P EXT:   DATE ENTD: 10-06-2011
REMARKS..: I/M STATES HE WAS GIVEN PRESCRIPTIONS FROM OUTSIDE
           MED TRIP AND IS UNABLE TO GET IT FILLED.



REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP                 QTR.: G01-501L   RCV OFC: LEX
REMEDY ID: 730707-F1        SUB1: 13AM SUB2:       DATE RCV:   04-17-2013
UNT  RCV..:BG          QTR RCV.: B04-278L      FACL RCV: LEX
UNT  ORG..:BG          QTR ORG.: B04-278L      FACL ORG: LEX
EVT FACL.: LEX    ACC LEV:  LEX  1                    RESP DUE:  TUE  05-07-2013
ABSTRACT.: I/M REQUESTS REASON WHY HE HAD MGTV PLACED ON HIM.
STATUS DT: 04-25-2013   STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: P EXT:   DATE ENTD: 04-17-2013
REMARKS..:




G0002       MORE PAGES TO FOLLOW . . .
```

JA106

```
EDGL5              *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      04-13-2023
PAGE 013 OF        *              FULL SCREEN FORMAT              *      10:20:40


REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP               QTR.: G01-501L   RCV OFC: ELK
REMEDY ID: 761951-F1      SUB1: 26EC SUB2:      DATE RCV:   12-19-2013
UNT  RCV..:UNIT H-A      QTR RCV.: H03-036L      FACL RCV: ELK
UNT  ORG..:UNIT H-A      QTR ORG.: H03-036L      FACL ORG: ELK
EVT FACL.: ELK    ACC LEV:  ELK  1 NER  1 BOP  1  RESP DUE:  WED  01-08-2014
ABSTRACT.: REQ TO SEE AN ORTHO DR FOR RIGHT SHOULDER/MRI
STATUS DT: 12-26-2013  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:          RCT: P EXT:   DATE ENTD: 12-19-2013
REMARKS..:




REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP               QTR.: G01-501L   RCV OFC: NER
REMEDY ID: 761951-R1      SUB1: 26EC SUB2:      DATE RCV:   01-06-2014
UNT  RCV..:UNIT H-A      QTR RCV.: H03-036L      FACL RCV: ELK
UNT  ORG..:UNIT H-A      QTR ORG.: H03-036L      FACL ORG: ELK
EVT FACL.: ELK    ACC LEV:  ELK  1 NER  1 BOP  1  RESP DUE:  WED  02-05-2014
ABSTRACT.: REQ TO SEE AN ORTHO DR FOR RIGHT SHOULDER/MRI
STATUS DT: 02-04-2014  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: P EXT:   DATE ENTD: 01-06-2014
REMARKS..:
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

JA107

```
EDGL5              *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *    04-13-2023
PAGE 014 OF      *              FULL SCREEN FORMAT              *      10:20:40


REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP              QTR.: G01-501L   RCV OFC: BOP
REMEDY ID: 761951-A1      SUB1: 26EC SUB2:      DATE RCV:   02-24-2014
UNT  RCV..:UNIT H-A     QTR RCV.: H03-036L     FACL RCV: ELK
UNT  ORG..:UNIT H-A     QTR ORG.: H03-036L     FACL ORG: ELK
EVT FACL.: ELK    ACC LEV:  ELK  1 NER  1 BOP  1  RESP DUE:  FRI  04-25-2014
ABSTRACT.: REQ TO SEE AN ORTHO DR FOR RIGHT SHOULDER/MRI
STATUS DT: 06-09-2014  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:          RCT: P EXT: P DATE ENTD: 03-19-2014
REMARKS..:




REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP              QTR.: G01-501L   RCV OFC: EDG
REMEDY ID: 789083-F1      SUB1: 26DC SUB2:      DATE RCV:   08-05-2014
UNT  RCV..:CAMP       QTR RCV.: D06-227U      FACL RCV: EDG
UNT  ORG..:CAMP       QTR ORG.: D06-227U      FACL ORG: EDG
EVT FACL.: EDG   ACC LEV:  EDG  1            RESP DUE:  MON  08-25-2014
ABSTRACT.: WANTS MEDS FOR SHOULDER PAIN
STATUS DT: 08-25-2014  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:          RCT: P EXT:  DATE ENTD: 08-05-2014
REMARKS..:


                  CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE          DEPARTMENT   TO    DATE ASSN    TRK TYPE    DATE RETURNED
TUE 08-12-2014    MED SVC      LFR   08-05-2014     INV        08-25-2014
MON 08-25-2014    CEO          NB    08-25-2014     SIG        08-25-2014








G0002      MORE PAGES TO FOLLOW . . .
```

JA108

```
  EDGL5            *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *    04-13-2023
PAGE 015 OF      *              FULL SCREEN FORMAT              *     10:20:40


REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP              QTR.: G01-501L   RCV OFC: COL
REMEDY ID: 1092420-F1     SUB1: 13ZM SUB2:       DATE RCV:   08-26-2021
UNT  RCV..:B-1           QTR RCV.: B11-035U      FACL RCV: COL
UNT  ORG..:B-1           QTR ORG.: B11-035U      FACL ORG: COL
EVT FACL.: COL    ACC LEV:  COL  1                 RESP DUE:  WED  09-15-2021
ABSTRACT.: REQUESTING B-337 & MALE RISK SCORING SHEET (PATTERN)
STATUS DT: 08-31-2021  STATUS CODE: CLO STATUS REASON: WDN
INCRPTNO.:          RCT: P EXT:   DATE ENTD: 08-26-2021
REMARKS..:




REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP              QTR.: G01-501L   RCV OFC: COL
REMEDY ID: 1096877-F1     SUB1: 31ZM SUB2:       DATE RCV:   10-06-2021
UNT  RCV..:B-1           QTR RCV.: B11-035L      FACL RCV: COL
UNT  ORG..:B-1           QTR ORG.: B11-035L      FACL ORG: COL
EVT FACL.: COL    ACC LEV:  COL  1 SER  1 BOP  1  RESP DUE:  TUE  10-26-2021
ABSTRACT.: FSA TIME CREDITS/DSCC APPEAL
STATUS DT: 10-19-2021  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: P EXT:   DATE ENTD: 10-06-2021
REMARKS..:









G0002      MORE PAGES TO FOLLOW . . .
```

JA109

```
  EDGL5            *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *    04-13-2023
PAGE 016 OF       *            FULL SCREEN FORMAT              *     10:20:40


REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP              QTR.: G01-501L   RCV OFC: SER
REMEDY ID: 1096877-R1     SUB1: 31ZM SUB2:     DATE RCV:   11-17-2021
UNT  RCV..:B-1           QTR RCV.: B11-035L     FACL RCV: COL
UNT  ORG..:B-1           QTR ORG.: B11-035L     FACL ORG: COL
EVT FACL.: COL    ACC LEV:  COL  1 SER  1 BOP  1  RESP DUE:  SUN  01-16-2022
ABSTRACT.: FSA TIME CREDITS/DSCC APPEAL
STATUS DT: 01-26-2022  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: P EXT: P DATE ENTD: 12-08-2021
REMARKS..:




REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP              QTR.: G01-501L   RCV OFC: BOP
REMEDY ID: 1096877-A1     SUB1: 31ZM SUB2: 30ZM DATE RCV:   02-09-2022
UNT  RCV..:A-1           QTR RCV.: A02-032U     FACL RCV: COL
UNT  ORG..:B-1           QTR ORG.: B11-035L     FACL ORG: COL
EVT FACL.: COL    ACC LEV:  COL  1 SER  1 BOP  1  RESP DUE:  SUN  04-10-2022
ABSTRACT.: FSA TIME CREDITS/DSCC APPEAL
STATUS DT: 03-11-2022  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: P EXT: P DATE ENTD: 02-18-2022
REMARKS..:










G0002       MORE PAGES TO FOLLOW . . .
```

JA110

```
  EDGL5           *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     04-13-2023
PAGE 017 OF      *               FULL SCREEN FORMAT              *     10:20:40


REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP                QTR.: G01-501L   RCV OFC: WIL
REMEDY ID: 1123430-F1     SUB1: 31ZC SUB2:       DATE RCV:   06-14-2022
UNT  RCV..:CAMP         QTR RCV.: G01-311L       FACL RCV: WIL
UNT  ORG..:CAMP         QTR ORG.: G01-311L       FACL ORG: WIL
EVT FACL.: WIL    ACC LEV:  WIL 1 SER  2 BOP  1  RESP DUE:  MON  07-04-2022
ABSTRACT.: SENTENCE TIME
STATUS DT: 06-23-2022  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: N EXT:   DATE ENTD: 06-14-2022
REMARKS..:




REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP                QTR.: G01-501L   RCV OFC: SER
REMEDY ID: 1123430-R1     SUB1: 31ZC SUB2:       DATE RCV:   07-05-2022
UNT  RCV..:CAMP         QTR RCV.: G01-311L       FACL RCV: WIL
UNT  ORG..:CAMP         QTR ORG.: G01-311L       FACL ORG: WIL
EVT FACL.: WIL    ACC LEV:  WIL 1 SER  2 BOP  1   RESP DUE:
ABSTRACT.: SENTENCE TIME
STATUS DT: 07-08-2022  STATUS CODE: REJ STATUS REASON: FRM RSR
INCRPTNO.:          RCT:   EXT:   DATE ENTD: 07-08-2022
REMARKS..:


















G0002       MORE PAGES TO FOLLOW . . .
```

JA111

```
EDGL5              *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     04-13-2023
PAGE 018 OF        *              FULL SCREEN FORMAT              *     10:20:40


REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP                QTR.: G01-501L   RCV OFC: SER
REMEDY ID: 1123430-R2      SUB1: 31ZC SUB2:       DATE RCV:   07-20-2022
UNT  RCV..:CAMP          QTR RCV.: G01-311L      FACL RCV: WIL
UNT  ORG..:CAMP          QTR ORG.: G01-311L      FACL ORG: WIL
EVT FACL.: WIL    ACC LEV:  WIL  1 SER  2 BOP  1  RESP DUE:  FRI  08-19-2022
ABSTRACT.: SENTENCE TIME
STATUS DT: 08-31-2022  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: N EXT:   DATE ENTD: 07-21-2022
REMARKS..:




REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP                QTR.: G01-501L   RCV OFC: WIL
REMEDY ID: 1130662-F1      SUB1: 13LM SUB2: 15ZM DATE RCV:   08-17-2022
UNT  RCV..:CAMP          QTR RCV.: G01-311U      FACL RCV: WIL
UNT  ORG..:CAMP          QTR ORG.: G01-311U      FACL ORG: WIL
EVT FACL.: WIL    ACC LEV:  WIL  1 SER  1 BOP  1  RESP DUE:  TUE  09-06-2022
ABSTRACT.: REQUESTING FSA INCENTIVES FOR PROGRAM PARTICIPATION
STATUS DT: 08-24-2022  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: N EXT:   DATE ENTD: 08-17-2022
REMARKS..:
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

JA112

```
  EDGL5              *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     04-13-2023
PAGE 019 OF      *                  FULL SCREEN FORMAT              *     10:20:40


REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP                 QTR.: G01-501L   RCV OFC: SER
REMEDY ID: 1130662-R1     SUB1: 13LM SUB2: 15ZM DATE RCV:   09-02-2022
UNT  RCV..:CAMP         QTR RCV.: G01-501L      FACL RCV: WIL
UNT  ORG..:CAMP         QTR ORG.: G01-311U      FACL ORG: WIL
EVT FACL.: WIL    ACC LEV:  WIL  1 SER  1 BOP  1   RESP DUE:  SUN  10-02-2022
ABSTRACT.: REQUESTING FSA INCENTIVES FOR PROGRAM PARTICIPATION
STATUS DT: 09-26-2022  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: N EXT:   DATE ENTD: 09-07-2022
REMARKS..:




REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP                 QTR.: G01-501L   RCV OFC: BOP
REMEDY ID: 1123430-A1     SUB1: 31ZC SUB2:      DATE RCV:   09-15-2022
UNT  RCV..:CAMP         QTR RCV.: G01-312L      FACL RCV: WIL
UNT  ORG..:CAMP         QTR ORG.: G01-311L      FACL ORG: WIL
EVT FACL.: WIL    ACC LEV:  WIL  1 SER  2 BOP  1   RESP DUE:  MON  11-14-2022
ABSTRACT.: SENTENCE TIME
STATUS DT: 11-15-2022  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: P EXT: P DATE ENTD: 10-11-2022
REMARKS..:
```

```
  G0002       MORE PAGES TO FOLLOW . . .
```

JA113

```
EDGL5              *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     04-13-2023
PAGE 020 OF        *              FULL SCREEN FORMAT             *     10:20:40


REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP              QTR.: G01-501L   RCV OFC: BOP
REMEDY ID: 1130662-A1      SUB1: 30ZM SUB2:      DATE RCV:   10-11-2022
UNT  RCV..:CAMP         QTR RCV.: G01-312L     FACL RCV: WIL
UNT  ORG..:CAMP         QTR ORG.: G01-311U     FACL ORG: WIL
EVT FACL.: WIL    ACC LEV:  WIL  1 SER  1 BOP  1   RESP DUE: SAT  12-10-2022
ABSTRACT.: REQUESTING FSA INCENTIVES FOR PROGRAM PARTICIPATION
STATUS DT: 11-29-2022  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:          RCT: P EXT: P DATE ENTD: 10-17-2022
REMARKS..:




REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP              QTR.: G01-501L   RCV OFC: WIL
REMEDY ID: 1146777-F1      SUB1: 18BC SUB2:      DATE RCV:   01-05-2023
UNT  RCV..:CAMP         QTR RCV.: G01-501L     FACL RCV: WIL
UNT  ORG..:CAMP         QTR ORG.: G01-501L     FACL ORG: WIL
EVT FACL.: WIL    ACC LEV:  WIL  1 SER  1         RESP DUE: WED  01-25-2023
ABSTRACT.: REQUESTING TO HAVE VISIT CONDUCTED ON THE ACTUAL DAY
STATUS DT: 01-13-2023  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: N EXT:    DATE ENTD: 01-05-2023
REMARKS..: REQUESTING TO HAVE VISIT CONDUCTED ON THE ACTUAL DAY
           OF THE NEXT UPCOMING HOLIDAY
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

JA114

```
 EDGL5              *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      04-13-2023
PAGE 021 OF 021 *                 FULL SCREEN FORMAT               *      10:20:40


REGNO: 11192-171 NAME: BONNIE, GREGORY
RSP OF...: WIL UNT/LOC/DST: 4 SCP                 QTR.: G01-501L   RCV OFC: SER
REMEDY ID: 1146777-R1      SUB1: 18BC SUB2:       DATE RCV:   01-27-2023
UNT  RCV..:4 SCP          QTR RCV.: G01-501L      FACL RCV: WIL
UNT  ORG..:CAMP           QTR ORG.: G01-501L      FACL ORG: WIL
EVT FACL.: WIL    ACC LEV:  WIL  1 SER  1         RESP DUE:  SUN  02-26-2023
ABSTRACT.: REQUESTING TO HAVE VISIT CONDUCTED ON THE ACTUAL DAY
STATUS DT: 03-08-2023  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: N EXT:   DATE ENTD: 02-15-2023
REMARKS..:




                39 REMEDY SUBMISSION(S) SELECTED
G0000         TRANSACTION SUCCESSFULLY COMPLETED
```

JA115

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Gregory Allen Bonnie, a/k/a Gregory Bonnie #21082, | ) ) ) | |
| Petitioner, | ) ) | |
| vs. | ) ) | C/A Number: 4:23-cv-01215-DCN-TER |
| Warden Dunbar, | ) ) ) | |
| Respondent. | ) ) ) | |

**PETITIONER'S REPLY TO RESPONDENT'S RESPONSE TO PETITION
AND MOTION TO DISMISS, OR FOR SUMMARY JUDGMENT**

John L. Warren III
Law Office of Bill Nettles
2008 Lincoln St.
Columbia, SC 29201
(803) 814-2826

Patricia L. Richman
Office of the Federal Public Defender
for the District of Maryland
6411 Ivy Lane
Greenbelt, MD 20770
(301) 344-0600

*Counsel for Petitioner*

JA116

## Table of Contents

Table of Authorities ................................................................................................. ii

Introduction ............................................................................................................... 1

The First Step Act ..................................................................................................... 2

Argument .................................................................................................................... 5

I.   BOP's Construction of the FSA is Inconsistent with the Law's Unambiguous
     Meaning. .......................................................................................................... 5

     A.   The plain language of the FSA dictates that Mr. Bonnie is eligible to
          earn time credits, except while "serving a sentence for" § 924(c). .......... 6

     B.   Statutory context confirms this interpretation. ..................................... 7

          1.   The contrasting language Congress used to describe the FSA's
               time-credit and terminally ill offender ineligibility provisions is
               conclusive evidence that they operate differently. ....................... 7

          2.   18 U.S.C. § 3584(c) does not provide otherwise. ........................... 9

     C.   The purpose of the FSA supports what the plain language and context
          dictate ....................................................................................................... 12

II.  BOP's Arguments Lack Merit. ....................................................................... 15

     A.   The FSA is unambiguous and *Chevron* deference does not apply. ........ 15

     B.   Other cases cited by BOP failed to distinguish between the FSA's
          mandatory time-credit incentives and other BOP programs. ............... 19

     C.   It would not be impracticable to disaggregate sentences for purposes
          of time-credit eligibility ........................................................................... 22

Conclusion ................................................................................................................ 24

JA117

## TABLE OF AUTHORITIES

### <u>Cases</u>

*Abramski v. United States,*
    573 U.S. 169 (2014) ................................................................................ 18, 19

*Bais Yaakov of Spring Valley v. Fed. Comms. Comm'n,*
    852 F.3d 1078 (D.C. Cir. 2017) ........................................................... 16

*Bittner v. United States,*
    143 S. Ct. 713 (2023) ............................................................................ 18

*Bostock v. Clayton Cnty., Georgia,*
    140 S. Ct. 1731 (2020) ......................................................................... 6

*Brodie v. Pliler,*
    No. 22-CIV-3821, 2022 WL 16751908 (S.D.N.Y. Nov. 7, 2022) ......... 4

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
    467 U.S. 837 (1984) ............................................................... 16, 18, 19

*Dep't of Homeland Sec. v. MacLean,*
    574 U.S. 383 (2015) ............................................................................. 7

*Giovinco v. Pullen,*
    No. 22-cv-1515, 2023 WL 1928108 (D. Conn. Feb. 10, 2023) ........... 16

*Jones v. Garza,*
    No. 22-cv-00764, 2023 WL 3354135 (N.D. Ohio April 18, 2023) ...... 17

*King v. Burwell,*
    759 F.3d 358 (4th Cir. 2014) .............................................................. 19

*Kisor v. Wilkie,*
    139 S. Ct. 2400 (2019) ........................................................................ 16

*Komando v. Luna,*
    No. 22-cv-425-SE, 2023 WL 310580 (D.N.H. Jan. 13, 2023) ........... 3, 4

*Lallave v. Martinez,*
    635 F. Supp. 3d 173 (E.D.N.Y. 2022) ................................................ 4, 14

JA118

*Ledford v. Lemaster*,
No. 23-30 DLB, 2023 WL 2905376 (E.D. Ky. Mar. 28, 2023) ...................20, 21

*Loper Bright Enters., Inc. v. Raimondo*,
45 F.4th 359 (D.C. Cir. 2022), *cert. granted*, 143 S. Ct. 2429 (2023) ...............16

*Lopez v. Davis*,
531 U.S. 230 (2001) ..................................................................................20

*Moody v. Gubbiotti*,
No. CV 21-12004, 2022 WL 4976308 (D.N.J. Oct. 3, 2022)...............................4

*Moreno v. Ives*,
842 F. App'x 18 (9th Cir. 2020)........................................................................21

*Noe v. True*,
No. 21-1373, 2022 WL 5080196 (10th Cir. Oct. 15, 2022)...............................17

*Parker Drilling Mgmt. Services, Ltd. v. Newton*,
139 S. Ct. 1881 (2019) ....................................................................................6

*Pillow v. Bureau of Prisons*,
No. 4:22-CV-00713 PSH, 2022 WL 13892877 (E.D. Ark. Oct. 21, 2022)...........4

*Pugin v. Garland*,
19 F.4th 437 (4th Cir. 2021) ............................................................................18

*Republic of Sudan v. Harrison*,
139 S. Ct. 1056 (2019) ....................................................................................6

*Sierra v. Jacquez*,
No. 2:22-CV-01509, 2022 WL 18046701 (W.D. Wash. Dec. 27, 2022) ...............4

*Sok v. Eischen*,
No. 22-cv-458, 2022 WL 17156797 (D. Minn. Oct. 26, 2022) .........16, 17, 18, 19

*Southwest Airlines Co. v. Saxon*,
142 S. Ct. 1783 (2022) ................................................................................6, 7

*Turner v. Keyes*,
No. 22-CV-321-WMC, 2022 WL 17338577 (W.D. Wis. Nov. 30, 2022)......17, 18

*Umejesi v. Warden*,
No. 22-cv-251-SE, 2023 U.S. Dist. LEXIS 56661 (D.N.H. Mar. 16, 2023) ........4

JA119

*United States v. Granderson,*
    511 U.S. 39 (1994) ........................................................................................ 18

*United States v. Llewlyn,*
    879 F.3d 1291 (11th Cir. 2018) ................................................................. 24

*United States v. Martin,*
    974 F.3d 124 (2d Cir. 2020) ...................................................................... 24

*United States v. Venable,*
    943 F.3d 187 (4th Cir. 2019) ....................................................................... 3

*Yufenyuy v. Warden,*
    --- F. Supp. 3d ---, No. 22-CV-443, 2023 WL 2398300 (D.N.H. Mar. 7, 2023) ... 4

**<u>Statutes</u>**

18 U.S.C. § 3584 ......................................................................................... 9, 10

18 U.S.C. § 3584(a) ............................................................................................ 9

18 U.S.C. § 3584(b) ............................................................................................ 9

18 U.S.C. § 3621(e)(2)(A) ................................................................................ 20

18 U.S.C. § 3621(e)(2)(B) ........................................................................... 20, 21

18 U.S.C. § 3632(d)(4)(A) ................................................................... 3, 4, 6, 20

18 U.S.C. § 3632(d)(4)(C) ........................................................................ 4, 20, 21

18 U.S.C. § 3632(d)(4)(D) ........................................ 1, 4, 5, 6, 7, 8, 14, 18, 21, 22

18 U.S.C. § 3632(d)(6) ........................................................................................ 5

18 U.S.C. § 3635(4) ........................................................................................... 6

18 U.S.C. § 4161 ............................................................................................... 11

18 U.S.C. § 4205(a) .......................................................................................... 11

18 U.S.C. § 924(c) .................................................................................. 1, 2, 6, 9, 10

21 U.S.C. § 841 ......................................................................................... 1, 5, 6

JA120

21 U.S.C. § 846 ................................................................................................ 1, 5, 6

34 U.S.C. § 60541(5)(c) ........................................................................................ 9

**Other Authorities**

BOP Program Statement 5140.42 ........................................................................ 12

BOP Program Statement 5410.01 CN-2 (Mar. 20, 2023) .................................... 13

BOP Program Statement 5880.28 ........................................................................ 23

BOP Program Statement 5880.30 ........................................................................ 11

Off. of Att'y Gen. U.S. Dep't of Justice, *The Attorney General's First Step Act Annual Report* 22 (2023), https://www.ojp.gov/first-step-act-annual-report-april-2023 ....................................................................................................................... 13

Treaty on the Execution of Penal Sentences, Mex-U.S., Nov. 25, 1976 .................... 12

U.S. Parole Commission. Rules and Procedures Manual § 2.2-04 ........................... 11

**Regulations**

28 C.F.R § 523.40 ................................................................................................ 13

28 C.F.R. § 2.5 .................................................................................................... 11

28 C.F.R. § 550.55(b)(5) ...................................................................................... 21

28 C.F.R. § 550.58 (2009) .................................................................................... 21

45 Fed. Reg. 44924-02 (July 2, 1980) .................................................................. 11

**Legislative Materials**

164 Cong. Rec. S7838 ........................................................................................... 3

First Step Act Independent Review Comm., *Report of the Independent Review Committee Pursuant to the Requirements of Title I Section 107(g) of the First Step Act (FSA) of 2018 (P.L. 115-391)* at 2 (Dec. 21, 2020), https://tinyurl.com/4euhswdb ............................................................................. 13

JA121

H.R. Rep. No. 115-699 (2018) ........................................................................... 12, 13, 14

S. Rep. No. 98-225 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182 .......................... 10

Senators Sheldon Whitehouse & John Cornyn, Comment Letter on Proposed FSA
    Time Credit Rule (Jan. 25, 2021) ................................................................... 13

JA122

## INTRODUCTION

The following is undisputed:

Gregory Bonnie is serving two sentences: (1) a 120-month sentence, which consists of concurrent 120-month sentences for convictions under 21 U.S.C. § 846 and 21 U.S.C. § 841;[1] and (2) a 24-month sentence for violating a supervised release term imposed for earlier convictions for 21 U.S.C. § 846 and 18 U.S.C. § 924(c).[2]

If Mr. Bonnie was serving only the 120-month sentence for the drug offenses, he would be eligible to earn First Step Act time credits ("FSA time credits" or "time credits") against the sentence because the underlying drug offenses are not ineligible under the FSA. Conversely, for the purpose of this motion, Mr. Bonnie does not dispute that, if he were serving only the 24-month revocation sentence, he would be ineligible to earn time credits against that sentence. That is because § 924(c) is an ineligible offense under the FSA and revocation sentences are attributed to the original conviction.

The dispute is this: Does the 24-month § 924(c) revocation sentence taint the separately imposed 120-month drug sentence such that Mr. Bonnie is ineligible to earn FSA time credits for the entire 144-month sentence? The answer is no. The FSA provides that a prisoner is ineligible to receive time credits "if the prisoner is serving a sentence for a conviction under" certain enumerated offenses. 18 U.S.C. § 3632(d)(4)(D). Based on the text of this provision, its context, and the purpose of the

---

[1] *United States v. Bonnie*, No. 2:19-cr-00060-DCN (D.S.C.).

[2] *United States v. Bonnie*, No. 2:04-cr-00546-DCN (D.S.C.).

JA123

First Step Act, Mr. Bonnie is not "serving a sentence for a conviction under" § 924(c) when he is serving his consecutive 120-month sentence for the eligible drug offenses. *See id.*

The argument in Respondent's[3] motion to dismiss relies almost entirely on a separate statutory provision, 18 U.S.C. § 3584(c), that does not impact FSA time credit eligibility. Specifically, § 3584(c) requires that multiple terms of imprisonment be treated as a *single* aggregate term of imprisonment "for administrative purposes." *Id.* BOP argues that this means Mr. Bonnie is actually serving a sentence for the § 924(c) supervised release violation for the entire 144-month sentence. That argument is flawed and cannot overcome the plain language of the statute. Moreover, the non-binding cases BOP cites do not dictate a different result. Those cases, like BOP's arguments here, either disregard the text, context, and purpose of the statue, or generally rely on BOP's administration of *discretionary* credit programs that predated the FSA.

This Court should grant Mr. Bonnie's writ of habeas corpus.

## THE FIRST STEP ACT

Described by a co-sponsor as "once-in-a-generation criminal justice reform," the First Step Act of 2018 combined front-end sentencing reforms with back-end

---

[3] Respondent will be referred to as "BOP" or "the government."

2

JA124

prison reforms to combat overincarceration, reduce recidivism, and enhance public safety.[4]

In the FSA, Congress created a "new type of sentencing credit" as an "incentive to encourage prisoners to participate in programs to reduce the risk that they will recidivate, with one goal being the cost savings associated with reduced recidivism and the transfer of eligible prisoners from BOP facilities into prerelease custody or supervised release."[5] *See* Ex. A at 3-16 (FSA, Pub. L. No. 115-391 Tit. I (Dec. 21, 2018)).[6] The mandatory time-credit scheme requires BOP to award time credits to eligible prisoners at a rate of either 10 or 15 days of credit for every 30 days of "successful participation in evidence-based recidivism reduction programming or productive activities." *Id.* at 6 (FSA § 101(a); 18 U.S.C. § 3632(d)(4)(A)).

The FSA time-credit program was a major shift away from most prior federal correctional incentive and reentry programs. In contrast to past credit programs, which vested BOP with significant discretion, the FSA *requires* BOP to provide time-

---

[4] 164 Cong. Rec. S7838, 2018 WL 6693848 (daily ed. Dec. 19, 2018) (statement of Sen. Grassley); *see also United States v. Venable*, 943 F.3d 187, 188 (4th Cir. 2019) ("In late 2018, Congress enacted and the President signed into law the First Step Act, with the purpose of modifying prior sentencing law and expanding vocational training, early-release programs, and other initiatives designed to reduce recidivism.").

[5] *See Komando v. Luna*, No. 22-cv-425-SE, 2023 WL 310580 (D.N.H. Jan. 13, 2023) (summarizing the FSA's prison reforms and their implementation by BOP).

[6] The time-credit provisions of the First Step Act were codified in different places throughout the United States Code. For ease of reference, Petitioner has attached an annotated version of the FSA as enacted at Exhibit A, along with notations about where each provision has been codified.

JA125

credit incentives when certain statutory criteria are met.[7] The FSA directs that federal prisoners who participate in and complete eligible evidence-based recidivism reduction programs and/or productive activities "shall" earn time credits pursuant to the calculation formula provided in the statute; that those credits "shall be applied toward time in prerelease custody or supervised release," and that a person "shall" be transferred to one of the two early release options. *Id.* at 6-7 (FSA § 101(a); 18 U.S.C. § 3632(d)(4)(A), (C)). It also requires that the "incentives described in this subsection *shall* be in addition to any other rewards or incentives for which a prisoner

---

[7] Many courts have relied on the mandatory nature of the time-credit programs to reject BOP assertions that it holds the discretion to deem people ineligible for credits, or to bar the application of time credits. *See, e.g.*, *Moody v. Gubbiotti*, No. CV 21-12004, 2022 WL 4976308, at *5 (D.N.J. Oct. 3, 2022) (rejecting BOP assertion that it could exercise its discretion to withhold time credits from a person with a parole detainer); *Lallave v. Martinez*, 635 F. Supp. 3d 173, 189–190 (E.D.N.Y. 2022) (holding that 18 U.S.C. § 3632(d)(4)(D)(lviii) must be read narrowly to encompass only situations where an individual has been convicted of a penalty enhancement under 21 U.S.C. § 841(b)(1)(C)); *Komando*, 2023 WL 310580, at *5–6, *report and recommendation approved sub nom*, *Komando v. FCI Berlin, Warden*, No. 22-CV-425, 2023 WL 1782034 (D.N.H. Feb. 6, 2023) (finding that the FSA's "final order of removal" ineligibility provision was unambiguous and rejecting BOP assertion that it could deny time credits to people with immigration detainers); *Sierra v. Jacquez*, No. 2:22-CV-01509, 2022 WL 18046701, at *2 (W.D. Wash. Dec. 27, 2022) *report and recommendation adopted*, No. C22-1509, 2023 WL 184225 (W.D. Wash. Jan. 13, 2023) (same); *Brodie v. Pliler*, No. 22-CIV-3821, 2022 WL 16751908, at *3 (S.D.N.Y. Nov. 7, 2022) (rejecting BOP's assertion that it could impose an 18-month prerelease cutoff for the accrual and application of time credits due to administrability issues); *Pillow v. Bureau of Prisons*, No. 4:22-CV-00713 PSH, 2022 WL 13892877 (E.D. Ark. Oct. 21, 2022) (same); *Yufenyuy v. Warden*, --- F. Supp. 3d. ---, No. 22-CV-443, 2023 WL 2398300, at *4 (D.N.H. Mar. 7, 2023) (finding "28 C.F.R. § 523.42(a) cannot be applied to prevent [defendant] from earning time credits to which he is entitled under the plain language of the FSA"); *see also Umejesi v. Warden*, No. 22-cv-251-SE, 2023 U.S. Dist. LEXIS 56661, at *11 (D.N.H. Mar. 16, 2023), *report and recommendation approved sub nom*, *Umejesi v. Warden, FCI Berlin*, No. 22-CV-251, 2023 WL 4101455 (D.N.H. Mar. 30, 2023) (same).

JA126

may be eligible." *Id.* at 11 (FSA § 101(a); 18 U.S.C. § 3632(d)(6)) (emphasis added). And rather than delegate to BOP the task of deciding who would and would not be eligible for credits, it directed that only people "serving a sentence for a conviction" under one of 68 categories of offenses would be ineligible. *Id.* at 7 (FSA § 101(a); 18 U.S.C. § 3632(d)(4)(D)).

In addition to creating the new time-credit program, Congress also amended existing law to limit BOP's discretion over certain early-release programs that pre-dated the FSA. It ended BOP's absolute control over compassionate release. *Id.* at 54 (FSA § 603(b); 18 U.S.C. § 3582(c)(1)(A)).[8] And, it added language to Second Chance Act requiring BOP to transfer low-risk prisoners to home confinement. *Id.* at 52 (FSA § 602; 18 U.S.C. § 3624(c)(2)).[9]

<div align="center">

**ARGUMENT**

</div>

I.    **BOP's Construction of the FSA is Inconsistent with the Law's Unambiguous Meaning.**

The text, context, and purpose of the First Step Act provide that Mr. Bonnie is eligible to earn time credits while he is serving the 120-month sentence for convictions under 21 U.S.C. §§ 841, 846.

---

[8] This amendment gave people to bring a motion appeal a failure by BOP to bring a reduction-in-sentence motion on their behalf, after meeting certain requirements. Prior to this change, BOP alone could file a motion for a reduction-in-sentence.

[9] This change added a directive to § 3624(c)(2) to require that "The Bureau of Prisons *shall* to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph."

5

JA127

**A.    The plain language of the FSA dictates that Mr. Bonnie is eligible to earn time credits, except while "serving a sentence for" § 924(c).**

Statutory interpretation always begins with the language of the statute. *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1056 (2019). The language is interpreted according to its "ordinary, contemporary, common meaning." *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1788 (2022) (citation omitted). "To discern that ordinary meaning, . . . words 'must be read' and interpreted 'in their context,' not in isolation." *Id.* (citing *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1888 (2019)). "[W]hen the meaning of the statute's term is plain, our job is at an end." *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1749 (2020).

Title I of the FSA, as codified at § 3632(d)(4)(A), provides that "a prisoner, except for an ineligible prisoner under subparagraph D, who successfully completes [programming] shall earn time credits . . . ." Ex. A. at 6. A "prisoner" is defined, in relevant part, as "a person who has been sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense." 18 U.S.C. § 3635(4). And subparagraph (D) provides that a "prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction" for an offense listed as disqualifying him from earning time credits. 18 U.S.C. § 3632(d)(4)(D).

Petitioner Bonnie has two sentences to serve. One is for convictions for eligible offenses (21 U.S.C §§ 841, 846). The other is for a violation of a supervised release term imposed for a § 924(c) conviction—an ineligible offense. But while Mr. Bonnie is *not* serving the § 924(c) revocation sentence, he *is* eligible to earn time credits under the plain language of the FSA. During that period, he is "a prisoner" (*i.e.*, he has been

6

JA128

sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense) who is not "ineligible" under subparagraph D (*i.e.*, he is not serving a sentence for an offense listed in 3632(d)(4)(D)).

**B.    Statutory context confirms this interpretation.**

**1.    The contrasting language Congress used to describe the FSA's time-credit and terminally ill offender ineligibility provisions is conclusive evidence that they operate differently.**

In the First Step Act, Congress used different language to explain who would be ineligible for the different early-release programs amended or created in the Act. "Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another." *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015). "Where a document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." *Southwest Airlines Co.*, 142 S. Ct. at 1789 (cleaned up).

In Section 603 of the FSA, Congress expanded the Second Chance Act of 2007's pilot program for eligible elderly offenders to include eligible terminally ill offenders, among other changes.[10] Ex. A at 52–56 (34 U.S.C. § 60541(5)(c)). Like the time-credit incentive, the expanded pilot program excludes certain inmates from eligibility. But rather than repeat the exclusionary language from the new time-credit program

---

[10] Congress also expanded the pool of who could be eligible for early transfer to home confinement as an "elderly offender" to include people who were 60 years old (the prior age requirement was 65 years); had served two-thirds of their sentence (instead of 75 percent), and by striking the preexisting 10-year minimum requirement.

7

JA129

("serving a sentence for a conviction"), Congress adapted its Second Chance Act definition of "eligible elderly offender."[11] Unlike the FSA time credit's exclusion provision, the terminally ill offender exclusion expressly applies to a defendant convicted of multiple offenses, so long as *any one* of the offenses is listed as a disqualifying offense:

> (D) ELIGIBLE TERMINALLY ILL OFFENDER. —The term 'eligible terminally ill offender' means an offender in the custody of the Bureau of Prisons who—
>
> "(i) is serving a term of imprisonment based on conviction for *an offense or offenses that do not include* any crime of violence (as defined in section 16(a) of title 18, United States Code), sex offense (as defined in section 111(5) of the Sex Offender Registration and Notification Act (34 U.S.C. 20911(5))), offense described in section 2332b(g)(5)(B) of title 18, United States Code, or offense under chapter 37 of title 18, United States Code[.]

Ex. A at 54 (FSA § 603(a)(5)(B)) (emphasis added). Under these terms, an individual is not eligible for the terminally ill offender pilot project if he is serving a "term of imprisonment" that includes *any* excludable offense.

The contrast between the language Congress selected to describe eligibility for early-release programs within the text of the First Step Act is conclusive. If Congress intended the same expansive exclusion for FSA time credits, it surely would have used the readily available language from the Second Chance Act to say so. But instead, it provided that an otherwise eligible individual is ineligible to earn FSA time credits only while serving "a sentence" for the excludable offense. The language of subparagraph 3632(d)(4)(D)'s exclusion is unique. It is not drawn from any other statute, and it is not repeated anywhere else in the FSA.

---

[11] Compare Ex. A at 7 (FSA § 101(a)) with Ex. A at 54 (FSA § 603)).

8

JA130

### 2.    18 U.S.C. § 3584(c) does not provide otherwise.

In its motion to dismiss, BOP largely ignores both the text and context of the FSA's ineligibility provision and relies instead on 18 U.S.C. § 3584(c) and cases applying that statute. BOP argues that because Mr. Bonnie is "serving a sentence under" 18 U.S.C. § 924(c), he is ineligible to earn time credits for his entire term of imprisonment under 18 U.S.C. § 3584(c), which directs that "multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." BOP is wrong. That multiple sentences are "treated for administrative purposes as a single, aggregate *term of imprisonment*" does not mean that an individual is actually "*serving a sentence*" for each offense of conviction for the entire, aggregated "term of imprisonment."[12]

Section 3584 is the Sentencing Reform Act's ("SRA") provision addressing "multiple sentences of imprisonment." Subsection (a) gives courts the authority to impose sentences for offenses concurrently or consecutively. Subsection (b) preserves the integrity of each distinct offense in explaining that, for "each offense" for which a term of imprisonment is being imposed, the court shall consider the factors set forth in § 3553(a). And subsection (c) explains that multiple sentences will be "treated for administrative purposes as a single, aggregate term of imprisonment."

---

[12] The elderly and terminally ill offender pilot project, discussed above, expressly provides, "for purposes of [that] section," that "[t]he term 'term of imprisonment' includes multiple terms of imprisonment ordered to run consecutively or concurrently, which shall be treated as a single, aggregate term of imprisonment." 34 U.S.C. § 60541(5)(c). The FSA time credits statute does not include such a provision.

9

JA131

Section 3584 does not provide that multiple sentences, especially those imposed to run consecutively, will lose their separate character. To the contrary, as explained in Senate Report No. 98-225, the focus on "each offense" in § 3584(b) was meant to convey that "[a]lthough similar offenses committed in the course of a single criminal episode would ordinarily be appropriate subjects for concurrent sentences, there may be instances in which the just punishment purpose of sentencing might require the imposition of distinct, separately identifiable sentences for each of the particular offenses the defendant is found to have committed." S. Rep. No. 98-225, at 128 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3311. As for subsection (c), the report explains it "provides that consecutive terms of imprisonment shall be treated as an aggregate for administrative purposes, thus simplifying administration." *Id.* Put simply, administratively aggregating a 10-year drug sentence with a 2-year § 924(c) revocation sentence does not transform the 2-year sentence into a 12-year one.

Indeed, § 3584(c) *cannot* mean that an individual serves the entire "aggregate term of imprisonment" as the sentence on each of the multiple sentences. If it did, then consecutive sentences would often result in individuals serving sentences far in excess of the statutory maximum for the offense. As noted in the Petition, Mr. Bonnie "cannot serve a term of imprisonment that exceeds the statutory maximum of five years for his" supervised release violation.[13] If Mr. Bonnie were actually serving a 12-

_____

[13] Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 at 3, ECF No. 1 (Mar. 27, 2023) ("Pet.").

10

JA132

year sentence for his supervised-release violation, his sentence would be 7 years longer than authorized by statute.[14] The reason that § 3584(c) does not render these sentences illegal is because each sentence remains apportioned to the offense for which it was imposed, even if "treated"—for administrative purposes—as a single, aggregate term of imprisonment. In other words, each sentence remains distinct under law.

BOP and the Parole Commission's practice with respect to parole is instructive here. Like time credits, eligibility for parole is determined by the statute of conviction—not by BOP. The Parole Commission has long aggregated sentences for the purposes of calculating "good time" and for setting a parole eligibility date. *See* 28 C.F.R. § 2.5 (codifying longstanding interpretation of 18 U.S.C. §§ 4161, 4205(a), *see* 45 Fed. Reg. 44924-02 (July 2, 1980)). But this aggregation does *not* deprive the sentences of their distinct parole implications: the aggregation of a parolable sentence with a non-parolable sentence does not render the entire sentence non-parolable.[15]

BOP also de-aggregates sentences to comply with a bilateral international treaty that allows certain types of sentences imposed in the United States on Mexican nationals to be served in Mexico. Art. I, Treaty on the Execution of Penal Sentences,

---

[14] 18 U.S.C. § 3583(e)(3) (setting a statutory maximum term of five years imprisonment for a violation of a condition of supervised release if the offense that resulted in the term of supervised release is a class A felony).

[15] Instead, the parole eligibility date is set after the completion of the non-parolable sentence (less good time) plus the minimum of the parolable sentence. *See* U.S. Parole Commission. Rules and Procedures Manual § 2.2-04 note (describing parole eligibility for aggregated parolable and non-parolable sentence); BOP Program Statement 5880.30, Sentence Computation Manual/Old Law/Pre CCCA1984 at VII-20 (same).

11

JA133

Mex-U.S., Nov. 25, 1976; T.I.A.S. No. 8718 (Nov. 30, 1977). In relevant part, the transfer treaty bars Mexican nationals who are serving U.S. imposed sentences for immigration offenses from eligibility to serve their sentence in Mexico. *Id.* Art. II(4). But BOP has not interpreted the treaty to mean that aggregation of an immigration sentence with non-immigration sentence renders a person ineligible for transfer. Instead, BOP policy provides that:

> An inmate may not be eligible for return to his/her country of citizenship for service of the sentence or commitment imposed in a United States court when . . . (d) The inmate is a Mexican citizen or national who is currently serving a sentence for committing an immigration offense, *unless he/she is serving a sentence for multiple offenses and the immigration portion of the sentence has already been served.*

BOP Program Statement 5140.42 (emphasis added). As is true in the context of parole and treaty transfers, the aggregation of a sentence for an FSA-credit eligible offense with a sentence for an ineligible offense does not render the entire sentence ineligible.[16]

### C. The purpose of the FSA supports what the plain language and context dictate.

The FSA's purpose supports Mr. Bonnie's view. In enacting the FSA, Congress recognized an urgent need to address high rates of recidivism and to confront the reality that "the vast majority of federal prisoners will one day be released from BOP custody."[17] Congress understood that it is in "the fiscal interest of the government to

---

[16] *See* Pet. at 4–5.

[17] H.R. Rep. No. 115-699, at 22 (2018).

12

JA134

reduce recidivism [and] in the public safety interest as well."[18] By mandating BOP to build and administer a time-credit system, Congress hoped there would be a "greater incentive to participate in evidence-based programs that prepare [prisoners] for productive lives after incarceration" and "reduce both prison costs and recidivism rates for incarcerated individuals."[19] Mr. Bonnie fits the mold of who Congress had in mind when they created the First Step Act credit program. According to the FSA Recidivism Risk Assessment Tool, he poses a low risk of recidivism upon release. Ex. B (Risk

---

[18] *Id.*

[19] Senators Sheldon Whitehouse & John Cornyn, Comment Letter on Proposed FSA Time Credit Rule (Jan. 25, 2021), https://tinyurl.com/3cvx8hnv (arguing for expansive application of the First Step Act credit program); *see also* H.R. Rep. 115-699, at 22 (May 22, 2018) ("The data indicates that unless the government acts to reduce the recidivism rate among federal inmates, there is a strong possibility that former prisoners will recidivate and be rearrested or end up re-incarcerated. Not only is it in the fiscal interest of the government to reduce recidivism, it is in the public safety interest as well. It is estimated that the implementation of this bill will create significant cost savings.").

So far, the data bears this out. During 2020, those eligible for earned time credits participated in programming at a substantially higher rate than those who were ineligible. First Step Act Independent Review Comm., *Report of the Independent Review Committee Pursuant to the Requirements of Title I Section 107(g) of the First Step Act (FSA) of 2018 (P.L. 115-391)* at 2 (Dec. 21, 2020), https://tinyurl.com/4euhswdb. And DOJ recently reported that as of February 28, 2023, 77.79% of people eligible to earn time credits were participating in FSA activities. *See* Off. of Att'y Gen. U.S. Dep't of Justice, *The Attorney General's First Step Act Annual Report* 22 (2023), https://www.ojp.gov/first-step-act-annual-report-april-2023. Importantly, eligibility for time credits does not guarantee early release. To earn and apply the credits, a person must diligently participate in all programming and productive activities recommended by BOP and abide by the rules of those programs and activities. *See* BOP Program Statement 5410.01 CN-2 (Mar. 20, 2023); *see also* 28 C.F.R § 523.40, *et seq.* Refusal to complete the BOP needs assessment or participate in the programs they recommend disqualifies a person from earning or applying credits. *Id.* So does placement in the special housing unit for disciplinary reasons. *Id.* These requirements protect public safety by ensuring that only those who diligently participate in programming as BOP recommends will receive the benefit of early release.

13

JA135

Assessment Score Sheet). He has diligently participated in programming since he arrived in BOP on April 21, 2021, and has already completed five recidivism reduction programs. *Id.*

*Lallave v. Martinez* is instructive as to the FSA's purpose. 635 F. Supp. at 189-90. In *Lallave*, the court relied on FSA's purpose to reject BOP's effort to expand a different ineligibility provision of 18 U.S.C. § 3632(d)(4)(D) as unlawful.[20] *Id.* The *Lallave* court noted that the "FSA's legislative history suggests that, among other things, the congressional intent was to 'control correction spending' and 'manage the prison population.'" *Id.* (quoting H.R. Rep. No. 115-699, at 22 (2018)). The *Lallave* court concluded that "in view of this goal of reducing the prison population, the court is inclined to read the eligibility provisions narrowly, consistent with its textual interpretation, to exclude only the individuals reasonably included in the text." *Id.*

The *Lallave* court correctly concluded that allowing BOP to write into the FSA time-credit program the discretion to expand ineligibility beyond the clear Congressional limits credits is contrary to the FSA's goal of incentivizing prisoners to engage

---

[20] In *Lallave*, BOP deemed the petitioner ineligible under 18 U.S.C. § 3632(d)(4)(D)(lviii), which excludes people "serving a sentence for a conviction under . . . section 401(a) of the Controlled Substances Act (21 U.S.C. 841) relating to manufacturing or distributing a controlled substance in the case of a conviction for an offense described in subparagraph (A), (B), or (C) of subsection (b)(1) of that section for which death or serious bodily injury resulted from the use of such substance." But the *Lallave* petitioner was not convicted under the statutory penalty enhancement; instead, she received a sentencing guidelines enhancement for "death or serious bodily injury." *Lallave*, 635 F. Supp. at 189. The *Lallave* court held that the "eligibility provision is intended to apply specifically to individuals who were convicted of the penalty enhancement contained in 21 U.S.C. § 941(b)(1)(C)" and "Petitioner was not." *Id.* at 190. Therefore, "BOP . . . violated the First Step Act by failing to award Petitioner earned time credits." *Id.*

14

JA136

in these beneficial programs and activities. Throughout the FSA, Congress acted to limit and carefully proscribe BOP's discretion over critical aspects of the time-credit program, including eligibility, earning, and application. Allowing BOP to deem Mr. Bonnie ineligible for time credits here would be inconsistent with the FSA's clearly stated purpose.

## II.    BOP's Arguments Lack Merit.

BOP advances three arguments in support of its interpretation. First, it argues that BOP has the discretion to aggregate eligible and ineligible sentences because it is responsible for calculating sentences imposed by the sentencing courts under 18 U.S.C. § 3584 and Program Statement 5880.28. ECF No. 20 at 6–7. As discussed above, this argument disregards the statutory context and plain text of the First Step Act. Second, BOP cites a series of unpublished lower-court decisions, all originating from pro se litigation, which erroneously invoke *Chevron* to default to 18 U.S.C. § 3584 and improperly rely on case law governing entirely different BOP incentive programs. *Id.* Finally, it argues that disaggregation of sentences for purposes of earned time credits would be difficult to administer.

Each argument fails.

### A.    The FSA is unambiguous and *Chevron* deference does not apply.

BOP's analysis begins with these five words: "The BOP determines sentence credits." *See* Response to Petition and Motion to Dismiss, or for Summary Judgment at 6, ECF No. 20 ("Resp."). While that is true as an administrative matter, BOP's substantive argument is based on the faulty assumption that the statutory language

15

JA137

of the FSA is ambiguous. *Id.* at 5–7. "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron, U.S.A., Inc. v. Nat'l. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984). As discussed above, those tools, including "text, structure, [and] history," *Kisor v. Wilkie*, 139 S. Ct. 2400, 2416 (2019), unambiguously confirm that Mr. Bonnie *is* entitled to earn time credits towards his 120-month drug sentence.

The time-credit aggregation cases cited by the government erred because they failed to consider the statutory context of the time-credit provisions and improperly found ambiguity where there is none. For example, in *Sok v. Eischen*, No. 22-cv-458, 2022 WL 17156797 (D. Minn. Oct. 26, 2022), the Magistrate Judge concluded that 18 U.S.C. § 3632(d)(5)(D) was ambiguous because "it is silent as to the eligibility of a prisoner who is serving [a] term of imprisonment for multiple offenses." *Id.* at * 3; *see also Giovinco v. Pullen*, No. 22-cv-1515, 2023 WL 1928108 at *3 (D. Conn. Feb. 10, 2023) (adopting *Sok*).

But silence alone does not create ambiguity.[21] *See Bais Yaakov of Spring Valley v. Fed. Comms. Comm'n*, 852 F.3d 1078, 1082 (D.C. Cir. 2017) (holding that an agency

---

[21] The Supreme Court has granted a petition for writ of certiorari in a case raising the issue of whether *Chevron* should be overruled. *See Loper Bright Enters., Inc. v. Raimondo*, 45 F.4th 359, 374 (D.C. Cir. 2022), *cert. granted*, 143 S. Ct. 2429 (2023). *Loper* expressly raises the question of whether—or to what extent—legislative silence creates a legislative ambiguity. *See id.* at 374 (Walker, J., dissenting) ("Congress's silence on a given issue does not automatically create such ambiguity or give an agency carte blanche to speak in Congress's place. In fact, all else equal, silence indicates a lack of authority."). To the extent *Chevron* supports BOP's argument, it should be overruled.

JA138

"may only take action that Congress has *authorized*"). Courts do not yield to an agency's interpretation without first using the familiar tools of statutory interpretation to discern Congress's intent. For example, in *Turner v. Keyes*, the petitioner challenged BOP's determination that he was ineligible for time credits because of a conviction for a 21 U.S.C. § 846 conspiracy to commit an ineligible drug-distribution offense. No. 22-CV-321, 2022 WL 17338577, at *3 (W.D. Wis. Nov. 30, 2022). The government argued that Congress's silence as to whether 21 U.S.C. § 846 triggered ineligibility created an ambiguity because "Congress included many other attempt or conspiracy provisions among the exclusions listed under § 3632(d)(4)(D)." *Id.* The *Turner* court disagreed, noting that "if anything, the cited examples highlight the fact that for some reason Congress was intentionally silent as to § 846, but it certainly does not signal an intent to disqualify individuals convicted under that statute from earning FSA credits, nor does it even create an ambiguity as to that statute." *Id.*; *see also Jones v. Garza*, No. 22-cv-00764, 2023 WL 3354135, at *6 (N.D. Ohio April 18, 2023) (same); *Noe v. True*, No. 21-1373, 2022 WL 5080196, at * 10 (10th Cir. Oct. 15, 2022) (same).

At bottom, *Sok*, and every other FSA time-credit case cited by BOP (each unpublished; each brought by a *pro se* litigant) failed to consider the statutory context of the time-credits provision, including the deliberate choice of Congress to create different ineligibility provisions within the First Step Act, the mandatory nature of

17

JA139

the time-credit program, or the overall context of the sentencing and post-sentencing administration scheme created in Title 18.[22]

Moreover, even if the Court finds any latent statutory ambiguity, the government's interpretation still fails.

First, the rule of lenity resolves the issue in Mr. Bonnie's favor. *See Turner*, 2022 WL 17338577, at *4 (finding 18 U.S.C. § 3632(d)(4)(D) unambiguous but noting that "the rule of lenity appears to favor [petitioner] as well"). "Under the rule of lenity, [the Supreme] Court has long held, statutes imposing penalties are to be 'construed strictly' against the government and in favor of individuals." *Bittner v. United States*, 143 S. Ct. 713, 724 (2023). "In these circumstances—where text, structure, and history fail to establish that the Government's position is unambiguously correct,"—the Court should "apply the rule of lenity and resolve the ambiguity" in Mr. Bonnie's favor. *See United States v. Granderson*, 511 U.S. 39, 54 (1994).

Second, *Chevron* deference does not apply to interpretations of criminal law. *See Abramski v. United States*, 573 U.S. 169, 191 (2014) (holding "that criminal laws are for the courts, not for the Government, to construe"); *see also Pugin v. Garland*, 19 F.4th 437, 441–42 (4th Cir. 2021) (acknowledging the "thoughtful and ongoing debate about whether *Chevron* can apply to interpretations of criminal law" but declining to resolve that question because the statutes at issue were civil). Core principles

---

[22] *See, e.g., Sok*, 2022 WL 17156797, at *3 (concluding that 18 U.S.C. § 3632(d)(4)(D) is ambiguous because it is "silent as to the eligibility of a prisoner who is serving [a] term of imprisonment for multiple convictions" without further consideration of the language of the FSA).

JA140

of Separation of Powers mandate that courts have the obligation to determine "[w]hether the Government interprets a criminal statute too broadly . . . or too narrowly." *Abramski*, 573 U.S. at 191.

Finally, even if *Chevron* could apply, the government has not advanced a reasonable interpretation that is "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. Indeed, as explained above, the government's interpretation finds no support in the text, context, or purpose of the First Step Act. *See King v. Burwell*, 759 F.3d 358, 372 (4th Cir. 2014) (explaining that the Court may reject an agency's interpretation when it is "arbitrary, capricious, or manifestly contrary to the statute"). Thus, even if *Chevron* applies, the Court should not defer to BOP's interpretation.

**B.    Other cases cited by BOP failed to distinguish between the FSA's mandatory time-credit incentives and other BOP programs.**

Most of the cases cited by the government also erred by relying on law governing BOP's administration of discretionary early-release programs that pre-dated the FSA. For example, in *Sok v. Eischen*, the court relied on a series of cases involving RDAP to conclude that "[c]ourts have consistently held that sentence calculation by the BOP and the BOP's administration of incentives which reduce the length of a prisoner's term of imprisonment are administrative functions of the BOP subject to § 3584(c)." *Sok*, 2022 WL 17156797 at *3. The government adopts this reasoning here, arguing that because BOP's aggregation principle has been upheld in other areas

19

JA141

where statutes provide sentence credits for program completion, like RDAP, it is permissible here. ECF No. 20 at 10 (*citing Ledford v. Lemaster*, No. 23-30 DLB, 2023 WL 2905376 (E.D. Ky. Mar. 28, 2023)).

But the case law governing RDAP is inapposite. Unlike the FSA, which provides that time credits "shall be earned," § 3632(d)(4)(A); that they "shall be applied," § 3632(d)(4)(C); and that when the time comes, the Director "shall transfer" individuals into prerelease custody or supervised release, the early-release authority of the RDAP is fully discretionary. The statute authorizing the exercise of discretion provides:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a [residential substance abuse] treatment program *may* be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B) (emphasis added).

As the Supreme Court reasoned in *Lopez v. Davis*, 531 U.S. 230, 241 (2001), "Congress' use of the permissive 'may' in § 3621(e)(2)(B) contrasts with the legislators' use of a mandatory 'shall' in the very same section." *Id*. "Sensibly read, the grant of discretion in § 3621(e)(2)(B) to decide whether to reduce a sentence parallels the grant of discretion in § 3621(e)(2)(A) to retain a prisoner who successfully completes drug treatment 'under such [custodial] conditions as the Bureau deems appropriate.'" *Id*. "When an eligible prisoner successfully completes drug treatment, the Bureau thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment." *Id*. That is, whereas §§ 3632(d)(4)(A),

20

JA142

(C) mandate that an eligible prisoner receive time credits and be transferred as set forth in the statute, § 3621(e)(2)(B) grants BOP broad discretion whether to release a prisoner early for successful completion of RDAP.

With RDAP, it is BOP, not Congress, that sets eligibility requirements. And the text of BOP's RDAP ineligibility regulation, 28 C.F.R. § 550.55(b)(5), is starkly different from the FSA statutory ineligibility provision, § 3632(d)(4)(D). BOP's RDAP regulation provides, in relevant part, that "[i]nmates who have a current felony conviction" for certain types of offenses will, in the exercise of the Director's discretion, be categorically ineligible for early release. 28 C.F.R. § 550.55(b)(5).[23] The decisions BOP's cases rely on deferred to BOP's interpretation of "current felony conviction" to include all offenses for which the defendant is serving a sentence during the current aggregated period of commitment.[24] These courts deferred to BOP's interpretation that the aggregation of terms pursuant to § 3584(c) rendered all statutes for which an inmate was committed "current" under BOP's regulation.

Herein, by contrast, FSA ineligibility (set by statute, not regulation) is based not on whether individuals "*have* a current felony conviction," 28 C.F.R. § 550.55(b)(5), but on whether an individual "*is serving* a sentence for a conviction under" enumerated provisions of law, 18 U.S.C. § 3632(d)(4)(D). As discussed above,

---

[23] *See also* 28 C.F.R. § 550.58 (2009) ("inmates whose current offense is . . .")

[24] *See, e.g.*, Resp. at 10 (emphasizing that *Ledford v. Lemaster*, No. 23-30-DLB, 2023 WL 2905376 (E.D. Ky. Mar. 28, 2023), noted that "BOP's aggregation principle . . . had been widely used and upheld even in other areas where statutes provide sentence credits from program completion, including the BOP's Residential Drug Abuse Treatment Program") (quoting *Moreno v. Ives*, 842 F. App'x 18, 20-22 (9th Cir. 2020)).

21

JA143

unless sentences are running concurrently, a defendant is not "serving a sentence for a conviction under" one provision of law, when he is "serving a sentence for a conviction under" a different one. Again, § 3584(c)'s provision that multiple sentences be "treated for administrative purposes as a single, aggregate term of imprisonment" does not mean that an individual is actually *serving the sentence* for all the offenses of conviction for the entire period. Section 3584(c) cannot reasonably be read to expand § 3632(d)(4)(D)'s statutory ineligibility provision to individuals who have served in the past, or will serve in the future, a sentence for a conviction for an ineligible offense. Had Congress intended that sort of expansive ineligibility, it would have said so.

## C. It would not be impracticable to disaggregate sentences for purposes of time-credit eligibility.

The government suggests that disaggregating sentences for time-credit eligibility would be "difficult for BOP to apply." ECF No. 20 at 10. This is unpersuasive. BOP has built a sophisticated automated time-credit system which can parse a person's period of ineligibility and eligibility (due to disciplinary infractions, periods out of BOP, or program refusals) down to the day. For example, an eligible person's time credit worksheet breaks out any period in which a person is not in earning status, and identifies the reason why:[25]

---

[25] This example is drawn from another individual's BOP records, who has given permission for their documents to be cited in litigation.

22

JA144

```
Start        Stop        Pgm Status  Pgm Days
12-21-2018   01-19-2023  accrue      1477
  Cannot apply FTC
    Facility Category  Assignment  Start            Stop
     RCH      FSA       R-LW        12-20-2022 1020  CURRENT
-----------------------------------------------------------------------------
Start        Stop        Pgm Status  Pgm Days
12-21-2018   02-25-2020  accrue      431
  Accrued Pgm Days...: 431
  Carry Over Pgm Days: 0
  Time Credit Factor.: 10
  Time Credits.......: 140
-----------------------------------------------------------------------------
Start        Stop        Pgm Status  Pgm Days
02-25-2020   03-09-2020  disallow    13
  Not in qualifying admit status
    Facility Category  Assignment  Start            Stop
     MAN      ARS       TRANSFER    02-24-2020 1044  02-24-2020 1044
     B02      ARS       A-ADMIT     02-24-2020 1044  02-24-2020 1747
     B02      ARS       RELEASE     02-24-2020 1747  02-24-2020 1747
     ATL      ARS       A-BOP HLD   02-24-2020 1747  02-28-2020 1145
     ATL      ARS       HLD REMOVE  02-28-2020 1145  02-28-2020 1145
     A01      ARS       A-ADMIT     02-28-2020 1145  02-28-2020 1840
     OKL      ARS       A-BOP HLD   02-28-2020 1740  03-09-2020 0849
     A01      ARS       RELEASE     02-28-2020 1840  02-28-2020 1840
-----------------------------------------------------------------------------
Start        Stop        Pgm Status  Pgm Days
03-09-2020   01-19-2023  accrue      1046
  Accrued Pgm Days...: 1046
  Carry Over Pgm Days: 11
  Time Credit Factor.: 10
  Time Credits.......: 350
```

Blocking out years-long periods of ineligibility due to a disqualified conviction would be a simple task in comparison to this type of granular eligibility analysis.

Moreover, BOP cannot claim that it is impracticable for it to recognize sentences as distinct from one another for the purpose of the FSA, simply because it aggregates them for other purposes. As discussed above, BOP has long kept separate track of sentences imposed under the Sentencing Guidelines, and those imposed under the old parole system. BOP Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984) at 1–3. Courts, too, de-aggregate sentences. *See, e.g., United*

23

JA145

*States v. Martin*, 974 F.3d 124 (2d Cir. 2020) (de-aggregating sentences to determine whether defendant was still serving sentence for "covered offense" under FSA § 404); *United States v. Llewlyn*, 879 F.3d 1291 (11th Cir. 2018) (de-aggregating sentences to determine whether defendant still serving sentence for purpose of § 3582(c)(2) reduction).

### CONCLUSION

For the foregoing reasons, and those set forth in the Petition, Mr. Bonnie respectfully requests that the Court grant the writ of habeas corpus and order BOP to deem him eligible to accrue FSA time credits.

Respectfully Submitted,

/s/ John L. Warren III
John L. Warren III (Federal ID No. 12164)
Email: jw@billnettleslaw.com
Law Office of Bill Nettles
2008 Lincoln St.
Columbia, SC 29201
Tel: (803) 814-2826

Patricia Richman (Admitted *Pro Hac Vice*)
Email: patricia_richman@fd.org
Office of the Federal Public Defender for the
     District of Maryland
6411 Ivy Lane
Greenbelt, MD 20770
Tel: (301) 344-0600

Counsel for Petitioner Gregory Allen Bonnie

August 13, 2023

24

JA146

# Exhibit A

(First Step Act, Pub. L. No. 115-391)

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

PL 115-391, December 21, 2018, 132 Stat 5194

UNITED STATES PUBLIC LAWS

115th Congress - Second Session

Convening January 06, 2018

Additions and Deletions are not identified in this database.
Vetoes are indicated by ~~Text~~ ;
stricken material by ~~Text~~ .

PL 115–391 [S 756]

December 21, 2018

FIRST STEP ACT OF 2018

An Act To reauthorize and amend the Marine Debris Act to promote
international action to reduce marine debris, and for other purposes.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,

**SECTION 1. SHORT TITLE; TABLE OF CONTENTS.**

<< 18 USCA § 1 NOTE >>

(a) SHORT TITLE.—This Act may be cited as the "First Step Act of 2018".

(b) TABLE OF CONTENTS.—The table of contents for this Act is as follows:

Sec. 1. Short title; table of contents.

TITLE I—RECIDIVISM REDUCTION

Sec. 101. Risk and needs assessment system.

Sec. 102. Implementation of system and recommendations by Bureau of Prisons.

Sec. 103. GAO report.

Sec. 104. Authorization of appropriations.

Sec. 105. Rule of construction.

Sec. 106. Faith-based considerations.

Sec. 107. Independent Review Committee.

TITLE II—BUREAU OF PRISONS SECURE FIREARMS STORAGE

JA148

FIRST STEP ACT OF 2018, PL 115–391, December 21, 2018, 132 Stat 5194

Sec. 201. Short title.

Sec. 202. Secure firearms storage.

TITLE III—RESTRAINTS ON PREGNANT PRISONERS PROHIBITED

Sec. 301. Use of restraints on prisoners during the period of pregnancy and postpartum recovery prohibited.

TITLE IV—SENTENCING REFORM

Sec. 401. Reduce and restrict enhanced sentencing for prior drug felonies.

Sec. 402. Broadening of existing safety valve.

Sec. 403. Clarification of section 924(c) of title 18, United States Code.

Sec. 404. Application of Fair Sentencing Act.

TITLE V—SECOND CHANCE ACT OF 2007 REAUTHORIZATION

Sec. 501. Short title.

Sec. 502. Improvements to existing programs.

Sec. 503. Audit and accountability of grantees.

Sec. 504. Federal reentry improvements.

Sec. 505. Federal interagency reentry coordination.

Sec. 506. Conference expenditures.

Sec. 507. Evaluation of the Second Chance Act program.

Sec. 508. GAO review.

TITLE VI—MISCELLANEOUS CRIMINAL JUSTICE

Sec. 601. Placement of prisoners close to families.

Sec. 602. Home confinement for low-risk prisoners.

Sec. 603. Federal prisoner reentry initiative reauthorization; modification of imposed term of imprisonment.

**\*5195**
Sec. 604. Identification for returning citizens.

Sec. 605. Expanding inmate employment through Federal Prison Industries.

JA149

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

Sec. 606. De-escalation training.

Sec. 607. Evidence-Based treatment for opioid and heroin abuse.

Sec. 608. Pilot programs.

Sec. 609. Ensuring supervision of released sexually dangerous persons.

Sec. 610. Data collection.

Sec. 611. Healthcare products.

Sec. 612. Adult and juvenile collaboration programs.

Sec. 613. Juvenile solitary confinement.

## TITLE I—RECIDIVISM REDUCTION

### SEC. 101. RISK AND NEEDS ASSESSMENT SYSTEM.

(a) IN GENERAL.—Chapter 229 of title 18, United States Code, is amended by inserting after subchapter C the following:

T. 18 pt. II ch. 229 subch. D prec. § 3631

"SUBCHAPTERD—RISK AND NEEDS ASSESSMENT SYSTEM

"Sec.

"3631. Duties of the Attorney General.

"3632. Development of risk and needs assessment system.

"3633. Evidence-based recidivism reduction program and recommendations.

"3634. Report.

"3635. Definitions.

<< 18 USCA § 3631 >>

### § 3631. Duties of the Attorney General

"(a) IN GENERAL.—The Attorney General shall carry out this subchapter in consultation with—

   "(1) the Director of the Bureau of Prisons;

   "(2) the Director of the Administrative Office of the United States Courts;

   "(3) the Director of the Office of Probation and Pretrial Services;

   "(4) the Director of the National Institute of Justice;

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

JA150

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

"(5) the Director of the National Institute of Corrections; and

"(6) the Independent Review Committee authorized by the First Step Act of 2018

"(b) DUTIES.—The Attorney General shall—

"(1) conduct a review of the existing prisoner risk and needs assessment systems in operation on the date of enactment of this subchapter;

"(2) develop recommendations regarding evidence-based recidivism reduction programs and productive activities in accordance with section 3633;

"(3) conduct ongoing research and data analysis on—

"(A) evidence-based recidivism reduction programs relating to the use of prisoner risk and needs assessment tools;

"(B) the most effective and efficient uses of such programs;

"(C) which evidence-based recidivism reduction programs are the most effective at reducing recidivism, and the type, amount, and intensity of programming that most effectively reduces the risk of recidivism; and

"(D) products purchased by Federal agencies that are manufactured overseas and could be manufactured by prisoners participating in a prison work program without **\*5196** reducing job opportunities for other workers in the United States;

"(4) on an annual basis, review, validate, and release publicly on the Department of Justice website the risk and needs assessment system, which review shall include—

"(A) any subsequent changes to the risk and needs assessment system made after the date of enactment of this subchapter;

"(B) the recommendations developed under paragraph (2), using the research conducted under paragraph (3);

"(C) an evaluation to ensure that the risk and needs assessment system bases the assessment of each prisoner's risk of recidivism on indicators of progress and of regression that are dynamic and that can reasonably be expected to change while in prison;

"(D) statistical validation of any tools that the risk and needs assessment system uses; and

"(E) an evaluation of the rates of recidivism among similarly classified prisoners to identify any unwarranted disparities, including disparities among similarly classified prisoners of different demographic groups, in such rates;

"(5) make any revisions or updates to the risk and needs assessment system that the Attorney General determines appropriate pursuant to the review under paragraph (4), including updates to ensure that any disparities identified in paragraph (4)(E) are reduced to the greatest extent possible; and

"(6) report to Congress in accordance with section 3634.

<< 18 USCA § 3632 >>

### § 3632. Development of risk and needs assessment system

"(a) IN GENERAL.—Not later than 210 days after the date of enactment of this subchapter, the Attorney General, in consultation with the Independent Review Committee authorized by the First Step Act of 2018, shall develop and release publicly on the

JA151

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

Department of Justice website a risk and needs assessment system (referred to in this subchapter as the 'System'), which shall be used to—

"(1) determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism;

"(2) assess and determine, to the extent practicable, the risk of violent or serious misconduct of each prisoner;

"(3) determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs, and in accordance with subsection (b);

"(4) reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison;

"(5) reassign the prisoner to appropriate evidence-based recidivism reduction programs or productive activities based on the revised determination to ensure that—

"(A) all prisoners at each risk level have a meaningful opportunity to reduce their classification during the period of incarceration;

**\*5197**

"(B) to address the specific criminogenic needs of the prisoner; and

"(C) all prisoners are able to successfully participate in such programs;

"(6) determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities in accordance with subsection (e);

"(7) determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624; and

"(8) determine the appropriate use of audio technology for program course materials with an understanding of dyslexia. In carrying out this subsection, the Attorney General may use existing risk and needs assessment tools, as appropriate.
"(b) ASSIGNMENT OF EVIDENCE-BASED RECIDIVISM REDUCTION PROGRAMS.—The System shall provide guidance on the type, amount, and intensity of evidence-based recidivism reduction programming and productive activities that shall be assigned for each prisoner, including—

"(1) programs in which the Bureau of Prisons shall assign the prisoner to participate, according to the prisoner's specific criminogenic needs; and

"(2) information on the best ways that the Bureau of Prisons can tailor the programs to the specific criminogenic needs of each prisoner so as to most effectively lower each prisoner's risk of recidivism.

"(c) HOUSING AND ASSIGNMENT DECISIONS.—The System shall provide guidance on program grouping and housing assignment determinations and, after accounting for the safety of each prisoner and other individuals at the prison, provide that prisoners with a similar risk level be grouped together in housing and assignment decisions to the extent practicable.

"(d) EVIDENCE-BASED RECIDIVISM REDUCTION PROGRAM INCENTIVES AND PRODUCTIVE ACTIVITIES REWARDS.—The System shall provide incentives and rewards for prisoners to participate in and complete evidence-based recidivism reduction programs as follows:

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.                    5

JA152

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

"(1) PHONE AND VISITATION PRIVILEGES.—A prisoner who is successfully participating in an evidence-based recidivism reduction program shall receive—

"(A) phone privileges, or, if available, video conferencing privileges, for up to 30 minutes per day, and up to 510 minutes per month; and

"(B) additional time for visitation at the prison, as determined by the warden of the prison.

"(2) TRANSFER TO INSTITUTION CLOSER TO RELEASE RESIDENCE.—A prisoner who is successfully participating in an evidence-based recidivism reduction program shall be considered by the Bureau of Prisons for placement in a facility closer to the prisoner's release residence upon request from the prisoner and subject to—

"(A) bed availability at the transfer facility;

"(B) the prisoner's security designation; and

"(C) the recommendation from the warden of the prison at which the prisoner is incarcerated at the time of making the request.

**\*5198**

"(3) ADDITIONAL POLICIES.—The Director of the Bureau of Prisons shall develop additional policies to provide appropriate incentives for successful participation and completion of evidence-based recidivism reduction programming. The incentives shall include not less than 2 of the following:

"(A) Increased commissary spending limits and product offerings.

"(B) Extended opportunities to access the email system.

"(C) Consideration of transfer to preferred housing units (including transfer to different prison facilities).

"(D) Other incentives solicited from prisoners and determined appropriate by the Director.

"(4) TIME CREDITS.—

"(A) IN GENERAL.—A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:

"(i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

"(ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

"(B) AVAILABILITY.—A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed—

"(i) prior to the date of enactment of this subchapter; or

"(ii) during official detention prior to the date that the prisoner's sentence commences under section 3585(a).



JA153

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

"(C) APPLICATION OF TIME CREDITS TOWARD PRERELEASE CUSTODY OR SUPERVISED RELEASE.— Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

"(D) INELIGIBLE PRISONERS.—A prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction under any of the following provisions of law:

"(i) Section 32, relating to destruction of aircraft or aircraft facilities.

"(ii) Section 33, relating to destruction of motor vehicles or motor vehicle facilities.

"(iii) Section 36, relating to drive-by shootings.

"(iv) Section 81, relating to arson within special maritime and territorial jurisdiction.

*5199

"(v) Section 111(b), relating to assaulting, resisting, or impeding certain officers or employees using a deadly or dangerous weapon or inflicting bodily injury.

"(vi) Paragraph (1), (7), or (8) of section 113(a), relating to assault with intent to commit murder, assault resulting in substantial bodily injury to a spouse or intimate partner, a dating partner, or an individual who has not attained the age of 16 years, or assault of a spouse, intimate partner, or dating partner by strangling, suffocating, or attempting to strangle or suffocate.

"(vii) Section 115, relating to influencing, impeding, or retaliating against a Federal official by injuring a family member, except for a threat made in violation of that section.

"(viii) Section 116, relating to female genital mutilation.

"(ix) Section 117, relating to domestic assault by a habitual offender.

"(x) Any section of chapter 10, relating to biological weapons.

"(xi) Any section of chapter 11B, relating to chemical weapons.

"(xii) Section 351, relating to Congressional, Cabinet, and Supreme Court assassination, kidnapping, and assault.

"(xiii) Section 521, relating to criminal street gangs.

"(xiv) Section 751, relating to prisoners in custody of an institution or officer.

"(xv) Section 793, relating to gathering, transmitting, or losing defense information.

"(xvi) Section 794, relating to gathering or delivering defense information to aid a foreign government.

"(xvii) Any section of chapter 39, relating to explosives and other dangerous articles, except for section 836 (relating to the transportation of fireworks into a State prohibiting sale or use).

"(xviii) Section 842(p), relating to distribution of information relating to explosives, destructive devices, and weapons of mass destruction, but only if the conviction involved a weapon of mass destruction (as defined in section 2332a(c)).

"(xix) Subsection (f)(3), (h), or (i) of section 844, relating to the use of fire or an explosive.

JA154

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

"(xx) Section 871, relating to threats against the President and successors to the Presidency.

"(xxi) Section 879, relating to threats against former Presidents and certain other persons.

"(xxii) Section 924(c), relating to unlawful possession or use of a firearm during and in relation to any crime of violence or drug trafficking crime.

"(xxiii) Section 1030(a)(1), relating to fraud and related activity in connection with computers.

"(xxiv) Section 1091, relating to genocide.

"(xxv) Any section of chapter 51, relating to homicide, except for section 1112 (relating to manslaughter), **\*5200** 1113 (relating to attempt to commit murder or manslaughter, but only if the conviction was for an attempt to commit manslaughter), 1115 (relating to misconduct or neglect of ship officers), or 1122 (relating to protection against the human immunodeficiency virus).

"(xxvi) Any section of chapter 55, relating to kidnapping.

"(xxvii) Any offense under chapter 77, relating to peonage, slavery, and trafficking in persons, except for sections 1593 through 1596.

"(xxviii) Section 1751, relating to Presidential and Presidential staff assassination, kidnapping, and assault.

"(xxix) Section 1791, relating to providing or possessing contraband in prison.

"(xxx) Section 1792, relating to mutiny and riots.

"(xxxi) Section 1841(a)(2)(C), relating to intentionally killing or attempting to kill an unborn child.

"(xxxii) Section 1992, relating to terrorist attacks and other violence against railroad carriers and against mass transportation systems on land, on water, or through the air.

"(xxxiii) Section 2113(e), relating to bank robbery resulting in death.

"(xxxiv) Section 2118(c), relating to robberies and burglaries involving controlled substances resulting in assault, putting in jeopardy the life of any person by the use of a dangerous weapon or device, or death.

"(xxxv) Section 2119, relating to taking a motor vehicle (commonly referred to as 'carjacking').

"(xxxvi) Any section of chapter 105, relating to sabotage, except for section 2152.

"(xxxvii) Any section of chapter 109A, relating to sexual abuse.

"(xxxviii) Section 2250, relating to failure to register as a sex offender.

"(xxxix) Section 2251, relating to the sexual exploitation of children.

"(xl) Section 2251A, relating to the selling or buying of children.

"(xli) Section 2252, relating to certain activities relating to material involving the sexual exploitation of minors.

"(xlii) Section 2252A, relating to certain activities involving material constituting or containing child pornography.

"(xliii) Section 2260, relating to the production of sexually explicit depictions of a minor for importation into the United States.

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.



JA155

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

"(xliv) Section 2283, relating to the transportation of explosive, biological, chemical, or radioactive or nuclear materials.

"(xlv) Section 2284, relating to the transportation of terrorists.

"(xlvi) Section 2291, relating to the destruction of a vessel or maritime facility, but only if the conduct **\*5201** that led to the conviction involved a substantial risk of death or serious bodily injury.

"(xlvii) Any section of chapter 113B, relating to terrorism.

"(xlviii) Section 2340A, relating to torture.

"(xlix) Section 2381, relating to treason.

"(l) Section 2442, relating to the recruitment or use of child soldiers.

"(li) An offense described in section 3559(c)(2)(F), for which the offender was sentenced to a term of imprisonment of more than 1 year, if the offender has a previous conviction, for which the offender served a term of imprisonment of more than 1 year, for a Federal or State offense, by whatever designation and wherever committed, consisting of murder (as described in section 1111), voluntary manslaughter (as described in section 1112), assault with intent to commit murder (as described in section 113(a)), aggravated sexual abuse and sexual abuse (as described in sections 2241 and 2242), abusive sexual contact (as described in sections 2244(a)(1) and (a)(2)), kidnapping (as described in chapter 55), carjacking (as described in section 2119), arson (as described in section 844(f)(3), (h), or (i)), or terrorism (as described in chapter 113B).

"(lii) Section 57(b) of the Atomic Energy Act of 1954 (42 U.S.C. 2077(b)), relating to the engagement or participation in the development or production of special nuclear material.

"(liii) Section 92 of the Atomic Energy Act of 1954 (42 U.S.C. 2122), relating to prohibitions governing atomic weapons.

"(liv) Section 101 of the Atomic Energy Act of 1954 (42 U.S.C. 2131), relating to the atomic energy license requirement.

"(lv) Section 224 or 225 of the Atomic Energy Act of 1954 (42 U.S.C. 2274, 2275), relating to the communication or receipt of restricted data.

"(lvi) Section 236 of the Atomic Energy Act of 1954 (42 U.S.C. 2284), relating to the sabotage of nuclear facilities or fuel.

"(lvii) Section 60123(b) of title 49, relating to damaging or destroying a pipeline facility, but only if the conduct which led to the conviction involved a substantial risk of death or serious bodily injury.

"(lviii) Section 401(a) of the Controlled Substances Act (21 U.S.C. 841), relating to manufacturing or distributing a controlled substance in the case of a conviction for an offense described in subparagraph (A), (B), or (C) of subsection (b)(1) of that section for which death or serious bodily injury resulted from the use of such substance.

"(lix) Section 276(a) of the Immigration and Nationality Act (8 U.S.C. 1326), relating to the reentry of a removed alien, but only if the alien is described in paragraph (1) or (2) of subsection (b) of that section.

**\*5202**
"(lx) Section 277 of the Immigration and Nationality Act (8 U.S.C. 1327), relating to aiding or assisting certain aliens to enter the United States.

WESTLAW    © 2023 Thomson Reuters. No claim to original U.S. Government Works.    9

"(lxi) Section 278 of the Immigration and Nationality Act (8 U.S.C. 1328), relating to the importation of an alien into the United States for an immoral purpose.

"(lxii) Any section of the Export Administration Act of 1979 (50 U.S.C. 4611 et seq.)

"(lxiii) Section 206 of the International Emergency Economic Powers Act (50 U.S.C. 1705).

"(lxiv) Section 601 of the National Security Act of 1947 (50 U.S.C. 3121), relating to the protection of identities of certain United States undercover intelligence officers, agents, informants, and sources.

"(lxv) Subparagraph (A)(i) or (B)(i) of section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) or paragraph (1)(A) or (2)(A) of section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)), relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, dispense, or knowingly importing or exporting, a mixture or substance containing a detectable amount of heroin if the sentencing court finds that the offender was an organizer, leader, manager, or supervisor of others in the offense, as determined under the guidelines promulgated by the United States Sentencing Commission.

"(lxvi) Subparagraph (A)(vi) or (B)(vi) of section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) or paragraph (1)(F) or (2)(F) of section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)), relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, or any analogue thereof.

"(lxvii) Subparagraph (A)(viii) or (B)(viii) of section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) or paragraph (1)(H) or (2)(H) of section 1010(b) the Controlled Substances Import and Export Act (21 U.S.C. 960(b)), relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, or knowingly importing or exporting, a mixture of substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, if the sentencing court finds that the offender was an organizer, leader, manager, or supervisor of others in the offense, as determined under the guidelines promulgated by the United States Sentencing Commission.

"(lxviii) Subparagraph (A) or (B) of section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) or paragraph (1) or (2) of section 1010(b) of the Controlled Substances Import and Export Act **5203** (21 U.S.C. 960(b)), relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a controlled substance, or knowingly importing or exporting a controlled substance, if the sentencing court finds that—

"(I) the offense involved a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, or any analogue thereof; and

"(II) the offender was an organizer, leader, manager, or supervisor of others in the offense, as determined under the guidelines promulgated by the United States Sentencing Commission.


"(E) DEPORTABLE PRISONERS INELIGIBLE TO APPLY TIME CREDITS.—

"(i) IN GENERAL.—A prisoner is ineligible to apply time credits under subparagraph (C) if the prisoner is the subject of a final order of removal under any provision of the immigration laws (as such term is defined in section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(17))).

"(ii) PROCEEDINGS.—The Attorney General, in consultation with the Secretary of Homeland Security, shall ensure that any alien described in section 212 or 237 of the Immigration and Nationality Act (8 U.S.C. 1182, 1227)

JA157

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

who seeks to earn time credits are subject to proceedings described in section 238(a) of that Act (8 U.S.C. 1228(a)) at a date as early as practicable during the prisoner's incarceration.

"(5) RISK REASSESSMENTS AND LEVEL ADJUSTMENT.—A prisoner who successfully participates in evidence-based recidivism reduction programming or productive activities shall receive periodic risk reassessments not less often than annually, and a prisoner determined to be at a medium or high risk of recidivating and who has less than 5 years until his or her projected release date shall receive more frequent risk reassessments. If the reassessment shows that the prisoner's risk of recidivating or specific needs have changed, the Bureau of Prisons shall update the determination of the prisoner's risk of recidivating or information regarding the prisoner's specific needs and reassign the prisoner to appropriate evidence-based recidivism reduction programming or productive activities based on such changes.

"(6) RELATION TO OTHER INCENTIVE PROGRAMS.—The incentives described in this subsection shall be in addition to any other rewards or incentives for which a prisoner may be eligible.

"(e) PENALTIES.—The Director of the Bureau of Prisons shall develop guidelines for the reduction of rewards and incentives earned under subsection (d) for prisoners who violate prison rules or evidence-based recidivism reduction program or productive activity rules, which shall provide—

"(1) general levels of violations and resulting reductions;

"(2) that any reduction that includes the loss of time credits shall require written notice to the prisoner, shall be limited to time credits that a prisoner earned as of the date of the prisoner's rule violation, and shall not include any future time credits that the prisoner may earn; and

**\*5204**

"(3) for a procedure to restore time credits that a prisoner lost as a result of a rule violation, based on the prisoner's individual progress after the date of the rule violation.

"(f) BUREAU OF PRISONS TRAINING.—The Attorney General shall develop and implement training programs for Bureau of Prisons officers and employees responsible for administering the System, which shall include—

"(1) initial training to educate officers and employees on how to use the System in an appropriate and consistent manner, as well as the reasons for using the System;

"(2) continuing education;

"(3) periodic training updates; and

"(4) a requirement that such officers and employees demonstrate competence in administering the System, including interrater reliability, on a biannual basis.

"(g) QUALITY ASSURANCE.—In order to ensure that the Bureau of Prisons is using the System in an appropriate and consistent manner, the Attorney General shall monitor and assess the use of the System, which shall include conducting annual audits of the Bureau of Prisons regarding the use of the System.

"(h) DYSLEXIA SCREENING.—

"(1) SCREENING.—The Attorney General shall incorporate a dyslexia screening program into the System, including by screening for dyslexia during—

"(A) the intake process; and

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

"(B) each periodic risk reassessment of a prisoner.

"(2) TREATMENT.—The Attorney General shall incorporate programs designed to treat dyslexia into the evidence-based recidivism reduction programs or productive activities required to be implemented under this section. The Attorney General may also incorporate programs designed to treat other learning disabilities.

<< 18 USCA § 3633 >>

### § 3633. Evidence-based recidivism reduction program and recommendations

"(a) IN GENERAL.—Prior to releasing the System, in consultation with the Independent Review Committee authorized by the First Step Act of 2018, the Attorney General shall—

"(1) review the effectiveness of evidence-based recidivism reduction programs that exist as of the date of enactment of this subchapter in prisons operated by the Bureau of Prisons;

"(2) review available information regarding the effectiveness of evidence-based recidivism reduction programs and productive activities that exist in State-operated prisons throughout the United States;

"(3) identify the most effective evidence-based recidivism reduction programs;

"(4) review the policies for entering into evidence-based recidivism reduction partnerships described in section 3621(h)(5); and

"(5) direct the Bureau of Prisons regarding—

"(A) evidence-based recidivism reduction programs;

"(B) the ability for faith-based organizations to function as a provider of educational evidence-based programs outside of the religious classes and services provided through the Chaplaincy; and

**\*5205**
"(C) the addition of any new effective evidence-based recidivism reduction programs that the Attorney General finds.

"(b) REVIEW AND RECOMMENDATIONS REGARDING DYSLEXIA MITIGATION.—In carrying out subsection (a), the Attorney General shall consider the prevalence and mitigation of dyslexia in prisons, including by—

"(1) reviewing statistics on the prevalence of dyslexia, and the effectiveness of any programs implemented to mitigate the effects of dyslexia, in prisons operated by the Bureau of Prisons and State-operated prisons throughout the United States; and

"(2) incorporating the findings of the Attorney General under paragraph (1) of this subsection into any directives given to the Bureau of Prisons under paragraph (5) of subsection (a).

<< 18 USCA § 3634 >>

### § 3634. Report

"Beginning on the date that is 2 years after the date of enactment of this subchapter, and annually thereafter for a period of 5 years, the Attorney General shall submit a report to the Committees on the Judiciary of the Senate and the House of Representatives and the Subcommittees on Commerce, Justice, Science, and Related Agencies of the Committees on Appropriations of the Senate and the House of Representatives that contains the following:

JA159

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

"(1) A summary of the activities and accomplishments of the Attorney General in carrying out this Act.

"(2) A summary and assessment of the types and effectiveness of the evidence-based recidivism reduction programs and productive activities in prisons operated by the Bureau of Prisons, including—

"(A) evidence about which programs have been shown to reduce recidivism;

"(B) the capacity of each program and activity at each prison, including the number of prisoners along with the recidivism risk of each prisoner enrolled in each program; and

"(C) identification of any gaps or shortages in capacity of such programs and activities.

"(3) Rates of recidivism among individuals who have been released from Federal prison, based on the following criteria:

"(A) The primary offense of conviction.

"(B) The length of the sentence imposed and served.

"(C) The Bureau of Prisons facility or facilities in which the prisoner's sentence was served.

"(D) The evidence-based recidivism reduction programming that the prisoner successfully completed, if any.

"(E) The prisoner's assessed and reassessed risk of recidivism.

"(F) The productive activities that the prisoner successfully completed, if any.

"(4) The status of prison work programs at facilities operated by the Bureau of Prisons, including—

"(A) a strategy to expand the availability of such programs without reducing job opportunities for workers in the United States who are not in the custody of the Bureau **\*5206** of Prisons, including the feasibility of prisoners manufacturing products purchased by Federal agencies that are manufactured overseas;

"(B) an assessment of the feasibility of expanding such programs, consistent with the strategy required under subparagraph (A), with the goal that 5 years after the date of enactment of this subchapter, not less than 75 percent of eligible minimum- and low-risk offenders have the opportunity to participate in a prison work program for not less than 20 hours per week; and

"(C) a detailed discussion of legal authorities that would be useful or necessary to achieve the goals described in subparagraphs (A) and (B).

"(5) An assessment of the Bureau of Prisons' compliance with section 3621(h).

"(6) An assessment of progress made toward carrying out the purposes of this subchapter, including any savings associated with—

"(A) the transfer of prisoners into prerelease custody or supervised release under section 3624(g), including savings resulting from the avoidance or deferral of future construction, acquisition, and operations costs; and

"(B) any decrease in recidivism that may be attributed to the System or the increase in evidence-based recidivism reduction programs required under this subchapter.

"(7) An assessment of budgetary savings resulting from this subchapter, including—

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

"(A) a summary of the amount of savings resulting from the transfer of prisoners into prerelease custody under this chapter, including savings resulting from the avoidance or deferral of future construction, acquisition, or operations costs;

"(B) a summary of the amount of savings resulting from any decrease in recidivism that may be attributed to the implementation of the risk and needs assessment system or the increase in recidivism reduction programs and productive activities required by this subchapter;

"(C) a strategy to reinvest the savings described in subparagraphs (A) and (B) in other—

"(i) Federal, State, and local law enforcement activities; and

"(ii) expansions of recidivism reduction programs and productive activities in the Bureau of Prisons; and

"(D) a description of how the reduced expenditures on Federal corrections and the budgetary savings resulting from this subchapter are currently being used and will be used to—

"(i) increase investment in law enforcement and crime prevention to combat gangs of national significance and high-level drug traffickers through the High Intensity Drug Trafficking Areas Program and other task forces;

"(ii) hire, train, and equip law enforcement officers and prosecutors; and

**\*5207**

"(iii) promote crime reduction programs using evidence-based practices and strategic planning to help reduce crime and criminal recidivism.

"(8) Statistics on—

"(A) the prevalence of dyslexia among prisoners in prisons operated by the Bureau of Prisons; and

"(B) any change in the effectiveness of dyslexia mitigation programs among such prisoners that may be attributed to the incorporation of dyslexia screening into the System and of dyslexia treatment into the evidence-based recidivism reduction programs, as required under this chapter.

<< 18 USCA § 3635 >>

### § 3635. Definitions

"In this subchapter the following definitions apply:

"(1) DYSLEXIA.—The term 'dyslexia' means an unexpected difficulty in reading for an individual who has the intelligence to be a much better reader, most commonly caused by a difficulty in the phonological processing (the appreciation of the individual sounds of spoken language), which affects the ability of an individual to speak, read, and spell.

"(2) DYSLEXIA SCREENING PROGRAM.—The term 'dyslexia screening program' means a screening program for dyslexia that is—

"(A) evidence-based (as defined in section 8101(21) of the Elementary and Secondary Education Act of 1965 (20 U.S.C. 7801(21))) with proven psychometrics for validity;

"(B) efficient and low-cost; and

JA161

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

"(C) readily available.

"(3) EVIDENCE-BASED RECIDIVISM REDUCTION PROGRAM.—The term 'evidence-based recidivism reduction program' means either a group or individual activity that—

"(A) has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism;

"(B) is designed to help prisoners succeed in their communities upon release from prison; and

"(C) may include—

"(i) social learning and communication, interpersonal, anti-bullying, rejection response, and other life skills;

"(ii) family relationship building, structured parent-child interaction, and parenting skills;

"(iii) classes on morals or ethics;

"(iv) academic classes;

"(v) cognitive behavioral treatment;

"(vi) mentoring;

"(vii) substance abuse treatment;

"(viii) vocational training;

"(ix) faith-based classes or services;

"(x) civic engagement and reintegrative community services;

"(xi) a prison job, including through a prison work program;

"(xii) victim impact classes or other restorative justice programs; and

"(xiii) trauma counseling and trauma-informed support programs.

**\*5208**

"(4) PRISONER.—The term 'prisoner' means a person who has been sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or a person in the custody of the Bureau of Prisons.

"(5) PRODUCTIVE ACTIVITY.—The term 'productive activity' means either a group or individual activity that is designed to allow prisoners determined as having a minimum or low risk of recidivating to remain productive and thereby maintain a minimum or low risk of recidivating, and may include the delivery of the programs described in paragraph (1) to other prisoners.

"(6) RISK AND NEEDS ASSESSMENT TOOL.—The term 'risk and needs assessment tool' means an objective and statistically validated method through which information is collected and evaluated to determine—

"(A) as part of the intake process, the risk that a prisoner will recidivate upon release from prison;

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

"(B) the recidivism reduction programs that will best minimize the risk that the prisoner will recidivate upon release from prison; and

"(C) the periodic reassessment of risk that a prisoner will recidivate upon release from prison, based on factors including indicators of progress and of regression, that are dynamic and that can reasonably be expected to change while in prison.".

<< 18 USCA T. 18 pt. II ch. 229 subch. A prec. § 3601 >>

(b) CLERICAL AMENDMENT.—The table of subchapters for chapter 229 of title 18, United States Code, is amended by adding at the end the following:

**"D. Risk and Needs Assessment 3631".**...................................................................................................................

## SEC. 102. IMPLEMENTATION OF SYSTEM AND RECOMMENDATIONS BY BUREAU OF PRISONS.

(a) IMPLEMENTATION OF SYSTEM GENERALLY.—Section 3621 of title 18, United States Code, is amended by adding at the end the following:

<< 18 USCA § 3621 >>

"(h) IMPLEMENTATION OF RISK AND NEEDS ASSESSMENT SYSTEM.—

"(1) IN GENERAL.—Not later than 180 days after the Attorney General completes and releases the risk and needs assessment system (referred to in this subsection as the 'System') developed under subchapter D, the Director of the Bureau of Prisons shall, in accordance with that subchapter—

"(A) implement and complete the initial intake risk and needs assessment for each prisoner (including for each prisoner who was a prisoner prior to the effective date of this subsection), regardless of the prisoner's length of imposed term of imprisonment, and begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination;

"(B) begin to expand the effective evidence-based recidivism reduction programs and productive activities it offers and add any new evidence-based recidivism reduction programs and productive activities necessary to effectively implement the System; and

"(C) begin to implement the other risk and needs assessment tools necessary to effectively implement the System over time, while prisoners are participating in and **\*5209** completing the effective evidence-based recidivism reduction programs and productive activities.

"(2) PHASE-IN.—In order to carry out paragraph (1), so that every prisoner has the opportunity to participate in and complete the type and amount of evidence-based recidivism reduction programs or productive activities they need, and be reassessed for recidivism risk as necessary to effectively implement the System, the Bureau of Prisons shall—

"(A) provide such evidence-based recidivism reduction programs and productive activities for all prisoners before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner under paragraph (1)(A); and

"(B) develop and validate the risk and needs assessment tool to be used in the reassessments of risk of recidivism, while prisoners are participating in and completing evidence-based recidivism reduction programs and productive activities.

"(3) PRIORITY DURING PHASE-IN.—During the 2-year period described in paragraph (2)(A), the priority for such programs and activities shall be accorded based on a prisoner's proximity to release date.

JA163

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

"(4) PRELIMINARY EXPANSION OF EVIDENCE-BASED RECIDIVISM REDUCTION PROGRAMS AND AUTHORITY TO USE INCENTIVES.—Beginning on the date of enactment of this subsection, the Bureau of Prisons may begin to expand any evidence-based recidivism reduction programs and productive activities that exist at a prison as of such date, and may offer to prisoners who successfully participate in such programs and activities the incentives and rewards described in subchapter D.

"(5) RECIDIVISM REDUCTION PARTNERSHIPS.—In order to expand evidence-based recidivism reduction programs and productive activities, the Attorney General shall develop policies for the warden of each prison of the Bureau of Prisons to enter into partnerships, subject to the availability of appropriations, with any of the following:

"(A) Nonprofit and other private organizations, including faith-based, art, and community-based organizations that will deliver recidivism reduction programming on a paid or volunteer basis.

"(B) Institutions of higher education (as defined in section 101 of the Higher Education Act of 1965 (20 U.S.C. 1001)) that will deliver instruction on a paid or volunteer basis.

"(C) Private entities that will—

"(i) deliver vocational training and certifications;

"(ii) provide equipment to facilitate vocational training or employment opportunities for prisoners;

"(iii) employ prisoners; or

"(iv) assist prisoners in prerelease custody or supervised release in finding employment.

"(D) Industry-sponsored organizations that will deliver workforce development and training, on a paid or volunteer basis.

"(6) REQUIREMENT TO PROVIDE PROGRAMS TO ALL PRISONERS; PRIORITY.—The Director of the Bureau of Prisons shall provide all prisoners with the opportunity to actively participate **\*5210** in evidence-based recidivism reduction programs or productive activities, according to their specific criminogenic needs, throughout their entire term of incarceration. Priority for participation in recidivism reduction programs shall be given to medium-risk and high-risk prisoners, with access to productive activities given to minimum-risk and low-risk prisoners.

"(7) DEFINITIONS.—The terms in this subsection have the meaning given those terms in section 3635.".

(b) PRERELEASE CUSTODY.—

(1) IN GENERAL.—Section 3624 of title 18, United States Code, is amended—

(A) in subsection (b)(1)—

<< 18 USCA § 3624 >>

(i) by striking ", beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term," and inserting "of up to 54 days for each year of the prisoner's sentence imposed by the court,"; and

JA164

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

<< 18 USCA § 3624 >>

(ii) by striking "credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence" and inserting "credit for the last year of a term of imprisonment shall be credited on the first day of the last year of the term of imprisonment"; and

(B) by adding at the end the following:

<< 18 USCA § 3624 >>

"(g) PRERELEASE CUSTODY OR SUPERVISED RELEASE FOR RISK AND NEEDS ASSESSMENT SYSTEM PARTICIPANTS.—

"(1) ELIGIBLE PRISONERS.—This subsection applies in the case of a prisoner (as such term is defined in section 3635) who—

"(A) has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the 'System') in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;

"(B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;

"(C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and

"(D)(i) in the case of a prisoner being placed in prerelease custody, the prisoner—

"(I) has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or

"(II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that—

"(aa) the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

"(bb) the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

**\*5211**

"(cc) the prisoner is unlikely to recidivate; or

"(ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

"(2) TYPES OF PRERELEASE CUSTODY.—A prisoner shall be placed in prerelease custody as follows:

"(A) HOME CONFINEMENT.—

JA165

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

"(i) IN GENERAL.—A prisoner placed in prerelease custody pursuant to this subsection who is placed in home confinement shall—

"(I) be subject to 24-hour electronic monitoring that enables the prompt identification of the prisoner, location, and time, in the case of any violation of subclause (II);

"(II) remain in the prisoner's residence, except that the prisoner may leave the prisoner's home in order to, subject to the approval of the Director of the Bureau of Prisons—

"(aa) perform a job or job-related activities, including an apprenticeship, or participate in job-seeking activities;

"(bb) participate in evidence-based recidivism reduction programming or productive activities assigned by the System, or similar activities;

"(cc) perform community service;

"(dd) participate in crime victim restoration activities;

"(ee) receive medical treatment;

"(ff) attend religious activities; or

"(gg) participate in other family-related activities that facilitate the prisoner's successful reentry such as a family funeral, a family wedding, or to visit a family member who is seriously ill; and

"(III) comply with such other conditions as the Director determines appropriate.

"(ii) ALTERNATE MEANS OF MONITORING.—If the electronic monitoring of a prisoner described in clause (i)(I) is infeasible for technical or religious reasons, the Director of the Bureau of Prisons may use alternative means of monitoring a prisoner placed in home confinement that the Director determines are as effective or more effective than the electronic monitoring described in clause (i)(I).

"(iii) MODIFICATIONS.—The Director of the Bureau of Prisons may modify the conditions described in clause (i) if the Director determines that a compelling reason exists to do so, and that the prisoner has demonstrated exemplary compliance with such conditions.

"(iv) DURATION.—Except as provided in paragraph (4), a prisoner who is placed in home confinement shall remain in home confinement until the prisoner has served not less than 85 percent of the prisoner's imposed term of imprisonment.

**\*5212**

"(B) RESIDENTIAL REENTRY CENTER.—A prisoner placed in prerelease custody pursuant to this subsection who is placed at a residential reentry center shall be subject to such conditions as the Director of the Bureau of Prisons determines appropriate.

"(3) SUPERVISED RELEASE.—If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632.

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

JA166

"(4) DETERMINATION OF CONDITIONS.—In determining appropriate conditions for prisoners placed in prerelease custody pursuant to this subsection, the Director of the Bureau of Prisons shall, to the extent practicable, provide that increasingly less restrictive conditions shall be imposed on prisoners who demonstrate continued compliance with the conditions of such prerelease custody, so as to most effectively prepare such prisoners for reentry.

"(5) VIOLATIONS OF CONDITIONS.—If a prisoner violates a condition of the prisoner's prerelease custody, the Director of the Bureau of Prisons may impose such additional conditions on the prisoner's prerelease custody as the Director of the Bureau of Prisons determines appropriate, or revoke the prisoner's prerelease custody and require the prisoner to serve the remainder of the term of imprisonment to which the prisoner was sentenced, or any portion thereof, in prison. If the violation is nontechnical in nature, the Director of the Bureau of Prisons shall revoke the prisoner's prerelease custody.

"(6) ISSUANCE OF GUIDELINES.—The Attorney General, in consultation with the Assistant Director for the Office of Probation and Pretrial Services, shall issue guidelines for use by the Bureau of Prisons in determining—

"(A) the appropriate type of prerelease custody or supervised release and level of supervision for a prisoner placed on prerelease custody pursuant to this subsection; and

"(B) consequences for a violation of a condition of such prerelease custody by such a prisoner, including a return to prison and a reassessment of evidence-based recidivism risk level under the System.

"(7) AGREEMENTS WITH UNITED STATES PROBATION AND PRETRIAL SERVICES.—The Director of the Bureau of Prisons shall, to the greatest extent practicable, enter into agreements with United States Probation and Pretrial Services to supervise prisoners placed in home confinement under this subsection. Such agreements shall—

"(A) authorize United States Probation and Pretrial Services to exercise the authority granted to the Director pursuant to paragraphs (3) and (4); and

"(B) take into account the resource requirements of United States Probation and Pretrial Services as a result of the transfer of Bureau of Prisons prisoners to prerelease custody or supervised release.

**\*5213**

"(8) ASSISTANCE.—United States Probation and Pretrial Services shall, to the greatest extent practicable, offer assistance to any prisoner not under its supervision during prerelease custody under this subsection.

"(9) MENTORING, REENTRY, AND SPIRITUAL SERVICES.—Any prerelease custody into which a prisoner is placed under this subsection may not include a condition prohibiting the prisoner from receiving mentoring, reentry, or spiritual services from a person who provided such services to the prisoner while the prisoner was incarcerated, except that the warden of the facility at which the prisoner was incarcerated may waive the requirement under this paragraph if the warden finds that the provision of such services would pose a significant security risk to the prisoner, persons who provide such services, or any other person. The warden shall provide written notice of any such waiver to the person providing such services and to the prisoner.

"(10) TIME LIMITS INAPPLICABLE.—The time limits under subsections (b) and (c) shall not apply to prerelease custody under this subsection.

"(11) PRERELEASE CUSTODY CAPACITY.—The Director of the Bureau of Prisons shall ensure there is sufficient prerelease custody capacity to accommodate all eligible prisoners.".

<< 18 USCA § 3624 NOTE >>

JA167

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

(2) EFFECTIVE DATE.—The amendments made by this subsection shall take effect beginning on the date that the Attorney General completes and releases the risk and needs assessment system under subchapter D of chapter 229 of title 18, United States Code, as added by section 101(a) of this Act.

<< 18 USCA § 3624 NOTE >>

(3) APPLICABILITY.—The amendments made by this subsection shall apply with respect to offenses committed before, on, or after the date of enactment of this Act, except that such amendments shall not apply with respect to offenses committed before November 1, 1987.

<< 18 USCA § 3621 NOTE >>

### SEC. 103. GAO REPORT.

Not later than 2 years after the Director of the Bureau of Prisons implements the risk and needs assessment system under section 3621 of title 18, United States Code, and every 2 years thereafter, the Comptroller General of the United States shall conduct an audit of the use of the risk and needs assessment system at Bureau of Prisons facilities. The audit shall include analysis of the following:

(1) Whether inmates are being assessed under the risk and needs assessment system with the frequency required under such section 3621 of title 18, United States Code.

(2) Whether the Bureau of Prisons is able to offer recidivism reduction programs and productive activities (as such terms are defined in section 3635 of title 18, United States Code, as added by section 101(a) of this Act).

(3) Whether the Bureau of Prisons is offering the type, amount, and intensity of recidivism reduction programs and productive activities for prisoners to earn the maximum amount of time credits for which they are eligible.

(4) Whether the Attorney General is carrying out the duties under section 3631(b) of title 18, United States Code, as added by section 101(a) of this Act.

**\*5214**

(5) Whether officers and employees of the Bureau of Prisons are receiving the training described in section 3632(f) of title 18, United States Code, as added by section 101(a) of this Act.

(6) Whether the Bureau of Prisons offers work assignments to all prisoners who might benefit from such an assignment.

(7) Whether the Bureau of Prisons transfers prisoners to prerelease custody or supervised release as soon as they are eligible for such a transfer under section 3624(g) of title 18, United States Code, as added by section 102(b) of this Act.

(8) The rates of recidivism among similarly classified prisoners to identify any unwarranted disparities, including disparities among similarly classified prisoners of different demographic groups, in such rates.

JA168

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

---

### SEC. 104. AUTHORIZATION OF APPROPRIATIONS.

(a) IN GENERAL.—There is authorized to be appropriated to carry out this title $75,000,000 for each of fiscal years 2019 through 2023. Of the amount appropriated under this subsection, 80 percent shall be reserved for use by the Director of the Bureau of Prisons to implement the system under section 3621(h) of title 18, United States Code, as added by section 102(a) of this Act.

(b) SAVINGS.—It is the sense of Congress that any savings associated with reductions in recidivism that result from this title should be reinvested—

(1) to supplement funding for programs that increase public safety by providing resources to State and local law enforcement officials, including for the adoption of innovative technologies and information sharing capabilities;

(2) into evidence-based recidivism reduction programs offered by the Bureau of Prisons; and

(3) into ensuring eligible prisoners have access to such programs and productive activities offered by the Bureau of Prisons.

<< 18 USCA § 3621 NOTE >>

### SEC. 105. RULE OF CONSTRUCTION.

Nothing in this Act, or the amendments made by this Act, may be construed to provide authority to place a prisoner in prerelease custody or supervised release who is serving a term of imprisonment pursuant to a conviction for an offense under the laws of one of the 50 States, or of a territory or possession of the United States or to amend or affect the enforcement of the immigration laws, as defined in section 101 of the Immigration and Nationality Act (8 U.S.C. 1101).

<< 18 USCA § 3621 NOTE >>

### SEC. 106. FAITH-BASED CONSIDERATIONS.

(a) IN GENERAL.—In considering any program, treatment, regimen, group, company, charity, person, or entity of any kind under any provision of this Act, or the amendments made by this Act, the fact that it may be or is faith-based may not be a basis for any discrimination against it in any manner or for any purpose.

(b) ELIGIBILITY FOR EARNED TIME CREDIT.—Participation in a faith-based program, treatment, or regimen may qualify a prisoner for earned time credit under subchapter D of chapter 229 of title 18, United States Code, as added by section 101(a) of this Act, however, the Director of the Bureau of Prisons shall ensure that non-faith-based programs that qualify for earned time credit are **\*5215** offered at each Bureau of Prisons facility in addition to any such faith-based programs.

(c) LIMITATION ON ACTIVITIES.—A group, company, charity, person, or entity may not engage in explicitly religious activities using direct financial assistance made available under this title or the amendments made by this title.

(d) RULE OF CONSTRUCTION.—Nothing in this Act, or the amendments made by this Act, may be construed to amend any requirement under Federal law or the Constitution of the United States regarding funding for faith-based programs or activities.

---

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

JA169

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

<< 18 USCA § 3631 NOTE >>

**SEC. 107. INDEPENDENT REVIEW COMMITTEE.**

(a) IN GENERAL.—The Attorney General shall consult with an Independent Review Committee in carrying out the Attorney General's duties under sections 3631(b), 3632 and 3633 of title 18, United States Code, as added by section 101(a) of this Act.

(b) FORMATION OF INDEPENDENT REVIEW COMMITTEE.—The National Institute of Justice shall select a nonpartisan and nonprofit organization with expertise in the study and development of risk and needs assessment tools to host the Independent Review Committee. The Independent Review Committee shall be established not later than 30 days after the date of enactment of this Act.

(c) APPOINTMENT OF INDEPENDENT REVIEW COMMITTEE.—The organization selected by the National Institute of Justice shall appoint not fewer than 6 members to the Independent Review Committee.

(d) COMPOSITION OF THE INDEPENDENT REVIEW COMMITTEE.—The members of the Independent Review Committee shall all have expertise in risk and needs assessment systems and shall include—

(1) 2 individuals who have published peer-reviewed scholarship about risk and needs assessments in both corrections and community settings;

(2) 2 corrections practitioners who have developed and implemented a risk assessment tool in a corrections system or in a community supervision setting, including 1 with prior experience working within the Bureau of Prisons; and

(3) 1 individual with expertise in assessing risk assessment implementation.

(e) DUTIES OF THE INDEPENDENT REVIEW COMMITTEE.—The Independent Review Committee shall assist the Attorney General in carrying out the Attorney General's duties under sections 3631(b), 3632 and 3633 of title 18, United States Code, as added by section 101(a) of this Act, including by assisting in—

(1) conducting a review of the existing prisoner risk and needs assessment systems in operation on the date of enactment of this Act;

(2) developing recommendations regarding evidence-based recidivism reduction programs and productive activities;

(3) conducting research and data analysis on—

(A) evidence-based recidivism reduction programs relating to the use of prisoner risk and needs assessment tools;

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

JA170

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

(B) the most effective and efficient uses of such programs; and

(C) which evidence-based recidivism reduction programs are the most effective at reducing recidivism, and **\*5216** the type, amount, and intensity of programming that most effectively reduces the risk of recidivism; and

(4) reviewing and validating the risk and needs assessment system.

(f) BUREAU OF PRISONS COOPERATION.—The Director of the Bureau of Prisons shall assist the Independent Review Committee in performing the Committee's duties and promptly respond to requests from the Committee for access to Bureau of Prisons facilities, personnel, and information.

(g) REPORT.—Not later than 2 years after the date of enactment of this Act, the Independent Review Committee shall submit to the Committee on the Judiciary and the Subcommittee on Commerce, Justice, Science, and Related Agencies of the Committee on Appropriations of the Senate and the Committee on the Judiciary and the Subcommittee on Commerce, Justice, Science, and Related Agencies of the Committee on Appropriations of the House of Representatives a report that includes—

(1) a list of all offenses of conviction for which prisoners were ineligible to receive time credits under section 3632(d)(4)(D) of title 18, United States Code, as added by section 101(a) of this Act, and for each offense the number of prisoners excluded, including demographic percentages by age, race, and sex;

(2) the criminal history categories of prisoners ineligible to receive time credits under section 3632(d)(4)(D) of title 18, United States Code, as added by section 101(a) of this Act, and for each category the number of prisoners excluded, including demographic percentages by age, race, and sex;

(3) the number of prisoners ineligible to apply time credits under section 3632(d)(4)(D) of title 18, United States Code, as added by section 101(a) of this Act, who do not participate in recidivism reduction programming or productive activities, including the demographic percentages by age, race, and sex;

(4) any recommendations for modifications to section 3632(d)(4)(D) of title 18, United States Code, as added by section 101(a) of this Act, and any other recommendations regarding recidivism reduction.

(h) TERMINATION.—The Independent Review Committee shall terminate on the date that is 2 years after the date on which the risk and needs assessment system authorized by sections 3632 and 3633 of title 18, United States Code, as added by section 101(a) of this Act, is released.

### TITLE II—BUREAU OF PRISONS SECURE FIREARMS STORAGE

SEC. 201. SHORT TITLE.

JA171

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

<< 18 USCA § 1 NOTE >>

This title may be cited as the "Lieutenant Osvaldo Albarati Correctional Officer Self-Protection Act of 2018".

### SEC. 202. SECURE FIREARMS STORAGE.

(a) IN GENERAL.—Chapter 303 of title 18, United States Code, is amended by adding at the end the following:

<< 18 USCA § 4050 >>

### § 4050. Secure firearms storage

"(a) DEFINITIONS.—In this section—

**\*5217**

"(1) the term 'employee' means a qualified law enforcement officer employed by the Bureau of Prisons; and

"(2) the terms 'firearm' and 'qualified law enforcement officer' have the meanings given those terms under section 926B. "(b) SECURE FIREARMS STORAGE.—The Director of the Bureau of Prisons shall ensure that each chief executive officer of a Federal penal or correctional institution—

"(1)(A) provides a secure storage area located outside of the secure perimeter of the institution for employees to store firearms; or

"(B) allows employees to store firearms in a vehicle lockbox approved by the Director of the Bureau of Prisons; and

"(2) notwithstanding any other provision of law, allows employees to carry concealed firearms on the premises outside of the secure perimeter of the institution.

<< 18 USCA T. 18 pt. III ch. 303 prec. § 4041 >>

(b) TECHNICAL AND CONFORMING AMENDMENT.—The table of sections for chapter 303 of title 18, United States Code, is amended by adding at the end the following:

"4050. Secure firearms storage.".

### TITLE III—RESTRAINTS ON PREGNANT PRISONERS PROHIBITED

### SEC. 301. USE OF RESTRAINTS ON PRISONERS DURING THE PERIOD OF PREGNANCY AND POSTPARTUM RECOVERY PROHIBITED.

(a) IN GENERAL.—Chapter 317 of title 18, United States Code, is amended by inserting after section 4321 the following:

<< 18 USCA § 4322 >>

### § 4322. Use of restraints on prisoners during the period of pregnancy, labor, and postpartum recovery prohibited

"(a) PROHIBITION.—Except as provided in subsection (b), beginning on the date on which pregnancy is confirmed by a healthcare professional, and ending at the conclusion of postpartum recovery, a prisoner in the custody of the Bureau of Prisons, or in the custody of the United States Marshals Service pursuant to section 4086, shall not be placed in restraints.

JA172

"(b) EXCEPTIONS.—

"(1) IN GENERAL.—The prohibition under subsection (a) shall not apply if—

"(A) an appropriate corrections official, or a United States marshal, as applicable, makes a determination that the prisoner—

"(i) is an immediate and credible flight risk that cannot reasonably be prevented by other means; or

"(ii) poses an immediate and serious threat of harm to herself or others that cannot reasonably be prevented by other means; or

"(B) a healthcare professional responsible for the health and safety of the prisoner determines that the use of restraints is appropriate for the medical safety of the prisoner.

**\*5218**

"(2) LEAST RESTRICTIVE RESTRAINTS.—In the case that restraints are used pursuant to an exception under paragraph (1), only the least restrictive restraints necessary to prevent the harm or risk of escape described in paragraph (1) may be used.

"(3) APPLICATION.—

"(A) IN GENERAL.—The exceptions under paragraph (1) may not be applied—

"(i) to place restraints around the ankles, legs, or waist of a prisoner;

"(ii) to restrain a prisoner's hands behind her back;

"(iii) to restrain a prisoner using 4-point restraints; or

"(iv) to attach a prisoner to another prisoner.

"(B) MEDICAL REQUEST.—Notwithstanding paragraph (1), upon the request of a healthcare professional who is responsible for the health and safety of a prisoner, a corrections official or United States marshal, as applicable, shall refrain from using restraints on the prisoner or shall remove restraints used on the prisoner.

"(c) REPORTS.—

"(1) REPORT TO THE DIRECTOR AND HEALTHCARE PROFESSIONAL.—If a corrections official or United States marshal uses restraints on a prisoner under subsection (b)(1), that official or marshal shall submit, not later than 30 days after placing the prisoner in restraints, to the Director of the Bureau of Prisons or the Director of the United States Marshals Service, as applicable, and to the healthcare professional responsible for the health and safety of the prisoner, a written report that describes the facts and circumstances surrounding the use of restraints, and includes—

"(A) the reasoning upon which the determination to use restraints was made;

"(B) the details of the use of restraints, including the type of restraints used and length of time during which restraints were used; and

"(C) any resulting physical effects on the prisoner observed by or known to the corrections official or United States marshal, as applicable.

JA173

4:23-cv-01215-DCN    Date Filed 08/13/23    Entry Number 39-1    Page 28 of 68

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

"(2) SUPPLEMENTAL REPORT TO THE DIRECTOR.—Upon receipt of a report under paragraph (1), the healthcare professional responsible for the health and safety of the prisoner may submit to the Director such information as the healthcare professional determines is relevant to the use of restraints on the prisoner.

"(3) REPORT TO JUDICIARY COMMITTEES.—

"(A) IN GENERAL.—Not later than 1 year after the date of enactment of this section, and annually thereafter, the Director of the Bureau of Prisons and the Director of the United States Marshals Service shall each submit to the Judiciary Committee of the Senate and of the House of Representatives a report that certifies compliance with this section and includes the information required to be reported under paragraph (1).

"(B) PERSONALLY IDENTIFIABLE INFORMATION.—The report under this paragraph shall not contain any personally identifiable information of any prisoner.

**\*5219**

"(d) NOTICE.—Not later than 48 hours after the confirmation of a prisoner's pregnancy by a healthcare professional, that prisoner shall be notified by an appropriate healthcare professional, corrections official, or United States marshal, as applicable, of the restrictions on the use of restraints under this section.

"(e) VIOLATION REPORTING PROCESS.—The Director of the Bureau of Prisons, in consultation with the Director of the United States Marshals Service, shall establish a process through which a prisoner may report a violation of this section.

"(f) TRAINING.—

"(1) IN GENERAL.—The Director of the Bureau of Prisons and the Director of the United States Marshals Service shall each develop training guidelines regarding the use of restraints on female prisoners during the period of pregnancy, labor, and postpartum recovery, and shall incorporate such guidelines into appropriate training programs. Such training guidelines shall include—

"(A) how to identify certain symptoms of pregnancy that require immediate referral to a healthcare professional;

"(B) circumstances under which the exceptions under subsection (b) would apply;

"(C) in the case that an exception under subsection (b) applies, how to apply restraints in a way that does not harm the prisoner, the fetus, or the neonate;

"(D) the information required to be reported under subsection (c); and

"(E) the right of a healthcare professional to request that restraints not be used, and the requirement under subsection (b)(3)(B) to comply with such a request.

"(2) DEVELOPMENT OF GUIDELINES.—In developing the guidelines required by paragraph (1), the Directors shall each consult with healthcare professionals with expertise in caring for women during the period of pregnancy and postpartum recovery.

"(g) DEFINITIONS.—For purposes of this section:

"(1) POSTPARTUM RECOVERY.—The term 'postpartum recovery' means the 12-week period, or longer as determined by the healthcare professional responsible for the health and safety of the prisoner, following delivery, and shall include the entire period that the prisoner is in the hospital or infirmary.

JA174

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

"(2) PRISONER.—The term 'prisoner' means a person who has been sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or a person in the custody of the Bureau of Prisons, including a person in a Bureau of Prisons contracted facility.

"(3) RESTRAINTS.—The term 'restraints' means any physical or mechanical device used to control the movement of a prisoner's body, limbs, or both.".

**\*5220**

<< 18 USCA T. 18 pt. III ch. 317 prec. § 4321 >>

(b) CLERICAL AMENDMENT.—The table of sections for chapter 317 of title 18, United States Code, is amended by adding after the item relating to section 4321 the following:

"4322. Use of restraints on prisoners during the period of pregnancy, labor, and postpartum recovery prohibited.".

### TITLE IV—SENTENCING REFORM

### SEC. 401. REDUCE AND RESTRICT ENHANCED SENTENCING FOR PRIOR DRUG FELONIES.

(a) CONTROLLED SUBSTANCES ACT AMENDMENTS.—The Controlled Substances Act (21 U.S.C. 801 et seq.) is amended—

(1) in section 102 (21 U.S.C. 802), by adding at the end the following:

<< 21 USCA § 802 >>

"(57) The term 'serious drug felony' means an offense described in section 924(e)(2) of title 18, United States Code, for which—

"(A) the offender served a term of imprisonment of more than 12 months; and

"(B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense.

<< 21 USCA § 802 >>

"(58) The term 'serious violent felony' means—

"(A) an offense described in section 3559(c)(2) of title 18, United States Code, for which the offender served a term of imprisonment of more than 12 months; and

"(B) any offense that would be a felony violation of section 113 of title 18, United States Code, if the offense were committed in the special maritime and territorial jurisdiction of the United States, for which the offender served a term of imprisonment of more than 12 months."; and

(2) in section 401(b)(1) (21 U.S.C. 841(b)(1))—

JA175

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

(A) in subparagraph (A), in the matter following clause (viii)—

<< 21 USCA § 841 >>

(i) by striking "If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years" and inserting the following: "If any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years"; and

<< 21 USCA § 841 >>

(ii) by striking "after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release" and inserting the following: "after 2 or more prior convictions for a serious drug felony or serious violent felony have become final, such person shall be sentenced to a term of imprisonment of not less than 25 years"; and

<< 21 USCA § 841 >>

(B) in subparagraph (B), in the matter following clause (viii), by striking "If any person commits **\*5221** such a violation after a prior conviction for a felony drug offense has become final" and inserting the following: "If any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final".

(b) CONTROLLED SUBSTANCES IMPORT AND EXPORT ACT AMENDMENTS.—Section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)) is amended—

<< 21 USCA § 960 >>

(1) in paragraph (1), in the matter following subparagraph (H), by striking "If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not less than 20 years" and inserting "If any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years"; and

<< 21 USCA § 960 >>

(2) in paragraph (2), in the matter following subparagraph (H), by striking "felony drug offense" and inserting "serious drug felony or serious violent felony".

<< 21 USCA § 802 NOTE >>

(c) APPLICABILITY TO PENDING CASES.—This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.

### SEC. 402. BROADENING OF EXISTING SAFETY VALVE.

(a) AMENDMENTS.—Section 3553 of title 18, United States Code, is amended—

(1) in subsection (f)—

JA176

(A) in the matter preceding paragraph (1)—

<< 18 USCA § 3553 >>

(i) by striking "or section 1010" and inserting ", section 1010"; and

<< 18 USCA § 3553 >>

(ii) by inserting ", or section 70503 or 70506 of title 46" after "963)";

(B) by striking paragraph (1) and inserting the following:

<< 18 USCA § 3553 >>

"(1) the defendant does not have—

"(A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;

"(B) a prior 3-point offense, as determined under the sentencing guidelines; and

"(C) a prior 2-point violent offense, as determined under the sentencing guidelines;"; and

(C) by adding at the end the following:

<< 18 USCA § 3553 >>

"Information disclosed by a defendant under this subsection may not be used to enhance the sentence of the defendant unless the information relates to a violent offense."; and

(2) by adding at the end the following:

<< 18 USCA § 3553 >>

"(g) DEFINITION OF VIOLENT OFFENSE.—As used in this section, the term 'violent offense' means a crime of violence, as defined in section 16, that is punishable by imprisonment.".

<< 18 USCA § 3553 NOTE >>

(b) APPLICABILITY.—The amendments made by this section shall apply only to a conviction entered on or after the date of enactment of this Act.

### SEC. 403. CLARIFICATION OF SECTION 924(C) OF TITLE 18, UNITED STATES CODE.

<< 18 USCA § 924 >>

JA177

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

(a) IN GENERAL.—Section 924(c)(1)(C) of title 18, United States Code, is amended, in the matter preceding clause (i), by striking "second or subsequent conviction under this subsection" and **\*5222** inserting "violation of this subsection that occurs after a prior conviction under this subsection has become final".

<< 18 USCA § 924 NOTE >>

(b) APPLICABILITY TO PENDING CASES.—This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.

<< 21 USCA § 841 NOTE >>

### SEC. 404. APPLICATION OF FAIR SENTENCING ACT.

(a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

### TITLE V—SECOND CHANCE ACT OF 2007 REAUTHORIZATION

SEC. 501. SHORT TITLE.

<< 34 USCA § 10101 NOTE >>

This title may be cited as the "Second Chance Reauthorization Act of 2018".

### SEC. 502. IMPROVEMENTS TO EXISTING PROGRAMS.

(a) REAUTHORIZATION OF ADULT AND JUVENILE OFFENDER STATE AND LOCAL DEMONSTRATION PROJECTS.—Section 2976 of title I of the Omnibus Crime Control and Safe Streets Act of 1968 (34 U.S.C. 10631) is amended—

(1) by striking subsection (a) and inserting the following:

<< 34 USCA § 10631 >>

JA178

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

"(a) GRANT AUTHORIZATION.—The Attorney General shall make grants to States, local governments, territories, or Indian tribes, or any combination thereof (in this section referred to as an 'eligible entity'), in partnership with interested persons (including Federal corrections and supervision agencies), service providers, and nonprofit organizations for the purpose of strategic planning and implementation of adult and juvenile offender reentry projects.";

(2) in subsection (b)—

<< 34 USCA § 10631 >>

(A) in paragraph (3), by inserting "or reentry courts," after "community,";

<< 34 USCA § 10631 >>

(B) in paragraph (6), by striking "and" at the end;

<< 34 USCA § 10631 >>

(C) in paragraph (7), by striking the period at the end and inserting "; and"; and

**\*5223**

(D) by adding at the end the following:

<< 34 USCA § 10631 >>

"(8) promoting employment opportunities consistent with the Transitional Jobs strategy (as defined in section 4 of the Second Chance Act of 2007 (34 U.S.C. 60502))."; and

(3) by striking subsections (d), (e), and (f) and inserting the following:

<< 34 USCA § 10631 >>

"(d) COMBINED GRANT APPLICATION; PRIORITY CONSIDERATION.—

"(1) IN GENERAL.—The Attorney General shall develop a procedure to allow applicants to submit a single application for a planning grant under subsection (e) and an implementation grant under subsection (f).

"(2) PRIORITY CONSIDERATION.—The Attorney General shall give priority consideration to grant applications under subsections (e) and (f) that include a commitment by the applicant to partner with a local evaluator to identify and analyze data that will—

"(A) enable the grantee to target the intended offender population; and

"(B) serve as a baseline for purposes of the evaluation.

<< 34 USCA § 10631 >>

"(e) PLANNING GRANTS.—

JA179

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

---

"(1) IN GENERAL.—Except as provided in paragraph (3), the Attorney General may make a grant to an eligible entity of not more than $75,000 to develop a strategic, collaborative plan for an adult or juvenile offender reentry demonstration project as described in subsection (h) that includes—

    "(A) a budget and a budget justification;

    "(B) a description of the outcome measures that will be used to measure the effectiveness of the program in promoting public safety and public health;

    "(C) the activities proposed;

    "(D) a schedule for completion of the activities described in subparagraph (C); and

    "(E) a description of the personnel necessary to complete the activities described in subparagraph (C).

"(2) MAXIMUM TOTAL GRANTS AND GEOGRAPHIC DIVERSITY.—

    "(A) MAXIMUM AMOUNT.—The Attorney General may not make initial planning grants and implementation grants to 1 eligible entity in a total amount that is more than a $1,000,000.

    "(B) GEOGRAPHIC DIVERSITY.—The Attorney General shall make every effort to ensure equitable geographic distribution of grants under this section and take into consideration the needs of underserved populations, including rural and tribal communities.

"(3) PERIOD OF GRANT.—A planning grant made under this subsection shall be for a period of not longer than 1 year, beginning on the first day of the month in which the planning grant is made.

<< 34 USCA § 10631 >>

"(f) IMPLEMENTATION GRANTS.—

"(1) APPLICATIONS.—An eligible entity desiring an implementation grant under this subsection shall submit to the Attorney General an application that—

    "(A) contains a reentry strategic plan as described in subsection (h), which describes the long-term strategy and incorporates a detailed implementation schedule, including **\*5224** the plans of the applicant to fund the program after Federal funding is discontinued;

    "(B) identifies the local government role and the role of governmental agencies and nonprofit organizations that will be coordinated by, and that will collaborate on, the offender reentry strategy of the applicant, and certifies the involvement of such agencies and organizations;

    "(C) describes the evidence-based methodology and outcome measures that will be used to evaluate the program funded with a grant under this subsection, and specifically explains how such measurements will provide valid measures of the impact of that program; and

    "(D) describes how the project could be broadly replicated if demonstrated to be effective.

"(2) REQUIREMENTS.—The Attorney General may make a grant to an applicant under this subsection only if the application—

---

WESTLAW    © 2023 Thomson Reuters. No claim to original U.S. Government Works.      33

JA180

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

"(A) reflects explicit support of the chief executive officer, or their designee, of the State, unit of local government, territory, or Indian tribe applying for a grant under this subsection;

"(B) provides discussion of the role of Federal corrections, State corrections departments, community corrections agencies, juvenile justice systems, and tribal or local jail systems in ensuring successful reentry of offenders into their communities;

"(C) provides evidence of collaboration with State, local, or tribal government agencies overseeing health, housing, child welfare, education, substance abuse, victims services, and employment services, and with local law enforcement agencies;

"(D) provides a plan for analysis of the statutory, regulatory, rules-based, and practice-based hurdles to reintegration of offenders into the community;

"(E) includes the use of a State, local, territorial, or tribal task force, described in subsection (i), to carry out the activities funded under the grant;

"(F) provides a plan for continued collaboration with a local evaluator as necessary to meeting the requirements under subsection (h); and

"(G) demonstrates that the applicant participated in the planning grant process or engaged in comparable planning for the reentry project.

"(3) PRIORITY CONSIDERATIONS.—The Attorney General shall give priority to grant applications under this subsection that best—

"(A) focus initiative on geographic areas with a disproportionate population of offenders released from prisons, jails, and juvenile facilities;

"(B) include—

"(i) input from nonprofit organizations, in any case where relevant input is available and appropriate to the grant application;

"(ii) consultation with crime victims and offenders who are released from prisons, jails, and juvenile facilities;

"(iii) coordination with families of offenders;

**\*5225**
"(iv) input, where appropriate, from the juvenile justice coordinating council of the region;

"(v) input, where appropriate, from the reentry coordinating council of the region; or

"(vi) input, where appropriate, from other interested persons;

"(C) demonstrate effective case assessment and management abilities in order to provide comprehensive and continuous reentry, including—

"(i) planning for prerelease transitional housing and community release that begins upon admission for juveniles and jail inmates, and, as appropriate, for prison inmates, depending on the length of the sentence;

"(ii) establishing prerelease planning procedures to ensure that the eligibility of an offender for Federal, tribal, or State benefits upon release is established prior to release, subject to any limitations in law, and to ensure that offenders obtain all necessary referrals for reentry services, including assistance identifying and securing suitable housing; or

"(iii) delivery of continuous and appropriate mental health services, drug treatment, medical care, job training and placement, educational services, vocational services, and any other service or support needed for reentry;

"(D) review the process by which the applicant adjudicates violations of parole, probation, or supervision following release from prison, jail, or a juvenile facility, taking into account public safety and the use of graduated, community-based sanctions for minor and technical violations of parole, probation, or supervision (specifically those violations that are not otherwise, and independently, a violation of law);

"(E) provide for an independent evaluation of reentry programs that include, to the maximum extent possible, random assignment and controlled studies to determine the effectiveness of such programs;

"(F) target moderate and high-risk offenders for reentry programs through validated assessment tools; or

"(G) target offenders with histories of homelessness, substance abuse, or mental illness, including a prerelease assessment of the housing status of the offender and behavioral health needs of the offender with clear coordination with mental health, substance abuse, and homelessness services systems to achieve stable and permanent housing outcomes with appropriate support service.

"(4) PERIOD OF GRANT.—A grant made under this subsection shall be effective for a 2-year period—

"(A) beginning on the date on which the planning grant awarded under subsection (e) concludes; or

"(B) in the case of an implementation grant awarded to an eligible entity that did not receive a planning grant, beginning on the date on which the implementation grant is awarded.";

(4) in subsection (h)—

**\*5226**

<< 34 USCA § 10631 >>

(A) by redesignating paragraphs (2) and (3) as paragraphs (3) and (4), respectively; and

(B) by striking paragraph (1) and inserting the following:

<< 34 USCA § 10631 >>

"(1) IN GENERAL.—As a condition of receiving financial assistance under subsection (f), each application shall develop a comprehensive reentry strategic plan that—

"(A) contains a plan to assess inmate reentry needs and measurable annual and 3-year performance outcomes;

"(B) uses, to the maximum extent possible, randomly assigned and controlled studies, or rigorous quasi-experimental studies with matched comparison groups, to determine the effectiveness of the program funded with a grant under subsection (f); and

JA182

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

"(C) includes as a goal of the plan to reduce the rate of recidivism for offenders released from prison, jail or a juvenile facility with funds made available under subsection (f).

<< 34 USCA § 10631 >>

"(2) LOCAL EVALUATOR.—A partnership with a local evaluator described in subsection (d)(2) shall require the local evaluator to use the baseline data and target population characteristics developed under a subsection (e) planning grant to derive a target goal for recidivism reduction during the 3-year period beginning on the date of implementation of the program.";

(5) in subsection (i)(1)—

<< 34 USCA § 10631 >>

(A) in the matter preceding subparagraph (A), by striking "under this section" and inserting "under subsection (f)"; and

<< 34 USCA § 10631 >>

(B) in subparagraph (B), by striking "subsection (e)(4)" and inserting "subsection (f)(2)(D)";

(6) in subsection (j)—

<< 34 USCA § 10631 >>

(A) in paragraph (1), by inserting "for an implementation grant under subsection (f)" after "applicant";

(B) in paragraph (2)—

<< 34 USCA § 10631 >>

(i) in subparagraph (E), by inserting ", where appropriate" after "support"; and

(ii) by striking subparagraphs (F), (G), and (H), and inserting the following:

<< 34 USCA § 10631 >>

"(F) increased number of staff trained to administer reentry services;

<< 34 USCA § 10631 >>

"(G) increased proportion of individuals served by the program among those eligible to receive services;

<< 34 USCA § 10631 >>

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

JA183

"(H) increased number of individuals receiving risk screening needs assessment, and case planning services;

<< 34 USCA § 10631 >>

"(I) increased enrollment in, and completion of treatment services, including substance abuse and mental health services among those assessed as needing such services;

<< 34 USCA § 10631 >>

"(J) increased enrollment in and degrees earned from educational programs, including high school, GED, vocational training, and college education;

<< 34 USCA § 10631 >>

"(K) increased number of individuals obtaining and retaining employment;

<< 34 USCA § 10631 >>

"(L) increased number of individuals obtaining and maintaining housing;

**\*5227**

<< 34 USCA § 10631 >>

"(M) increased self-reports of successful community living, including stability of living situation and positive family relationships;

<< 34 USCA § 10631 >>

"(N) reduction in drug and alcohol use; and

<< 34 USCA § 10631 >>

"(O) reduction in recidivism rates for individuals receiving reentry services after release, as compared to either baseline recidivism rates in the jurisdiction of the grantee or recidivism rates of the control or comparison group.";

WESTLAW    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

<< 34 USCA § 10631 >>

(C) in paragraph (3), by striking "facilities." and inserting "facilities, including a cost-benefit analysis to determine the cost effectiveness of the reentry program.";

<< 34 USCA § 10631 >>

(D) in paragraph (4), by striking "this section" and inserting "subsection (f)"; and

<< 34 USCA § 10631 >>

(E) in paragraph (5), by striking "this section" and inserting "subsection (f)";

<< 34 USCA § 10631 >>

(7) in subsection (k)(1), by striking "this section" each place the term appears and inserting "subsection (f)";

(8) in subsection (l)—

<< 34 USCA § 10631 >>

(A) in paragraph (2), by inserting "beginning on the date on which the most recent implementation grant is made to the grantee under subsection (f)" after "2-year period"; and

<< 34 USCA § 10631 >>

(B) in paragraph (4), by striking "over a 2-year period" and inserting "during the 2-year period described in paragraph (2)";

<< 34 USCA § 10631 >>

(9) in subsection (o)(1), by striking "appropriated" and all that follows and inserting the following: "appropriated $35,000,000 for each of fiscal years 2019 through 2023."; and

(10) by adding at the end the following:

<< 34 USCA § 10631 >>

"(p) DEFINITION.—In this section, the term 'reentry court' means a program that—

"(1) monitors juvenile and adult eligible offenders reentering the community;

"(2) provides continual judicial supervision;

"(3) provides juvenile and adult eligible offenders reentering the community with coordinated and comprehensive reentry services and programs, such as—

"(A) drug and alcohol testing and assessment for treatment;

"(B) assessment for substance abuse from a substance abuse professional who is approved by the State or Indian tribe and licensed by the appropriate entity to provide alcohol and drug addiction treatment, as appropriate;

"(C) substance abuse treatment, including medication-assisted treatment, from a provider that is approved by the State or Indian tribe, and licensed, if necessary, to provide medical and other health services;

JA185

"(D) health (including mental health) services and assessment;

"(E) aftercare and case management services that—

"(i) facilitate access to clinical care and related health services; and

"(ii) coordinate with such clinical care and related health services; and

"(F) any other services needed for reentry;

**\*5228**

"(4) convenes community impact panels, victim impact panels, or victim impact educational classes;

"(5) provides and coordinates the delivery of community services to juvenile and adult eligible offenders, including—

"(A) housing assistance;

"(B) education;

"(C) job training;

"(D) conflict resolution skills training;

"(E) batterer intervention programs; and

"(F) other appropriate social services; and

"(6) establishes and implements graduated sanctions and incentives.".

(b) GRANTS FOR FAMILY-BASED SUBSTANCE ABUSE TREATMENT.—Part DD of title I of the Omnibus Crime Control and Safe Streets Act of 1968 (34 U.S.C. 10591 et seq.) is amended—

<< 34 USCA § 10591 >>

(1) in section 2921 (34 U.S.C. 10591), in the matter preceding paragraph (1), by inserting "nonprofit organizations," before "and Indian";

(2) in section 2923 (34 U.S.C. 10593), by adding at the end the following:

<< 34 USCA § 10593 >>

"(c) PRIORITY CONSIDERATIONS.—The Attorney General shall give priority consideration to grant applications for grants under section 2921 that are submitted by a nonprofit organization that demonstrates a relationship with State and local criminal justice agencies, including—

"(1) within the judiciary and prosecutorial agencies; or

"(2) with the local corrections agencies, which shall be documented by a written agreement that details the terms of access to facilities and participants and provides information on the history of the organization of working with correctional populations."; and

JA186

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

(3) by striking section 2926(a) and inserting the following:

<< 42 USCA § 3797s–5 >>

<< 42 USCA § 3797s–5 >>

<< 34 USCA § 10595a >>

"(a) IN GENERAL.—There are authorized to be appropriated to carry out this part $10,000,000 for each of fiscal years 2019 through 2023.".

(c) GRANT PROGRAM TO EVALUATE AND IMPROVE EDUCATIONAL METHODS AT PRISONS, JAILS, AND JUVENILE FACILITIES.—Title I of the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. 3711 et seq.) is amended—

<< 34 USCA § 10681 >>

(1) by striking the second part designated as part JJ, as added by the Second Chance Act of 2007 (Public Law 110–199; 122 Stat. 677), relating to grants to evaluate and improve educational methods at prisons, jails, and juvenile facilities;

(2) by adding at the end the following:

T. 34 subt. I ch. 101 subch. XL prec. § 10741

**"PART NN—GRANT PROGRAM TO EVALUATE AND IMPROVE EDUCATIONAL METHODS AT PRISONS, JAILS, AND JUVENILE FACILITIES**

<< 34 USCA § 10741 >>

**"SEC. 3041. GRANT PROGRAM TO EVALUATE AND IMPROVE EDUCATIONAL METHODS AT PRISONS, JAILS, AND JUVENILE FACILITIES.**

"(a) GRANT PROGRAM AUTHORIZED.—The Attorney General may carry out a grant program under which the Attorney General may make grants to States, units of local government, territories, Indian Tribes, and other public and private entities to—

**\*5229**

"(1) evaluate methods to improve academic and vocational education for offenders in prisons, jails, and juvenile facilities;

"(2) identify, and make recommendations to the Attorney General regarding, best practices relating to academic and vocational education for offenders in prisons, jails, and juvenile facilities, based on the evaluation under paragraph (1);

"(3) improve the academic and vocational education programs (including technology career training) available to offenders in prisons, jails, and juvenile facilities; and

"(4) implement methods to improve academic and vocational education for offenders in prisons, jails, and juvenile facilities consistent with the best practices identified in subsection (c).

"(b) APPLICATION.—To be eligible for a grant under this part, a State or other entity described in subsection (a) shall submit to the Attorney General an application in such form and manner, at such time, and accompanied by such information as the Attorney General specifies.

JA187

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

"(c) BEST PRACTICES.—Not later than 180 days after the date of enactment of the Second Chance Reauthorization Act of 2018, the Attorney General shall identify and publish best practices relating to academic and vocational education for offenders in prisons, jails, and juvenile facilities. The best practices shall consider the evaluations performed and recommendations made under grants made under subsection (a) before the date of enactment of the Second Chance Reauthorization Act of 2018.

"(d) REPORT.—Not later than 90 days after the last day of the final fiscal year of a grant under this part, each entity described in subsection (a) receiving such a grant shall submit to the Attorney General a detailed report of the progress made by the entity using such grant, to permit the Attorney General to evaluate and improve academic and vocational education methods carried out with grants under this part."; and

(3) in section 1001(a) of part J of title I of the Omnibus Crime Control and Safe Streets Act of 1968 (34 U.S.C. 10261(a)), by adding at the end the following:

<< 34 USCA § 10261 >>

"(28) There are authorized to be appropriated to carry out section 3031(a)(4) of part NN $5,000,000 for each of fiscal years 2019, 2020, 2021, 2022, and 2023.".

(d) CAREERS TRAINING DEMONSTRATION GRANTS.—Section 115 of the Second Chance Act of 2007 (34 U.S.C. 60511) is amended—

<< 34 USCA § 60511 >>

(1) in the heading, by striking "**TECHNOLOGY CAREERS**" and inserting "**CAREERS**";

(2) in subsection (a)—

<< 34 USCA § 60511 >>

(A) by striking "and Indian" and inserting "nonprofit organizations, and Indian"; and

<< 34 USCA § 60511 >>

(B) by striking "technology career training to prisoners" and inserting "career training, including subsidized employment, when part of a training program, to prisoners and reentering youth and adults";

(3) in subsection (b)—

<< 34 USCA § 60511 >>

(A) by striking "technology careers training";

<< 34 USCA § 60511 >>

(B) by striking "technology-based"; and

<< 34 USCA § 60511 >>

JA188

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

(C) by inserting ", as well as upon transition and reentry into the community" after "facility";

<< 34 USCA § 60511 >>

(4) by striking subsection (e);

**\*5230**

<< 34 USCA § 60511 >>

(5) by redesignating subsections (c) and (d) as subsections (d) and (e), respectively;

(6) by inserting after subsection (b) the following:

<< 34 USCA § 60511 >>

"(c) PRIORITY CONSIDERATION.—Priority consideration shall be given to any application under this section that—

"(1) provides assessment of local demand for employees in the geographic areas to which offenders are likely to return;

"(2) conducts individualized reentry career planning upon the start of incarceration or post-release employment planning for each offender served under the grant;

"(3) demonstrates connections to employers within the local community; or

"(4) tracks and monitors employment outcomes."; and

(7) by adding at the end the following:

<< 34 USCA § 60511 >>

"(f) AUTHORIZATION OF APPROPRIATIONS.—There are authorized to be appropriated to carry out this section $10,000,000 for each of fiscal years 2019, 2020, 2021, 2022, and 2023.".

(e) OFFENDER REENTRY SUBSTANCE ABUSE AND CRIMINAL JUSTICE COLLABORATION PROGRAM.—Section 201(f)(1) of the Second Chance Act of 2007 (34 U.S.C. 60521(f)(1)) is amended to read as follows:

<< 34 USCA § 60521 >>

"(1) IN GENERAL.—There are authorized to be appropriated to carry out this section $15,000,000 for each of fiscal years 2019 through 2023.".

(f) COMMUNITY-BASED MENTORING AND TRANSITIONAL SERVICE GRANTS TO NONPROFIT ORGANIZATIONS.—

(1) IN GENERAL.—Section 211 of the Second Chance Act of 2007 (34 U.S.C. 60531) is amended—

<< 34 USCA § 60531 >>

JA189

(A) in the header, by striking "**MENTORING GRANTS TO NONPROFIT ORGANIZATIONS**" and inserting "**COMMUNITY-BASED MENTORING AND TRANSITIONAL SERVICE GRANTS TO NONPROFIT ORGANIZATIONS**";

<< 34 USCA § 60531 >>

(B) in subsection (a), by striking "mentoring and other";

(C) in subsection (b), by striking paragraph (2) and inserting the following:

<< 34 USCA § 60531 >>

"(2) transitional services to assist in the reintegration of offenders into the community, including—

"(A) educational, literacy, and vocational, services and the Transitional Jobs strategy;

"(B) substance abuse treatment and services;

"(C) coordinated supervision and services for offenders, including physical health care and comprehensive housing and mental health care;

"(D) family services; and

"(E) validated assessment tools to assess the risk factors of returning inmates; and"; and

<< 34 USCA § 60531 >>

(D) in subsection (f), by striking "this section" and all that follows and inserting the following: "this section $15,000,000 for each of fiscal years 2019 through 2023.".

(2) TABLE OF CONTENTS AMENDMENT.—The table of contents in section 2 of the Second Chance Act of 2007 (Public Law 110–199; 122 Stat. 657) is amended by striking the item relating to section 211 and inserting the following:

"Sec. 211. Community-based mentoring and transitional service grants.".

(g) DEFINITIONS.—

**\*5231**

(1) IN GENERAL.—Section 4 of the Second Chance Act of 2007 (34 U.S.C. 60502) is amended to read as follows:

<< 34 USCA § 60502 >>

**"SEC. 4. DEFINITIONS.**

"In this Act—

"(1) the term 'exoneree' means an individual who—

"(A) has been convicted of a Federal, tribal, or State offense that is punishable by a term of imprisonment of more than 1 year;

JA190

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

"(B) has served a term of imprisonment for not less than 6 months in a Federal, tribal, or State prison or correctional facility as a result of the conviction described in subparagraph (A); and

"(C) has been determined to be factually innocent of the offense described in subparagraph (A);

"(2) the term 'Indian tribe' has the meaning given in section 901 of title I of the Omnibus Crime Control and Safe Streets Act of 1968 (34 U.S.C. 10251);

"(3) the term 'offender' includes an exoneree; and

"(4) the term 'Transitional Jobs strategy' means an employment strategy for youth and adults who are chronically unemployed or those that have barriers to employment that—

"(A) is conducted by State, tribal, and local governments, State, tribal, and local workforce boards, and nonprofit organizations;

"(B) provides time-limited employment using individual placements, team placements, and social enterprise placements, without displacing existing employees;

"(C) pays wages in accordance with applicable law, but in no event less than the higher of the rate specified in section 6(a)(1) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206(a)(1)) or the applicable State or local minimum wage law, which are subsidized, in whole or in part, by public funds;

"(D) combines time-limited employment with activities that promote skill development, remove barriers to employment, and lead to unsubsidized employment such as a thorough orientation and individual assessment, job readiness and life skills training, case management and supportive services, adult education and training, child support-related services, job retention support and incentives, and other similar activities;

"(E) places participants into unsubsidized employment; and

"(F) provides job retention, re-employment services, and continuing and vocational education to ensure continuing participation in unsubsidized employment and identification of opportunities for advancement.".

(2) TABLE OF CONTENTS AMENDMENT.—The table of contents in section 2 of the Second Chance Act of 2007 (Public Law 110–199; 122 Stat. 657) is amended by striking the item relating to section 4 and inserting the following:

"Sec. 4. Definitions.".

<< 34 USCA § 60504 >>

(h) EXTENSION OF THE LENGTH OF SECTION 2976 GRANTS.—Section 6(1) of the Second Chance Act of 2007 (34 U.S.C. 60504(1)) is amended by inserting "or under section 2976 of the Omnibus **5232** Crime Control and Safe Streets Act of 1968 (34 U.S.C. 10631)" after "and 212".

<< 34 USCA § 60505 >>

### SEC. 503. AUDIT AND ACCOUNTABILITY OF GRANTEES.

(a) DEFINITIONS.—In this section—

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

JA191

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

(1) the term "covered grant program" means grants awarded under section 115, 201, or 211 of the Second Chance Act of 2007 (34 U.S.C. 60511, 60521, and 60531), as amended by this title;

(2) the term "covered grantee" means a recipient of a grant from a covered grant program;

(3) the term "nonprofit", when used with respect to an organization, means an organization that is described in section 501(c)(3) of the Internal Revenue Code of 1986, and is exempt from taxation under section 501(a) of such Code; and

(4) the term "unresolved audit finding" means an audit report finding in a final audit report of the Inspector General of the Department of Justice that a covered grantee has used grant funds awarded to that grantee under a covered grant program for an unauthorized expenditure or otherwise unallowable cost that is not closed or resolved during a 12-month period prior to the date on which the final audit report is issued.

(b) AUDIT REQUIREMENT.—Beginning in fiscal year 2019, and annually thereafter, the Inspector General of the Department of Justice shall conduct audits of covered grantees to prevent waste, fraud, and abuse of funds awarded under covered grant programs. The Inspector General shall determine the appropriate number of covered grantees to be audited each year.

(c) MANDATORY EXCLUSION.—A grantee that is found to have an unresolved audit finding under an audit conducted under subsection (b) may not receive grant funds under a covered grant program in the fiscal year following the fiscal year to which the finding relates.

(d) REIMBURSEMENT.—If a covered grantee is awarded funds under the covered grant program from which it received a grant award during the 1-fiscal-year period during which the covered grantee is ineligible for an allocation of grant funds under subsection (c), the Attorney General shall—

(1) deposit into the General Fund of the Treasury an amount that is equal to the amount of the grant funds that were improperly awarded to the covered grantee; and

(2) seek to recoup the costs of the repayment to the Fund from the covered grantee that was improperly awarded the grant funds.

(e) PRIORITY OF GRANT AWARDS.—The Attorney General, in awarding grants under a covered grant program shall give priority to eligible entities that during the 2-year period preceding the application for a grant have not been found to have an unresolved audit finding.

(f) NONPROFIT REQUIREMENTS.—

(1) PROHIBITION.—A nonprofit organization that holds money in offshore accounts for the purpose of avoiding the tax described in section 511(a) of the Internal Revenue Code of 1986, shall not be eligible to receive, directly or indirectly, any funds from a covered grant program.

JA192

**\*5233**

(2) DISCLOSURE.—Each nonprofit organization that is a covered grantee shall disclose in its application for such a grant, as a condition of receipt of such a grant, the compensation of its officers, directors, and trustees. Such disclosure shall include a description of the criteria relied on to determine such compensation.

(g) PROHIBITION ON LOBBYING ACTIVITY.—

(1) IN GENERAL.—Amounts made available under a covered grant program may not be used by any covered grantee to—

(A) lobby any representative of the Department of Justice regarding the award of grant funding; or

(B) lobby any representative of the Federal Government or a State, local, or tribal government regarding the award of grant funding.

(2) PENALTY.—If the Attorney General determines that a covered grantee has violated paragraph (1), the Attorney General shall—

(A) require the covered grantee to repay the grant in full; and

(B) prohibit the covered grantee from receiving a grant under the covered grant program from which it received a grant award during at least the 5-year period beginning on the date of such violation.

### SEC. 504. FEDERAL REENTRY IMPROVEMENTS.

<< 34 USCA § 60532 >>

(a) RESPONSIBLE REINTEGRATION OF OFFENDERS.—Section 212 of the Second Chance Act of 2007 (34 U.S.C. 60532) is repealed.

(b) FEDERAL PRISONER REENTRY INITIATIVE.—Section 231 of the Second Chance Act of 2007 (434 U.S.C. 60541) is amended—

(1) in subsection (g)—

<< 34 USCA § 60541 >>

JA193

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

(A) in paragraph (3), by striking "carried out during fiscal years 2009 and 2010" and inserting "carried out during fiscal years 2019 through 2023"; and

<< 34 USCA § 60541 >>

(B) in paragraph (5)(A)(ii), by striking "the greater of 10 years or";

<< 34 USCA § 60541 >>

(2) by striking subsection (h);

<< 34 USCA § 60541 >>

(3) by redesignating subsection (i) as subsection (h); and

<< 34 USCA § 60541 >>

(4) in subsection (h), as so redesignated, by striking "2009 and 2010" and inserting "2019 through 2023".

(c) ENHANCING REPORTING REQUIREMENTS PERTAINING TO COMMUNITY CORRECTIONS.—Section 3624(c) of title 18, United States Code, is amended—

<< 18 USCA § 3624 >>

(1) in paragraph (5), in the second sentence, by inserting ", and number of prisoners not being placed in community corrections facilities for each reason set forth" before ", and any other information"; and

<< 18 USCA § 3624 >>

(2) in paragraph (6), by striking "the Second Chance Act of 2007" and inserting "the Second Chance Reauthorization Act of 2018".

<< 34 USCA § 60554 >>

(d) TERMINATION OF STUDY ON EFFECTIVENESS OF DEPOT NALTREXONE FOR HEROIN ADDICTION.—Section 244 of the Second Chance Act of 2007 (34 U.S.C. 60554) is repealed.

(e) AUTHORIZATION OF APPROPRIATIONS FOR RESEARCH.—Section 245 of the Second Chance Act of 2007 (34 U.S.C. 60555) is amended—

<< 42 USCA § 17555 >>

<< 42 USCA § 17555 >>

<< 34 USCA § 60555 >>

(1) by striking "243, and 244" and inserting "and 243"; and

**\*5234**

<< 42 USCA § 17555 >>

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

JA194

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

(2) by striking "$10,000,000 for each of the fiscal years 2009 and 2010" and inserting "$5,000,000 for each of the fiscal years 2019, 2020, 2021, 2022, and 2023".

(f) FEDERAL PRISONER RECIDIVISM REDUCTION PROGRAMMING ENHANCEMENT.—

(1) IN GENERAL.—Section 3621 of title 18, United States Code, as amended by section 102(a) of this Act, is amended—

<< 18 USCA § 3621 >>

(A) by redesignating subsection (g) as subsection (i); and

(B) by inserting after subsection (f) the following:

<< 18 USCA § 3621 >>

"(g) PARTNERSHIPS TO EXPAND ACCESS TO REENTRY PROGRAMS PROVEN TO REDUCE RECIDIVISM.—

"(1) DEFINITION.—The term 'demonstrated to reduce recidivism' means that the Director of Bureau of Prisons has determined that appropriate research has been conducted and has validated the effectiveness of the type of program on recidivism.

"(2) ELIGIBILITY FOR RECIDIVISM REDUCTION PARTNERSHIP.—A faith-based or community-based nonprofit organization that provides mentoring or other programs that have been demonstrated to reduce recidivism is eligible to enter into a recidivism reduction partnership with a prison or community-based facility operated by the Bureau of Prisons.

"(3) RECIDIVISM REDUCTION PARTNERSHIPS.—The Director of the Bureau of Prisons shall develop policies to require wardens of prisons and community-based facilities to enter into recidivism reduction partnerships with faith-based and community-based nonprofit organizations that are willing to provide, on a volunteer basis, programs described in paragraph (2).

"(4) REPORTING REQUIREMENT.—The Director of the Bureau of Prisons shall submit to Congress an annual report on the last day of each fiscal year that—

"(A) details, for each prison and community-based facility for the fiscal year just ended—

"(i) the number of recidivism reduction partnerships under this section that were in effect;

"(ii) the number of volunteers that provided recidivism reduction programming; and

"(iii) the number of recidivism reduction programming hours provided; and

"(B) explains any disparities between facilities in the numbers reported under subparagraph (A).".

<< 18 USCA § 3621 NOTE >>

(2) EFFECTIVE DATE.—The amendments made by paragraph (1) shall take effect 180 days after the date of enactment of this Act.

(g) REPEALS.—

JA195

<< 34 USCA § 10633 >>

(1) Section 2978 of title I of the Omnibus Crime Control and Safe Streets Act of 1968 (34 U.S.C. 10633) is repealed.

<< 34 USCA § 10581 >>

(2) Part CC of title I of the Omnibus Crime Control and Safe Streets Act of 1968 (34 U.S.C. 10581 et seq.) is repealed.

<< 34 USCA § 60506 >>

### SEC. 505. FEDERAL INTERAGENCY REENTRY COORDINATION.

(a) REENTRY COORDINATION.—The Attorney General, in consultation with the Secretary of Housing and Urban Development, the Secretary of Labor, the Secretary of Education, the Secretary of Health and Human Services, the Secretary of Veterans Affairs, the Secretary of Agriculture, and the heads of such other agencies **\*5235** of the Federal Government as the Attorney General considers appropriate, and in collaboration with interested persons, service providers, nonprofit organizations, and State, tribal, and local governments, shall coordinate on Federal programs, policies, and activities relating to the reentry of individuals returning from incarceration to the community, with an emphasis on evidence-based practices and protection against duplication of services.

(b) REPORT.—Not later than 2 years after the date of the enactment of this Act, the Attorney General, in consultation with the Secretaries listed in subsection (a), shall submit to Congress a report summarizing the achievements under subsection (a), and including recommendations for Congress that would further reduce barriers to successful reentry.

### SEC. 506. CONFERENCE EXPENDITURES.

(a) LIMITATION.—No amounts authorized to be appropriated to the Department of Justice under this title, or any amendments made by this title, may be used by the Attorney General, or by any individual or organization awarded discretionary funds under this title, or any amendments made by this title, to host or support any expenditure for conferences that uses more than $20,000 in Department funds, unless the Deputy Attorney General or such Assistant Attorney Generals, Directors, or principal deputies as the Deputy Attorney General may designate, provides prior written authorization that the funds may be expended to host a conference. A conference that uses more than $20,000 in such funds, but less than an average of $500 in such funds for each attendee of the conference, shall not be subject to the limitations of this section.

(b) WRITTEN APPROVAL.—Written approval under subsection (a) shall include a written estimate of all costs associated with the conference, including the cost of all food and beverages, audiovisual equipment, honoraria for speakers, and any entertainment.

(c) REPORT.—The Deputy Attorney General shall submit an annual report to the Committee on the Judiciary of the Senate and the Committee on the Judiciary of the House of Representatives on all approved conference expenditures referenced in this section.

<< 34 USCA § 60501 NOTE >>

### SEC. 507. EVALUATION OF THE SECOND CHANCE ACT PROGRAM.

JA196

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

(a) EVALUATION OF THE SECOND CHANCE ACT GRANT PROGRAM.—Not later than 5 years after the date of enactment of this Act, the National Institute of Justice shall evaluate the effectiveness of grants used by the Department of Justice to support offender reentry and recidivism reduction programs at the State, local, Tribal, and Federal levels. The National Institute of Justice shall evaluate the following:

(1) The effectiveness of such programs in relation to their cost, including the extent to which the programs improve reentry outcomes, including employment, education, housing, reductions in recidivism, of participants in comparison to comparably situated individuals who did not participate in such programs and activities.

(2) The effectiveness of program structures and mechanisms for delivery of services.

(3) The impact of such programs on the communities and participants involved.

(4) The impact of such programs on related programs and activities.

**\*5236**

(5) The extent to which such programs meet the needs of various demographic groups.

(6) The quality and effectiveness of technical assistance provided by the Department of Justice to grantees for implementing such programs.

(7) Such other factors as may be appropriate.

(b) AUTHORIZATION OF FUNDS FOR EVALUATION.—Not more than 1 percent of any amounts authorized to be appropriated to carry out the Second Chance Act grant program shall be made available to the National Institute of Justice each year to evaluate the processes, implementation, outcomes, costs, and effectiveness of the Second Chance Act grant program in improving reentry and reducing recidivism. Such funding may be used to provide support to grantees for supplemental data collection, analysis, and coordination associated with evaluation activities.

(c) TECHNIQUES.—Evaluations conducted under this section shall use appropriate methodology and research designs. Impact evaluations conducted under this section shall include the use of intervention and control groups chosen by random assignment methods, to the extent possible.

(d) METRICS AND OUTCOMES FOR EVALUATION.—

(1) IN GENERAL.—Not later than 180 days after the date of enactment of this Act, the National Institute of Justice shall consult with relevant stakeholders and identify outcome measures, including employment, housing, education, and public safety, that are to be achieved by programs authorized under the Second Chance Act grant program and the metrics by which the achievement of such outcomes shall be determined.

JA197

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

(2) PUBLICATION.—Not later than 30 days after the date on which the National Institute of Justice identifies metrics and outcomes under paragraph (1), the Attorney General shall publish such metrics and outcomes identified.

(e) DATA COLLECTION.—As a condition of award under the Second Chance Act grant program (including a subaward under section 3021(b) of title I of the Omnibus Crime Control and Safe Streets Act of 1968 (34 U.S.C. 10701(b))), grantees shall be required to collect and report to the Department of Justice data based upon the metrics identified under subsection (d). In accordance with applicable law, collection of individual-level data under a pledge of confidentiality shall be protected by the National Institute of Justice in accordance with such pledge.

(f) DATA ACCESSIBILITY.—Not later than 5 years after the date of enactment of this Act, the National Institute of Justice shall—

(1) make data collected during the course of evaluation under this section available in de-identified form in such a manner that reasonably protects a pledge of confidentiality to participants under subsection (e); and

(2) make identifiable data collected during the course of evaluation under this section available to qualified researchers for future research and evaluation, in accordance with applicable law.

(g) PUBLICATION AND REPORTING OF EVALUATION FINDINGS.—The National Institute of Justice shall—

(1) not later than 365 days after the date on which the enrollment of participants in an impact evaluation is completed, publish an interim report on such evaluation;

**\*5237**

(2) not later than 90 days after the date on which any evaluation is completed, publish and make publicly available such evaluation; and

(3) not later than 60 days after the completion date described in paragraph (2), submit a report to the Committee on the Judiciary of the House of Representatives and the Committee on the Judiciary of the Senate on such evaluation.

(h) SECOND CHANCE ACT GRANT PROGRAM DEFINED.—In this section, the term "Second Chance Act grant program" means any grant program reauthorized under this title and the amendments made by this title.

### SEC. 508. GAO REVIEW.

Not later than 3 years after the date of enactment of the First Step Act of 2018 the Comptroller General of the United States shall conduct a review of all of the grant awards made under this title and amendments made by this title that includes—

(1) an evaluation of the effectiveness of the reentry programs funded by grant awards under this title and amendments made by this title at reducing recidivism, including a determination of which reentry programs were most effective;

JA198

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

(2) recommendations on how to improve the effectiveness of reentry programs, including those for which prisoners may earn time credits under the First Step Act of 2018; and

(3) an evaluation of the effectiveness of mental health services, drug treatment, medical care, job training and placement, educational services, and vocational services programs funded under this title and amendments made by this title.

### TITLE VI—MISCELLANEOUS CRIMINAL JUSTICE

### SEC. 601. PLACEMENT OF PRISONERS CLOSE TO FAMILIES.

Section 3621(b) of title 18, United States Code, is amended—

<< 18 USCA § 3621 >>

(1) by striking "shall designate the place of the prisoner's imprisonment." and inserting "shall designate the place of the prisoner's imprisonment, and shall, subject to bed availability, the prisoner's security designation, the prisoner's programmatic needs, the prisoner's mental and medical health needs, any request made by the prisoner related to faith-based needs, recommendations of the sentencing court, and other security concerns of the Bureau of Prisons, place the prisoner in a facility as close as practicable to the prisoner's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence. The Bureau shall, subject to consideration of the factors described in the preceding sentence and the prisoner's preference for staying at his or her current facility or being transferred, transfer prisoners to facilities that are closer to the prisoner's primary residence even if the prisoner is already in a facility within 500 driving miles of that residence."; and

<< 18 USCA § 3621 >>

(2) by adding at the end the following: "Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court.".

**\*5238**

SEC. 602. HOME CONFINEMENT FOR LOW-RISK PRISONERS.

<< 18 USCA § 3624 >>

Section 3624(c)(2) of title 18, United States Code, is amended by adding at the end the following: "The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.".

### SEC. 603. FEDERAL PRISONER REENTRY INITIATIVE REAUTHORIZATION; MODIFICATION OF IMPOSED TERM OF IMPRISONMENT.

(a) FEDERAL PRISONER REENTRY INITIATIVE REAUTHORIZATION.—Section 231(g) of the Second Chance Act of 2007 (34 U.S.C. 60541(g)) is amended—

(1) in paragraph (1)—

<< 34 USCA § 60541 >>

JA199

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

(A) by inserting "and eligible terminally ill offenders" after "elderly offenders" each place the term appears;

<< 34 USCA § 60541 >>

(B) in subparagraph (A), by striking "a Bureau of Prisons facility" and inserting "Bureau of Prisons facilities";

(C) in subparagraph (B)—

<< 34 USCA § 60541 >>

(i) by striking "the Bureau of Prisons facility" and inserting "Bureau of Prisons facilities"; and

<< 34 USCA § 60541 >>

(ii) by inserting ", upon written request from either the Bureau of Prisons or an eligible elderly offender or eligible terminally ill offender" after "to home detention"; and

<< 34 USCA § 60541 >>

(D) in subparagraph (C), by striking "the Bureau of Prisons facility" and inserting "Bureau of Prisons facilities";

<< 34 USCA § 60541 >>

(2) in paragraph (2), by inserting "or eligible terminally ill offender" after "elderly offender";

<< 34 USCA § 60541 >>

(3) in paragraph (3), as amended by section 504(b)(1)(A) of this Act, by striking "at least one Bureau of Prisons facility" and inserting "Bureau of Prisons facilities"; and

(4) in paragraph (4)—

<< 34 USCA § 60541 >>

(A) by inserting "or eligible terminally ill offender" after "each eligible elderly offender"; and

<< 34 USCA § 60541 >>

(B) by inserting "and eligible terminally ill offenders" after "eligible elderly offenders"; and

(5) in paragraph (5)—

(A) in subparagraph (A)—

<< 34 USCA § 60541 >>

(i) in clause (i), striking "65 years of age" and inserting "60 years of age"; and

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

JA200

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

<div align="center">&lt;&lt; 34 USCA § 60541 &gt;&gt;</div>

(ii) in clause (ii), as amended by section 504(b)(1)(B) of this Act, by striking "75 percent" and inserting " $^2/_3$ "; and

(B) by adding at the end the following:

<div align="center">&lt;&lt; 34 USCA § 60541 &gt;&gt;</div>

"(D) ELIGIBLE TERMINALLY ILL OFFENDER.—The term 'eligible terminally ill offender' means an offender in the custody of the Bureau of Prisons who—

"(i) is serving a term of imprisonment based on conviction for an offense or offenses that do not include any crime of violence (as defined in section 16(a) of title 18, United States Code), sex offense (as defined in section 111(5) of the Sex Offender Registration and Notification Act (34 U.S.C. 20911(5))), offense described in section 2332b(g)(5)(B) of title 18, United States Code, or offense under chapter 37 of title 18, United States Code;

**\*5239**

"(ii) satisfies the criteria specified in clauses (iii) through (vii) of subparagraph (A); and

"(iii) has been determined by a medical doctor approved by the Bureau of Prisons to be—

"(I) in need of care at a nursing home, intermediate care facility, or assisted living facility, as those terms are defined in section 232 of the National Housing Act (12 U.S.C. 1715w); or

"(II) diagnosed with a terminal illness.".

(b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE.—Section 3582 of title 18, United States Code, is amended—

<div align="center">&lt;&lt; 18 USCA § 3582 &gt;&gt;</div>

(1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after "Bureau of Prisons," the following: "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,";

<div align="center">&lt;&lt; 18 USCA § 3582 &gt;&gt;</div>

(2) by redesignating subsection (d) as subsection (e); and

(3) by inserting after subsection (c) the following:

<div align="center">&lt;&lt; 18 USCA § 3582 &gt;&gt;</div>

"(d) NOTIFICATION REQUIREMENTS.—

<div align="center">JA201</div>

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

"(1) TERMINAL ILLNESS DEFINED.—In this subsection, the term 'terminal illness' means a disease or condition with an end-of-life trajectory.

"(2) NOTIFICATION.—The Bureau of Prisons shall, subject to any applicable confidentiality requirements—

"(A) in the case of a defendant diagnosed with a terminal illness—

"(i) not later than 72 hours after the diagnosis notify the defendant's attorney, partner, and family members of the defendant's condition and inform the defendant's attorney, partner, and family members that they may prepare and submit on the defendant's behalf a request for a sentence reduction pursuant to subsection (c)(1)(A);

"(ii) not later than 7 days after the date of the diagnosis, provide the defendant's partner and family members (including extended family) with an opportunity to visit the defendant in person;

"(iii) upon request from the defendant or his attorney, partner, or a family member, ensure that Bureau of Prisons employees assist the defendant in the preparation, drafting, and submission of a request for a sentence reduction pursuant to subsection (c)(1)(A); and

"(iv) not later than 14 days of receipt of a request for a sentence reduction submitted on the defendant's behalf by the defendant or the defendant's attorney, partner, or family member, process the request;

"(B) in the case of a defendant who is physically or mentally unable to submit a request for a sentence reduction pursuant to subsection (c)(1)(A)—

"(i) inform the defendant's attorney, partner, and family members that they may prepare and submit on the defendant's behalf a request for a sentence reduction pursuant to subsection (c)(1)(A);

**\*5240**

"(ii) accept and process a request for sentence reduction that has been prepared and submitted on the defendant's behalf by the defendant's attorney, partner, or family member under clause (i); and

"(iii) upon request from the defendant or his attorney, partner, or family member, ensure that Bureau of Prisons employees assist the defendant in the preparation, drafting, and submission of a request for a sentence reduction pursuant to subsection (c)(1)(A); and

"(C) ensure that all Bureau of Prisons facilities regularly and visibly post, including in prisoner handbooks, staff training materials, and facility law libraries and medical and hospice facilities, and make available to prisoners upon demand, notice of—

"(i) a defendant's ability to request a sentence reduction pursuant to subsection (c)(1)(A);

"(ii) the procedures and timelines for initiating and resolving requests described in clause (i); and

"(iii) the right to appeal a denial of a request described in clause (i) after all administrative rights to appeal within the Bureau of Prisons have been exhausted.

"(3) ANNUAL REPORT.—Not later than 1 year after the date of enactment of this subsection, and once every year thereafter, the Director of the Bureau of Prisons shall submit to the Committee on the Judiciary of the Senate and the Committee on the Judiciary of the House of Representatives a report on requests for sentence reductions pursuant to subsection (c)(1)(A), which shall include a description of, for the previous year—

JA202

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

"(A) the number of prisoners granted and denied sentence reductions, categorized by the criteria relied on as the grounds for a reduction in sentence;

"(B) the number of requests initiated by or on behalf of prisoners, categorized by the criteria relied on as the grounds for a reduction in sentence;

"(C) the number of requests that Bureau of Prisons employees assisted prisoners in drafting, preparing, or submitting, categorized by the criteria relied on as the grounds for a reduction in sentence, and the final decision made in each request;

"(D) the number of requests that attorneys, partners, or family members submitted on a defendant's behalf, categorized by the criteria relied on as the grounds for a reduction in sentence, and the final decision made in each request;

"(E) the number of requests approved by the Director of the Bureau of Prisons, categorized by the criteria relied on as the grounds for a reduction in sentence;

"(F) the number of requests denied by the Director of the Bureau of Prisons and the reasons given for each denial, categorized by the criteria relied on as the grounds for a reduction in sentence;

"(G) for each request, the time elapsed between the date the request was received by the warden and the **\*5241** final decision, categorized by the criteria relied on as the grounds for a reduction in sentence;

"(H) for each request, the number of prisoners who died while their request was pending and, for each, the amount of time that had elapsed between the date the request was received by the Bureau of Prisons, categorized by the criteria relied on as the grounds for a reduction in sentence;

"(I) the number of Bureau of Prisons notifications to attorneys, partners, and family members of their right to visit a terminally ill defendant as required under paragraph (2)(A)(ii) and, for each, whether a visit occurred and how much time elapsed between the notification and the visit;

"(J) the number of visits to terminally ill prisoners that were denied by the Bureau of Prisons due to security or other concerns, and the reasons given for each denial; and

"(K) the number of motions filed by defendants with the court after all administrative rights to appeal a denial of a sentence reduction had been exhausted, the outcome of each motion, and the time that had elapsed between the date the request was first received by the Bureau of Prisons and the date the defendant filed the motion with the court.".

**SEC. 604. IDENTIFICATION FOR RETURNING CITIZENS.**

(a) IDENTIFICATION AND RELEASE ASSISTANCE FOR FEDERAL PRISONERS.—Section 231(b) of the Second Chance Act of 2007 (34 U.S.C. 60541(b)) is amended—

(1) in paragraph (1)—

<< 34 USCA § 60541 >>

(A) by striking "(including" and inserting "prior to release from a term of imprisonment in a Federal prison or if the individual was not sentenced to a term of imprisonment in a Federal prison, prior to release from a sentence to a term in community confinement, including"; and

<< 34 USCA § 60541 >>

WESTLAW    © 2023 Thomson Reuters. No claim to original U.S. Government Works.                              56

JA203

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

(B) by striking "or birth certificate) prior to release" and inserting "and a birth certificate"; and

(2) by adding at the end the following:

<< 34 USCA § 60541 >>

"(4) DEFINITION.—In this subsection, the term 'community confinement' means residence in a community treatment center, halfway house, restitution center, mental health facility, alcohol or drug rehabilitation center, or other community facility.".

(b) DUTIES OF THE BUREAU OF PRISONS.—Section 4042(a) of title 18, United States Code, is amended—

<< 18 USCA § 4042 >>

(1) by redesignating paragraphs (D) and (E) as paragraphs (6) and (7), respectively;

(2) in paragraph (6) (as so redesignated)—

(A) in clause (i)—

<< 18 USCA § 4042 >>

(i) by striking "Social Security Cards,"; and

<< 18 USCA § 4042 >>

(ii) by striking "and" at the end;

<< 18 USCA § 4042 >>

(B) by redesignating clause (ii) as clause (iii);

(C) by inserting after clause (i) the following:

<< 18 USCA § 4042 >>

"(ii) obtain identification, including a social security card, driver's license or other official photo identification, and a birth certificate; and";

**\*5242**

<< 18 USCA § 4042 >>

(D) in clause (iii) (as so redesignated), by inserting after "prior to release" the following: "from a sentence to a term of imprisonment in a Federal prison or if the individual was not sentenced to a term of imprisonment in a Federal prison, prior to release from a sentence to a term of community confinement"; and

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

JA204

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

<< 18 USCA § 4042 >>

(E) by redesignating clauses (i), (ii), and (iii) (as so amended) as subparagraphs (A), (B), and (C), respectively, and adjusting the margins accordingly; and

<< 18 USCA § 4042 >>

(3) in paragraph (7) (as so redesignated), by redesignating clauses (i) through (vii) as subparagraphs (A) through (G), respectively, and adjusting the margins accordingly.

### SEC. 605. EXPANDING INMATE EMPLOYMENT THROUGH FEDERAL PRISON INDUSTRIES.

(a) NEW MARKET AUTHORIZATIONS.—Chapter 307 of title 18, United States Code, is amended by inserting after section 4129 the following:

<< 18 USCA § 4130 >>

### § 4130. Additional markets

"(a) IN GENERAL.—Except as provided in subsection (b), notwithstanding any other provision of law, Federal Prison Industries may sell products to—

"(1) public entities for use in penal or correctional institutions;

"(2) public entities for use in disaster relief or emergency response;

"(3) the government of the District of Columbia; and

"(4) any organization described in subsection (c)(3), (c)(4), or (d) of section 501 of the Internal Revenue Code of 1986 that is exempt from taxation under section 501(a) of such Code.

"(b) OFFICE FURNITURE.—Federal Prison Industries may not sell office furniture to the organizations described in subsection (a)(4).

"(c) DEFINITIONS.—In this section:

"(1) The term 'office furniture' means any product or service offering intended to meet the furnishing needs of the workplace, including office, healthcare, educational, and hospitality environments.

"(2) The term 'public entity' means a State, a subdivision of a State, an Indian tribe, and an agency or governmental corporation or business of any of the foregoing.

"(3) The term 'State' means a State, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the Northern Mariana Islands, and the United States Virgin Islands.".

<< 18 USCA T. 18 pt. III ch. 307 prec. § 4121 >>

(b) TECHNICAL AMENDMENT.—The table of sections for chapter 307 of title 18, United States Code, is amended by inserting after the item relating to section 4129 the following:

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

JA205

"4130. Additional markets.".

<< 18 USCA § 4126 >>

(c) DEFERRED COMPENSATION.—Section 4126(c)(4) of title 18, United States Code, is amended by inserting after "operations," the following: "not less than 15 percent of such compensation for any inmate shall be reserved in the fund or a separate account  **\*5243**  and made available to assist the inmate with costs associated with release from prison,".

(d) GAO REPORT.—Beginning not later than 90 days after the date of enactment of this Act, the Comptroller General of the United States shall conduct an audit of Federal Prison Industries that includes the following:

(1) An evaluation of Federal Prison Industries's effectiveness in reducing recidivism compared to other rehabilitative programs in the prison system.

(2) An evaluation of the scope and size of the additional markets made available to Federal Prison Industries under this section and the total market value that would be opened up to Federal Prison Industries for competition with private sector providers of products and services.

(3) An evaluation of whether the following factors create an unfair competitive environment between Federal Prison Industries and private sector providers of products and services which would be exacerbated by further expansion:

(A) Federal Prison Industries's status as a mandatory source of supply for Federal agencies and the requirement that the buying agency must obtain a waiver in order to make a competitive purchase from the private sector if the item to be acquired is listed on the schedule of products and services published by Federal Prison Industries.

(B) Federal Prison Industries's ability to determine that the price to be paid by Federal Agencies is fair and reasonable, rather than such a determination being made by the buying agency.

(C) An examination of the extent to which Federal Prison Industries is bound by the requirements of the generally applicable Federal Acquisition Regulation pertaining to the conformity of the delivered product with the specified design and performance specifications and adherence to the delivery schedule required by the Federal agency, based on the transactions being categorized as interagency transfers.

(D) An examination of the extent to which Federal Prison Industries avoids transactions that are little more than pass through transactions where the work provided by inmates does not create meaningful value or meaningful work opportunities for inmates.

(E) The extent to which Federal Prison Industries must comply with the same worker protection, workplace safety and similar regulations applicable to, and enforceable against, Federal contractors.

JA206

(F) The wages Federal Prison Industries pays to inmates, taking into account inmate productivity and other factors such as security concerns associated with having a facility in a prison.

(G) The effect of any additional cost advantages Federal Prison Industries has over private sector providers of goods and services, including—

(i) the costs absorbed by the Bureau of Prisons such as inmate medical care and infrastructure expenses including real estate and utilities; and

**\*5244**

(ii) its exemption from Federal and State income taxes and property taxes.

(4) An evaluation of the extent to which the customers of Federal Prison Industries are satisfied with quality, price, and timely delivery of the products and services provided it provides, including summaries of other independent assessments such as reports of agency inspectors general, if applicable.

<< 18 USCA § 4042 NOTE >>

### SEC. 606. DE-ESCALATION TRAINING.

Beginning not later than 1 year after the date of enactment of this Act, the Director of the Bureau of Prisons shall incorporate into training programs provided to officers and employees of the Bureau of Prisons (including officers and employees of an organization with which the Bureau of Prisons has a contract to provide services relating to imprisonment) specialized and comprehensive training in procedures to—

(1) de-escalate encounters between a law enforcement officer or an officer or employee of the Bureau of Prisons, and a civilian or a prisoner (as such term is defined in section 3635 of title 18, United States Code, as added by section 101(a) of this Act); and

(2) identify and appropriately respond to incidents that involve the unique needs of individuals who have a mental illness or cognitive deficit.

<< 18 USCA § 3621 NOTE >>

### SEC. 607. EVIDENCE-BASED TREATMENT FOR OPIOID AND HEROIN ABUSE.

JA207

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

(a) REPORT ON EVIDENCE-BASED TREATMENT FOR OPIOID AND HEROIN ABUSE.—Not later than 90 days after the date of enactment of this Act, the Director of the Bureau of Prisons shall submit to the Committees on the Judiciary and the Committees on Appropriations of the Senate and of the House of Representatives a report assessing the availability of and the capacity of the Bureau of Prisons to treat heroin and opioid abuse through evidence-based programs, including medication-assisted treatment where appropriate. In preparing the report, the Director shall consider medication-assisted treatment as a strategy to assist in treatment where appropriate and not as a replacement for holistic and other drug-free approaches. The report shall include a description of plans to expand access to evidence-based treatment for heroin and opioid abuse for prisoners, including access to medication-assisted treatment in appropriate cases. Following submission, the Director shall take steps to implement these plans.

(b) REPORT ON THE AVAILABILITY OF MEDICATION-ASSISTED TREATMENT FOR OPIOID AND HEROIN ABUSE, AND IMPLEMENTATION THEREOF.—Not later than 120 days after the date of enactment of this Act, the Director of the Administrative Office of the United States Courts shall submit to the Committees on the Judiciary and the Committees on Appropriations of the Senate and of the House of Representatives a report assessing the availability of and capacity for the provision of medication-assisted treatment for opioid and heroin abuse by treatment service providers serving prisoners who are serving a term of supervised release, and including a description of plans to expand access to medication-assisted treatment for heroin and opioid abuse whenever appropriate among prisoners under supervised release. Following submission, the Director will take steps to implement these plans.

 **\*5245**

<< 18 USCA § 4042 NOTE >>

### SEC. 608. PILOT PROGRAMS.

(a) IN GENERAL.—The Bureau of Prisons shall establish each of the following pilot programs for 5 years, in at least 20 facilities:

(1) MENTORSHIP FOR YOUTH.—A program to pair youth with volunteers from faith-based or community organizations, which may include formerly incarcerated offenders, that have relevant experience or expertise in mentoring, and a willingness to serve as a mentor in such a capacity.

(2) SERVICE TO ABANDONED, RESCUED, OR OTHERWISE VULNERABLE ANIMALS.—A program to equip prisoners with the skills to provide training and therapy to animals seized by Federal law enforcement under asset forfeiture authority and to organizations that provide shelter and similar services to abandoned, rescued, or otherwise vulnerable animals.

(b) REPORTING REQUIREMENT.—Not later than 1 year after the conclusion of the pilot programs, the Attorney General shall report to Congress on the results of the pilot programs under this section. Such report shall include cost savings, numbers of participants, and information about recidivism rates among participants.

(c) DEFINITION.—In this title, the term "youth" means a prisoner (as such term is defined in section 3635 of title 18, United States Code, as added by section 101(a) of this Act) who was 21 years of age or younger at the time of the commission or alleged commission of the criminal offense for which the individual is being prosecuted or serving a term of imprisonment, as the case may be.

WESTLAW  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

JA208

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

### SEC. 609. ENSURING SUPERVISION OF RELEASED SEXUALLY DANGEROUS PERSONS.

<< 18 USCA § 3603 >>

(a) PROBATION OFFICERS.—Section 3603 of title 18, United States Code, is amended in paragraph (8)(A) by striking "or 4246" and inserting ", 4246, or 4248".

<< 18 USCA § 3154 >>

(b) PRETRIAL SERVICES OFFICERS.—Section 3154 of title 18, United States Code, is amended in paragraph (12)(A) by striking "or 4246" and inserting ", 4246, or 4248".

<< 34 USCA § 10132 NOTE >>

### SEC. 610. DATA COLLECTION.

(a) NATIONAL PRISONER STATISTICS PROGRAM.—Beginning not later than 1 year after the date of enactment of this Act, and annually thereafter, pursuant to the authority under section 302 of the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. 3732), the Director of the Bureau of Justice Statistics, with information that shall be provided by the Director of the Bureau of Prisons, shall include in the National Prisoner Statistics Program the following:

(1) The number of prisoners (as such term is defined in section 3635 of title 18, United States Code, as added by section 101(a) of this Act) who are veterans of the Armed Forces of the United States.

(2) The number of prisoners who have been placed in solitary confinement at any time during the previous year.

(3) The number of female prisoners known by the Bureau of Prisons to be pregnant, as well as the outcomes of such pregnancies, including information on pregnancies that result in live birth, stillbirth, miscarriage, abortion, ectopic pregnancy, maternal death, neonatal death, and preterm birth.

**\*5246**

(4) The number of prisoners who volunteered to participate in a substance abuse treatment program, and the number of prisoners who have participated in such a program.

(5) The number of prisoners provided medication-assisted treatment with medication approved by the Food and Drug Administration while in custody in order to treat substance use disorder.

(6) The number of prisoners who were receiving medication-assisted treatment with medication approved by the Food and Drug Administration prior to the commencement of their term of imprisonment.

(7) The number of prisoners who are the parent or guardian of a minor child.

(8) The number of prisoners who are single, married, or otherwise in a committed relationship.

WESTLAW    © 2023 Thomson Reuters. No claim to original U.S. Government Works.    62

JA209

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

(9) The number of prisoners who have not achieved a GED, high school diploma, or equivalent prior to entering prison.

(10) The number of prisoners who, during the previous year, received their GED or other equivalent certificate while incarcerated.

(11) The numbers of prisoners for whom English is a second language.

(12) The number of incidents, during the previous year, in which restraints were used on a female prisoner during pregnancy, labor, or postpartum recovery, as well as information relating to the type of restraints used, and the circumstances under which each incident occurred.

(13) The vacancy rate for medical and healthcare staff positions, and average length of such a vacancy.

(14) The number of facilities that operated, at any time during the previous year, without at least 1 clinical nurse, certified paramedic, or licensed physician on site.

(15) The number of facilities that during the previous year were accredited by the American Correctional Association.

(16) The number and type of recidivism reduction partnerships described in section 3621(h)(5) of title 18, United States Code, as added by section 102(a) of this Act, entered into by each facility.

(17) The number of facilities with remote learning capabilities.

(18) The number of facilities that offer prisoners video conferencing.

(19) Any changes in costs related to legal phone calls and visits following implementation of section 3632(d)(1) of title 18, United States Code, as added by section 101(a) of this Act.

(20) The number of aliens in prison during the previous year.

(21) For each Bureau of Prisons facility, the total number of violations that resulted in reductions in rewards, incentives, or time credits, the number of such violations for each category of violation, and the demographic breakdown of the prisoners who have received such reductions.

(22) The number of assaults on Bureau of Prisons staff by prisoners and the number of criminal prosecutions of prisoners for assaulting Bureau of Prisons staff.

JA210

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

**\*5247**

(23) The capacity of each recidivism reduction program and productive activity to accommodate eligible inmates at each Bureau of Prisons facility.

(24) The number of volunteers who were certified to volunteer in a Bureau of Prisons facility, broken down by level (level I and level II), and by each Bureau of Prisons facility.

(25) The number of prisoners enrolled in recidivism reduction programs and productive activities at each Bureau of Prisons facility, broken down by risk level and by program, and the number of those enrolled prisoners who successfully completed each program.

(26) The breakdown of prisoners classified at each risk level by demographic characteristics, including age, sex, race, and the length of the sentence imposed.

(b) REPORT TO JUDICIARY COMMITTEES.—Beginning not later than 1 year after the date of enactment of this Act, and annually thereafter for a period of 7 years, the Director of the Bureau of Justice Statistics shall submit a report containing the information described in paragraphs (1) through (26) of subsection (a) to the Committee on the Judiciary of the Senate and the Committee on the Judiciary of the House of Representatives.

<< 18 USCA § 4042 NOTE >>

**SEC. 611. HEALTHCARE PRODUCTS.**

(a) AVAILABILITY.—The Director of the Bureau of Prisons shall make the healthcare products described in subsection (c) available to prisoners for free, in a quantity that is appropriate to the healthcare needs of each prisoner.

(b) QUALITY PRODUCTS.—The Director shall ensure that the healthcare products provided under this section conform with applicable industry standards.

(c) PRODUCTS.—The healthcare products described in this subsection are tampons and sanitary napkins.

**SEC. 612. ADULT AND JUVENILE COLLABORATION PROGRAMS.**

Section 2991 of title I of the Omnibus Crime Control and Safe Streets Act of 1968 (34 U.S.C. 10651) is amended—

(1) in subsection (b)(4)—

<< 34 USCA § 10651 >>

(A) by striking subparagraph (D); and

<< 34 USCA § 10651 >>

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

JA211

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

(B) by redesignating subparagraph (E) as subparagraph (D);

<< 34 USCA § 10651 >>

(2) in subsection (e), by striking "may use up to 3 percent" and inserting "shall use not less than 6 percent"; and

(3) by amending subsection (g) to read as follows:

<< 34 USCA § 10651 >>

"(g) COLLABORATION SET-ASIDE.—The Attorney General shall use not less than 8 percent of funds appropriated to provide technical assistance to State and local governments receiving grants under this part to foster collaboration between such governments in furtherance of the purposes set forth in section 3 of the Mentally Ill Offender Treatment and Crime Reduction Act of 2004 (34 U.S.C. 10651 note).".

### SEC. 613. JUVENILE SOLITARY CONFINEMENT.

(a) IN GENERAL.—Chapter 403 of title 18, United States Code, is amended by adding at the end the following:

<< 18 USCA § 5043 >>

#### § 5043. Juvenile solitary confinement

"(a) DEFINITIONS.—In this section—

   "(1) the term 'covered juvenile' means—

**\*5248**

      "(A) a juvenile who—

         "(i) is being proceeded against under this chapter for an alleged act of juvenile delinquency; or

         "(ii) has been adjudicated delinquent under this chapter; or

      "(B) a juvenile who is being proceeded against as an adult in a district court of the United States for an alleged criminal offense;

   "(2) the term 'juvenile facility' means any facility where covered juveniles are—

      "(A) committed pursuant to an adjudication of delinquency under this chapter; or

      "(B) detained prior to disposition or conviction; and

   "(3) the term 'room confinement' means the involuntary placement of a covered juvenile alone in a cell, room, or other area for any reason.

"(b) PROHIBITION ON ROOM CONFINEMENT IN JUVENILE FACILITIES.—

   "(1) IN GENERAL.—The use of room confinement at a juvenile facility for discipline, punishment, retaliation, or any reason other than as a temporary response to a covered juvenile's behavior that poses a serious and immediate risk of physical harm to any individual, including the covered juvenile, is prohibited.

   "(2) JUVENILES POSING RISK OF HARM.—

JA212

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

"(A) REQUIREMENT TO USE LEAST RESTRICTIVE TECHNIQUES.—

"(i) IN GENERAL.—Before a staff member of a juvenile facility places a covered juvenile in room confinement, the staff member shall attempt to use less restrictive techniques, including—

"(I) talking with the covered juvenile in an attempt to de-escalate the situation; and

"(II) permitting a qualified mental health professional to talk to the covered juvenile.

"(ii) EXPLANATION.—If, after attempting to use less restrictive techniques as required under clause (i), a staff member of a juvenile facility decides to place a covered juvenile in room confinement, the staff member shall first—

"(I) explain to the covered juvenile the reasons for the room confinement; and

"(II) inform the covered juvenile that release from room confinement will occur—

"(aa) immediately when the covered juvenile regains self-control, as described in subparagraph (B)(i); or

"(bb) not later than after the expiration of the time period described in subclause (I) or (II) of subparagraph (B)(ii), as applicable.

"(B) MAXIMUM PERIOD OF CONFINEMENT.—If a covered juvenile is placed in room confinement because the covered juvenile poses a serious and immediate risk of physical harm to himself or herself, or to others, the covered juvenile shall be released—

"(i) immediately when the covered juvenile has sufficiently gained control so as to no longer engage **\*5249** in behavior that threatens serious and immediate risk of physical harm to himself or herself, or to others; or

"(ii) if a covered juvenile does not sufficiently gain control as described in clause (i), not later than—

"(I) 3 hours after being placed in room confinement, in the case of a covered juvenile who poses a serious and immediate risk of physical harm to others; or

"(II) 30 minutes after being placed in room confinement, in the case of a covered juvenile who poses a serious and immediate risk of physical harm only to himself or herself.

"(C) RISK OF HARM AFTER MAXIMUM PERIOD OF CONFINEMENT.—If, after the applicable maximum period of confinement under subclause (I) or (II) of subparagraph (B)(ii) has expired, a covered juvenile continues to pose a serious and immediate risk of physical harm described in that subclause—

"(i) the covered juvenile shall be transferred to another juvenile facility or internal location where services can be provided to the covered juvenile without relying on room confinement; or

"(ii) if a qualified mental health professional believes the level of crisis service needed is not currently available, a staff member of the juvenile facility shall initiate a referral to a location that can meet the needs of the covered juvenile.

"(D) SPIRIT AND PURPOSE.—The use of consecutive periods of room confinement to evade the spirit and purpose of this subsection shall be prohibited.".

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

JA213

**FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194**

<< 18 USCA T. 18 pt. IV ch. 403 prec. § 5031 >>

(b) TECHNICAL AND CONFORMING AMENDMENT.—The table of sections for chapter 403 of title 18, United States Code, is amended by adding at the end the following:

"5043. Juvenile solitary confinement.".

Approved December 21, 2018.
LEGISLATIVE HISTORY—S. 756:

SENATE REPORTS: No. 115–135 (Comm. on Commerce, Science, and Transportation).

CONGRESSIONAL RECORD:

Vol. 163 (2017): Aug. 3, considered and passed Senate.

Vol. 164 (2018): July 25, considered and passed House, amended.

Dec. 13, 17, 18, Senate considered and concurred in House amendment with an amendment.

Dec. 20, House concurred in Senate amendment.
DAILY COMPILATION OF PRESIDENTIAL DOCUMENTS (2018):

Dec. 21, Presidential remarks and statement.

---

**End of Document**　　　　　　　　　　　　　　　© 2023 Thomson Reuters. No claim to original U.S. Government Works.

JA214

# Exhibit B

(Gregory Allen Bonnie - FSA Risk Assessment Score Sheet)

**FSA Recidivism Risk Assessment (PATTERN 01.03.00)**
Register Number:11192-171, Last Name:BONNIE

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number: 11192-171 | Risk Level Inmate....: R-LW |
| Inmate Name |   General Level......: R-LW (25) |
|   Last.........: BONNIE |   Violent Level......: R-LW (19) |
|   First........: GREGORY | Security Level Inmate: MINIMUM |
|   Middle.......: ALLEN | Security Level Facl..: MINIMUM |
|   Suffix.......: | Responsible Facility.: WIL |
| Gender.........: MALE | Start Incarceration..: 04/21/2021 |

**PATTERN Worksheet Summary**

| Item | - Value | - General Score | - Violent Score |
|---|---|---|---|
| Current Age | 46 | 14 | 8 |
| Walsh w/Conviction | FALSE | 0 | 0 |
| Violent Offense (PATTERN) | TRUE | 5 | 7 |
| Criminal History Points | 5 | 16 | 6 |
| History of Escapes | 0 | 0 | 0 |
| History of Violence | 2 | 2 | 4 |
| Education Score | HighSchoolDegreeOrGED | -2 | -2 |
| Drug Program Status | NoDAPCompletion | 0 | 0 |
| All Incident Reports (120 Months) | 0 | 0 | 0 |
| Serious Incident Reports (120 Months) | 0 | 0 | 0 |
| Time Since Last Incident Report | N/A | 0 | 0 |
| Time Since Last Serious Incident Report | N/A | 0 | 0 |
| FRP Refuse | FALSE | 0 | 0 |
| Programs Completed | 5 | -9 | -3 |
| Work Programs | 1 | -1 | -1 |
| | Total | 25 | 19 |

**PATTERN Worksheet Details**

Item: Programs Completed, Value: 5
General Score: -9, Violent Score: -3
Risk Item Data

| Category | - Assignment | - Start | - Stop |
|---|---|---|---|
| DRG | ED COMP | 11/10/2021 16:38 | |
| EDC | NUTRITION | 01/18/2022 10:39 | 01/18/2022 10:39 |
| EDC | SCP PAR P1 | 06/08/2022 11:02 | 06/08/2022 11:02 |
| EDC | SCP LEXNEX | 01/05/2023 15:04 | 01/05/2023 15:04 |
| EDC | SCP PPE | 02/01/2023 15:14 | 02/01/2023 15:14 |

--------------------------------------------------------------------

Item: Work Programs, Value: 1
General Score: -1, Violent Score: -1
Risk Item Data

| Category | - Assignment | - Start | - Stop |
|---|---|---|---|
| WRK | UNICOR 2 | 10/12/2021 15:49 | 10/12/2021 15:49 |

Assessment Date: 03/22/2023              (1)              Assessment# R-2146808928

JA216

FSA Recidivism Risk Assessment (PATTERN 01.03.00)

Register Number:11192-171, Last Name:BONNIE

U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

JA217

**FSA Time Credit Assessment**

Register Number:11192-171, Last Name:BONNIE

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number....: 11192-171 | Responsible Facility: WIL |
| Inmate Name | Assessment Date.....: 07-01-2023 |
| Last............: BONNIE | Period Start/Stop...: 07-07-2021 to 07-01-2023 |
| First...........: GREGORY | Accrued Pgm Days....: 0 |
| Middle..........: ALLEN | Disallowed Pgm Days.: 0 |
| Suffix..........: | FTC Towards RRC/HC..: 0 |
| Gender...........: MALE | FTC Towards Release.: null |
| Start Incarceration: 04-21-2021 | Apply FTC to Release: No |

```
Start       Stop        Pgm Status  Pgm Days
07-07-2021  07-01-2023  ineligible  0
  FSA ineligible
    Facility Category  Assignment  Start           Stop
    WIL       FSA       FTC INELIG  05-20-2022 1127  CURRENT
    WIL       FSA       INELIG AUT  06-10-2021 1107  CURRENT
--- FSA Assessment -------------------------------------------------------------
#    Start       Stop        Status     Risk Assignment  Risk Asn Start   Factor
001  07-07-2021  08-04-2021  ACTUAL     FSA R-LW         01-12-2022 0955  10
002  08-04-2021  01-31-2022  ACTUAL     FSA R-LW         01-12-2022 0955  10
003  01-31-2022  07-30-2022  ACTUAL     FSA R-LW         01-12-2022 0955  15
004  07-30-2022  01-26-2023  ACTUAL     FSA R-LW         01-12-2022 0955  15
005  01-26-2023  07-25-2023  ACTUAL     FSA R-LW         10-15-2022 1125  15
```

JA218

```
WILC7  531.01 *               INMATE HISTORY            *      03-13-2023
PAGE 001 OF 001 *               PT OTHER                *      14:00:54

REG NO..: 11192-171 NAME....: BONNIE, GREGORY ALLEN
CATEGORY: PTO        FUNCTION: PRT        FORMAT:

FCL   ASSIGNMENT DESCRIPTION                  START DATE/TIME STOP  DATE/TIME
WIL   ANG M WAIT ANGER MANAGEMENT CBT WAIT    08-20-2021 1024 CURRENT
WIL   CR TH WAIT CRIMINAL THINKING WAIT       11-16-2021 0814 CURRENT
WIL   EM SR WAIT EMOTIONAL SELF-REG CBT WAIT  12-02-2021 1508 CURRENT
WIL   K2 AWARE C K2 AWARENESS COMP            01-31-2023 1322 01-31-2023 1322
WIL   K2 AWARE P K2 AWARENESS PART            01-01-2023 1032 01-31-2023 1322
WIL   K2 AWARE W K2 AWARENESS WAIT            07-31-2022 1339 01-01-2023 1032
COL   ARTH FND C ARTHRITIS FOUNDATION WALK COMP 02-10-2022 0942 02-10-2022 0942
COL   ARTH FND P ARTHRITIS FOUNDATION WALK PART 12-01-2021 1200 02-10-2022 0942
```

```
G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

JA219

```
  WILC7  531.01 *              INMATE HISTORY              *      03-13-2023
  PAGE 001 OF 001 *              WASPB                     *      13:57:40

     REG NO..: 11192-171 NAME....: BONNIE, GREGORY ALLEN
     CATEGORY: WSP          FUNCTION: PRT          FORMAT:

  FCL    ASSIGNMENT DESCRIPTION                   START DATE/TIME STOP  DATE/TIME
 ·WIL    GR BCSW    GR BASIC COGNITIVE SKILLS WAIT 07-07-2022 0801 CURRENT
 'WIL    PAR IODW   INSIDE OUT DAD WAITING         09-07-2022 1521 CURRENT
  WIL    PAR ONEC   PHASE ONE COMPLETE             08-08-2022 1407 08-08-2022 1407
  WIL    PAR ONEP   PHASE ONE PART                 06-08-2022 1057 08-08-2022 1407
  WIL    PAR ONEW   PHASE ONE WAIT                 05-31-2022 1055 06-08-2022 1056
```

```
  G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

JA220

USCA4 Appeal: 24-6665   Doc: 26   Filed: 11/20/2024   Pg: 224 of 292

4:23-cv-01215-DCN   Date Filed 08/13/23   Entry Number 39-2   Page 7 of 7

JA221

```
    WILIF  606.00 *      MALE CUSTODY CLASSIFICATION FORM      *      03-22-2023
    PAGE 001 OF 001                                                   10:26:53
                            (A) IDENTIFYING DATA
    REG NO..: [11192-171]         FORM DATE: 10-15-2022        ORG: WIL
    NAME....: BONNIE, GREGORY ALLEN
                                            MGTV: NONE
    PUB SFTY: NONE                          MVED:
                            (B) BASE SCORING
    DETAINER: (0) NONE                 SEVERITY.......: (3) MODERATE
    MOS REL.: 74                       CRIM HIST SCORE: (04) 5 POINTS
    ESCAPES.: (0) NONE                 VIOLENCE.......: (2) > 15 YRS SERIOUS
    VOL SURR: (0) N/A                  AGE CATEGORY...: (2) 36 THROUGH 54
    EDUC LEV: (0) VERFD HS DEGREE/GED  DRUG/ALC ABUSE.: (1) <5 YEARS
                            (C) CUSTODY SCORING
    TIME SERVED.....: (4) 26-75%       PROG PARTICIPAT: (2) GOOD
    LIVING SKILLS...: (2) GOOD         TYPE DISCIP RPT: (5) NONE
    FREQ DISCIP RPT.: (3) NONE         FAMILY/COMMUN..: (4) GOOD


                     --- LEVEL AND CUSTODY SUMMARY ---

    BASE CUST VARIANCE  SEC TOTAL   SCORED LEV MGMT SEC LEVEL  CUSTODY  CONSIDER
    +12  +20     -4        +8       MINIMUM      N/A             COM      SAME
```

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

GREGORY ALLEN BONNIE,⠀⠀⠀⠀⠀⠀⠀⠀) C/A No.  4:23-1215-DCN-TER
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Petitioner,⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)REPORT AND RECOMMENDATION
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
WARDEN DUNBAR,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Respondent.⠀)
_____

The Petitioner, Gregory Allen Bonnie ("Petitioner"), appearing *pro se*, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241[1] on March 27, 2023. Counsel filed a notice of appearance on behalf of Petitioner on June 28, 2023.  The Respondent filed a motion to dismiss or for summary judgment along with supporting memorandum and exhibits. (ECF No. 20). Petitioner filed a response to the motion through counsel on  August 13, 2023. (ECF No. 39). Respondent filed a reply on August 28, 2023. (ECF No. 43).

**STANDARD FOR SUMMARY JUDGMENT**

As previously stated, the Respondent filed a motion to dismiss, or  for summary judgment. The undersigned will treat this motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

The moving party bears the burden of showing that summary judgment is proper.

---

[1]This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

JA222

Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary

2

JA223

materials listed in Rule 56(c), except the mere pleadings themselves).  Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with  . . .  affidavits, if any." <u>Id.</u> at 322; <u>see also</u> <u>Cray Communications, Inc. v. Novatel Computer Systems, Inc.</u>, 33 F.3d 390 (4th Cir. 1994); <u>Orsi v. Kickwood</u>, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

<div align="center"><b>DISCUSSION[2]</b></div>

### A. Background

Petitioner is a federal inmate designated by the Bureau of Prisons (BOP) to the Satellite Prison Camp adjacent to FCI Williamsburg in Salters, South Carolina. Petitioner filed this action on March 27, 2023, alleging the BOP is denying him credits he earned under the First Step Act (FSA), 18 U.S.C. §3632(d)(4)(A) for his participation in the Evidence-Based Recidivism Reduction Programming (EBRR programming). (ECF No. 1).  Petitioner was sentenced in federal court in South Carolina to two sentences to run consecutively: (1) a 120-month sentence, which consists of concurrent 120-month sentences for convictions under 21 U.S.C. § 846 and 21 U.S.C. § 841; and (2) a 24-month sentence for violating a supervised release term imposed for earlier convictions for 21 U.S.C. § 846 and 18 U.S.C. § 924(c).  Based on its interpretation of the relevant statutes, the BOP treats the two sentences as a single aggregate sentence for purposes of time credits under the FSA and, because the §924(c) sentence is ineligible for FSA time credits, it found him  ineligible to

---

[2] Respondent submits that Petitioner has exhausted his administrative remedies with the BOP prior to filing this action.

<div align="center">3</div>

<div align="center">JA224</div>

earn time credits during the term of the aggregate sentence. The Petitioner's projected release date *via* applied jail credits and Good Conduct Time Release is January 13, 2029. (Respondent's memorandum, ECF No. 20 at 2). As set forth in the response by counsel for Petitioner:

> If Mr. Bonnie was serving only the 120-month sentence for the drug offenses, he would be eligible to earn First Step Act time credits ("FSA time credits" or "time credits") against the sentence because the underlying drug offenses are not ineligible under the FSA. Conversely, for the purpose of this motion, Mr. Bonnie does not dispute that, if he were serving only the 24-month revocation sentence, he would be ineligible to earn time credits against that sentence. That is because § 924(c) is an ineligible offense under the FSA and revocation sentences are attributed to the original conviction.
>
> The dispute is this: Does the 24-month § 924(c) revocation sentence taint the separately imposed 120-month drug sentence such that Mr. Bonnie is ineligible to earn FSA time credits for the entire 144-month sentence?

(ECF No. 39 at 8).

## B. Arguments

Respondent filed a motion for summary judgment arguing this action should be dismissed because the BOP determines sentence credits and Petitioner's First Step Act(FSA) credit eligibility was properly determined as ineligible due to his § 924(c) conviction. (ECF No. 20). It asserts that the aggregation of sentences is mandatory under 18 U.S.C. § 3584(c),[3] thus an inmate serving a term of imprisonment which includes a sentence for a disqualifying

---

[3] 18 USC §3584(c) provides:

(c) Treatment of multiple sentence as an aggregate.--Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment.

4

JA225

offense, is not eligible for FSA time credits.

Petitioner argues the BOP incorrectly interprets §3584(c) and improperly aggregates his two sentences. He contends his consecutive sentences should be viewed separately for the purposes of FSA time credits, and he argues he cannot be "serving" a sentence for a longer period than that imposed by the sentencing court. Also, he argues the plain meaning of the FSA is that one should be eligible to earn and apply time credits when not serving a sentence for an ineligible offense.[4]

**B. Analysis**

Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the legality or duration of his custody. See Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). The primary means of attacking the validity of a federal conviction and sentence is through a motion pursuant to 28 U.S.C. § 2255, while a petition for habeas corpus under § 2241 is the proper method to challenge the computation or execution of a federal sentence. See United

---

[4] Petitioner sets forth several arguments in support of his position. Petitioner points to contrasting language used in the FSA's elderly and terminally ill offender ineligibility provisions. Specifically, Petitioner notes the elderly and terminally ill offender statute expressly provides a prisoner is ineligible, even with multiple offenses, so long as any one of the multiple offenses is a crime of violence. (ECF No. 39 at 15). Further, Petitioner argues § 3584(c), which says for administrative purposes, multiple sentences are treated as one, does not mean the prisoner is actually serving a sentence for each offense for the entire aggregate term. (ECF No. 39 at 16). Petitioner asserts § 3584(c) does not provide that multiple sentences will lose their separate character, especially those sentences that are run consecutively. (Id. at 17). If applying § 3584(c) to aggregate the sentence actually meant each individual sentence turns into the aggregate sentence, the result could be serving more time than the statutory max for an individual sentence. Petitioner notes the Parole Commission has aggregated sentences for calculating parole eligibility dates without the aggregation of a parolable and a nonparolable sentence rendering the entire sentence non-parolable, with each sentence maintaining its distinct parole implications. (ECF No. 39 at 18).

5

JA226

States v. Little, 392 F.3d 671, 678–79 (4th Cir. 2004); Diaz v. Warden, FCI Edgefield, 2017 WL 2985974, at *2 (D.S.C. July 13, 2017) (noting a § 2241 petition "is the proper means for a federal prisoner to challenge the BOP's sentencing calculations"). "A motion pursuant to § 2241 generally challenges the execution of a federal prisoner's sentence, such as parole matters, computation of sentence by prison officials, prison disciplinary actions, and prison transfers." Manigault v. Lamanna, 2006 WL 1328780, at *1 (D.S.C. May 11, 2006). A petition under § 2241 must be brought against the warden of the facility where the prisoner is being held, 28 U.S.C. § 2242; Rumsfeld v. Padilla, 542 U.S. 434–35 (2004).

The execution of sentences and the computation of jail time is an administrative function under the authority of the Attorney General. The Attorney General has delegated this task to the BOP, including the responsibility for computing time credits and determining a sentence termination date once a defendant actually commences serving his sentence. See United States v. Wilson, 503 U.S. 329, 334-35 (1992). Accordingly, the Attorney General, through the BOP, must make the initial determination of sentence credits; a district court does not have the jurisdiction to make an initial determination. See Vazquez v. Knight, 2021 WL 1625002, at *2 (D.S.C. Apr. 27, 2021) citing U.S. v. Jeter, 161 F.3d 4, at *1 (4th Cir. 1998) (unpublished table decision); Garcia v. Janson, 2023 WL 3855377, at *3 (D.S.C. May 1, 2023), report and recommendation adopted, 2023 WL 3559697 (D.S.C. May 19, 2023).

The FSA governs the calculation of federal prison sentences. Section 102(b) of the FSA amended 18 U.S.C. § 3624(b), allows federal inmates to earn additional good time credits. See P.L. 115-391, § 102(b)(1). The FSA allows eligible inmates who successfully

6

JA227

complete evidence-based recidivism reduction programming to earn time credits to be applied toward time in pre-release custody or supervised release. See 18 U.S.C. § 3632(d)(4)(A). A prisoner is ineligible to receive time credits if the prisoner is serving a sentence for a disqualifying offense. See 18 U.S.C. § 3632(d)(4)(D). Relevant here, a "prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction" under "Section 924(c), relating to unlawful possession or use of a firearm during and in relation to any crime of violence or drug trafficking crime." 18 U.S.C. § 3632(d)(4)(D)(xxii). 18 U.S.C. § 3632(d)(4)(D) describes inmates that are 'ineligible to receive time credits' under subchapter D (the Risk and Needs Assessment System) if serving a term of imprisonment for conviction under any of the provisions listed therein. It is outside the BOP's authority to alter the exclusions as stated in the FSA .... Statutory exclusions may only be amended by Congress. See id. at 2713. The BOP codified its procedures at 28 C.F.R. § 523.41(d), which states that "[a]ny inmate sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or any person in the custody of the Bureau, is eligible to earn FSA time credits, subject to the exception described in paragraph (d)(2) of this section." Section 523.41(d)(2) explains that if the "inmate is serving a term of imprisonment for an offense specified in 18 U.S.C. 3632(d)(4)(D)," which includes sentences imposed under § 924(c), "the inmate is not eligible to earn FSA time credits." Id., see also § 3632(d)(4)(D)(xxii).

As previously stated, this Petition raises questions as to whether a sentence imposed following the revocation of supervised release for § 924(c) makes an inmate ineligible to earn

7

JA228

ETCs, whether inmates are still ineligible to earn ETCs after the disqualifying sentence has been fully served, and relatedly, whether the aggregating of multiple sentences is an appropriate basis for denying an inmate the ability to earn FSA credits.

The Court which revoked Bonnie's term of supervised release and imposed additional prison time indicated that the reinstated sentence was to run consecutively to any sentence then-imposed. 18 U.S.C. § 3584 addresses multiple sentences of imprisonment and specifically provides that "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." 18 U.S.C. §3584(c). When Bonnie's supervised release was revoked and additional incarceration time was imposed, it was related to and stemmed from his underlying conviction, which included a conviction under § 924(c). On that basis, the BOP found him ineligible to earn ETCs under the FSA. Thus, the BOP treated Bonnie's new sentence, and the sentence stemming from the revocation of his supervised release for his § 924(c) conviction, as one aggregate term of imprisonment.

The BOP's interpretation of § 3632(d)(4)(D) appears to be a mandatory interpretation based on the BOP's other statutory obligations. Title 18 U.S.C. § 3584(c) provides that "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment."[5]  Thus,

---

[5] Neither party has cited to any cases on point in this circuit. It appears this issue has not been addressed in the 4th Circuit. Further, that the determination of eligibility in this case is an administrative function does not appear to be disputed.

8

JA229

when Petitioner's supervised release was revoked and additional incarceration time was imposed, it was related to and stemmed from his underlying conviction, which included a conviction under § 924(c). Therefore, the BOP found Petitioner ineligible to earn Extra Time Credits under the FSA. A district court addressed this issue in a recent case, Walton v. Fikes, 2023 WL 6283298, at *1–2 (D. Minn. Aug. 10, 2023), report and recommendation adopted sub nom., 2023 WL 6282897 (D. Minn. Sept. 26, 2023), as follows:

> Walton argues that only during the 60-month period when he is serving his sentence for the gun offense should he be excluded from earning time credits under the FSA. In the petition for a writ of habeas corpus now before the Court, Walton requests that the Court direct the BOP to apply the FSA time credits that Walton believes he is rightfully owed.
>
> Walton's argument is not facially absurd: Most of the time he has spent and will spend in prison are wholly the result of an offense that is not excluded from eligibility under the FSA, and it is not unreasonable to think that Walton might therefore be eligible to earn FSA time credits for at least some of the period that he spends in prison. The problem for Walton is 18 U.S.C. § 3584(c), which provides that "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." As far as this Court can tell, every court to consider the question—and since the time that Walton filed his habeas petition, there have been many courts that have considered the question—has concluded that the effect of § 3584(c) is to exclude prisoners in Walton's situation from eligibility under the FSA. See, e.g., Teed v. Warden FCI Allenwood, No. 23-1181, 2023 WL 4556726, at *1-2 (3d Cir. July 13, 2023); Wallace v. Knight, No. 22-CV-6705 (KMW), 2023 WL 4954727, at *1 (D.N.J. Aug. 3, 2023); Cortez v. Hemingway, No. 2:22-CV-12234, 2023 WL 4274957, at *2 (E.D. Mich. June 29, 2023); Patillar v. Goldey, No. 22-CV-0866, 2023 WL 4307651, at *2-3 (W.D. Okla. May 26, 2023); Rose v. Yates, No. 2:22-CV-0214 (BSM/PSH), 2023 WL 3198298, at *2-3 (E.D. Ark. May 2, 2023); Ledford v. LeMaster, No. 23-CV-0030, 2023 WL 2905376, at *3 (E.D. Ky. Mar. 28, 2023); Goodman v. Sage, No. 4:22-CV-0981, 2022 WL 18028148, at *3 (M.D. Penn. Dec. 30, 2022) (noting that "[t]his argument ... has been consistently rejected by courts within and beyond this district"); Giovinco v. Pullen, No. 3:22-CV-1515 (VAB), 2023 WL 1928108, at *2-3 (D.

JA230

Conn. Feb. 10, 2023).

Among the first of those cases to reach that conclusion arose out of this District. See Sok v. Eischen, No. 22-CV-0458 (ECT/LIB), 2022 WL 17156797 (D. Minn. Oct. 26, 2022), Report and Recommendation adopted by 2022 WL 17128929 (D. Minn. Nov. 22, 2022). As explained in Sok, "[c]ourts have consistently held [in other contexts] that sentence calculation by the BOP and the BOP's administration of incentives which reduce the length of a prisoner's term of imprisonment are administrative functions of the BOP subject to § 3584(c)." Sok, 2022 WL 17156797, at *5 (citing cases employing similar logic to issues concerning the BOP's administration of the Residential Drug Abuse Treatment Program). Applying the FSA to sentence calculations, explained Sok, is an administrative task, and the BOP is bound by § 3584(c) in applying the FSA.

. . .

Because Walton's claim challenges the administration of a sentence, the Court must look to § 3584(c) to determine how the sentence is to be treated. And under § 3584(c), consecutively imposed sentences "shall be treated for administrative purposes as a single, aggregate term of imprisonment."

. . .

Walton argues that under BOP Policy Statement 5880.28, "[a]ll counts in a single [judgment and conviction] shall be served in the order imposed by the court," and the BOP's aggregation of his sentences is inconsistent with this policy statement. This argument fails as well. As an initial matter, even if BOP Policy Statement 5880.28 did contradict § 3584(c), it would be the statute, not the policy statement, that would control. But BOP Program Statement 5880.28 itself goes on to state that "reference to a 924/non-924 sentence, in a single [judgment and conviction], means that the counts have been aggregated into a single sentence ... as required by 18 U.S.C. § 3584(c)." In other words, BOP Policy Statement 5880.28 covers Walton's precise situation and explains that the sentence is to be treated as aggregated, consistent with § 3584(c).

Walton v. Fikes, 2023 WL 6283298, at *1–2 .

In another recent case, Mancillas v. Federal Bureau of Prisons, 2023 WL 5404229, at *5 (D. Md. Aug. 22, 2023), the Petitioner was serving a three-year term of supervised release for Possession of a Firearm During a Drug Trafficking Crime, in violation of 18 U.S.C. §924(c) when he was charged with Conspiracy to Possess with Intent to Distribute

10

JA231

5 kilograms or More of Cocaine for which he was sentenced to 204 months' imprisonment. His supervised release was revoked and he was sentenced to a 24-month term of imprisonment which was ordered to run concurrently with any other sentenced. The BOP determined Mancillas was ineligible for ETCs under the FSA because of his §924(c) conviction. Like here, Petitioner argued that his incarceration for violating his supervised release had expired and his sentence served. Mancillas argued that his sentences should be treated as distinct sentences for the purpose of eligibility for ETCs but his sentences were aggregated by the BOP precluding him from earning ETCs under FSA based on his conviction under §924(c). The court in Mancillas found that "the BOP has clarified in Program Statement 5880.28, Sentence Computation Manual, that 'SRA [Sentencing Reform Act] sentences, including a term of imprisonment that results from a revocation of supervised release or probation, shall be aggregated to form a single sentence for computation purposes.'" As the Petitioner argues here, the petitioner in Mancillas argued there was ambiguity as to what was meant by "serving a sentence" for certain convictions. The Mancillas court held that if there is ambiguity, the BOP is entitled to deference in the application of FSA ETCs pursuant to Chevron, USA, Inc. V. NRDC, Inc., 467 U.S. 837, 865 (1984). The court concluded that " . . . even when the sentence stemming from the §924(c) conviction had been fully served day for day, it still acted as part of an aggregate sentence barring Mancillas from eligibility to earn ETCs. This is a permissible and reasonable

11

JA232

construction of the statute, and thus is entitled to deference." Id.[6]

The Fourth Circuit issued an unpublished decision on October 3, 2023, McNeill v. Ramos, No. 23-6488, 2023 WL 6442551, at *1 (4th Cir. Oct. 3, 2023)(unpublished), in which it upheld the district court's finding that "McNeill was ineligible for sentencing time credits. See 18 U.S.C. §3632(d)(4)(D)(xxii)." In the underlying case, Petitioner was serving a current sentence for possession with the intent to distribute 500 grams or more of cocaine, a quantity of cocaine base (crack), and a quantity of marijuana in violation of 21 U.S.C. §841(a)(1), and for possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §924(c)(1)(A). See McNeill v. Ramos, No. 5:22-hc-02134-M-RJ (E.D.N.C. Apr. 12, 2023), aff'd by McNeill v. Ramos, No. 23-6488, 2023 WL 6442551, at *1 (4th Cir. Oct. 3, 2023). Although the instant Petition here involves a supervised release revocation for a violation of §924(c), it is one of McNeill's alternative arguments that is instructive. In the alternative argument, McNeill argued that even though he was serving a sentence for a conviction under §924(c) and statutorily ineligible to receive time credits, he should receive partial FSA time credits for his consecutive drug-crime sentence. The district court found the argument was statutorily foreclosed quoting:

> 18 U.S.C. §3584(c) ('multiple terms of imprisonment ordered to run

---

[6] Other courts have found Chevron deference applicable to the BOP's interpretation of this issue. See, e.g., Goodman v. Sage, 2022 WL 18028148, at *3; Dahda v. Hudson, No. 23-3008, 2023 WL 2815920, at *1 (D. Kan. Mar. 7, 2023); see also Martinez v. Rosalez, No. 1:22-cv-1297, 2023 WL 2904579, at *4 (W.D. Tex. Apr. 10, 2023), report and recommendation adopted, No. 1:22-cv-01297, 2023 WL 3441566 (W.D. Tex. May 12, 2023); Giovinco v. Pullen, No. 3:22-cv-1515, 2023 WL 1928108, at *3 (D. Conn. Feb. 10, 2023). United States v. Bryant, No. 3:04-CR-00047, 2023 WL 4355053, at *4 (W.D. Va. July 5, 2023).

JA233

consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment.'); accord Goodman, No. 4:22-cv-00981, 2022 WL 18028148, at *3 (rejecting an argument that a §2241 petitioner's sentences for different offenses may be bifurcated to allow receipt of partial FSA 'time credits,' because this argument 'runs counter to the plain language of 18 U.S.C. §3584(c)'); Keeling v. LeMaster, No. 22-CV-00096-GFVT, 2022 WL 17407966, at *2 (E.D. Ky. Dec. 2, 2022)(Denying a §2241 petition seeking FSA 'time credits' because the petitioner's aggregate sentence included a §924(c) conviction); Sok v. Eischen, No. 22-CV-458 (ECT/LIB), 2022 WL 17156797, at *6 (D. Minn. Oct. 26, 2022) ("Because petitioner's aggregate sentence includes a sentence predicated on a violation of 18 U.S.C. §924(c) he is ineligible to earn time credits under the First Step Act."), report and recommendation adopted, No. 22 CR-458 (ECT/LIB), 2022 WL 17128929 (D. Minn. Nov. 22, 2022).

Id. (ECF No. 7). [7]

Based on the mandatory statutory language under 18 U.S.C. §3584(c), for administrative purposes, the BOP's aggregation of the consecutive sentences for the purpose of determining that Petitioner is ineligible to earn FSA time credits due to the disqualifying offense stemming from the §924(c) conviction is proper.

Even if the court were to find ambiguity, the BOP's interpretation of the statute is entitled to Chevron deference. The BOP's interpretation is reasonable and Respondent's motion for summary judgment should be granted.

_____

[7] See Teed v. Warden, Low Sec. Corr. Inst., Allenwood, 2023 WL 1768121, at *1 (M.D. Penn. Feb. 3, 2023); Frommie v. Fed. Bureau of Prison, 2022 WL 18399537, at *3 (D.S.D. Aug. 23, 2022), report and recommendation adopted, 2022 WL 18399536 (D.S.D. Nov. 30, 2022); Ledford v. Lemaster, 2023 WL 2905376 (E.D. Ky. Mar. 28, 2023); Patillar v. Goldey, 2023 WL 4307651, at *2-3 (W.D. Okla. May 26, 2023), report and recommendation adopted, 2023 WL 4306702 (W.D. Okla. June 30, 2023); Martinez v. Rosalez, 2023 WL 2904579 (W.D. Tex., Apr. 10, 2023), report and recommendation adopted, 2023 WL 3441566 (W.D. Tex. May 12, 2023).

13

JA234

**CONCLUSION**

Based on the above reasoning, it is RECOMMENDED that Respondent's motion for summary judgment (ECF No. 20) be GRANTED and this claim dismissed.

Respectfully Submitted,

s/Thomas E. Rogers, III

January 16, 2024                          Thomas E. Rogers, III
Florence, South Carolina                  United States Magistrate Judge

14

JA235

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

JA236

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Gregory Allen Bonnie, a/k/a Gregory Bonnie #21082, | ) ) ) | |
| Petitioner, | ) ) | |
| vs. | ) ) | C/A Number: 4:23-cv-01215-DCN |
| Warden Dunbar, | ) ) | *Oral Argument Requested* |
| Respondent. | ) ) ) | |

**OBJECTIONS TO REPORT AND RECOMMENDATION
(ECF NO. 50)**

Gregory Bonnie, through counsel, objects to the Magistrate Judge's recommendation that this Court grant the Bureau of Prisons' motion for summary judgment and dismiss Petitioner's writ of habeas corpus. ECF No. 50 ("Report"); *see also* 28 U.S.C. § 636(b)(1)(C).

**I.    Introduction**

Mr. Bonnie is serving consecutive sentences imposed in separate judgments issued on May 27, 2021: 1) a concurrent sentence of 120 months for two counts of conviction under 21 U.S.C. § 846 and 21 U.S.C. § 841;[1] and (2) a consecutive sentence of 24 month for violating a supervised release term imposed for earlier convictions for 21 U.S.C. § 846 and 18 U.S.C. § 924(c).[2] Although people who are "serving a sentence" for 21 U.S.C. §§ 846 & 841 are eligible to earn time credits under the First Step Act of 2018 ("FSA"), BOP has deemed Mr. Bonnie wholly ineligible to earn

---

[1] *United States v. Bonnie*, No. 2:19-cr-00060-DCN, ECF No. 1128 (D.S.C.)

[2] *United States v. Bonnie*, No. 2:04-cr-00546-DCN, ECF No. 106 (D.S.C.)

JA237

time credits because a portion of his overall term of imprisonment has been spent "serving a sentence" for a § 924(c) supervised release violation.[3]

During his time in custody, Mr. Bonnie has diligently participated in recidivism reduction programs and productive activities and according to BOP's risk assessment, he poses a low risk of recidivism. In the FSA, Congress made it the default (subject to exceptions) that people in Mr. Bonnie's position "shall" receive time credits to reduce their time in BOP custody. But here, BOP has erroneously deemed Mr. Bonnie ineligible to earn time credits for any portion of his term of imprisonment because of his 24-month consecutive sentence for a § 924(c) supervised release violation.

The Magistrate agreed with BOP and dismissed Mr. Bonnie's petition for habeas corpus relief. In so doing, it made at least three critical errors:

First, the Report ignores—and does not even analyze—the unambiguous meaning of the FSA. Instead, the Report brushes past the text, context, and purpose of the First Step Act to begin its analysis of Mr. Bonnie's claim with an entirely separate provision of law—18 U.S.C. § 3584. This violates the basic rule that statutory interpretation must begin with the language of the statute.

Second, in light of the FSA's unambiguous statutory meaning, the Report further errs by ruling in the alternative that BOP's interpretation is entitled to *Chevron* deference. Even assuming that *Chevron* remains the law in light of the Supreme Court's upcoming decision in *Loper Bright Enterprises, Inc. v. Raimondo*, 45 F.4th 359, 374 (D.C. Cir. 2022), *cert. granted*, 143 S. Ct. 2429

---

[3] For the purpose of this motion, Mr. Bonnie does not dispute that if he were serving only the 24-month revocation sentence, he would be ineligible to earn time credits against that sentence. That is because § 924(c) is an ineligible offense under the FSA and revocation sentences are attributed to the original conviction. *See* Pet'r's Reply to Resp't's Resp. to Pet. and Mot. Dismiss, ECF No. 39 at 8 ("Bonnie Reply") (all pin cites to filings and exhibits herein refer to the ECF header page numbering).

JA238

(2023),[4] this alternative ruling appears to be predicated on the erroneous premise that Mr. Bonnie has conceded the statute is ambiguous. He has not. Moreover, the courts which have found that the FSA eligibility provision for earned time credits is ambiguous have generally done so upon concluding that the FSA is silent on the issue of whether someone like Mr. Bonnie—who has been sentenced for both an eligible offense and ineligible offense—can earn time credits while serving a sentence on the eligible offense. But legislative silence does not automatically create ambiguity.[5]

Third, the Report improperly relies on a series of unpublished cases—all brought by pro se litigants—that invoked BOP's administration of *discretionary* prison programs that predated—and are distinct from—the *statutorily mandatory* FSA earned time credit program at issue here.

## II.    Background and Question Presented

The FSA created a "new type of sentencing credit" program which *requires* BOP to award time credits to eligible prisoners at a rate of either 10 or 15 days for every 30 days of "successful participation in evidence-based recidivism reduction programming or productive activities." *See* Bonnie Reply, Ex. A, ECF No. 39-1 at 6 (FSA, Pub. L. No. 115-391 Tit. I (Dec. 21, 2018)).[6] The

---

[4] The Supreme Court has granted a petition for writ of certiorari in a *Loper*, which raises the issue of whether *Chevron* should be overruled. *Loper* expressly raises the question of whether—or to what extent—legislative silence creates a legislative ambiguity. *See Loper Bright Enters., Inc.* at 374 (Walker, J., dissenting) ("Congress's silence on a given issue does not automatically create such ambiguity or give an agency carte blanche to speak in Congress's place. In fact, all else equal, silence indicates a lack of authority.").

The Supreme Court heard oral argument in *Loper* on January 17, 2024. *See, e.g.*, Amy Howe, *Supreme Court likely to discard Chevron*, SCOTUSBLOG, https://www.sco-tusblog.com/2024/01/supreme-court-likely-to-discard-chevron/ (Jan. 17, 2024). To the extent the Court finds § 3632(d)(4)(D) to be ambiguous, Mr. Bonnie contends that *Chevron* should be overruled or, alternatively, not apply in cases of statutory silence.

[5] *Id.*

[6] The time-credit provisions of the FSA were codified in different places throughout the United States Code. For ease of reference, Mr. Bonnie attached an annotated version of the FSA as enacted at Exhibit A to his Reply (ECF No. 39-1).

JA239

FSA's back-end prison reforms were novel in many respects. But perhaps most significantly, the mandatory nature of the FSA time-credit program was a major shift away from most prior federal correctional incentive and reentry programs, which had vested BOP with significant discretion to determine matters of eligibility and incentive application. Bonnie Reply, ECF No. 39 at 10–12.[7] In the FSA, rather than delegate to BOP the task of deciding who would and would not be eligible for credits, Congress directed that only people "serving a sentence for a conviction" under one of 68 categories of offenses could be deemed ineligible to earn time credits. ECF No. 39-1 at 8 (FSA § 101(a); 18 U.S.C. § 3632(d)(4)(D)). Congress further directed that all other people in BOP who are not "serving a sentence" for an ineligible offense "*shall*" earn time credits pursuant to the calculation formula provided in the statute. *Id.* at 7–8 (FSA § 101(a); 18 U.S.C. § 3632(d)(4)(A)).

On March 27, 2023, Mr. Bonnie filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 asserting that BOP's determination that he is not eligible to earn FSA time credits violates the First Step Act.[8] The parties do not dispute any material facts related to Mr. Bonnie's habeas petition and agree that Mr. Bonnie has exhausted his administrative remedies with the BOP prior to filing this action. *See* ECF No. 50 at 3 n. 2. The sole dispute this Court must resolve, applying *de novo* review, is this: Under the First Step Act of 2018, does Mr. Bonnie's 24-month § 924(c) revocation sentence taint the separately imposed 120-month drug sentence such that Mr.

---

[7] Many courts have relied on the mandatory nature of the time-credit programs to reject BOP assertions that it holds the discretion to deem people ineligible for credits, or to bar the application of time credits. *See* Bonnie Reply ECF No. 39 at 11 n.7 (gathering cases).

[8] The Report incorrectly states that Mr. Bonnie's petition alleges that "BOP is denying him credits he earned under the First Step Act (FSA)." ECF No. 50 at 3. This is not the case. Because BOP has deemed Mr. Bonnie "ineligible" to earn credits, he cannot—and has not—had the opportunity to earn credits. *See* 18 U.S.C. § 3632(d)(4)(A). In his petition, Mr. Bonnie has challenged BOP's decision that he cannot earn credits.

JA240

Bonnie is ineligible to earn or apply time credits throughout his entire 144-month term of imprisonment? The answer is "no."

### III.    Legal Standard

#### A.    Objections to Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The recommendation has no presumptive weight, and "[t]he authority and the responsibility to make an informed, final determination . . . remains with" the Court. *Id.* at 271. The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" made by the Magistrate Judge. *Id.*

#### B.    Summary Judgment[9]

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

---

[9] The government's motion is captioned, "Motion to Dismiss, or for Summary Judgment." ECF No. 20. The Magistrate Judge treated the "motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure." ECF No. 50 at 1.

JA241

## IV. Objections

### A. The Magistrate Judge Did Not Begin With the Statutory Text.

The text, context, and purpose of the First Step Act provide that Mr. Bonnie is eligible to earn FSA time credits while he is serving the 120-month sentence for convictions under 21 U.S.C. §§ 841, 846. Yet the Magistrate Judge did not consider or address the mandatory provisions of the First Step Act that govern FSA time credits before skipping to an entirely separate statutory provision.

#### 1. Plain Language

The Report's conclusion that Mr. Bonnie is ineligible to earn FSA time credits largely rests on its finding that the "BOP's interpretation of § 3632(d)(4)(D) appears to be a mandatory interpretation based on the BOP's *other statutory obligations*." ECF No. 50 at 8. But to reach this conclusion, the Report brushes past black letter rules of statutory construction and wholly ignores Mr. Bonnie's arguments about the plain meaning of the FSA. *See id.* at 5 (summarizing Mr. Bonnie's arguments in a footnote with no response or analysis.)

This is a critical error. Statutory interpretation must begin with the language of the applicable statute. *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1056 (2019). The language is interpreted according to its "ordinary, contemporary, common meaning." *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022) (citation omitted). "To discern that ordinary meaning, . . . words 'must be read' and interpreted 'in their context,' not in isolation." *Id.* (citing *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1888 (2019)). "[W]hen the meaning of the statute's term is plain, our job is at an end." *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1749 (2020).

Here, the governing statute provides that "a prisoner, except for an ineligible prisoner under subparagraph D, who successfully completes [programming] *shall* earn time credits. . . ." ECF No.

6

JA242

39-1 at 7 (18 U.S.C. 3632(d)(4)(A)). The Act defines "Prisoner" as a "person who has been sentenced to a "term of imprisonment" pursuant to a conviction for a Federal criminal offense." *Id.* at 15 (18 U.S.C. § 3635(4)). And subparagraph (d)(4)(D) specifies that a "prisoner is ineligible to receive time credits under this paragraph if the prisoner is *serving a sentence for a conviction*" for an offense listed as disqualifying him from time credits. *Id.* at 8.

Mr. Bonnie has two sentences to serve during his term of imprisonment. One is for convictions for eligible offenses (21 U.S.C. §§ 841, 846). The other is for a violation of a supervised release term imposed for an ineligible § 924(c) offense. While Mr. Bonnie is *not* serving the § 924(c) revocation sentence, he *is* eligible to earn time credits under the plain language of the FSA. During that period, he is "a prisoner" (*i.e.*, he has been sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense) who is not "ineligible" under subparagraph D (*i.e.*, he is not serving a sentence for an offense listed in 3632(d)(4)(D)).

As Mr. Bonnie's Reply explains, in the FSA time credit provisions, the drafters of the First Step Act used different phrases to distinguish between the overall time spent in BOP custody ("term of imprisonment") and time spent in connection with a particular conviction ("serving a sentence for a conviction"). ECF No. 39 at 14. The eligibility provision's phrase "serving a sentence for a conviction" is unique. It is not drawn from any other statute, and it is not repeated elsewhere in the FSA. "Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another." *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015).

The Report acknowledges that "[i]t is outside the BOP's authority to alter the exclusions as stated in the FSA. . . . Statutory exclusions may only be amended by Congress." ECF No. 50 at 7. That is because Congress did not afford BOP the discretion to determine who would or would

JA243

not be eligible to earn time credits. Instead, it crafted a detailed list of offenses, all limited by the requirement that the prisoner be "serving a sentence for a conviction" included on that list. BOP's interpretation, which expands the ineligibility exclusions far beyond this list, is plainly illegal.[10]

### 2.    Context

#### a.    The First Step Act

The Report also disregards the context of the FSA. In the Act, Congress used different language to explain who would be ineligible for the different early release programs amended or created by the FSA. "Where a document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." *Southwest Airlines Co.*, 596 U.S. at 458 (citation omitted).

As Mr. Bonnie's Reply explains, a separate provision of the FSA found at section 603 of the Act expanded a different early release program—the Second Chance Act of 2007's pilot program for eligible elderly and terminally ill offenders. Bonnie Reply, ECF No. 39 at 14–15; ECF No. 39-1 at 52–55 (34 U.S.C. § 60541(5)(c)). Like the time-credit incentive, the expanded pilot program excludes certain inmates from eligibility. But rather than repeat the exclusionary language from the new time-credit program ("serving a sentence for a conviction"), Congress adapted its Second Chance Act definition of "eligible elderly offender."[11] Unlike the FSA time credit's exclusion provision, the terminally ill offender exclusion expressly applies to a defendant convicted of multiple offenses, so long as *any one* of the offenses is listed as a disqualifying offense:

---

[10] The Report notes that when BOP codified its exclusion procedures at 28 C.F.R. §523.41(d), it substituted "term of imprisonment" for the statutory text "serving a sentence for a conviction." ECF No. 50 at 7. This cannot justify BOP's expansive reading of the ineligibility provisions, for it is bound by the statute.

[11] Compare ECF No. 39-1 at 8 (FSA § 101(a)) with *id.* at 55 (FSA § 603)).

JA244

> (D) ELIGIBLE TERMINALLY ILL OFFENDER. —The term 'eligible terminally ill offender' means an offender in the custody of the Bureau of Prisons who—
>
> "(i) is serving a term of imprisonment based on conviction for *an offense or offenses that do not include any* crime of violence (as defined in section 16(a) of title 18, United States Code), sex offense (as defined in section 111(5) of the Sex Offender Registration and Notification Act (34 U.S.C. 20911(5))), offense described in section 2332b(g)(5)(B) of title 18, United States Code, or offense under chapter 37 of title 18, United States Code[.]

ECF No. 39-1 at 55 (FSA § 603(a)(5)(B)) (emphasis added). Under these terms, an individual is not eligible for the terminally ill offender pilot project if he is serving a "term of imprisonment" that includes *any* excludable offense.

The contrast between the language Congress selected to describe eligibility for different early-release programs within the text of the First Step Act is conclusive. If Congress intended the same expansive exclusion for FSA time credits, it surely would have used the same language throughout to say so. But instead, it provided that an otherwise eligible individual is ineligible to earn FSA time credits only while serving "a sentence" for the excludable offense.

### b.    18 U.S.C. § 3584(c)

The Report disregards the text and context of FSA's ineligibility provision and begins with 18 U.S.C. § 3584(c) and cases applying that statute. To that end, the Report erroneously concludes that "BOP's interpretation of § 3632(d)(4)(D) appears to be a mandatory interpretation based on the BOP's other statutory obligations" because 18 U.S.C. § 3584(c) provides that "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate *term of imprisonment*." ECF No. 50 at 8 (emphasis added).[12]

---

[12] This repeats the error of many cases cited by the Report that begin and end their analysis with 18 U.S.C. § 3584(c), with no explanation of why the text of the First Step Act itself does not govern eligibility. *See McNeil v. Ramos*, No. 5:22-hc-02134-M-RJ (E.D.N.C. Apr. 12, 2023), *affirmed* No. 23-6488, 2023 WL 6442551 (4th Cir. Oct. 3, 2023); *Teed v. Warden Allenwood FCI Low*, No. 23-1181, 2023 WL 4556726 (3d Cir. Jul. 17, 2023); *Patillar v. Goldey*, No. CIV-22-866,

JA245

This is wrong. That multiple sentences are "treated for administrative purposes as a single, aggregate *term of imprisonment*" does not mean that an individual is "*serving a sentence*" for each offense of conviction for the entire, aggregated "term of imprisonment."[13]

Section 3584 gives courts the authority to impose sentences for offenses concurrently or consecutively. Subsection (b) preserves the integrity of each distinct offense, explaining that, for "each offense" for which a term of imprisonment is being imposed, the court shall consider the factors set forth in § 3553(a). And subsection (c) explains that multiple sentences will be "treated for administrative purposes as a single, aggregate term of imprisonment."

Section 3584 does not provide that multiple sentences, especially those imposed to run consecutively, will lose their separate character. To the contrary, as explained in Senate Report No. 98-225, the focus on "each offense" in § 3584(b) was meant to convey that "[a]lthough similar offenses committed in the course of a single criminal episode would ordinarily be appropriate subjects for concurrent sentences, there may be instances in which the just punishment purpose of sentencing might require the imposition of *distinct, separately identifiable sentences* for each of the particular offenses the defendant is found to have committed." S. Rep. No. 98-225, at 128 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3311 (emphasis added). As for subsection (c),

---

2023 WL 4307651, at *2 (W.D. Okla. May 26, 2023, report and recommendation adopted, No. CIV-22-866, 2023 WL 4306702 (W.D. Okla. June 30, 2023); *Wallace v.* Knight, No. CV 22-6705, 2023 WL 4954727, at *1 (D.N.J. Aug. 3, 2023); *Cortez v. Hemingway*, No. 2:22-CV-12234, 2023 WL 4274957, at *2 (E.D. Mich. June 29, 2023); *Goodman v. Sage*, No. 4:22-CV-00981, 2022 WL 18028148, at *3 (M.D. Pa. Dec. 30, 2022); *Keeling v. LeMaster*, No. 0:22-CV-00096, 2022 WL 17407966, at *2 (E.D. Ky. Dec. 2, 2022), *aff'd*, No. 22-6126, 2023 WL 9061914 (6th Cir. Nov. 22, 2023).

[13] The elderly and terminally ill offender pilot project, discussed above, expressly provides, "for purposes of [that] section," that "[t]he term 'term of imprisonment' includes multiple terms of imprisonment ordered to run consecutively or concurrently, which shall be treated as a single, aggregate term of imprisonment." 34 U.S.C. § 60541(5)(c). The FSA time credits statute does not include such a provision.

JA246

the report explains it "provides that consecutive terms of imprisonment shall be treated as an aggregate for administrative purposes, thus simplifying administration." *Id.* Put simply, administratively aggregating a 10-year drug sentence with a 2-year § 924(c) revocation sentence does not transform the 2-year sentence into a 12-year one.

Indeed, § 3584(c) *cannot* mean that an individual serves the entire "aggregate term of imprisonment" as the sentence for each of the convictions. If it did, then consecutive sentences would often result in individuals serving sentences far in excess of the statutory maximum for the offense. As noted in the Petition, Mr. Bonnie "cannot *serve* a term of imprisonment that exceeds the statutory maximum of five years for his" supervised release violation. ECF No. 1 at 3. If Mr. Bonnie were actually serving a 12-year sentence for his supervised-release violation, his sentence would be 7 years longer than authorized by statute.[14] The reason that § 3584(c) does not render these sentences illegal is because each sentence remains apportioned to the offense for which it was imposed, even if "treated"—for administrative purposes—as a single, aggregate term of imprisonment. In other words, each sentence remains distinct under law.

BOP and the Parole Commission's practice with respect to parole is instructive here. Like FSA time credits, eligibility for parole is determined by the statute of conviction—not by BOP. The Parole Commission has long aggregated sentences for the purposes of calculating "good time" and for setting a parole eligibility date. *See* 28 C.F.R. § 2.5 (codifying longstanding interpretation of 18 U.S.C. §§ 4161, 4205(a), *see* 45 Fed. Reg. 44924-02 (July 2, 1980)). But this aggregation does *not* deprive the sentences of their distinct parole implications: the aggregation of a parolable

---

[14] 18 U.S.C. § 3583(e)(3) (setting a statutory maximum term of five years imprisonment for a violation of a condition of supervised release if the offense that resulted in the term of supervised release is a class A felony).

JA247

sentence with a non-parolable sentence does not render the entire sentence non-parolable.[15] Simi-larly, BOP de-aggregates sentences to comply with a bilateral international treaty that allows certain types of sentences imposed in the United States on Mexican nationals to be served in Mexico. Art. I, Treaty on the Execution of Penal Sentences, Mex-U.S., Nov. 25, 1976; T.I.A.S. No. 8718 (Nov. 30, 1977). *See* ECF No. 39 at 18–19. As is true in the context of parole and treaty transfers, the aggregation of a sentence for an FSA-credit eligible offense with a sentence for an ineligible offense does not render the entire sentence ineligible.[16]

### 3. Purpose

The FSA's purpose supports Mr. Bonnie's argument. In enacting the FSA, Congress recognized an urgent need to address high rates of recidivism and to confront the reality that "the vast majority of federal prisoners will one day be released from BOP custody."[17] Congress understood that it is in "the fiscal interest of the government to reduce recidivism [and] in the public safety interest as well."[18] By mandating that BOP build and administer a time-credit system, Congress hoped there would be a "greater incentive to participate in evidence-based programs that prepare [prisoners] for productive lives after incarceration" and "reduce both prison costs and recidivism rates for incarcerated individuals." *See* ECF No. 39 at 20 n.19.

*Lallave v. Martinez* is instructive as to the FSA's purpose. 635 F. Supp. 3d 164, 189-90 (E.D.N.Y.) As discussed in Mr. Bonnie's Reply, the *Lallave* court relied on FSA's purpose to

---

[15] Instead, the parole eligibility date is set after the completion of the non-parolable sentence (less good time) plus the minimum of the parolable sentence. *See* U.S. Parole Commission, Rules and Procedures Manual § 2.2-04 note (describing parole eligibility for aggregated parolable and non-parolable sentence); BOP Program Statement 5880.30, Sentence Computation Manual/Old Law/Pre CCCA1984 at VII-20 (same).

[16] *See* ECF No. 1 at 4–5.

[17] H.R. Rep. No. 115-699, at 22 (2018).

[18] *Id.*

12

JA248

reject as unlawful BOP's effort to expand a different ineligibility provision of 18 U.S.C.

§ 3632(d)(4)(D). *See* ECF No. 39 at 21–22. The *Lallave* court concluded that "in view of th[e]

goal of reducing the prison population, the court is inclined to read the eligibility provisions nar-

rowly, consistent with its textual interpretation, to exclude only the individuals reasonably in-

cluded in the text." *Id.*

Throughout the FSA, Congress acted to limit and carefully proscribe BOP's discretion over

critical aspects of the time-credit program, including eligibility, earning, and application. Allowing

BOP to deem Mr. Bonnie ineligible for time credits here would be inconsistent with the FSA's

clearly stated purpose.

### B.      Ambiguity

#### 1.      Mr. Bonnie Does Not Assert that the FSA's Eligibility Provision is Ambiguous.

The Report includes an alternative finding that "even if the court were to find ambiguity,

the BOP's interpretation of the statute is entitled to *Chevron* deference." ECF No. 50 at 13. The

Report does not itself conclude that the language was ambiguous, instead misstating that Mr. Bon-

nie has claimed there was ambiguity as to what was meant by "serving a sentence" for certain

convictions. ECF No. 50 at 11.

Not so. Mr. Bonnie asserts that the language of § 3632(d)(4)(D) is unambiguous. See ECF

No. 39 at 12–25. Indeed, at least one of the cases relied on by the Report, *Frommie v. Federal

Bureau of Prisons*, 2022 WL 18399537 (D.S.D. Aug. 23, 2022), suggested that the eligibility lan-

guage is *not* ambiguous. In *Frommie*, the petitioner was sentenced in a single judgment for viola-

tions of 21 U.S.C. §§ 841 & 846 and using a firearm in relation to a drug trafficking crime in

violation of 18 U.S.C. § 924(c). The *Frommie* court explained that:

> The court is not necessarily convinced the FSA is ambiguous. When a de-
> fendant is sentenced, whether for one conviction or two or more, one speaks

13

JA249

> of the "sentence" he received. As in Mr. Frommie's case, only one judgment was entered. One sentence was issued. Thus when the FSA speaks of serving a "sentence for a conviction" it is entirely possible that Congress contemplated a sentence imposed for multiple offenses in a single judgment."

*Id.* at *3. Unlike the petitioner in *Frommie*, Mr. Bonnie was not sentenced in a single judgment. Instead, he is subject to two judgments: one imposing 120-month concurrent sentences for eligible drug offenses, and the other imposing the 24-month consecutive sentence for the ineligible § 924(c) supervised release violation.

The Report improperly compares Mr. Bonnie to the petitioner in *Mancillas v. Federal Bureau of Prisons*, 2023 WL 5404229 (Aug. 22, 2023), who argued that there was ambiguity in the phrase "serving a sentence." *Id.* at *5. The *Mancillas* court agreed that ambiguity existed, and like many other courts cited in the Report, relied on *Sok v. Eischen*, No. 22-cv-458, 2022 WL 17156797 (D. Minn. Oct. 26, 2022), a flawed six-page unpublished opinion that was one of the first to address this issue. *Sok* found that 18 U.S.C. § 3632(d)(4)(D) was ambiguous because "it is silent as to the eligibility of a prisoner who is serving [a] term of imprisonment for multiple offenses." *Id.* at *3. Mr. Bonnie disagrees that the FSA is silent on this issue. But even if it were, silence alone does not create ambiguity. *See Bais Yaakov of Spring Valley v. Fed. Comms. Comm'n*, 852 F.3d 1078, 1082 (D.C. Cir. 2017) (holding that an agency "may only take action that Congress has *authorized*"). Courts do not yield to an agency's interpretation without first using the familiar tools of statutory interpretation to discern Congress's intent. *See, e.g.*, *Turner v. Keyes*, No. 22-CV-321, 2022 WL 17338577, at *3 (W.D. Wis. Nov. 30, 2022) (holding that Congress's silence in § 3632(d)(4)(D) did not "create an ambiguity as to that statute").[19] And, here, these tools of statutory interpretation compel a finding that Mr. Bonnie is eligible to earn FSA time credits.

---

[19] The *Turner* court found that a conviction for conspiracy to commit an ineligible drug offense did not disqualify the petitioner from earning FSA time credits. *Id.* at *4.

JA250

## 2. Even if the Text were Ambiguous—Which it is Not—*Chevron* Deference Would Not Salvage BOP's Interpretation.

Even if the Court finds any latent statutory ambiguity, the government's interpretation of § 3632(d)(4)(D) still fails.

First, as discussed above, both the government and the Report rely on out-of-circuit cases that applied *Chevron* deference. Respectfully, *Chevron* should be overruled or—at a minimum—be construed narrowly to not apply in cases of Congressional silence. "Administrative agencies are creatures of statute. They accordingly possess only the authority that Congress has provided." *NFIB v. OSHA*, 142 S. Ct. 661, 665 (2022) (per curiam). A rule that defers to an agency's interpretation in the face of congressional silence "stand[s] this ancient and venerable principle nearly on its head." *Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1153 (10th Cir. 2016) (Gorsuch, J., concurring).

Second, the rule of lenity resolves the issue in Mr. Bonnie's favor. *See Turner*, 2022 WL 17338577, at *4 (finding 18 U.S.C. § 3632(d)(4)(D) unambiguous but noting that "the rule of lenity appears to favor [petitioner] as well"). "Under the rule of lenity, [the Supreme] Court has long held, statutes imposing penalties are to be 'construed strictly' against the government and in favor of individuals." *Bittner v. United States*, 143 S. Ct. 713, 724 (2023). "In these circumstances—where text, structure, and history fail to establish that the Government's position is unambiguously correct"—the Court should "apply the rule of lenity and resolve the ambiguity" in Mr. Bonnie's favor. *See United States v. Granderson*, 511 U.S. 39, 54 (1994).

Third, assuming it remains good law, *Chevron* deference does not apply to interpretations of criminal law. *See Abramski v. United States*, 573 U.S. 169, 191 (2014) (holding "that criminal laws are for the courts, not for the Government, to construe"); *see also Pugin v. Garland*, 19 F.4th 437, 441–42 (4th Cir. 2021) (acknowledging the "thoughtful and ongoing debate about whether

15

JA251

*Chevron* can apply to interpretations of criminal law" but declining to resolve that question because the statutes at issue were civil). Core principles of Separation of Powers mandate that courts have the obligation to determine "[w]hether the Government interprets a criminal statute too broadly . . . or too narrowly." *Abramski*, 573 U.S. at 191.

Fourth, even if *Chevron* could apply, the government has not advanced a reasonable interpretation that is "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. Indeed, as explained above, the government's interpretation finds no support in the text, context, or purpose of the First Step Act. *See King v. Burwell*, 759 F.3d 358, 372 (4th Cir. 2014) (explaining that the Court may reject an agency's interpretation when it is "arbitrary, capricious, or manifestly contrary to the statute"). Thus, even if *Chevron* applies, the Court should not defer to BOP's interpretation.

### C. Other Cases Cited by the Report Failed to Distinguish Between the FSA's Mandatory Time-Credit Incentives and Other BOP Programs.

The Report also errs by appearing to adopt (secondhand) another one of *Sok's* flawed bases. ECF No. 50 at 10 (excerpting a block quote from a case summarizing *Sok*, *Walton v. Fikes*, 2023 WL 6283298, at *1–2 (D. Minn. Sept. 26, 2023)). In *Sok*, the court improperly relied on a body of law arising from BOP's administration of discretionary early-release programs—like the Residential Drug Abuse Program ("RDAP")—that predated the FSA. Based on that law, *Sok* concluded that "[c]ourts have consistently held that sentence calculation by the BOP and the BOP's administration of incentives which reduce the length of a prisoner's term of imprisonment are administrative functions of the BOP subject to § 3584(c)." *Id.* at 2022 WL 17156797 at *3.

But the case law governing these programs is inapposite. Unlike the FSA, which provides that time credits "*shall* be earned," § 3632(d)(4)(A); that they "*shall* be applied," § 3632(d)(4)(C); and that when the time comes, the Director "*shall* transfer" individuals into prerelease custody or

16

JA252

supervised release, the early-release authority of the RDAP is fully discretionary. The RDAP statute authorizing the exercise of discretion provides:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a [residential substance abuse] treatment program *may* be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B) (emphasis added).

As the Supreme Court reasoned in *Lopez v. Davis*, 531 U.S. 230, 241 (2001), "Congress' use of the permissive 'may' in § 3621(e)(2)(B) contrasts with the legislators' use of a mandatory 'shall' in the very same section." *Id.* "Sensibly read, the grant of discretion in § 3621(e)(2)(B) to decide whether to reduce a sentence parallels the grant of discretion in § 3621(e)(2)(A) to retain a prisoner who successfully completes drug treatment 'under such [custodial] conditions as the Bureau deems appropriate.'" *Id.* "When an eligible prisoner successfully completes drug treatment, the Bureau thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment." *Id.* That is, whereas § 3632(d)(4)(A), (C) mandates that an eligible prisoner receive time credits and be transferred as set forth in the statute, § 3621(e)(2)(B) grants BOP broad discretion whether to release a prisoner early for successful completion of RDAP.

With RDAP, it is BOP, not Congress, that sets eligibility requirements. And the text of BOP's RDAP ineligibility regulation, 28 C.F.R. § 550.55(b)(5), is starkly different from the FSA statutory ineligibility provision, § 3632(d)(4)(D). BOP's RDAP regulation provides, in relevant part, that "[i]nmates who have a current felony conviction" for certain types of offenses will, in the exercise of the Director's discretion, be categorically ineligible for early release. 28 C.F.R.

JA253

§ 550.55(b)(5).[20] The decisions *Sok* and many of its progeny relied on deferred to BOP's interpretation of "current felony conviction" to include all offenses for which the defendant is serving a sentence during the current aggregated period of commitment.[21] These courts deferred to BOP's interpretation that the aggregation of terms pursuant to § 3584(c) rendered all statutes for which an inmate was committed "current" under BOP's regulation.

In contrast, FSA ineligibility (set by statute, not regulation) is based not on whether individuals "*have* a current felony conviction," 28 C.F.R. § 550.55(b)(5), but on whether an individual "is serving a sentence for a conviction under" enumerated provisions of law, 18 U.S.C. § 3632(d)(4)(D). As discussed above, unless sentences are running concurrently, a defendant is not "serving a sentence for a conviction under" one provision of law, when he is "serving a sentence for a conviction under" a different one. This is particularly true when the sentences have been imposed in separate judgments, as is true here. Again, § 3584(c)'s provision that multiple sentences be "treated for administrative purposes as a single, aggregate term of imprisonment" does not mean that an individual is actually *serving the sentence* for all the offenses of conviction for the entire period. Section 3584(c) cannot reasonably be read to expand § 3632(d)(4)(D)'s statutory ineligibility provision to individuals who have served in the past, or will serve in the future, a sentence for a conviction for an ineligible offense. Had Congress intended that sort of expansive ineligibility, it would have said so.

---

[20] *See also* 28 C.F.R. § 550.58 (2009) ("inmates whose current offense is . . .")

[21] *See, e.g.*, *Ledford v. Lemaster*, No. 23-30-DLB, 2023 WL 2905376 (E.D. Ky. Mar. 28, 2023) (noting that "BOP's aggregation principle . . . had been widely used and upheld even in other areas where statutes provide sentence credits from program completion, including the BOP's Residential Drug Abuse Treatment Program") (quoting *Moreno v. Ives*, 842 F. App'x 18, 20-22 (9th Cir. 2020)); Giovinco v. Pullen, No. 3:22-CV-1515 (VAB), 2023 WL 1928108, at *2–3 (D. Conn. Feb. 10, 2023).

JA254

## V.    Request for Oral Argument

This case raises a novel and important question of law that has not yet been addressed by this Court or the Fourth Circuit Court of Appeals. Most—if not all—cases across the country where this issue has been raised have involved *pro se* petitioners. Given the novelty and importance of this issue, Mr. Bonnie's counsel respectfully requests oral argument.

## VI.    Conclusion

For the foregoing reasons, and those set forth in the Petition and Reply, Mr. Bonnis re-spectfully requests that the Court decline to adopt the Report, grant the writ of habeas corpus, and order BOP to deem him eligible to accrue FSA time credits.


Respectfully Submitted,

/s/ John L. Warren III
John L. Warren III (Federal ID No. 12164)
Email: jw@billnettleslaw.com
Law Office of Bill Nettles
2008 Lincoln St.
Columbia, SC 29201
Tel: (803) 814-2826

Patricia Richman (Admitted *Pro Hac Vice*)
Email: patricia_richman@fd.org
Office of the Federal Public Defender for the
    District of Maryland
6411 Ivy Lane
Greenbelt, MD 20770
Tel: (301) 344-0600

Counsel for Petitioner Gregory Allen Bonnie


February 13, 2024


19


JA255

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Gregory Allen Bonnie, #11192-171, | ) | C/A No.: 4:23-1215-DCN |
| *a/k/a Gregory Allen Bonnie, #21082,* | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | |
| | ) | |
| Warden Dunbar, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**RESPONDENT'S REPLY TO PETITIONER'S**
**OBJECTIONS TO REPORT AND RECOMMENDATION**

Respondent, Warden of the Federal Correctional Institution (FCI) Williamsburg, submits this Reply to Petitioner's Objections (ECF No. 54) to the Magistrate Judge's Report and Recommendation (R&R).

Petitioner makes three objections to the Report and Recommendation (R&R), asserting that: (1) the Magistrate Judge ignores the unambiguous meaning of the First Step Act (FSA) and violates rules of statutory construction by relying upon 18 U.S.C. § 3584; (2) the Magistrate Judge erred in ruling in the alternative that BOP's interpretation of the FSA is entitled to *Chevron* deference; and (3) the Magistrate Judge erred in relying upon a series of unpublished cases brought by pro se prisoners, which Petitioner claims address different discretionary programs of BOP that predate the FSA. *See* ECF No. 54.

Throughout this action, Petitioner has sought to have this Court ignore the mandate of 18 U.S.C. § 3584(c) and its application and interplay with the FSA. He asks this Court to find that every other court nationwide that considered this issue conducted an incorrect analysis in reaching the same result Magistrate Judge Rogers reached in his R&R. He attacks the Court's and

JA256

Respondent's reliance on numerous on-point decisions because they are unpublished and because the case law is built from *pro se* prisoner petitions, even though the bulk of prisoner case law on any subject is built upon such decisions. Meanwhile, Petitioner cites to no case on point that supports his position. Rather, every decision directly addressing this issue supports Respondent's position, including an affirmance by the Fourth Circuit Court of Appeals in *McNeil v. Ramos*, No. 23-6488, 2023 WL 6442551 (4th Cir. Oct. 3, 2023), upholding the district court's decision that the petitioner was ineligible for time credits where he was serving a sentence for eligible drug offenses and for an ineligible 924(c) conviction ("We also conclude that the district court did not err in finding that McNeill was ineligible for sentencing time credits. *See* 18 U.S.C. § 3632(d)(4)(D)(xxii).").

Petitioner argues that "[i]n enacting the FSA, Congress recognized an urgent need to address high rates of recidivism and to confront the reality that 'the vast majority of federal prisoners will one day be released from BOP custody." ECF No. 54, p. 12. Ironically, however, Petitioner is currently in custody because he embarked on a series of new criminal conduct while on supervised release for his FSA-ineligible 924(c) conviction.

### 1. Statutory Construction

Petitioner contends that the FSA is unambiguous, and that the Magistrate Judge's R&R violates the rules of statutory construction by relying upon 3584(c). Petitioner takes issue with the application of section 3584, asserting that the Magistrate Judge's R&R "brushes past the text, context, and purpose of the First Step Act to begin its analysis . . . with . . . 18 U.S.C. § 3584." ECF No. 54, p. 2. He further asserts that "legislative silence does not automatically create ambiguity." *Id*. p. 3.

2

JA257

The R&R does not find ambiguity in the statute, nor do many of the cases cited and relied upon by the Magistrate Judge and Respondent. The primary point, and one that Petitioner fails to mention, is that the First Step Act did not change who is responsible for determining sentencing credits—the BOP. As the Magistrate Judge correctly notes, "The execution of sentences and the computation of jail time is an administrative function under the authority of the Attorney General. The Attorney General has delegated this task to the BOP, including the responsibility for computing time credits and determining a sentence termination date once a defendant actually commences serving his sentence." ECF No. 50, R&R p. 6, citing *United States v. Wilson*, 503 U.S. 329, 334-35 (1992). This longstanding principle is the lens through which Petitioner's objections must be viewed.

One of the cases cited by the Magistrate Judge addresses these arguments. In *Walton v. Fikes*, the Court held as follows regarding the application of section 3584 in light of the FSA:

> First, Walton contends (roughly speaking) that if Congress had wanted prisoners in his situation to be excluded from eligibility for time credits under the FSA, then Congress could have said this directly within the FSA itself (citation omitted). But Walton misinterprets Congress's silence regarding the application of § 3584(c) within the FSA. The FSA was written against the backdrop of § 3584(c) and cases interpreting that statute in similar contexts. Congress's silence regarding how aggregated sentences would be treated under the FSA is not a reflection that § 3584(c) was to be ignored; instead, it was a reflection that § 3584(c) already existed, already controlled in this situation, and was already sufficient to guide the BOP. There was no reason for Congress to say anything within the FSA about how consecutive sentences were to be regarded by the BOP, because Congress had already said everything it needed to say within § 3584(c).

Case No. 22-cv-1998 (JWB/TNL), 2023 WL 6283298, at *2 (D. Minn. Aug. 10, 2023).

The court in that case acknowledged the persuasiveness of the argument that the pro se petitioner made, stating:

> Walton's argument is not facially absurd: Most of the time he has spent and will spend in prison [is] wholly the result of an offense that is not excluded from

3

JA258

eligibility under the FSA, and it is not unreasonable to think that Walton might therefore be eligible to earn FSA time credits for at least some of the period that he spends in prison. The problem for Walton is 18 U.S.C. § 3584(c) . . . .

*Walton,* 2023 WL 6283298, at *1.

Contrary to Petitioner's assertions, many of the cases relied upon do not invoke any ambiguity in the FSA, but rather rely upon the administrative function of the BOP and the direction of section 3584.

Another case decided after the R&R was issued further supports the Magistrate Judge's findings and Respondent's position. It also directly addresses the phrase Petitioner focuses on. In *Silva v. Warden, FCC Coleman-Low*, Case No. 5:22-CV-629-WFJ-PRL, 2024 WL 98212 (M.D. Fla. Jan. 9, 2024), the court found that the question before it was the definition of the word "sentence" in section 3632 ("A prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction under any of the following provisions of law . . . ."). Central to the *Silva* court's analysis is that the provision of time credits, like those under section 3632, is an administrative function of the BOP.

> Provision of time credits, like those earned under § 3632, is an administrative function of the Bureau of Prisons ("BOP"). Because § 3632(d)(4)(D) addresses inmates' eligibility to earn time credits, the provision of which is an administrative function, it follows that the word 'sentence' cannot be defined without reference to § 3584(c)'s aggregation mandate. Therefore, the Court finds that Petitioner is serving a single, aggregated sentence that includes his 924(c) conviction, rendering him ineligible to earn time credits for his entire term of imprisonment.

*Silva*, 2024 WL 98212, at *2.

The court declined to frame the issue as one of "deference to the BOP," stating, "[w]hile § 3632 may appear to be silent as to the meaning of 'sentence,' the Court's interpretation is the only one that harmonizes sections 3632 and 3584." *Id.* Going further, the court found, "deference is not necessary where, as here, the BOP's interpretation is not only reasonable, but 'required' by §

<div align="center">4</div>

<div align="center">JA259</div>

3584. When only one interpretation is permissible, the statute is not ambiguous." *Id*. (internal citations omitted). The court held that the "interaction of sections 3632 and 3584 is central to defining 'sentence' in § 3632." *Id*.; *see also Nichols v. Knight*, Civ. No. 23-1822 (RBK), 2024 WL 912455 (D.N.J. March 4, 2024) (inmate's current aggregate sentence included a consecutive term for conviction under 924(c) and thus he was ineligible to earn FSA time credits; no need to consider *Chevron*).

The R&R properly analyzes the issue before the Court and is in line with courts nationwide that have considered this issue. Petitioner's objection should be overruled.

### *2. Chevron Deference*

In the R&R, the Magistrate Judge made an alternative finding that even if the court were to find ambiguity in the statute, the BOP's interpretation was entitled to *Chevron* deference. Petitioner objects to this finding, citing *Loper Bright Enterprises, Inc. v. Raimondo*, 45 F.4th 359, 374 (D.C. Cir. 2022), *cert. granted,* 143 S. Ct. 2429 (2023). Petitioner correctly notes that *Loper* raises a question about the future of *Chevron*. However, presently, *Chevron* remains good law. Additionally, as this was simply an alternative finding in the R&R without further analysis, and which did not provide the sole basis for the R&R, the objection should be overruled.

### *3. Pro Se Prisoner Case Law*

Respondent previously addressed Petitioner's attack on the Court's reliance upon unpublished *pro se* prisoner case law. *See supra*, pp. 1-2. As previously noted, Petitioner does not cite a single case that supports his position.

Petitioner further objects to the Magistrate Judge's "secondhand" reliance upon *Sok v. Eischen*, No. 22-cv-458, 2022 WL 17156797 (D. Minn. Oct. 26, 2022), report and recommendation adopted, 2022 WL 17128929 (D. Minn. Nov. 22, 2022): aff'd by, 2023 WL

JA260

5282709 (8th Cir. Aug. 17, 2023). As Petitioner notes, the R&R does not directly rely upon *Sok*; rather, it relies upon cases decided after *Sok*. First, the R&R did not rely upon *Sok*, because the holding there was premised on a determination that the FSA is ambiguous – a finding with which Petitioner clearly disagrees, and one which does not form the basis of the R&R in the instant case. As previously noted, numerous cases since *Sok*, which were relied upon by Respondent and the Magistrate Judge, do not find ambiguity in the FSA, nor does the R&R.

Petitioner faults *Sok* for its citation to cases challenging BOP's administration of the Residential Drug Abuse Treatment Program, which he states is a discretionary early-release program, as opposed the FSA.[1] This objection misses the mark, however, given that the primary finding of *Sok* and later cases is that "[a]pplying the FSA." *Walton v. Fikes*, 2023 WL 6283298, at *1-2. As stated, the mandate of 3584(c) is the basis for the decision of this and other courts across the country which have reached the same result. Accordingly, this objection should likewise be overruled.

## Conclusion

For administrative purposes the BOP properly aggregated Petitioner's multiple sentences, which includes a conviction under section 924(c), into one sentence, making him ineligible for FSA time credits. All courts that have considered this same issue have found in favor of the BOP's position. The majority of those courts have found the language of section 3632(d)(4)(D) clear and held that, because the aggregation of sentences is mandatory under 18 U.S.C. § 3584(c), an inmate serving a term of imprisonment that includes a sentence for a disqualifying offense is not eligible

---

[1] Not all of the cases cited in *Sok's* string cite concern RDAP. *Grigsby v. Colbert*, No. CV-21-00266-TUC-JAS, 2022 WL 2919371 (D. Ariz. March 10, 2022), report and recommendation adopted, 2022 WL 2916039 (D. Ariz. July 25, 2022), concerns Good Conduct Time under the FSA, not RDAP.

6

JA261

for FSA time credits.

  The issue before the Court has been fully briefed by the parties and Respondent believes the briefing clearly supports adopting the Magistrate Judge's R&R. Accordingly, Respondent respectfully requests the Court overrule Petitioner's Objections, adopt the Magistrate Judge's Report and Recommendation, and dismiss the Petition.

       Respectfully submitted,

       ADAIR F. BOROUGHS
       UNITED STATES ATTORNEY


    By: *s/Marshall Prince*
       Marshall Prince (#5617)
       Assistant United States Attorney
       1441 Main Street, Suite 500
       Columbia, South Carolina 29201
March 12, 2024      Telephone: (803) 929-3000

7

JA262

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

GREGORY ALLEN BONNIE,          )
                               )
                Plaintiff,     )          No. 4:23-cv-01215-DCN
                               )
        vs.                    )          **ORDER**
                               )
R.S. DUNBAR, *Warden*,         )
                               )
                Defendant.     )
_____)

This matter is before the court on Magistrate Judge Thomas E. Rogers, III's report and recommendation ("R&R"), ECF No. 50, that the court grant defendant R.S. Dunbar's ("Warden Dunbar") motion to dismiss or, alternatively, for summary judgment, ECF No. 20. For the reasons set forth below, the court adopts the R&R in full and grants Warden Dunbar's motion for summary judgment.

## I.  BACKGROUND

Petitioner Gregory Allen Bonnie ("Bonnie") is an inmate designated by the Federal Bureau of Prisons ("BOP") to serve his sentence at the Satellite Prison Camp adjacent to Federal Correctional Institution Williamsburg ("FCI Williamsburg") in Salters, South Carolina.[1] He filed this petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that the BOP is denying him time credits he earned under the First Step Act of 2018 ("FSA"), 18 U.S.C. § 3632(d)(4)(A), Pub. L. 115-391, 132

---

[1] The background for this case is gleaned from a combination of the initial petition for a writ of habeas corpus under 28 U.S.C. § 2241, ECF No. 1; from Warden Dunbar's motion for summary judgment, ECF No. 16; and from the magistrate judge's R&R, ECF No. 23.

JA263

Stat. 5194, for his participation in Evidence-Based Recidivism Reduction ("EBRR") programming. ECF No. 1, Pet.

The FSA governs the calculation of federal prison sentences. Eligible federal inmates may earn additional good time credits under the FSA. 18 U.S.C. § 3624(b). One way those eligible inmates may earn good time credits is through completion of EBRR programming, which allows that inmate to earn time credits to be applied toward time in pre-release custody or supervised release. See 18 U.S.C. § 3632(d)(4)(A). However, a prisoner is ineligible to receive time credits if the prisoner is serving a sentence for a disqualifying offense. See 18 U.S.C. § 3632(d)(4)(D). Relevant here, a "prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction" under § 924(c), "relating to unlawful possession or use of a firearm during and in relation to any crime of violence or drug trafficking crime." 18 U.S.C. § 3632(d)(4)(D)(xxii). Bonnie is currently imprisoned after he pleaded guilty to two criminal sentences for separate offenses. He pleaded guilty to drug distribution offenses as well as possession of a firearm in violation of § 924(c) in his first offense.[2] United

---

[2] On November 10, 2005, the court entered judgment against Bonnie after he pleaded guilty to two counts of the superseding indictment in criminal case United States v. Bonnie ("USA v. Bonnie I"), No. 2:04-cr-00546-DCN-1 (D.S.C. Nov. 10, 2005), ECF No. 106. Specifically, he pleaded guilty to engaging in a conspiracy with two codefendants to manufacture, possess, and distribute methamphetamine and to possess and distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), (b)(1)(C), 846, 851. USA v. Bonnie I, ECF Nos. 36; 106. He also pleaded guilty to possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). USA v. Bonnie I, ECF Nos. 36; 106. The court sentenced Bonnie to a 180-month term which consisted of 120 months for Count 1 and 60 months for Count 6, to run consecutively. USA v. Bonnie I, ECF No. 106. The court also stipulated that upon release from imprisonment, Bonnie was to be placed on supervised release for eight years. Id. On June 7, 2017, the court placed Bonnie on supervised release. See USA v. Bonnie I, ECF Nos. 144; 147. On May 27, 2021, the court revoked Bonnie's supervised release and imposed a 24-month sentence for each count, to run concurrently with each

2

JA264

States v. Bonnie ("USA v. Bonnie I"), No. 2:04-cr-00546-DCN-1 (D.S.C. Nov. 1, 2005), ECF No. 106.  For his second offense, Bonnie pleaded guilty to a conspiracy to possess and distribute illicit drugs as well as possession with intent to distribute heroin and methamphetamine on a specific date.[3]  United States v. Bonnie, ("USA v. Bonnie II"), No. 2:19-cr-0060-DCN-3 (D.S.C. May 27, 2021), ECF No. 1128.  Bonnie's conviction for violation of § 924(c) makes him ineligible for FSA time credit for EBRR programming.  See 18 U.S.C. § 3632(d)(4)(D).  The parties dispute whether that ineligibility only applies to his sentence for USA v. Bonnie I or to both that sentence and the sentence imposed for USA v. Bonnie II, which are set to run consecutively.  As Bonnie's counsel succinctly phrased it: "Does the 24-month § 924(c) revocation sentence taint the separately imposed 120-month drug sentence such that Mr. Bonnie is ineligible to earn FSA time credits for the entire 144-month sentence?"  ECF No. 39 at 8.

On March 27, 2023, Bonnie filed a petition for writ of habeas corpus.  ECF No. 1, Pet.  Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), all pretrial proceedings in this case were referred to Magistrate Judge Rogers.  On May 31, 2023, Warden Dunbar filed the instant motion to dismiss or, alternatively,

---

other, but consecutively to the term of imprisonment imposed in the second criminal case described hereinafter.  USA v. Bonnie I, ECF No. 166.

[3] On May 27, 2021, the court entered judgment against Bonnie after he pleaded guilty to two counts of the third superseding indictment in United States v. Bonnie ("USA v. Bonnie II"), No. 2:19-cr-0060-DCN-3 (D.S.C. May 27, 2021), ECF No. 1128. Specifically, Bonnie pleaded guilty to engaging in a conspiracy with twelve codefendants to possess with intent to distribute and to distribute heroin and methamphetamine in violation of 21 U.S.C. §§ 846, 841(b)(1)(A).  USA v. Bonnie II, ECF Nos. 463; 1128.  He also pleaded guilty to possessing with intent to distribute heroin and methamphetamine on or about October 24, 2018, in violation of 21 U.S.C. § 841(b)(1)(B).  USA v. Bonnie II, ECF Nos. 463; 1128.  The court sentenced Bonnie to a 120-month term for each count, to run concurrently with each other, but consecutively with the term of imprisonment imposed in USA v. Bonnie I.  USA v. Bonnie II, ECF No. 1128.

JA265

for summary judgment. ECF No. 20. On August 13, 2023, Bonnie responded in opposition, ECF No. 39, to which Warden Dunbar replied on August 28, 2023, ECF No. 43.[4] On January 16, 2024, Magistrate Judge Rogers issued the R&R recommending the court grant Warden Dunbar's motion for summary judgment and dismiss the Petition. ECF No. 50, R&R. On February 14, 2024, Bonnie filed objections to the R&R. ECF No. 54, to which Warden Dunbar responded on March 12, 2024, ECF No. 58. As such, the motion is fully briefed and is ripe for review.

## II. STANDARD

### A. Order on R&R

The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with conducting a de novo review of any portion of the magistrate judge's report and recommendation to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985).

---

[4] In explanation for the delay between the motion and responsive briefs, the magistrate judge indicated that Bonnie's response filing deadline to the motion to dismiss was extended until fifteen days after the court determined whether to grant or deny Bonnie's motion to appoint counsel. ECF No. 21. Ultimately, Bonnie acquired legal counsel separate from that motion, and, therefore, though his original petition was filed pro se, Bonnie's subsequent response briefs were filed by his counsel. See ECF Nos. 30; 38; 39; 54.

4

JA266

In the absence of a timely filed, specific objection, the court reviews the report and recommendation only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted). Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's findings." Greene v. Quest Diagnostics Clinical Lab'ys, Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted). When a party's objections are directed to strictly legal issues "and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted). Analogously, de novo review is unnecessary when a party makes general and conclusory objections without directing the court's attention to a specific error in a magistrate judge's proposed findings. Id.

**B. Summary Judgment[5]**

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing

---

[5] Warden Dunbar styled his motion as a motion to dismiss or, alternatively, as a motion for summary judgment. ECF No. 20. The magistrate judge treated it as a motion for summary judgment. R&R at 1. Neither party objects to the magistrate judge's treatment of the motion as one for summary judgment. See ECF Nos. 54 at 5 & n.9; 58. This court likewise considers it as a motion for summary judgment.

JA267

law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III.   DISCUSSION

#### A.  Administrative Exhaustion

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts have required prisoners to exhaust their administrative remedies prior to seeking habeas review under § 2241. See Braden v. 30th Jud. Cir. Ct., 410 U.S. 484, 490–91 (1973) (requiring exhaustion in a § 2241 matter); Timms v. Johns, 627 F.3d 525, 531 (4th Cir. 2010) (noting courts require "exhaustion of alternative remedies before a prisoner can seek federal habeas relief" (internal quotation marks and citation omitted)). Exhaustion allows prison officials to develop a factual record and provides "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones v. Bock, 549 U.S. 199, 204 (2007).

The Attorney General, through the BOP, has responsibility for imprisoning federal offenders. United States v. Wilson, 503 U.S. 329, 331 (1992) (citing 18 U.S.C. § 3621(a)). This responsibility includes the calculation of an inmate's term of imprisonment, which is recognized as an "administrative purpose" well within the BOP's responsibilities as charged by Congress. See id. at 333–35. If the Attorney General,

6

JA268

through the BOP, does not give Bonnie the sentencing credit he believes he deserves, he can seek an administrative remedy. See 28 C.F.R. § 542.10 (2014). If Bonnie remains unsatisfied with the result upon exhausting his administrative remedies, he may file a petition under 28 U.S.C. § 2241. See Wilson, 503 U.S. at 336.

Neither party contends that Bonnie has failed to exhaust his administrative remedies, and the court likewise finds them exhausted. R&R at 3 n.2; ECF No. 54 at 4 (noting that the parties agree that Bonnie exhausted his administrative remedies with the BOP prior to filing this action). Thus, Bonnie's § 2241 petition is properly before the court.

**B.  Statutory Interpretation of the FSA**

The court begins with the sections of the FSA that the parties agree are unambiguous before reviewing those provisions where the parties' interpretations diverge. Thereafter the court will "use 'traditional tools of statutory construction' to determine 'whether Congress has directly spoken to the precise question at issue.'" Julmice v. Garland, 29 F.4th 206, 207 (4th Cir. 2022) (quoting Prudencio v. Holder, 669 F.3d 472, 480 (4th Cir. 2012)). "If—and only if—[the court's] interpretive toolkit leaves [it] with a genuine ambiguity do[es it] reach the second question, which asks whether the agency's considered views about the meaning of the statute are 'reasonable.'" Id. (citing Prudencio, 669 F.3d at 480). The court begins with the statute.

In 2018, the FSA amended 18 U.S.C. § 3621, governing federal prison sentences, and added related provisions in §§ 3624 and 3632 concerning recidivism reduction programming and incentives. Except for inmates convicted of certain enumerated offenses, see 18 U.S.C. § 3632(d)(4)(D), or those with a final removal or deportation

7

JA269

order, id. § 3632(d)(4)(E), all inmates became eligible to earn up to ten (10) days of time credits for every thirty (30) days of successfully completed BOP-approved "Evidence-Based Recidivism Reduction Programs" ("EBRR") and "Productive Activities" ("PAS"), see id. § 3632(d)(4)(A)(i).  Additionally, "[a] prisoner determined by the [BOP] to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their [sic] risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in [EBRR] or [PAS]."  See id. § 3632(d)(4)(A)(ii).

Among other incentives to encourage participation in EBRR and PAS, eligible inmates who have earned FSA time credits may apply those credits to their time in prerelease custody or supervised release.  See id. § 3632(d)(1)–(4)(C).  "Thus, FSA time credits, when applied, advance the date when the prisoner will be placed in prerelease custody (including home confinement or residential reentry facilities), or accelerate the date when the prisoner will leave BOP custody to start a term of court-imposed supervised release."  De La Torre v. Warden, FCI McDowell, 2024 WL 1080499, at *3 (S.D. W. Va. Feb. 5, 2024) (internal quotation marks and citations omitted), report and recommendation adopted, 2024 WL 1078266 (S.D. W. Va. Mar. 12, 2024); see also 18 U.S.C. § 3624(g)(3) (specifying that the BOP may apply up to twelve months of earned time credits to advance a date a prisoner begins to serve a term of supervised release).

To reiterate, the FSA sets out statutory criteria defining who is eligible to earn and apply time credits for early release from secured custody.  One category of inmates deemed ineligible to apply FTC credits towards earlier entry to prerelease custody or supervised release are inmates convicted of certain enumerated offenses.  See 18 U.S.C.

8

JA270

§ 3632(d)(4)(D). Specifically, "[a] prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction under any of the following provisions of law." Id. Relevant to this motion, one subsection includes persons convicted of violating § 924(c). 18 U.S.C. § 3632(d)(4)(D)(xxii).

When Congress enacted the FSA in December 2018, it did so against the backdrop of existing statutes, including 18 U.S.C. § 3584(c).[6] In relevant part, § 3584 provides:

> (a) Imposition of concurrent or consecutive terms.—If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, . . .
>
> . . . .
>
> (c) Treatment of multiple sentence as an aggregate.—Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment.

18 U.S.C. § 3584.

This dispute centers on whether Bonnie is eligible, if at all, to receive FSA time credits under the language of the FSA. "Bonnie does not dispute that if he were serving only the 24-month revocation sentence, he would be ineligible to earn time credits against that sentence." ECF No. 54 at 2 n.3. That is because revocation sentences are attributed to the original conviction which, here, includes a conviction for a § 924(c) offense. Id. However, the parties diverge as to whether his ineligible § 924(c) offense also impacts his eligible drug offense sentence that the court imposed in USA v. Bonnie II. Bonnie argues that the court must look to the plain text of the statute, and then to the statutory

---

[6] Congress enacted 18 U.S.C. § 3584 in 1984.

9

JA271

context and the statute's purpose, which, together, lead to the unambiguous conclusion that Bonnie may receive FSA time credits for the sentence he received for USA v. Bonnie II. See ECF Nos. 39 at 12–22; 54 at 6–14. In contrast, the government emphasizes that 18 U.S.C. § 3632 of the FSA must be read alongside 18 U.S.C. § 3584, which, together, lead to the unambiguous conclusion that the BOP must aggregate Bonnie's sentences and find that his § 924(c) conviction renders him ineligible for any FSA time credits. ECF Nos. 43 at 3–13; 58 at 1, 3–4.

Magistrate Judge Rogers ultimately recommended that the court grant Warden Dunbar's motion for summary judgment and dismiss Bonnie's Petition. R&R at 13–14. The R&R first summarized the relevant facts, the parties' arguments, and the relevant legal background material to this dispute. Id. at 1–7. It noted that "[t]he Court which revoked Bonnie's term of supervised release and imposed additional prison time indicated that the reinstated sentence was to run consecutively to any sentence then-imposed." Id. at 8. Consequently, the BOP found Bonnie's ongoing prison sentence to be related to and stemming from his underlying conviction, which included a conviction under § 924(c). Id. On that basis, the BOP found Bonnie ineligible to earn time credits under the FSA. Id. Upon review of the facts, arguments, and legal authority, the magistrate judge recommended that this court find "BOP's interpretation of § 3632(d)(4)(D) . . . to be a mandatory interpretation based on the BOP's other statutory obligations." Id. (referencing 18 U.S.C. §§ 3632(d)(4)(D), 3584(c)). Under that interpretation, the BOP correctly found Bonnie to be ineligible to earn time credits under the FSA. Id. at 8–9. The magistrate judge then considered persuasive caselaw from other courts which considered similar facts and arguments. Id. at 9–13. He observed that those

JA272

courts consistently found petitioners ineligible for time credits under the FSA.  Id. Finally, the R&R alternatively noted that if this court were to find the statutory provisions to be ambiguous, the court should find BOP's interpretation of the statute entitled to Chevron deference.[7]  Id. at 13.  Under Chevron, the magistrate judge recommended that the court find the BOP's interpretation reasonable such that the court should dismiss Bonnie's petition.  Id.

Bonnie objects to the recommendation.  ECF No. 54.  He argues that the magistrate judge made three critical errors.  Id. at 2–3.  First, the R&R ignored and failed to analyze the unambiguous meaning of the FSA as is gleaned from the plain text, statutory context, and statutory purpose of the act.  Id. at 2, 6–12.  Second, the R&R erred by alternatively finding the BOP's interpretation entitled to Chevron deference when the FSA is unambiguous.  Id. at 2–3, 13–16.  Third, the R&R improperly relied on a series of unpublished cases that invoked the BOP's administration of discretionary prison programs that predated the statutorily mandated FSA time credits.  Id. at 3, 16–18.  For the foregoing reasons, Bonnie urges the court to reject the R&R and deny the motion.  Id. at 18.

Warden Dunbar filed a reply to Bonnie's objections.[8]  ECF No. 58.  He emphasizes that Bonnie incorrectly urges that court to ignore the mandate of 18 U.S.C.

---

[7] Chevron, U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837, 865 (1984).  Courts defer to an agency's reasonable interpretation of a statute when Congress has "charged [the agency] with responsibility for administering the provision."  Id.  Bonnie notes that there is currently a pending decision from the Supreme Court which may modify Chevron deference.  ECF No. 54 at 2–3 & n.4 (citing Loper Bright Enters, Inc. v. Raimondo, 45 F.4th 359, 374 (D.C. Cir. 2022), cert. granted in part, 143 S. Ct. 2429 (2023)).

[8] Warden Dunbar does not object to the magistrate judge's report and recommendation.  ECF No. 58 at 5–6.

JA273

§ 3584(c) and its interplay with the FSA.  Id. at 1.  Moreover, Bonnie fails to address the fact that every court decision that has directly addressed this issue supports the BOP's position.  Id. at 2.  In essence, the passage of the FSA did not change that the BOP was, and is, responsible for determining sentencing credits.  Id. at 3.  Thus, the proper interpretation of the FSA with § 3584(c) indicates that Congress's silence as to how aggregated sentences would be treated under the FSA was not true silence because it reflected that § 3584(c) already existed and sufficiently answered that question.  Id. (citing Walton v. Fikes, 2023 WL 6283298, at *2 (D. Minn. Aug. 10, 2023), report and recommendation adopted, 2023 WL 6282897 (D. Minn. Sept. 26, 2023)).  Moreover, the cases that both the R&R and Warden Dunbar rely upon did not claim there was any ambiguity in the FSA—instead, those cases relied upon the administrative function of the BOP alongside the explicit statutory language included in § 3584(c).  Id. at 4.  In any event, even if the court were to find the statute ambiguous, Chevron remains good law such that BOP's reasonable interpretation of the statute should stand.  Id. at 5–6.  For these reasons, Warden Dunbar urges the court to adopt the R&R, grant the motion, and dismiss the petition.  Id.

The court begins by looking at the text of the statute.  The court then proceeds with "'all the traditional tools of construction,' emptying [its] interpretive toolbox[] by considering the 'text, structure, history, and purpose' of [the FSA]."  See Cela v. Garland, 75 F.4th 355, 361 (4th Cir. 2023) (quoting Kisor v. Wilkie, 139 S. Ct. 2400, 2415 (2019)).  Only after emptying the legal toolkit will the court reach the second step and look towards the BOP's interpretation.  See id.

12

JA274

### 1. Plain Text & Statutory Context

The court starts with the relevant statutory text.  First, the general provision as to FSA time credits broadly mandates access to time credits: "[a] prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes [EBRR] programming or [PAS], shall earn time credits."  18 U.S.C. § 3632(d)(4)(A) (emphasis added).  Second, the FSA defines "prisoner" as a "person who has been sentenced to a 'term of imprisonment' pursuant to a conviction for a Federal criminal offense, or a person in the custody of the [BOP]."  18 U.S.C. § 3635(4).  Third, the subparagraph defining ineligible offenses specifies that "[a] prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction under any of the following provisions of law."  18 U.S.C. § 3632(d)(4)(D).

Bonnie argues that the plain meaning of the FSA favors his interpretation.  ECF No. 54 at 6–8.  Bonnie highlights the distinction between a "term of imprisonment" in § 3635(4), and "serving a sentence" in § 3632(d)(4)(D).  ECF Nos. 54 at 7; 39 at 14.  He argues that the drafters of the FSA used different phrases to distinguish between the overall time spent in BOP custody—which Bonnie defines as "term of imprisonment"— versus the time spent in prison in connection with a particular conviction—which Bonnie defines as "serving a sentence for a conviction."  ECF Nos. 54 at 7; 39 at 14.  Bonnie emphasizes that the eligibility provision included in § 3632(d)(4)(D) is unique because it "is not drawn from any other statute, and it is not repeated elsewhere in the FSA."  ECF No. 54 at 7.  Bonnie interprets this language to mean that while he is not serving the § 924(c) revocation sentence, he is eligible to earn time credits under the plain language

JA275

of the FSA because he is a "prisoner" who is not "ineligible" under subparagraph D during that period. Id.

In response, the government points to a persuasive decision where a court defined the word "sentence" as used in § 3632(d)(4)(D). ECF No. 58 at 4 (citing Silva v. Warden, FCC Coleman-Low, 2024 WL 98212, at *2 (M.D. Fla. Jan. 9, 2024)). In Silva, the court noted that the provision of time credits is an administrative function of the BOP. 2024 WL 98212, at *2. Therefore, since § 3632(d)(4)(D) addresses an inmate's eligibility to earn FSA time credits, the statutory provision implicates the BOP's administrative function, and therefore the word "sentence" included in that statutory provision "cannot be defined without reference to § 3584(c)'s aggregation mandate." Id. Though § 3632 may be silent as to the definition of "sentence," the Silva court's interpretation "is the only one that harmonizes sections 3632 and 3584." Id. Thus, the court found that deference to the BOP's interpretation of "sentence" as a single, aggregated term was unnecessary where "the BOP's interpretation is not only reasonable, but 'required' by § 3584." Id. The court concluded by noting that "[w]hen only one interpretation is permissible, the statute is not ambiguous." Id.

The difference in terms—§ 3632(d)(4)(D)'s "serving a sentence for a conviction" and § 3584(c)'s "term of imprisonment"—is a meaningless distinction. "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." Perrin v. United States, 444 U.S. 37, 42 (1979). Though the FSA includes a section devoted to definitions, the terms "term of imprisonment" and "serving a sentence for a conviction" are not included on that list. See 18 U.S.C. § 3635. The court therefore interprets those terms according to

14

JA276

their ordinary, contemporary, common meaning and finds that "serving a sentence of conviction" and "term of imprisonment" mean the same thing: an inmate has been convicted of a criminal offense, and a court has sentenced him or her to a term of incarceration. [9] See Huerta v. Cordova, 2023 WL 8627542, at *4 (N.D. Tex. Dec. 13, 2023). The court's conclusion is bolstered by similar reasoning from persuasive authority. See, e.g., id. at *3–4; Wold v. Fed. Bureau of Prisons, 2018 WL 4906273, at *4–6 (D.S.D. Oct. 9, 2018).

Despite finding that "term of imprisonment" and "serving a sentence for a conviction" share one meaning, the court concludes that the plain text of the statutory provision remains unclear because § 3632(d)(4)(D) is silent as to the eligibility of prisoners convicted of multiple offenses—some eligible and others ineligible for time credits. See 18 U.S.C. § 3632(d)(4)(D). Considering this ambiguity, the "statutory language must be read in the context of the BOP's statutory obligations for computing sentences." Huerta, 2023 WL 8627542, at *3; see also McCarthy v. Bronson, 500 U.S. 136, 139 (1991) ("However, statutory language must always be read in its proper context."); South Carolina v. U.S. Army Corps of Eng'rs, 66 F.4th 189, 196 (4th Cir.

---

[9] For the sake of completeness, this court paraphrases and adopts those courts' analysis. Petitioner rightly identifies that § 3584(c) speaks of aggregating "terms of imprisonment," not "sentences." "This [too] is a distinction without a difference. Both 'term of imprisonment' and 'sentence' are used interchangeably to refer to a period of incarceration imposed for violation of the law." Wold v. Fed. Bureau of Prisons, 2018 WL 4906273, at *6 (D.S.D. Oct. 9, 2018). "Imprison" means to put in as if in prison, to confine. See https://www.merriam-webster.com/dictionary/imprisonment (last checked May 9, 2024). "Sentence" has as one of its definitions a "judgment, specifically one formally pronounced by a court or judge in a criminal proceeding and specifying the punishment to be inflicted upon the convict" and "the punishment so imposed." See https://www.merriam-webster.com/dictionary/sentence (last checked May 9, 2024). A "sentence" specifies punishment. Id. Where the "sentence" includes confinement, the "sentence" includes a "term of imprisonment."

15

JA277

2023) (quoting Roberts v. Sea-Land Servs., Inc., 566 U.S. 93, 101 (2012)) ("Because statutory language 'cannot be construed in a vacuum, it is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" (alterations adopted and internal quotation marks omitted)).  Thus, the court considers the appropriate statutory context.

One such statutory obligation is found at 18 U.S.C. § 3584(c).  That provision provides: "Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." 18 U.S.C. § 3584(c).  "Administrative purposes" includes not only the computation of sentences, but also the discretionary administrative functions such as determining a "current offense" for early release eligibility under 18 U.S.C. § 3621(e).  See Moreno v. Ives, 842 F. App'x 18, 20–22 (9th Cir. 2020) ("Insofar as [the petitioner] argues that § 3584(c) is limited to sentence computation, no such limit exists in the language of the statute, and other courts have recognized that the statute applies to all administrative determinations made by BOP" (citation omitted)).  Because the BOP is required to aggregate terms of imprisonment for administrative purposes, it is reasonable for the BOP to apply the aggregation rule to 18 U.S.C. § 3632(d)(4)(D) and conclude that if one of the aggregated convictions precludes the inmate from earning time credits, the entire aggregated sentence has the same effect.  Bonnie has offered no statute or caselaw to support a contrary interpretation.

16

JA278

Instead, Bonnie argues that his interpretation of FSA time credits is correct based on the statutory context of other provisions within the FSA.[10]  See ECF Nos. 54 at 8–9; 39 at 14–15.  In response, the government emphasizes that the relevant statutory context is not merely the language of the FSA but also the pre-existing statutory obligations that governed administration of prison sentences at that time.[11]  See ECF No. 58 at 3.  In reply, Bonnie argues that § 3584 does not establish that multiple sentences, especially those imposed to run consecutively, will lose their separate character.[12]  ECF No. 54 at 10–12.

---

[10] Namely, Bonnie contrasts the ineligibility provisions of § 3632(d)(4)(D) with the terminally ill offender ineligibility provisions that were also included in the FSA. ECF Nos. 54 at 8–9; 39 at 14–19.  In relevant part, the FSA modified the previously enacted Second Chance Act of 2007's pilot program for eligible elderly and terminally ill offenders, 34 U.S.C. § 60541.  Bonnie highlights that unlike the FSA time credit's exclusion provision, the terminally ill offender exclusion expressly applies to a defendant convicted of multiple offenses, so long as any one of the offenses is listed as a disqualifying offense.  ECF No. 39 at 15 (citing 34 U.S.C. § 60541).

[11] The government emphasizes that Bonnie misinterprets Congress's silence regarding multiple convictions and the ineligibility provision of the FSA.  ECF No. 58 at 3.  It highlights that "Congress's silence regarding how aggregated sentences would be treated under the FSA is not a reflection that § 3584(c) was to be ignored; instead, it was a reflection that § 3584(c) already existed, already controlled in this situation, and was already sufficient to guide the BOP."  Id. (citing Walton, 2023 WL 6283298, at *2).  In other words, "[t]here was no reason for Congress to say anything within the FSA about how consecutive sentences were to be regarded by the BOP, because Congress had already said everything it needed to say within § 3584(c)."  Id. (citing Walton, 2023 WL 6283298, at *2).

[12] Bonnie emphasizes that to hold as much would require prisoners to serve a term of imprisonment that exceeds the statutory maximum for certain offenses like his supervised release violation.  ECF No. 54 at 11.  Moreover, BOP and the Parole Commission's practice is instructive because parole is determined by the statute of conviction—not by the BOP.  Id.  While the Parole Commission has long aggregated sentences for the purposes of calculating "good time" and to set a parole eligibility date, see 28 C.F.R. § 2.5, that aggregation does not deprive the sentences of their distinct parole implications: the aggregation of a parolable sentence with a non-parolable sentences does not render the entire sentence non-parolable, ECF No. 54 at 11–12.  Similarly, the BOP de-aggregates sentences to comply with a bilateral international treaty that allows certain types of sentences imposed in the United States on Mexican nationals

17

The Supreme Court has directed courts to "interpret the statute as a symmetrical and coherent regulatory scheme," and to "fit, if possible, all parts into an harmonious whole." Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) (internal quotation marks and citations omitted). "Similarly, the meaning of one statute may be affected by other Acts." Id. It is therefore unsurprising that the government's position is echoed and mirrored in many court decisions that have concluded that when Congress enacted the FSA in December 2018, it did so against the backdrop of existing statutes, including § 3584(c). See, e.g., Satizabal v. Edge, 2023 WL 5746932, at *1 (E.D. Ark. Sept. 6, 2023) (referencing courts' previous incorporation of § 3584(c) in analysis of residential drug abuse program ("RDAP") statutes); Dahda v. Hudson, 2023 WL 2815920, at *2 (D. Kan. Mar. 7, 2023) ("[18 U.S.C. § 3584(c)] was the existing law in 2018 when Congress passed the FSA, and thus the FSA's eligibility requirements must be considered in light of that existing statutory scheme."); Giovinco v. Pullen, 2023 WL 1928108, at *2–4 (D. Conn. Feb. 10, 2023) ("Thus, this provision must be read in the context of the BOP's statutory obligation to aggregate concurrent and consecutive sentences for administrative purposes."). Consequently, Bonnie's suggestion to consider other provisions of the FSA while overlooking preexisting statutes regulating the BOP's administration of the prison system—including widely used and understood definitions arising from those statutes—misses the mark. See ECF Nos. 54 at 8–9; 39 at 14–19.

---

to be served in Mexico. Id. at 12. Bonnies seeks to extend that analysis to the application of FSA time credits for prisons serving sentences for eligible and ineligible offenses. Id.

18

JA280

Moreover, § 3584(c)'s directive to aggregate a term of imprisonment for administrative purposes should be considered alongside Congress's broad delegation to the BOP to manage prisoner's sentences, including the calculation of an inmate's term of imprisonment—which implicates the eligibility provisions for time credits included in § 3632(d)(4)(D). See, e.g., Teed v. Warden Allenwood FCI Low, 2023 WL 4556726, at *2 (3d Cir. July 17, 2023) ("Calculation of an inmate's term of imprisonment is widely recognized as an 'administrative purpose' well within the BOP's responsibilities as charged by Congress."), cert. denied, 144 S. Ct. 873 (2024); Williams v. FCI Berlin, 2023 WL 5961688, at *4 (D.N.H. Aug. 1, 2023), report and recommendation adopted, 2023 WL 5959740 (D.N.H. Sept. 13, 2023) ("Reasoning that the BOP's sentence calculations and eligibility determinations are administrative functions, . . . courts have construed 18 U.S.C. § 3632(d)(4)(D) together with 18 U.S.C. § 3584(c)."). In other words, "[d]eciding whether a prisoner is ineligible to receive FSA credits is an 'administrative' decision." Frommie v. Fed. Bureau of Prisons, 2022 WL 18399537, at *3 (D.S.D. Aug. 23, 2022), report and recommendation adopted, 2022 WL 18399536 (D.S.D. Nov. 30, 2022). Section 3584(c) provides that, "for administrative purposes," "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated . . . as a single, aggregate term of imprisonment." 18 U.S.C. § 3584(c). Consequently, "[t]he BOP's treatment of [petitioner's] sentences as a 'single, aggregate term of imprisonment' is supported by Congressional enactment." Frommie, 2022 WL 18399537, at *3.

The court finds that the eligibility restrictions identified in § 3632(d)(4)(D) must be read in the context of the BOP's preexisting statutory obligation to aggregate concurrent and consecutive sentences for administrative purposes. This harmonizes the

19

JA281

ambiguity of the FSA not only with statutory context but also with previous Supreme Court decisions considering the BOP's aggregation mandate. See Silva, 2024 98212, at *2; cf. Payton v. Rowe, 391 U.S. 54, 67 (1968) (holding that a prisoner incarcerated on multiple sentences is "in custody" for purposes of habeas relief on all sentences); Johnson v. United States, 529 U.S. 694, 700 (2000) (concluding that a defendant's original sentences and a subsequent sentence he received for revocation of supervised release were both considered one sentence after aggregation).

Courts "don't 'resort to legislative history to cloud a statutory text that is clear.'" South Carolina, 66 F.4th at 197 (quoting Ratzlaf v. United States, 510 U.S. 135, 147–48 (1994)). Upon finding that the statutory context clearly establishes that the BOP is required to administratively aggregate sentences—implicating the sentence management requirements imposed by the FSA—the court finds that the BOP's interpretation accords with the plain language and statutory context. See id. Consequently, the court need not delve into the depths of the FSA's purpose.[13] See id.

In sum, the court finds that the plain text and statutory context of the FSA indicate Congress's intention that an inmate convicted of multiple offenses, at least one of which is ineligible to earn time credits under the FSA, is ineligible to earn time credits under the FSA because the BOP is statutorily mandated to aggregate the sentence.

---

[13] Bonnie argues that construing § 3632(d)(4)(D) broadly alongside the aggregation mandate in § 3584(c), runs contrary to the FSA's purpose. ECF No. 54 at 12–13 (citing Lallave v. Martinez, 635 F. Supp. 3d 173, 189–90 (E.D.N.Y. 2022)). That decision also notes that "courts are instructed to turn to legislative history only after 'the plain language and canons of statutory interpretation fail to resolve statutory ambiguity.'" Lallave, 635 F. Supp. 3d at 189 (quoting United States v. Dauray, 215 F.3d 257, 264 (2d Cir. 2000)). Therefore, since the court resolves the statutory ambiguity through analysis of the plain language and canons of statutory interpretation, it need not reach Bonnie's arguments as to the statute's purpose.

20

JA282

## 2. Precedent

Precedent supports this conclusion. The court first notes that there is no direct binding precedent from either the Fourth Circuit or the Supreme Court on this exact question.[14] The court has identified three on-point district court decisions in the Fourth Circuit that inform this analysis—each holding that a petitioner is ineligible to earn FSA time credit when serving an aggregate term of imprisonment that includes a sentence for a § 924(c) conviction. See Mancillas v. Fed. Bureau of Prisons, 2023 WL 5404229, at *5 (D. Md. Aug. 22, 2023); Banks v. King, 2023 WL 8242450, at *4 (E.D.N.C. Nov. 28, 2023); Richardson v. Warden FCI Edgefield, 2024 WL 1862195, at *5 (D.S.C. Feb. 8, 2024), report and recommendation adopted, 2024 WL 1861555 (D.S.C. Apr. 29, 2024). Nationally, three circuits have opined on this issue—the Third Circuit, the Sixth Circuit, and the Eighth Circuit—and each has held that the BOP did not err by aggregating the terms of imprisonment and finding an ineligible offense made the petitioner ineligible for FSA time credits even when that ineligible offense was imposed consecutive to other sentences. See Teed, 2023 WL 4556726; Keeling v. Lemaster, 2023 WL 9061914 (6th Cir. Nov. 22, 2023); Sok v. Eischen, 2023 WL 5282709 (8th Cir. Aug. 17, 2023).

---

[14] The parties identify that the Fourth Circuit recently issued an unpublished per curiam opinion affirming a district court's decision that a § 2241 petitioner was ineligible for time credits where he was serving a sentence for eligible drug offenses and for an ineligible § 924(c) conviction. ECF Nos. 54 at 9 n.12; 58 at 2. That decision affirmed the district court's analysis finding that the prisoner-petitioner was ineligible for sentencing time credits because of his § 924(c) conviction. See McNeill v. Ramos, 2023 WL 6442551, at *1 (4th Cir. Oct. 3, 2023). The Fourth Circuit opinion was five sentences long, only one of which related to the question of time credits. Id. Bonnie contends that this decision is unpersuasive and that it was made in error because it "begin[s] and end[s] [its] analysis with 18 U.S.C. § 3584(c), with no explanation of why the text of the First Step Act itself does not govern eligibility." ECF No. 54 at 9 n.12. Nevertheless, the court finds that this short decision further supports the undersigned's conclusion as to Bonnie's ineligibility for time credits.

21

JA283

Unsurprisingly, the government relies heavily on the large body of persuasive decisions which have held that the BOP has the discretion to aggregate eligible and ineligible sentences imposed by sentencing courts in its analysis of which prisoners may earn FSA time credits. ECF Nos. 20 at 6–11; 43 at 5–10; 58 at 2–4, 6. In contrast, Bonnie emphasizes that all of those decisions should be unpersuasive because they are not grounded in principles of statutory interpretation, they relied on laws which predated the FSA,[15] they erroneously invoked Chevron, and often were based on petitions brought by pro se prisoners. See ECF Nos. 39 at 26–29; 54 at 3, 14, 16–18. At the end of the day, Bonnie does not identify a single case which finds in his favor on this specific issue. See ECF Nos. 39 at 4 n.7, 21–22, 24–29; 54 at 9 n.12, 16–18. The government highlights as much. See ECF No. 58 at 1 ("[Bonnie] asks this Court to find that every other court

---

[15] Bonnie argues that the government's reliance on caselaw that draws analogies to courts' previous incorporation of § 3584(c) to interpretation of RDAP is fundamentally flawed. See ECF Nos. 39 at 19–20; 54 at 16–18. Namely, the residential drug abuse program ("RDAP") differs from the FSA because the language included in RDAP is fully discretionary:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a [residential substance abuse] treatment program may be reduced by the [BOP], but such a reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B). In contrast, the FSA provides that time credits "shall be earned," 18 U.S.C. § 3632(d)(4)(A); and that they "shall be applied," 18 U.S.C. § 3632(d)(4)(C). When the Supreme Court considered RDAP's mandate, it concluded that "[w]hen an eligible prisoner successfully completes drug treatment, the [BOP] thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment." Lopez v. Davis, 531 U.S. 230, 241 (2001) (emphasis added). In reaching that conclusion, the Supreme Court contrasted the RDAP statute's use of the permissive "may" with the discretion-less "shall" elsewhere in the statute. Id. Thus, Bonnie urges the court to find those cases incorporating § 3584(c) based on the courts' longstanding practice of doing so in RDAP cases to be erroneous because the permissive language of the RDAP statute conflicts with the mandatory language of the FSA's time credit eligibility provisions. ECF Nos. 39 at 19–20; 54 at 17–18.

<div align="center">22</div>

<div align="center">JA284</div>

nationwide that considered this issue conducted an incorrect analysis in reaching the same result Magistrate Judge Rogers reached in his R&R."), at 2 ("[Bonnie] cites to no case on point that supports his position."); see also ECF Nos. 43 at 1.

In fact, a detailed review of court cases across the country suggests that Bonnie's circumstances are neither novel nor unique. For example, other courts have considered whether a petitioner who violated supervised release of his or her § 924(c) conviction and further committed additional eligible drug crimes to nonetheless be ineligible for FSA time credits. See, e.g., Dahda, 2023 WL 2815920, at *1; Mancillas, 2023 WL 5404229, at *1; Banks, 2023 WL 8242450, at *1. Additionally, other courts have considered the eligibility of a prisoner serving a prison sentence for two separate judgments, only one of which included an ineligible offense, and found that petitioner entirely ineligible for FSA time credits. See, e.g., Williams, 2023 WL 5961688, at *3–4. This is consistent with caselaw where a petitioner imprisoned for an eligible offense is thereafter convicted of the ineligible offense of possession of contraband in prison—courts have found that petitioner ineligible for FSA time credits in aggregate. See, e.g., Satizabal, 2023 WL 5746932, at *1 (report and recommendation); Limbrick v. Rivers, 2023 WL 8481850, at *1–2 (N.D. Tex. Oct. 13, 2023), report and recommendation adopted, 2023 WL 8482886 (N.D. Tex. Dec. 7, 2023); Ulloa v. Cruz, 2024 WL 1117092, at *1 (M.D. Pa. Mar. 14, 2024). To be sure, Bonnie is sentenced with two separate judgments, only one of which includes an ineligible offense, but under the plain language of the statute read in its

23

JA285

statutory context, that ineligible offense impacts his entire sentence such that he is ineligible for FSA time credits.[16]

## IV.   CONCLUSION

For the foregoing reasons, the court **ADOPTS** the report and recommendation, **GRANTS** the motion for summary judgment, and **DENIES** the petition for writ of habeas.

---

[16] The court considers whether the BOP's interpretation of the FSA is "reasonable" if, and only if, the court's finds that the statute is ambiguous. See Julmice, 29 F.4th at 207 (citing Prudencio, 669 F.3d at 480). Upon finding the statute unambiguous, the court need not reach the question of whether BOP's interpretation was reasonable. See id. Nevertheless, the court alternatively finds that even if 18 U.S.C. § 3632(d)(4)(D) were ambiguous, the BOP's interpretation as to that statutory gap is reasonable and entitled to deference. See Chevron, 467 U.S. at 843. At the first step, the court found the statute unambiguous as to a prisoner's eligibility for FSA time credits where a prisoner has multiple offenses or multiple sentences running consecutively where some of those offenses are eligible for FSA time credits, and others are ineligible. See Dahda, 2023 WL 2815920, at *2. However, if the court were to reach the second step, the court would find that the administering agency—the BOP—has filled the statutory gap in a reasonable way considering Congress's design. See Lopez v. Davis, 531 U.S. 230, 242 (2001).

Several courts have held that the statute is ambiguous. See, e.g., Sok v. Eischen, 2022 WL 17156797, at *3 (D. Minn. Oct. 26, 2022) ("The terms of § 3632(d)(4)(D) 'do not directly answer this question' and '[c]ontext does not clear things up' which leaves the Court 'with an ambiguous provision.'" (quoting Voigt v. U.S. Env't Prot. Agency, 46 F.4th 895, 901 (8th Cir. 2022))), report and recommendation adopted 2022 WL 17128929 (D Minn. Nov. 22, 2022), aff'd 2023 WL 5282709 (8th Cir. Aug. 17, 2023); Mancillas, 2023 WL 5404229, at *5 (noting that ambiguity exists as what was meant by "serving a sentence" for certain convictions in the eligibility provision included at 18 U.S.C. § 2632(d)(4)(D)). Upon finding ambiguity, those courts each found the BOP's interpretation of the statute to be reasonable, particularly considering § 3584(c)'s requirement that consecutive sentences be treated as a single, aggregate sentence for administrative purposes. See, e.g., Dahda, 2023 WL 2815920, at *2; Sok, 2022 WL 17156797, at *5. The court follows and adopts the analysis of other courts. As such, had the court found the FSA ambiguous, it would have granted the motion for summary judgment on the second step of the Chevron analysis.

24

JA286

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**May 9, 2024**

**Charleston, South Carolina**

25

JA287

AO 450 (SCD 04/2010)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of South Carolina

| | |
|---|---|
| Gregory Allen Bonnie, aka Gregory Allen Bonnie#21082 | ) |
| *Petitioner* | ) |
| v. | ) |
| Warden Dunbar | ) |
| *Respondent* | ) |

Civil Action No.      4:23-cv-1215-DCN

## SUMMARY JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

❒ the petitioner *(name)* _____ recover from the respondent *(name)* _____ the amount of _____ dollars ($__), which includes prejudgment interest at the rate of ____ %, plus postjudgment interest at the rate of ____ %, along with costs.

❒ the petitioner recover nothing, the action be dismissed on the merits, and the respondent *(name)* _____ recover costs from the petitioner *(name)* _____.

■ other: Summary Judgment is entered as to respondent Warden Dunbar and this petition is dismissed.

This action was *(check one)*:

❒ tried by a jury, the Honorable _____ presiding, and the jury has rendered a verdict.

❒ tried by the Honorable _____ presiding, without a jury and the above decision was reached.

■ decided by the Honorable David C. Norton, United States District Judge who adopted the Report and Recommendation of the Honorable Thomas E. Rogers, III, United States Magistrate Judge.

Date:   May 10, 2024

ROBIN L. BLUME
*CLERK OF COURT*

s/Debbie Stokes
_____
*Signature of Clerk or Deputy Clerk*

JA288

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Gregory Allen Bonnie, a/k/a Gregory Bonnie #21082, | ) | C/A Number: 4:23-cv-01215-DCN |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| vs. | ) | |
| | ) | **NOTICE OF APPEAL** |
| Warden Dunbar, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Gregory Allen Bonnie appeals to the United States Court of Appeals for the

Fourth Circuit from this Court's Order (ECF No. 65), which was entered on May 9, 2024, and

final Judgment (ECF No. 66), which was entered on May 10, 2024.

Respectfully Submitted,

/s/ John L. Warren III
John L. Warren III (Federal ID No. 12164)
Email: jw@billnettleslaw.com
Law Office of Bill Nettles
2008 Lincoln St.
Columbia, SC 29201
Tel: (803) 814-2826

Patricia Richman (Admitted *Pro Hac Vice*)
Email: patricia_richman@fd.org
Office of the Federal Public Defender for the
    District of Maryland
6411 Ivy Lane
Greenbelt, MD 20770
Tel: (301) 344-0600

Counsel for Petitioner Gregory Allen Bonnie

July 2, 2024

1

JA289