**NO. 24-6665**

# United States Court of Appeals

*for the*

# Fourth Circuit

GREGORY ALLEN BONNIE,

*Petitioner-Appellant,*

– v. –

WARDEN DUNBAR,

*Respondent-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT FLORENCE
HONORABLE DAVID C. NORTON, U.S. DISTRICT JUDGE

## REPLY BRIEF FOR PETITIONER-APPELLANT

JOHN L. WARREN III
LAW OFFICE OF BILL NETTLES
2008 Lincoln Street
Columbia, South Carolina 29201
(803) 814-2826
jw@billnettleslaw.com

– and –

PATRICIA LOUISE RICHMAN
  *Assistant Federal Public Defender*
OFFICE OF THE FEDERAL PUBLIC DEFENDER
  SOUTHERN DIVISION
6411 Ivy Lane, Suite 710
Greenbelt, Maryland 20770
(301) 344-0600
patricia_richman@fd.org

*Attorneys for Petitioner-Appellant*

CP COUNSEL PRESS    (800) 4-APPEAL • (811638)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ............................................................................... 1

ARGUMENT ...................................................................................... 4

    I.    BOP's Construction of the FSA is Inconsistent with the Law's Unambiguous Meaning ............................................................ 4

        A.   Plain language. ................................................................. 6

        B.   Statutory Context. ........................................................... 10

        C.   Purpose................................................................................ 12

    II.   The Aggregation Provision, 18 U.S.C. § 3584(c), Does Not Apply. ...................................................................................... 15

        A.   Congress did not legislate against the backdrop of "widely used and accepted definitions" arising from 18 U.S.C. § 3584(c). ........................................................................... 17

        B.   The plain import and fair implication of the FSA confirm that Congress did not intend for 18 U.S.C. § 3584(c) to expand the scope of the ineligibility provision. .................. 22

        C.   Post-*Loper Bright*, BOP's interpretation of 18 U.S.C. § 3584(c) is owed no deference. .......................................... 26

    III.  Other Courts Have Failed to Construe § 3584(c) through the Lens of *Loper Bright*. ............................................................. 30

    IV.  BOP's Interpretation Runs Afoul of the Rule of Lenity............ 31

CONCLUSION ......................................................................................33

CERTIFICATE OF COMPLIANCE ........................................................34

CERTIFICATE OF SERVICE ................................................................35

# TABLE OF AUTHORITIES

## Cases

*Barber v. Thomas,*
   560 U.S. 474 (2010) ................................................................................32

*Bittner v. United States,*
   598 U.S. 85 (2023) ..................................................................................32

*Chevron v. NRDC,*
   467 U.S. 837 ........................................................................................2, 16

*Courtland Co., Inc. v. Union Carbide Corp.,*
   No. 2:18-cv-01230, 2023 WL 6331069 (S.D.W. Va. Sept. 28, 2023) .....7

*Everytown for Gun Safety Support Fund v. Bureau of Alcohol, Tobacco,*
   *Firearms and Explosives,* 984 F.3d 30 (2d Cir. 2020)...........................23

*Frommie v. Fed. Bureau of Prisons,*
   No. 4-22-cv-04082, 2022 WL 18399537 (D.S.D. Aug. 23, 2002), *report*
   *and recommendation adopted,* No. Civ. 22-4082, 2022 WL 18399536
   (D.S.D. Nov. 30, 2022) ............................................................................8

*Giovinco v. Pullen,*
   118 F.4th 527 (2d Cir. 2024) ..................................................... 8, 25, 30

*Healthkeepers, Inc. v. Richmond Ambulance Auth.,*
   642 F.3d 466 (4th Cir. 2011) ..................................................................9

*Keeling v Lemaster,*
   No. 22-6126, 2023 WL 9061914 (6th Cir. Nov. 22, 2023) ....................31

*Loper Bright v. Raimondo,*
   603 U.S. 369 (2024) ......................................................................*passim*

*Lopez v. Davis,*
   531 U.S. 230 (2001) ...............................................................................20

*Marbury v. Madison,*
   1 Cranch 137 (1803) .................................................................................2

*McNeil v. Ramos,*
  No. 23-50406, 2023 WL 64425551 (5th Cir. Oct. 3, 2023) ................ 31

*Miles v. Anton,*
  42 F.4th 777 (7th Cir. 2022)) ..................................................................... 1

*Molina-Diaz v. Bondi,*
  128 F.4th 568 (4th Cir. 2025) ................................................................... 26

*Moreno v. Ives,*
  842 Fed. Appx. 18 (9th Cir. 2020) .................................................... 20, 21

*NLRB v. Amax Coal Co,*
  453 U.S. 322, (1981) ................................................................................. 17

*Pizzaro v. Fed. Bureau of Prisons,*
  No. Civ. A. 04-6499, 2005 WL 1177942 (D.N.J. May 18, 2005) .......... 28

*Republic of Sudan v. Harrison,*
  139 S. Ct. 1048 (2019) ................................................................................ 6

*S.W. Airlines Co. v. Saxon,*
  596 U.S. 450 (2022) ................................................................................... 11

*Sash v. Zenk,*
  344 F. Supp. 2d 376 (E.D.N.Y. 2004), *aff'd* 428 F.3d 132 (2d Cir. 2005),
  *cert. denied,* 549 U.S. 920 (2006) ........................................................... 32

*Skidmore v. Swift & Co.,*
  323 U.S. 134 (1944) ................................................................................... 26

*Teed v. Warden,*
  No. 23-1191, 2023 WL 4556726 (3d Cir. July 17, 2023) (per curiam),
  *cert denied,* 144 S. Ct. 873 (2024) ......................................................... 31

*United States v. Brooker,*
  976 F.3d 228 (2d Cir. 2020) ..................................................................... 14

*United States v. Duffey,*
  92 F.4th 304 (5th Cir. 2024) ..................................................................... 22

*United States v. Granderson,*
  511 U.S. 39 (1994) ....................................................................................... 4

iv

*United States v. LaBonte,*
  520 U.S. 751 (1997) ...................................................................19

*United States v. Llewlyn,*
  879 F.3d 1291 (11th Cir. 2018) ................................................19

*United States v. Martin,*
  974 F.3d 124 (2020) ..................................................................27

*United States v. Wilson,*
  503 U.S. 329 (1992) .................................................... 7, 18, 19

*Valladares v. Ray,*
  2025 WL 595560, --- F.4th --- (4th Cir. 2025) ..................... 1, 13, 14, 26

*Weaver v. Graham,*
  450 U.S. 24 (1981) ....................................................................32

**Statutes**

18 U.S.C. § 3381 ..........................................................................24

18 U.S.C. § 3584(c) ........................................................... *passim*

18 U.S.C. § 3585(b) ......................................................................18

18 U.S.C. § 3586 ..........................................................................24

18 U.S.C. § 3621(e)(2)(B) ................................................... 20, 21

18 U.S.C. § 3621(h) ......................................................................25

18 U.S.C. § 3631 ..........................................................................25

18 U.S.C. § 3631(a) ......................................................................14

18 U.S.C. § 3631(g) ......................................................................14

18 U.S.C. § 3631(h) ......................................................................24

18 U.S.C. § 3632(a) ......................................................................14

18 U.S.C. § 3632(d)(4)(A) ...............................................................7

18 U.S.C. § 3632(d)(4)(C) .............................................................14

18 U.S.C. § 3632(d)(4)(D) ................................................... *passim*

18 U.S.C. § 3632(f)(4) .................................................................14

18 U.S.C. § 3635(4) .......................................................................6

34 U.S.C. § 60541(g)(5)(c)...........................................................11

**Other Authorities**

BOP Prog. St. 5880.28, Sentencing Computation Manual (CCCA 1984)
   (Jul. 20, 1999) ..................................................................27, 28

**Rules**

Fed. R. App. P. 32(a)(5) ...............................................................34

Fed. R. App. P. 32(a)(7)(B) ..........................................................34

## INTRODUCTION

In the First Step Act of 2018 ("FSA" or "the Act"), Congress created a mandatory time-credit program with limited eligibility exceptions. To do so, Congress divested the Bureau of Prisons ("BOP") of its control over eligibility and credit determinations, in direct response to BOP's demonstrated failure at reducing recidivism.

Congress made its intent to limit BOP's discretion over the new FSA time-credit program plain throughout the Act's text and structure. That is particularly so with respect to time-credit eligibility determinations: in 18 U.S.C. § 3632(d)(4)(D), Congress created a specific and exhaustive list cabining ineligibility to earn FSA time-credits to only "prisoners serving a conviction for a sentence" under one of sixty-eight categories of convictions.

The text of the FSA—and its clear intent to make mandatory time credits broadly available to people in the custody of BOP—must be given meaning. "If textualism is for anyone, it must be for everyone, including those who are incarcerated." *Valladares v. Ray*, ---F.4th---, 2025 WL 595560, at *6 (4th Cir. 2025) (*quoting Miles v. Anton*, 42 F.4th 777, 782 (7th Cir. 2022)).

1

Despite this, BOP asks the Court to set aside the FSA entirely in favor of a different statute, 18 U.S.C. § 3584(c), that it asserts authorizes BOP to treat a prisoner like Mr. Bonnie—who is serving separate, consecutive sentences for an eligible offense and an ineligible offense—as wholly ineligible to earn FSA-time credits. Other courts have relied on BOP's legal interpretation of 18 U.S.C. § 3584(c) to approve BOP's application of this "aggregation provision" to exponentially expand the FSA's carefully delineated list of ineligibility provisions. But these decisions largely predated *Loper Bright v. Raimondo*, which overturned *Chevron* deference and reasserted that it "is emphatically the province and duty of the judicial department to say what the law is." 603 U.S. 369, 385 (2024) (quoting *Marbury v. Madison*, 1 Cranch 137, 177 (1803) and overruling *Chevron v. NRDC*, 467 U.S. 837, 842–44 (1984)). As a result, none of the authorities in BOP's response have examined whether BOP's interpretation of the aggregation provision is the "single, best meaning" of 18 U.S.C. § 3584(c). *Loper Bright*, 603 U.S. at 400. Nor have those courts tested BOP's repeated assertion that § 3584(c) created "widely known and accepted" definitions against which Congress legislated in the FSA.

2

But BOP's claim cannot withstand scrutiny: pre-FSA, few courts had construed the scope of § 3584(c), and none had ever examined the provision in the context of a mandatory time-credit program like the FSA.

At bottom, BOP's response amounts to no more than an assertion that it should be permitted to say "what the law means" when it comes to the interaction between the FSA and § 3584(c). But post-*Loper Bright*, BOP's say-so isn't enough: matters of law are for the courts, and an agency interpretation can only persuade to the extent it is thorough, consistent, and well-reasoned.

Under this rubric, BOP's interpretation fails. BOP asserts it must aggregate FSA-eligible and ineligible sentences into a single, ineligible sentence to serve an "administrative purpose" in its ministerial task of sentencing calculation, but it offers no specifics in support. Nor could it. What the BOP is doing to individuals like Mr. Bonnie is not "ministerial;" it is a substantive eligibility determination; a power Congress clearly gave to *itself* in the FSA and not the BOP. And there is no "ministerial" or "administrative" reason that BOP cites to justify extending FSA ineligibility across separate, consecutive sentences. To implement the FSA as

3

Congress required, BOP built a sophisticated automated time-credit system which parses a person's periods of eligibility and ineligibility down to the day. Moreover, BOP routinely deaggregates sentences imposed under different sentencing acts despite the "mandate" it purports binds them here.

Finally, if the Court finds ambiguity, the rule of lenity resolves the issue in Mr. Bonnie's favor. "In these circumstances—where text, structure, and history fail to establish that the government's position is unambiguously correct"—the Court should "apply the rule of lenity and resolve the ambiguity" in Mr. Bonnie's favor. *See United States v. Granderson,* 511 U.S. 39, 54 (1994).

## ARGUMENT

### I. BOP's Construction of the FSA is Inconsistent with the Law's Unambiguous Meaning

BOP's response spends little time on the FSA. Instead, it proclaims that a different statute, 18 U.S.C. § 3584(c), mandates the aggregation of sentences for "administrative purposes" and requires that BOP treat all sentences associated with a term of imprisonment as "ineligible," even

where—like here—the sentence for the eligible offense dwarfs the sentence for the ineligible offense. BOP thus devotes the bulk of its brief to section 3584(c), spilling little ink on the FSA.

This is an error. BOP justifies its approach by claiming that the FSA is "silent as to the eligibility of prisoners convicted of multiple offenses—some eligible and others ineligible for time credits." Appellee Br. at 19–20 (quoting JA277). But silence does not absolve the Court of its duty to "interpret statutes, no matter the context, based on the traditional tools of statutory construction." *Loper Bright*, 603 U.S. at 403.

Here, applying those tools demonstrates that Mr. Bonnie is eligible to earn FSA time credits for three reasons: *First*, the plain language of the FSA distinguishes between single and combined sentences through different terms, grammatical numbers, and tenses. *Second*, within the four corners of the FSA, Congress included different eligibility provisions, and stated explicitly when it intended for a mix of eligible and ineligible convictions to be disqualifying. *Third*, in the FSA, Congress clearly expressed its intent to create a new recidivism-reduction program of broad applicability that departed from the traditional model of delegating to BOP substantial discretion.

5

### A.    Plain language.

"The language of the statute itself" is the beginning and most important step of statutory construction. *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1056 (2019).[1] As the opening brief explains, the language Congress used within the Act's interrelated definition of "prisoner" and the ineligibility provision, 18 U.S.C. § 3632(d)(4)(D), shows that the FSA-credit provisions refer to different concepts: (1) the total time of imprisonment a person spends in BOP, and (2) the specific period that person "is serving a sentence" for an ineligible offense. Opening Br. at 12–22. There are two textual reasons why.

*First*, the ineligibility provision specifies that a prisoner is only "ineligible to receive time credits under this paragraph if the prisoner *is serving a sentence for a conviction* under any of the following provisions of law." *See* 18 U.S.C. § 3632(d)(4)(D). In turn, it defines a "prisoner" as a broader category that includes any "person who *has been sentenced* to a *term of imprisonment*." 18 U.S.C. § 3635(4); *see also* 18 U.S.C.

---

[1] Unless otherwise indicated, quotations in this brief omit citations, brackets, internal quotation marks, and other characters that do not affect the meaning of the cited language.

§ 3632(d)(4)(A) (distinguishing between a "prisoner" and an "ineligible prisoner").

Congress used contrasting tenses to refer to a "sentence" in its definition of a "prisoner" and within the ineligibility provisions. "Congress' use of a verb tense is significant in construing statutes." *See United States v. Wilson*, 503 U.S. 329, 333 (1992) (gathering cases). The FSA uses the past-perfect tense to broadly define a "prisoner" as a person who "*has been* sentenced," 18 U.S.C. § 3635(4), but describes an *ineligible* prisoner using the narrower present-progressive tense as a "prisoner" who "*is serving a sentence* for a conviction" for one of the listed disqualifying convictions," 18 U.S.C. § 3632(d)(4)(D). The present progressive "is serving" refers to events that are happening currently. *See, e.g., Courtland Co., Inc. v. Union Carbide Corp.*, No. 2:18-cv-01230, 2023 WL 6331069, at *105 (S.D.W. Va. Sept. 28, 2023) (collecting cases). Use of this tense shows that "is serving a sentence for" does not refer to an event that will occur in the future or has occurred in the past. By referring to sentencings using the past progressive and present perfect tenses, Congress has indicated that the period a person is "serving a sentence for a conviction" is a component of the overall term to which they have been sentenced.

7

*Second*, within the ineligibility provision, Congress used the singular form—"serving *a sentence* for *a conviction*"—to tie ineligibility to a sentence for a single conviction, rather than all of the various sentences that could be imposed when someone is convicted of multiple offenses. The ordinary meaning of the term "a sentence" is offense-specific, a principle that applies even more forcefully when the term is paired with the indefinite article and language "for a conviction." Opening Br. at 19–20. This appears to refer a singular sentence imposed for a singular conviction. BOP has admitted as much in other litigation, conceding that "the FSA's description of 'serving a sentence for a conviction' . . . seems to contemplate only a singular conviction and sentence for one offense.'" *See Frommie v. Fed. Bureau of Prisons*, No. 4-22-cv-04082, 2022 WL 18399537, at *3 (D.S.D. Aug. 23, 2002), *report and recommendation adopted*, No. Civ. 22-4082, 2022 WL 18399536 (D.S.D. Nov. 30, 2022); *see also Giovinco v. Pullen,* 118 F.4th 527, 531–32 (2d Cir. 2024) (acknowledging that this "phrase can be read to refer to an individual sentence for an individual conviction").

BOP offers no response at all to these grammatical and structural canons. Instead, it argues that a person who "has been sentenced to a

8

term of imprisonment" (a prisoner) is the same as a person who "is serving a sentence for a conviction" (an ineligible prisoner) because both phrases refer to the concept of punishment. Appellee Br. at 31–32. That may be true, but it fails to address or diminish Mr. Bonnie's argument that one phrase ("has been sentenced to a term of imprisonment") refers to the past whereas the other phrase ("serving a sentence for a conviction") refers to the present—rendering one ineligible for FSA time credits only when they are currently serving a sentence for an offense of conviction excluded under the FSA. To diminish this difference "as meaningless," as BOP does here, violates the canon that all language in a statute should be given full effect. *Healthkeepers, Inc. v. Richmond Ambulance Auth.*, 642 F.3d 466, 471–72 (4th Cir. 2011).

BOP attempts to shift focus to the language Congress used in 18 U.S.C. § 3584(c), arguing that it must dictate the meaning of the language Congress used in the FSA. Appellee Br. at 31–34.

Specifically, BOP asserts that the "multiple sentences of imprisonment" heading, the subsection heading "treatment of multiple sentence as an aggregate," and the reference to "terms of imprisonment" indicate

9

that Congress uses the terms "sentence" and "term of imprisonment" interchangeably when it drafted and enacted 18 U.S.C. § 3584(c) over thirty years ago.

This is a red herring.

The language in § 3584(c) is very different from the phrase "is serving a sentence for a conviction" in the ineligibility provision. This phrasing is unique; it does not appear elsewhere in the U.S. Code. BOP has provided no reason to think that Congress was thinking of § 3584 when drafting the FSA; to the contrary, if Congress *had* intended to cross-reference § 3584(c) and convey the same concept, one would expect them to have used the exact same language. Cherry-picking the terms "sentence" or "term of imprisonment" out of their surrounding provisions does little to illuminate the meaning of the unique wording that Congress used in the FSA's credit provisions.

## B.    Statutory Context.

BOP summarily dismisses Congress's decision to use different language within the FSA to describe ineligibility for the Second Chance Act ("SCA") elderly offender pilot program. Appellee Br. at 23–25. But the canon of meaningful variation makes plain that "where a document has

10

used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." *S.W. Airlines Co. v. Saxon*, 596 U.S. 450, 457–58 (2022). Thus, Congress's choice to use different ineligibility language in sections of the same statute should be given meaning.

Like the FSA time-credit program, Congress limited eligibility for the SCA pilot program based on certain convictions. Opening Br. at 23–25; *see also* JA201. But rather than repeat the exclusionary language from § 3632(d)(4)(D), it used different language to specify that a mix of convictions for ineligible and eligible convictions would result in total disqualification, excluding those "serving a term of imprisonment based on conviction for an offense or offenses that *do not include any* crime of violence." The SCA reinforces this by defining "term of imprisonment" as "multiple terms of imprisonment ordered to run consecutively or concurrently," and instructs BOP to treat such terms as "a single, aggregate term of imprisonment for purposes of this section." 34 U.S.C. § 60541(g)(5)(c). This variation shows that Congress knew how to write an ineligibility statute that precluded relief for separate sentences within an aggregated term of imprisonment and did so within a separate section

11

of the FSA. But it made a conscious decision not to do so in 18 U.S.C. § 3632(d)(4)(D).

BOP attempts to distinguish the SCA pilot program from the FSA because it does not operate in precisely the same way. That is beside the point. What matters is that both programs have ineligibility provisions that exclude certain offenders from relief, and Congress wrote one of these provisions (the SCA pilot) to exclude eligibility based on a conviction for an offense or offenses that *include* any of the disqualifying convictions" but not the other (the FSA).

### C.    Purpose.

BOP dismisses the purpose of the FSA as "irrelevant." Response at 34. This is puzzling because as discussed *supra*, BOP does almost no analysis of the statutory text of the FSA. BOP's word is not sufficient to render the text unambiguous—more is needed. Although BOP did not care to analyze the text of the FSA, Mr. Bonnie did. And that analysis unambiguously indicates that he is eligible for earned time credits.

In *Valladares*, the Fourth Circuit looked to the FSA's purpose to reject BOP's broad reading of one of 18 U.S.C. § 3632(d)(4)(D)'s listed ex-

clusions. 2025 WL 595560 at *8. There, "BOP adopted an untenable in-terpretation of the statute to bar Valladares, and others similarly situ-ated, from earning time credits for participation in recidivism reduction programming." *Id.* Doing so contravened "Congress's command" and "strip[ped] defendants of the incentive to participate in . . . programs to better themselves and attain the skills they need to be productive mem-bers of society." *Id.* As was true in *Valladares*, BOP has construed 18 U.S.C. § 3632(d)(4)(D) to cripple the FSA's impact by denying "credits to at least 2,000 annually who receive mixed eligible and ineligible sen-tences." Amicus Br. at 2–3.

BOP's interpretation also wrests the authority to determine FSA time-credit eligibility away from Congress. This too flies in the face of congressional intent. At nearly every turn, the FSA proscribed BOP's dis-cretion. Opening Br. at 5–7. It positioned the Attorney General ("AG")—not the BOP—as the primary authority for implementing the new FSA program,[2] and directed the AG to perform "annual audits" to ensure that

---

[2] The Attorney General "shall carry out" the reforms implementing earned time credits, "shall develop" the recidivism reduction program,

the BOP uses the program "in an appropriate and consistent manner." 18 U.S.C. § 3631(g). Moreover, it removed the BOP as the sole arbiter of compassionate release motions due to its "failures" in managing the program. *United States v. Brooker*, 976 F.3d 228, 231–32 (2d Cir. 2020). It prohibited BOP's practice of restraining pregnant prisoners. And it prohibited BOP from making eligibility determinations or denying FSA time credits for any discretionary reasons, mandating that qualifying individuals *shall* earn credits that *shall* be applied. 18 U.S.C. §§ 3632(d)(4)(A), (C).

The ineligibility provision—and the specificity of the sixty-eight disqualifying convictions it lists—is perhaps the clearest expression of Congress's skepticism of BOP. The list is painstakingly drafted, specifying which statutory subsections, conduct, or sentencing enhancements trigger ineligibility. *See Valladares*, 2025 WL 595560, at *6 (barring BOP from expanding an ineligibility provision for conviction to apply to conduct). The thoroughness of this list, against the backdrop of the FSA's

---

and must ensure BOP staff "demonstrate competence" in administering the program. 18 U.S.C. §§ 3631(a), 3632(a), 3632(f)(4).

14

overall goal of correcting BOP's past failure to sufficiently incentivize rehabilitation, shows that BOP should not be permitted to expand the list of ineligibility provisions by grasping for discretion where Congress gave it none.

In the FSA, Congress recognized that people like Mr. Bonnie recidivated even after spending long periods in BOP. It saw that BOP was failing at its core purpose of protecting public safety by facilitating rehabilitation for those in its custody. Congress responded with a mandatory time-credit program which divested BOP of authority over a task it had demonstrably failed to achieve. BOP should not be permitted to subvert this clear purpose.

## II. The Aggregation Provision, 18 U.S.C. § 3584(c), Does Not Apply.

BOP's brief focuses on an entirely different statute, 18 U.S.C. § 3584(c), which it asserts *requires* BOP to deem Mr. Bonnie ineligible for his entire 144-month term of imprisonment.

BOP is wrong for at least three reasons.

*First*, BOP's assertion that "widely used and understood definitions" associated with 18 U.S.C. § 3584(c) predated the FSA's enactment

15

on December 21, 2018 is simply false. Tellingly, the majority of cases BOP cites in support of its construction of § 3584(c) were decided *after* the FSA's enactment. In reality, prior to the FSA, few courts had construed the scope or meaning of § 3584's reference to "administrative purposes," presumably because there was little need to do so, as prior statutes had never so clearly wrested discretion away from the BOP. And the scatter-shot of courts that *had* construed the aggregation provision prior to the FSA's enactment generally did so in the posture of *Chevron* deference to BOP's interpretation of its *own regulation*—not statutory text.

*Second*, as BOP concedes, if Congress "express[ed an] intention" to depart from § 3584, then it does not apply. BOP admits that Congress could make that intention clear "expressly or by fair implication." Appellee Br. at 19–20. Here, Congress did exactly that through the text, structure and design of the FSA. *See supra*; Opening Br. at 12–25.

*Third*, post-*Loper Bright*, BOP's interpretation of the legal meaning of 18 U.S.C. § 3584(c) is not entitled to deference and lacks persuasive force.

16

**A.    Congress did not legislate against the backdrop of "widely used and accepted definitions" arising from 18 U.S.C. § 3584(c).**

BOP asserts that the aggregation provision created a background "mandate" against which Congress legislated. Not so.

It is true that Congress generally writes statutes against the backdrop of the existing legal landscape and that courts must presume that Congress is aware of the *established* meaning of legal terms. *See NLRB v. Amax Coal Co*, 453 U.S. 322, 329 (1981). This presumption offers little assistance here because few courts had interpreted the scope of § 3584(c)'s reference to "administrative purposes" prior to the enactment of the FSA on December 21, 2018. Opening Br. at 45–46. Nor had the term *ever* been construed in the context of a mandatory time-credit program like the FSA.

Section 3584(c) provides that "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for *administrative purposes* as a single, aggregate term of imprisonment." BOP asserts that this reference to "administrative purpose" refers "not only sentence computation but also all administrative *determinations* made by BOP." Appellee Br. at 17.

17

In support, BOP cites a handful of cases, the majority of which *post-dated* the FSA's enactment, and thus cannot constitute a "background" principle. But even had they issued prior to the FSA, none support BOP's muscular application of "administrative purposes" to the FSA-credit program.

To start, BOP places heavy reliance on *United States v. Wilson*, 503 U.S. 329 (1992), for the proposition that BOP "calculates an inmate's term of imprisonment as 'an administrative matter.'" Appellee Br. at 13 (quoting *Wilson*, 503 U.S. at 335). "Calculation" of a sentence, BOP contends, confers a wide swath of discretion on BOP, including eligibility determination.

But this overstates the holding of *Wilson*, which does not analyze 18 U.S.C. § 3584(c). There, the Court construed a separate statutory provision—18 U.S.C. § 3585(b)—to find that BOP, not the courts, was responsible for computing pretrial custody credits. But no one in *Wilson* "contend[ed] that the Attorney General ha[d] unreviewable discretion to determine the appropriate credit in any case." *Wilson*, 503 U.S. at 338 (Stevens, J., dissenting). Instead, BOP conceded that "the arithmetical

task of figuring out the exact date an offender will finish serving his sentence 'is essentially an administrative ministerial function.'" *Id.* at 339 n.3. *Wilson* thus stands for the unremarkable proposition that BOP must administer a sentence within the bounds set by court and statute. Here, in contrast, the BOP is not purporting to mathematically add up FSA time credits, but to supplant the exclusively legislative determination about who qualifies for eligibility in the first place.

BOP cites only two other pre-FSA cases to support its assertion that well-settled law governing sentencing aggregation predated the FSA. The first, *United States v. LaBonte*, simply remarks in a footnote that certain sections the dissent cited fell within the "administrative purposes" clause, with no explanation. 520 U.S. 751, 758 n.4 (1997) *id.* at 758 n. 4. The second, *United States v. Llewlyn*, 879 F.3d 1291, 1295 (11th Cir. 2018), decided the same year the FSA was enacted, *supports* Mr. Bonnie's argument. *Llewlyn* rejected the claim that § 3584(c) replaces separate consecutive charges with aggregate terms for purposes of sentencing reductions. *Id.* at 1295. *Llewlyn* emphasized § 3584(c)'s ministerial scope and "decline[d] to adopt . . . a broad reading of the statute." *Id.* at 1295;

19

*see also* Opening Br. at 31–33 (explaining that circuit courts across the country have declined to impermissibly expand aggregation).

The other cases cited by BOP post-dated the FSA and do nothing to clarify the backdrop against which Congress legislated. For example, two years after the FSA was enacted, the Ninth Circuit issued an un-published opinion considering BOP's application of the aggregation pro-vision to the regulation it promulgated to govern the Residential Drug Abuse Program ("RDAP"). *Moreno v. Ives*, 842 Fed. App'x. 18 (9th Cir. 2020). But BOP's discretionary administration of the RDAP program has little bearing here.

Unlike the FSA, which provides that time credits "shall be earned," "shall be applied," and that when the time comes, the Director "shall transfer" individuals into prerelease custody or supervised release, BOP's early-release authority under RDAP is discretionary. *See Lopez v. Davis*, 531 U.S. 230, 241 (2001) (recognizing that Congress's use of the "permis-sive may" in 18 U.S.C. § 3621(e)(2)(B) delegated authority to BOP to de-termine whether to release a prisoner early for completing RDAP) Ac-cordingly, BOP promulgated regulations to explain who would and would not be eligible for the sentence-reduction incentive. *Moreno*, 842 Fed.

20

App'x. 18 at \*21 (9th Cir. 2020). In its regulations BOP directed that people with certain types of "current convictions" would be ineligible for early release. BOP interpreted "current" to mean "any conviction for which the inmate is still serving time." *Id.* at \*22.

The *Moreno* court held that because BOP had promulgated the term "current convictions," it was reasonable for BOP to construe any component of an aggregate sentence as a "current conviction." *Id.* BOP was entitled to deference because its "determination . . . was based on its interpretation of its own regulation . . . which is an exercise of discretion allowed under 18 U.S.C. § 3621(e)(2)(B)."

Although the *Moreno* court also asserted that "other courts ha[d] recognized that [§ 3584(c)] applies to all administrative determinations made by BOP," this pronouncement—which relied on *Lopez v. Davis*—deserves little weight. *Lopez*, which did not reference § 3584(c), depended on *Chevron* to deem the RDAP regulation "reasonable in light of the Legislature's revealed design" of delegating BOP authority over the early-release incentive. 531 U.S. at 240–41.

To be sure, as Mr. Bonnie's opening brief recognizes, before the FSA's enactment, a "scattershot of unpublished district court decisions"

had deferred to BOP's application of the aggregation provision to its RDAP regulation. Opening Br. at 45. But like *Moreno*, those courts depended on *Chevron* and Congress's delegation of power to BOP over RDAP to defer to BOP's construction as reasonable. *See* Opening Br. at 39–44. Post-*Loper Bright*, and in the unique context of the FSA's mandatory-credit program, they do little to inform the Court's consideration here.

> **B.    The plain import and fair implication of the FSA confirm that Congress did not intend for 18 U.S.C. § 3584(c) to expand the scope of the ineligibility provision.**

Even if a "background principle" predated the FSA, it is well-established that such a "principle cannot overcome statutory text." *United States v. Duffey*, 92 F.4th 304, 312 (5th Cir. 2024). If "ordinary interpretive considerations nevertheless indicate that Congress intended to depart from the background principle when it adopted the later statute, we must give that statute the full effect that its plain import or fair implication demands." *Everytown for Gun Safety Support Fund v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 984 F.3d 30, 39 (2020) (2d Cir.

2020). Congress need not "expressly provide" that a background principle is inapplicable. *Id.* at *39.

Here, the plain import and fair implication of the FSA confirms that BOP cannot use the aggregation provision to expand the FSA's ineligibility categories. A major premise of the district court, and Appellee's brief, is that BOP gets to decide a prisoner's eligibility for FSA time credits. *E.g.*, JA278 (describing "discretionary administrative functions" as including "determining a 'current offense' for early release eligibility"); JA281 (noting "Congress's broad delegation to the BOP to manage prisoner's sentences, including the calculation of an inmate's term of imprisonment—which implicates the eligibility provisions for time credits included in § 3632(d)(4)(D)"); *see also* Appellee Br. at 28–29 (arguing that "determining an inmate's eligibility to earn time credits, like those under section 3632(d)(4)(D), is one of the BOP's administrative functions").

That premise is wrong. Congress specified that they, not BOP, decide eligibility for FSA time credits. That is clear from the plain language of the ineligibility provision and the statutory context of that provision. *See supra*.

Congress confirmed this intention through its placement of the FSA's operative provisions in the U.S. Code. Opening Br. at 35–39. The aggregation provision appears in Chapter 227, subchapter D of Title 18, which discusses different aspects of sentence imposition. *See* 18 U.S.C. §§ 3381–3586. Chapter 227 explicitly cross-references to subchapter C of Chapter 229, which delineates BOP's administrative responsibilities post-sentence-imposition. *See* 18 U.S.C. § 3586 ("The implementation of a sentence of imprisonment is governed by the provisions of subchapter C of chapter 229.").

The FSA *did not* organize the FSA mandatory eligibility provisions into subchapter C. Instead, it made limited additions to subchapter C, which largely consisted of assigning BOP deadlines by which to complete tasks for FSA's post-enactment rollout. *See* 18 U.S.C. § 3631(h). This confirms that it deliberately placed the eligibility determination *outside* of BOP's administrative control and shows that § 3584(c) cannot and does not trump the FSA's carefully delineated list of ineligibility provisions. Opening Br. at 37–39.

BOP relies heavily on *Giovinco v. Pullen*, the sole published circuit court decision to address this issue.[3] 118 F.4th 527 (2d Cir. 2024). But *Giovinco* did not closely examine the plain text or statutory context of either the ineligibility or aggregation provisions. Nor did it consider the way Congress structured the placement of the FSA's eligibility provision in the U.S. Code. And while *Giovinco* asserted that "the FSA tasks BOP with administering the FSA time credit program under the supervision of the Attorney General," the two provisions of the FSA it cites in support confirms BOP's cribbed authority over the time-credit system. First, 18 U.S.C. § 3621(h), which is in subchapter C, mainly created implementation deadlines BOP was required to meet. And 18 U.S.C. § 3631 lists the duties of the AG in carrying out the FSA and directs the AG to consult with several listed institutional stakeholders—including the BOP—to carry out the FSA time-credit system. Neither provision reflects a broad administrative delegation to BOP. Instead, each delineates, task-by-task, each step BOP was required to take to implement the FSA.

---

[3] The other circuit court decisions cited by BOP are unpublished, per curiam decisions.

25

None of these tasks include determining a prisoner's eligibility for earned-timed-credits. Congress gave the BOP no such power. Instead, Congress left that task to itself by delineating exactly who was eligible for earned-time credits and who was not in 18 U.S.C. § 3632(d)(4)(D).

### C. Post-*Loper Bright*, BOP's interpretation of 18 U.S.C. § 3584(c) is owed no deference.

Following *Loper Bright*, BOP's interpretation of 18 U.S.C. § 3584(c) is not owed deference. "A court *may* give weight to an agency's authoritative interpretation but ultimately must rule on matters of law." *Molina-Diaz v. Bondi*, 128 F.4th 568 (4th Cir. 2025) (citing *Loper Bright*'s discussion of *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). "The extent to which a court may look to an agency for guidance depends upon the 'thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade." *See Valladares*, 2025 WL 595560, at *7.

BOP argues that § 3584(c) compels aggregation not only for "sentence computation" but for "all administrative determinations by BOP."

26

At the outset, even if BOP is correct, FSA-credit eligibility is not an "administrative determination by BOP." Instead, as discussed *supra*, FSA eligibility is established by statute.

BOP offers no canon of statutory interpretation to support its reading of the aggregation provision. Nor could it. *See* Opening Br. at 41–46. Indeed, courts across the country—including several cited by BOP—have *rejected* attempts to impermissibly expand aggregation. *See e.g.*, *United States v. Martin*, 974 F.3d 124, 136 (2020) ("Aggregation for administrative purposes does *not* imply that every sentence imposed may be modified based on an authorization to modify one component part.").

Nor has BOP consistently interpreted the aggregation statute through long-standing practice. To the contrary, BOP's policies instruct *against* sentence aggregation for certain sentences that were imposed under "various sentencing laws" because of the "possibilities that may occur." BOP Prog. St. 5880.28, Sentencing Computation Manual (CCCA 1984) (Jul. 20, 1999) at 78K, *available at* https://tinyurl.com/825yj9xy.

For example, BOP does not aggregate sentences imposed under the Prison Law Reform Act of 2004 ("PLRA") and the Sentencing Reform Act ("SRA"), because "of the statutory differences between the manner in

27

which a PLRA sentence must be treated in relationship to other sentences."[4] *Id.* at 78S–T. In *Pizzaro v. Fed. Bureau of Prisons*, the court affirmed this practice, noting that section 3584(c)'s "general language *does not require aggregation* of sentences for purposes of § 3624(b), a statute which describes the eligibility of prisoners to receive good time credit, but does not entitle prisoners to such credit," No. Civ. A. 04-6499, 2005 WL 1177942, at *4 (D.N.J. May 18, 2005) (emphasis added). Before the FSA, BOP extended this non-aggregation policy to sentences imposed under different sentencing laws. *See, e.g.*, Prog. St. 5880.28, Page 78K–T (directing non-aggregation of pre- and post-SRA[5] and Violent Crime Control and Law Enforcement Act[6] sentences); *see also* Opening Br. at 33–35

---

[4] The PLRA changed the SRA's good time credit program by making it more difficult to earn credits, and making them subject to forfeiture at any time during service of the sentence. *Pizzaro*, 2005 WL 1177942 at *3.

[5] Sentencing imposed prior to the SRA were parole-eligible, sentences imposed following the SRA were not.

[6] The VCCLEA amendments to the good-time credit program created distinctions between violent and non-violent offenders and inmates who have or do not have, a high school diploma or equivalency. BOP did not aggregate those sentences because "[t]hese distinctions can affect the awarding, disallowance, and forfeiture of GCT and the aggregation of VCCLEA sentences with other sentences." PS 5880.28 at 78K.

28

(discussing BOP's non-aggregation of parole-eligible and treaty-transfer sentences). With no apparent justification, BOP departs from this policy when it comes to the FSA. None of the regulations or program statements that BOP has promulgated to implement the FSA offer an explanation. Nor does its sentencing computation policy, which exhaustively addresses aggregation, explain why the FSA is treated differently.

BOP asserts "without aggregation, there would be practical consequences and administrative challenges," but provides no explanation of why. Appellee Br. at 29. Nor could it. As Mr. Bonnie explained to the magistrate court, BOP has built a sophisticated automated time-credit system which can parse a person's period of ineligibility down to the day. JA144–145 (providing an example of BOP's granular ineligibility analysis). Even were this not the case, BOP's practice of deaggregating other types of sentences shows that it is perfectly capable of doing so.

29

## III.  Other Courts Have Failed to Construe § 3584(c) through the Lens of *Loper Bright.*

BOP's response stresses the volume of other court's decisions on this issue—the bulk of which were decided prior to *Loper Bright*, unpublished, and brought by *pro se* litigants, but none are persuasive or binding here.

First, BOP cites the Second Circuit's opinion in *Giovinco* to argue that 18 U.S.C. § 3632(d)(4)(D) should be read in conjunction with 18 U.S.C. § 3584(c). However, as argued *supra*, the *Giovinco* court failed to follow *Loper Bright*'s directive to find the "best meaning" of the FSA-eligibility and aggregation provisions. Like BOP, *Giovinco* relied on cases that post-dated the FSA to conclude that a strong background aggregation principle existed, and disregarded the plain language, statutory context, and purpose of the FSA. 118 F.4th at 531.

Second, the remaining circuit court cases (all unpublished, per curiam, and brought by *pro se* litgants) cited by BOP were each decided before the Supreme Court's overruled *Chevron* in *Loper Bright*. BOP protests that "not all of these cases applied the *Chevron* framework in their analysis," but cites only three abbreviated pre-*Loper Bright* per curiam

30

orders in support. *See* Appellee Br. at 35 (citing *McNeil v. Ramos*, No. 23-50406, 2023 WL 64425551 (5th Cir. Oct. 3, 2023) (per curiam); *Teed v. Warden*, No. 23-1191, 2023 WL 4556726 (3d Cir. July 17, 2023) (per curiam), *cert denied*, 144 S. Ct. 873 (2024); *Keeling v Lemaster*, No. 22-6126, 2023 WL 9061914 (6th Cir. Nov. 22, 2023) (citing courts that held, in the context of RDAP, that "sentence calculation by the BOP and the BOP's administration of incentives which reduce the length of a prisoner's term of imprisonment are administrative functions of BOP subject to §3584(c).").

## IV.    BOP's Interpretation Runs Afoul of the Rule of Lenity

BOP asserts that, if the Court finds statutory ambiguity, the rule of lenity does not apply.

At the outset, BOP minimizes the impact of aggregation, arguing that "Bonnie has *only* claimed that . . . FSA time credits would reduce his sentence by 12 months." Appellee Br. at 35–36 (emphasis added). But a year too long in prison is certainly a "serious, penal consequence." Moreover, because BOP reads this ambiguity to apply to all people similarly situated to Mr. Bonnie, the Amicus brief's assertion that "*years* of liberty hang on this ambiguity" is correct. Amicus Br. at 21.

31

Next, BOP argues that the rule of lenity does not apply because the ineligibility provision is not "the functional equivalent of a criminal statute." Appellee Br. at 36. This disregards the Supreme Court's holding that good time credits determine the "quantum of punishment" a prisoner serves and are therefore penal. *See Weaver v. Graham*, 450 U.S. 24, 33 (1981).

BOP places heavy emphasis on *Sash v. Zenk*, to argue that the rule of lenity does not apply here, 344 F. Supp. 2d 376, 381 (E.D.N.Y. 2004), *aff'd* 428 F.3d 132 (2d Cir. 2005) (Sotomayor, J.), *cert. denied*, 549 U.S. 920 (2006) (emphasis added). But it fails to mention that in *Barber v. Thomas*, decided five years after *Sash*, the Supreme Court assumed—without deciding—that the good-time credit statute could be construed as imposing a criminal penalty. 560 U.S. 474, 488 (2010); *see also Bittner v. United States*, 598 U.S. 85, 101 (2023) (Gorusch, J. & Jackson, J., dissenting) ("The rule of lenity is not shackled to the Internal Revenue Code or any other chapter of federal statutory law.").

Further, as the Amicus argues, "[t]hese credits also shape decision-making through plea bargaining and sentencing." Amicus Br. at 18. When considering plea dispositions, attorneys and their clients evaluate

32

their release date, a "calculation that turns, in part, on their eligibility for earned time credits." *Id.* Because deprivation of time credits extends a person's time in custody in obvious and measurable ways, such credits are undoubtedly penal.

## CONCLUSION

The Court should reverse the decision below and determine that Mr. Bonnie is eligible to earn time credits under the FSA.

Respectfully submitted,

s/ John L. Warren III
John L. Warren III
Law Office of Bill Nettles
2008 Lincoln Street
Columbia, South Carolina 29201
(803)-814-2826
JW@billnettleslaw.com

Patricia Richman
Office of the Federal Public Defender
for the District of Maryland
6411 Ivy Lane
Greenbelt, MD 20770
(301) 344-0600
patricia_richman@fd.org

*Counsel for Gregory Allen Bonnie*

**Dated:** March 21, 2025

33

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the typeface requirement of Fed. R. App. P. 32(a)(5) because it was prepared using Microsoft Word's proportionally spaced Century Schoolbook typeface, with 14-point font.

I also certify that the brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,172 words, exclusive of the cover page, table of contents, table of authorities, certificates of counsel, signature block, and certificate of service.

s/ John L. Warren III
John L. Warren III

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system on March 21, 2025. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ John L. Warren III
John L. Warren III
