# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

No. 24-6665

GREGORY ALLEN BONNIE,

*Petitioner-Appellant,*

*vs.*

WARDEN DUNBAR,

*Respondent-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT FLORENCE
HONORABLE DAVID C. NORTON, U.S. DISTRICT JUDGE

**Petitioner-Appellant Gregory Allen Bonnie's**
**Petition for Panel Rehearing and Rehearing En Banc**

<table>
<tr><td>

John L. Warren III
LAW OFFICE OF
BILL NETTLES
2008 Lincoln Street
Columbia, SC 29201
803-814-2826
jw@billnettleslaw.com

</td><td>

Patricia Richman
OFFICE OF THE FEDERAL PUBLIC
DEFENDER FOR THE DISTRICT
OF MARYLAND
6411 Ivy Lane
Greenbelt, MD 20770
301-344-0600
patricia_richman@fd.org

*Counsel for Petitioner-Appellant*
*Gregory Allen Bonnie*

</td></tr>
</table>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................ii

STATEMENT PURSUANT TO FED. R. APP. P. 40(b)(2) ....................... 4

BACKGROUND.................................................................................. 5

REASONS FOR GRANTING THE PETITION ..................................... 8

    I.   The Majority opinion does not yield "best reading" of the FSA. .. 9

        A.  Plain Language ..................................................... 10

        B.  Context ................................................................ 11

        C.  Purpose ............................................................... 14

            1.  Risk level does not impact eligibility to earn credits. ... 15

            2.  Congress did not rely on offense conduct as a proxy for recidivism risk............................................................. 17

    II.  The majority opinion is inconsistent with this Court's holding in *Valladares v. Ray*................................................................ 19

    III. The majority opinion produces absurd results........................... 20

CONCLUSION ................................................................................. 22

CERTIFICATE OF COMPLIANCE ...................................................... 24

CERTIFICATE OF SERVICE ............................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*Bufkin v. Collins,*
  604 U.S. 369 (2025) ............................................................................ 14

*Dep't of Homeland Sec. v. MacLean,*
  574 U.S. 383 (2015) ............................................................................ 11

*Gonzalez v. Herrera,*
  151 F.4th 1076 (9th Cir. 2025)............................................................. 5

*Hill v. King,*
  No. 23-CV-1365, 2025 WL 1020604 (D. Minn. Apr. 7, 2025) .............. 21

*Loper Bright Enters. v. Raimondo,*
  603 U.S. 369 (2024) .............................................................................. 9

*United States v. James,*
  151 F.4th 28 (2d Cir. 2025) ................................................................ 21

*Valladares v. Ray,*
  130 F.4th 74 (4th Cir. 2025)........................................................ *passim*

**Statutes**

18 U.S.C. § 3584 ............................................................................. 7, 14

18 U.S.C. § 3621(h)(6) ........................................................................ 18

18 U.S.C. § 3632 ................................................................................... 5

18 U.S.C. § 3632(a) ....................................................................... 17, 19

18 U.S.C. § 3632(a)(5)(A)..................................................................... 17

18 U.S.C. § 3632(d)(4)(A).......................................................... 6, 10, 16

18 U.S.C. § 3632(d)(4)(D) ............................................................ *passim*

ii

18 U.S.C. § 3632(d)(5)...................................................................... 16, 19

18 U.S.C. § 3635(4) ................................................................................ 6

18 U.S.C. § 924(c) ..................................................................... 6, 7, 9, 10

34 U.S.C. § 60541(g)(5)...................................................................... 12, 14

34 U.S.C. § 60541(g)(5)(C)................................................................. 13, 14

## Other Authorities

James M. Byrne et al., *Report of the Independent Review Committee Report Pursuant to the Requirements of Title I Section 107(g) of the First Step Act (FSA) of 2018 (P.L. 115-391)*, United States Senate Committee on the Judiciary (Dec. 21, 2020), https://firststepact-irc.org/wp-content/uploads/2020/12/IRC-FSA-Title-I-Section-107g-Report-12-21-20.pdf [https://perma.cc/3SGR-QZTP] ........................... 18

## Rules

Fed. R. App. 40(d)(2)......................................................................... 24

Fed. R. App. P. 32(a)(5) .................................................................... 24

Fed. R. App. P. 40(b)(2) ...................................................................... 4

Fed. R. App. P. 40(d)(3) .................................................................... 24

**STATEMENT PURSUANT TO FED. R. APP. P. 40(B)(2)**

In this case, the majority adopted a narrow interpretation of the First Step Act of 2018 ("FSA") that will result in thousands of people spending a longer time in prison. The opinion misapprehends the FSA to conclude that time credits are not available *at all* to people categorized as at a high risk of recidivism. This is untrue: the overriding goal of the FSA was to incentivize people at a high risk of recidivism by offering them credits in return for program participation. Nevertheless, the majority relies on its erroneous reading to justify a narrow interpretation of the FSA's eligibility provisions that is inconsistent with Fourth Circuit precedent.

This Court should grant the petition because it presents a question of exceptional importance affecting the liberty of thousands of federal prisoners. The majority's decision eliminates the core FSA incentive to participate in recidivism-reduction programming for any prisoner with multiple sentences if even one—no matter how short—is disqualifying. A two-month sentence can disqualify a 132-month sentence. A days-long sentence for a minor prison offense can eliminate eligibility for decades. Congress could not have intended such absurd results.

4

The Court should also grant the petition because the majority opinion is inconsistent with this Court's holding in *Valladares v. Ray*, which recognized that Congress intended that FSA credits be broadly available to most prisoners in BOP custody. 130 F.4th 74, 79, 85 (4th Cir. 2025).

## BACKGROUND

"The First Step Act established a system of mandatory time credits for incarcerated individuals who participate in recidivism reduction programming, with limited exceptions." *Valladares*, 130 F.4th at 77.

The FSA created guidelines for a "risk and needs assessment system" that would assign prisoners to programming, assess their risk of recidivism, and award credits towards early release. *See* 18 U.S.C. § 3632. Congress included mandatory time credits in the system "as an incentive for prisoners to continue programming, thereby reducing recidivism and the cost of managing the nation's incarcerated and supervised population." *See Gonzalez v. Herrera*, 151 F.4th 1076, 1088 (9th Cir. 2025).

The mandatory time-credit scheme requires BOP to award time credits to eligible prisoners at a rate of either 10 or 15 days of credit for every 30 days of "successful participation in evidence-based recidivism

5

reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A). This mandate expansively applies to any person sentenced to imprisonment for a federal offense or in BOP custody, regardless of risk level. *Id.* § 3635(4) (defining "prisoner"). Only prisoners who are "serving a sentence for a conviction under [a listed] provision[] of law" are ineligible to receive time credits. *Id.* § 3632(d)(4)(D).

***

On May 27, 2021, Mr. Bonnie was sentenced to 120 months' imprisonment for two drug-trafficking crimes. That day, he also admitted to violating the conditions of his supervised release for a § 924(c) offense, and was separately sentenced to a consecutive term of 24 months' imprisonment.

Once Mr. Bonnie was designated, BOP deemed him ineligible to earn FSA time credits. *See* JA48–63. The BOP does not dispute that the drug offenses for which Mr. Bonnie was sentenced <u>are</u> eligible for FSA time credits. Rather, the BOP maintains that Mr. Bonnie's consecutive 24-month revocation sentence renders him ineligible to earn FSA time credits <u>at any point</u> during his 144 months of imprisonment. *See* JA48–

6

63. Mr. Bonnie pursued administrative remedies, and then filed a petition for a writ of habeas corpus in the district court. The district court denied the petition, and on November 5, 2025, a three-judge panel of this Court issued its decision.

The panel majority affirmed the district court's denial and held that Mr. Bonnie is categorically ineligible to earn First Step Act time credits during his entire 144-month sentence because one-sixth of the total term stems from a revocation for a § 924(c) conviction. The majority concluded that 18 U.S.C. § 3632(d)(4)(D) disqualifies a "prisoner, not a sentence" from receiving FSA time credits. Maj. Op. at 9. In its view, § 3632(d)(4)(D) identifies "high-risk prisoners" and furthers the purpose of the FSA, which the majority identified to be the categorical denial of time credits to people deemed a high risk of recidivism. Maj. Op. at 14.

The majority further asserted—without support—that Congress used the list of 68-excluded offenses as a mechanism to identify prisoners at a high risk of recidivism. *See* Maj. Op. at 14–15. Finally, the majority held that BOP is required to aggregate sentences under 18 U.S.C. § 3584 into a single term. Once aggregated, Mr. Bonnie's "§ 924(c) conviction,

[is] defined by § 3584(c) to be his aggregate 144-month sentence." Maj. Op. at 14.

Judge Wynn dissented, rejecting the majority view that a prisoner can "'serve' a 24-month sentence for 144 months," explaining that the "proposition refutes itself." Dissent at 17. Even if the proposition *could* invite uncertainty, Judge Wynn concluded that the text, context, and purpose of the First Step Act made clear that Mr. Bonnie is entitled to accrue First Step Act time credits for the eligible portion of his sentence. Judge Wynn explained that in *Valladares v. Ray*, this court looked at the FSA's purpose and structure to reject an "overly stringent interpretation of the time-credits provision." Dissent at 25. In *Valladares*, BOP's interpretation "strip[ped] defendants of the incentive to participate in these programs to better themselves and attain the skills they need to be productive members of society." Dissent at 26 (quoting *Valladares*, 130 F.4th at 85). Such a reading "contradicts the text of the First Step Act." *Id.* The principle articulated in *Valladares* applies here and directs the grant of this petition.

## REASONS FOR GRANTING THE PETITION

There are three reasons why this Court should grant this petition.

8

First, the majority opinion does not yield the "best reading" of the First Step Act because it ignores the plain language, context, and purpose of the statute. Second, the majority opinion is inconsistent with this Court's holding in *Valladares v. Ray*, which rejected narrow constructions of the FSA in favor of interpretations that expand eligibility and fulfill Congress's intent to incentivize participation in recidivism-reduction programming. Third, the majority opinion produces absurd results that Congress cannot have intended.

## I.    The Majority opinion does not yield "best reading" of the FSA.

Questions of statutory interpretation are reviewed de novo. *Valladares*, 130 F.4th at 80. Under *Loper Bright Enters. v. Raimondo*, courts must "use every tool at their disposal to determine the best reading" of a statute. 603 U.S. 369, 400 (2024).

The FSA provides that a prisoner is ineligible to receive time credits only "if the prisoner is serving a sentence for a conviction under" certain enumerated offenses. 18 U.S.C. § 3632(d)(4)(D). Based on the text of this provision, its context, and the purpose of the FSA, Bonnie is not "serving a sentence for a conviction under" § 924(c) when he is serving his consecutive 120-month sentence for the eligible drug offenses. *See id.*

9

## A.    Plain Language

Title I of the FSA, as codified at § 3632(d)(4)(A), provides that "[a] prisoner, except for an ineligible prisoner under subparagraph D, who successfully completes [programming] shall earn time credits . . . ." 18 U.S.C. § 3632(d)(4)(A). In subparagraph D, the FSA explains that "a prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction" for an offense listed as disqualifying him from earning time credits. *Id.* § 3632(d)(4)(D).

The most natural reading of § 3632(d)(4)(D) is that it ties ineligibility to whether the prisoner "is serving" the disqualifying sentence. As Judge Wynn explained, "[T]o state the obvious, a prisoner is only 'serving' a sentence for as long as the sentence may be served." Dissent at 21. Bonnie will only serve his 24-month revocation sentence for 24 months. For the other 120 months of his aggregate sentence, he is not serving a sentence for a conviction under § 924(c).

Despite this natural reading, the majority declares that this provision categorically disqualifies a prisoner from ever earning credits. But it offers no canon of statutory construction to support this reading. Nor does it address the limiting language that restricts ineligibility to when

10

a prisoner is "serving a sentence for a conviction." "Simply declaring that the statute 'categorically disqualifies a prisoner' does not make it so." Dissent at 21 (quoting Maj. Op. at 9). Nor does this bare-bones analysis meet the Court's obligation to find the "best reading" of a statute post-*Loper*.

At bottom, the fundamental problem with the majority's interpretation is that it requires accepting a logical impossibility: that a prisoner can "serve" a 24-month sentence for 144 months. As Judge Wynn observed, this "proposition refutes itself." Dissent at 17. No amount of statutory construction can make that mathematically or temporally possible. That is because basic logic dictates that at any given moment, Mr. Bonnie can legally only be serving one sentence or the other. The plain language compels Mr. Bonnie's interpretation.

### B.    Context

The canon that Congress "acts intentionally when it uses particular language in one section of a statute but omits it in another" also supports Mr. Bonnie's position. *See Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015). Tellingly, the same Congress that enacted § 3632(d)(4)(D) "knew how to limit eligibility in a program if a prisoner

11

had *any* disqualifying convictions—but chose not to use the same language in § 3632(d)(4)(D)."[1] Dissent at 26–27. The FSA also expanded a preexisting home-detention program created by the Second Chance Act of 2007 ("SCA") by expanding it to include "eligible terminally ill offenders." *See* JA199–203 (codified at 34 U.S.C. § 60541(g)(5)). Like the FSA time-credit program, Congress limited eligibility for the pilot program based on certain convictions. *Compare* JA154 (FSA § 101(a)) *with* JA201 (FSA § 603). But rather than repeat the exclusionary language from § 3632(d)(4)(D), it used different language to specify that a mix of convictions for ineligible and eligible convictions would result in total disqualification, excluding those "serving a term of imprisonment based on conviction for an offense or offenses that *do not include any* crime of violence." JA201 (FSA § 603(a)(5)(B)) (emphasis added). The SCA reinforces this by defining "term of imprisonment" as "multiple terms of imprisonment ordered to run consecutively or concurrently," and instructs BOP to

---

[1] As the dissent recognizes, "this highly compelling difference in language does not appear to have been discussed in any other case considering the question before us, limiting those cases' persuasive force." Dissent at 27 n.4.

treat such terms as "a single, aggregate term of imprisonment for purposes of this section." 34 U.S.C. § 60541(g)(5)(C). This variation shows that Congress knew how to write an ineligibility statute that precluded relief for separate sentences within an aggregated term of imprisonment and did so within a separate section of the FSA. But it made a conscious decision not to do so in 18 U.S.C. § 3632(d)(4)(D). The majority dismisses this argument on the ground that the SCA is not a jail time credit program. This distinction is immaterial. "The crux of the matter is that both look at crimes of conviction to determine eligibility. While one program explicitly makes an ineligible conviction a total disqualifier, the other program does not." Dissent at 29.

The majority also minimizes the varying language because it asserts that the SCA—which the FSA modified—was enacted by a different Congress at a different time. But the majority disregards that in 2018, Congress modified the SCA by adding the "eligibility provision disqualifying certain terminally ill offenders from taking advantage of the home-detention program." Dissent at 27. "So the same Congress that enacted the [FSA] time-credits program knew how to limit eligibility in a program

13

if a prisoner had *any* disqualifying convictions—but chose not to use the same language in § 3632(d)(4)(D)." Dissent at 27.

Further, the FSA's differing eligibility provisions in §§ 60541(g)(5)(D) and 3632(d)(4)(D) were "enacted against the backdrop of a preexisting definition in § 60541(g)(5)(C)." Dissent at 28. That provision defines "term of imprisonment" to include "multiple terms of imprisonment ordered to run consecutively or concurrently." But if, as the majority asserts, § 3584(c) created an inflexible mandate that controls eligibility determination, then the definition provided in § 60541(g)(5)(C) would be superfluous. "Because 'a competing interpretation would avoid superfluity,' '[t]he canon against surplusage' may 'be meaningful here.'" Dissent at 28 (quoting *Bufkin v. Collins*, 604 U.S. 369, 387 (2025).

In sum, the FSA created two different programs that look at crimes of conviction to determine eligibility. "While one program explicitly makes an ineligible conviction a total disqualifier, the other program does not." Dissent at 29. This differing language must be given meaning.

## C.    Purpose

As Judge Wynn recognizes, the purpose of the First Step Act was to "enact criminal justice reform, *particularly by incentivizing prisoners to*

14

*participate in recidivism reduction programs.*" Dissent at 17 (emphasis added). The overriding goal of the FSA was to offer interventions to help prisoners reduce their risk of recidivism.

Despite this, the majority asserts that Congress did not intend for people at a high-risk of recidivism to *ever* benefit from the time-credit system, explaining that:

> Our interpretation of § 3632(d)(4)(D) also conforms, we believe, to the overall purpose of Title I of the FSA, which is designed to identify certain prisoners for early release — prisoners whom Congress has determined to be at low risk for recidivism and violence — and to provide them benefits, while detaining high-risk prisoners based on their elevated threat to recidivate.

Maj. Op. at 15. This is flatly incorrect and will sow wide-spread confusion.

### 1.    Risk level does not impact eligibility to earn credits.

First, the majority's opinion depends on its view that high-risk people are never eligible to earn FSA credits: it states repeatedly that prisoners "with a higher risk" of recidivating are not "rewarded" with time credits. Maj. Op. at 8. This statement confuses two distinct statutory mechanisms: earning credits versus applying them, and it misstates the plain text of the statute.

15

Contrary to the majority's assertion, Congress's overriding goal in creating FSA credits was to incentivize high-risk prisoners to participate in programming. In the FSA, a person's risk level does not impact their eligibility to earn credits. Instead, risk classification impacts the number of credits that eligible prisoners can earn during a 30-day period, and their ability to ultimately apply those credits toward early release. All prisoners are entitled to earn "10 days of time credits for every 30 days of successful participation" in recidivism-reducing programming, and those deemed to be low or minimum risk are entitled to earn "an additional 5 days of time credits for every 30 days of successful participation." 18 U.S.C. § 3632(d)(4)(A). The only exception to that rule is found at § 3632(d)(4)(D), which creates a list of offense-based exclusions.

This design creates a two-tier system which incentives high-risk prisoners to participate in programming to accumulate credits. Through that programming, the prisoner's risk level decreases. *See* 18 U.S.C. § 3632(d)(5) (requiring periodic reassessment to assess risk levels). When that prisoner successfully works their way down to low risk, they can apply the credits they have accumulated.

16

### 2. Congress did not rely on offense conduct as a proxy for recidivism risk.

*Second*, the majority asserts that the list of ineligible offenses reflects Congress's determination that the listed convictions "predict[] a high risk of recidivism." Maj. Op. at 9, 14–15. This assertion is doubly flawed: it invents a congressional finding that appears nowhere in the statute, and it ignores the sophisticated system that Congress actually created in the FSA to assess recidivism risk.

The FSA does not rely on offense conduct to predict recidivism risk. Instead, Congress instructed that the Attorney General, in consultation with experts, develop and release a "risk and needs assessment system" to "determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism." 18 U.S.C. § 3632(a). Congress further directed that the system consider different variables, and allow "all prisoners at each risk level have a meaningful opportunity to reduce their classification." *Id.* § 3632(a)(5)(A). If the FSA assessed recidivism solely based on offense of conviction, it would be impossible for prisoners to ever reduce their classification. Congress did not include a finding to explain why it

17

included the list of excluded offenses. Further, according to the Independent Review Committee—an expert panel that was formed to help BOP implement the FSA—there is "no significant difference in the collective recidivism-risk profiles of the BOP's ETC-eligible and ETC-ineligible inmate populations."[2]

Further, the premise that Congress sought to categorize risk levels to identify high-risk prisoners for prolonged detention is explicitly contradicted by the statute, which instructs that "[p]riority for participation in recidivism reduction programs shall be given to medium-risk and high-risk prisoners, with access to productive activities given to minimum-risk and low-risk prisoners." 18 U.S.C. § 3621(h)(6). This mandate shows, contrary to the majority's reading, that the FSA's entire incentive structure is particularly focused on encouraging high-risk prisoners to reduce their risk by offering them incentives.

---

[2] James M. Byrne et al., *Report of the Independent Review Committee Report Pursuant to the Requirements of Title I Section 107(g) of the First Step Act (FSA) of 2018 (P.L. 115-391)*, United States Senate Committee on the Judiciary (Dec. 21, 2020) at 2, https://firststepact-irc.org/wp-content/uploads/2020/12/IRC-FSA-Title-I-Section-107g-Report-12-21-20.pdf [https://perma.cc/3SGR-QZTP]

Finally, the FSA makes clear that Congress intended to create a system that allowed prisoners to lower their risk classification. To that end, Congress directed that the risk-and-needs assessment include "factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison." 18 U.S.C. § 3632(a)(4). Moreover, the FSA directs that prisoners' risk is periodically reevaluated to determine if they have lowered their risk. *Id.* § 3632(d)(5). This shows that Congress did not view recidivism risk as static, but something capable of change. The majority opinion fails to apprehend this distinction.

## II.     The majority opinion is inconsistent with this Court's holding in *Valladares v. Ray.*

In *Valladares v. Ray*, this Court rejected a narrow construction of the FSA statute in favor of a reading that favors greater eligibility. 130 F.4th at 85; *see also* Dissent at 25–26. As Judge Wynn explains, *Valladares* held that the "the full context of the First Step Act emphasizes leniency, and the structure of the particular section at issue emphasizes reducing recidivism." Dissent at 26. It also recognized that the FSA's overriding purpose was to incentivize people at higher risk of recidivism to lower that risk by offering them credits towards early release.

19

As Judge Wynn noted, *Valladares* "reject[ed] an overly stringent BOP interpretation of the time-credits provision," explaining that "Congress passed the First Step Act to reform our criminal legal system and expand opportunities for those who are incarcerated." Dissent at 25–26 (quoting *Valladares*, 130 F.4th at 85). A restrictive interpretation "contradicts the text of the First Step Act," and contravenes Congress' command by stripping "defendants of the incentive to participate in these programs to better themselves and attain the skills they need to be productive members of society." Dissent at 26 (quoting *Valladares*, 130 F.4th at 85).

Despite this, the majority adopted a narrow interpretation of the statute, in line with its mistaken view that the FSA did not intend to offer any incentives at all to people at a high-risk of recidivism. This holding is inconsistent with *Valladares*, will sow confusion, and requires grant of this petition.

## III.  The majority opinion produces absurd results.

The majority's interpretation leads to results so irrational that Congress cannot have intended them. Under the majority's rule, a 24-month

20

ineligible sentence disqualifies Bonnie from earning credits during an otherwise-eligible 120-month sentence—a disparity of 5-to-1.

"[A]nother court recently found that a 2-month sentence for possession of a contraband cell phone in prison disqualified an individual from earning First Step Act credits for the entirety of his separate 132-month sentence for drug conspiracy." Dissent at 32 (citing *Hill v. King*, No. 23-CV-1365, 2025 WL 1020604, at *6 (D. Minn. Apr. 7, 2025)). That is a disparity of 66-to-1.

Nothing in the statute's text or purpose suggests Congress intended such bizarre results. The First Step Act's entire purpose is to incentivize participation in recidivism reduction programs by high-risk prisoners. Allowing a short ineligible sentence to eliminate eligibility for a vastly longer eligible sentence defeats that purpose entirely.

The majority's rule also opens the door to "gamesmanship by prosecutors, who may pursue minor ineligible charges to preclude defendants from obtaining [FSA] credits for substantial portions of their sentences." Dissent at 32. This cannot be what Congress intended when it enacted criminal justice reform. Courts have recently recognized similar manipulation risks. In *United States v. James*, the Second Circuit rejected a

21

district court's attempt to increase a sentence to account for potential First Step Act credits, noting that such an approach would "contravene Congress's intent to allow a prisoner to earn a reduction in the time to be served." 151 F.4th 28, 40–43 (2d Cir. 2025); *see* Dissent at 32 (noting that such manipulation would "undermine[] the very purpose of the First Step Act recidivism reduction program").

The absurdity is compounded by the fact that these credits are not freely granted. Instead, they are earned through participation in recidivism reduction programs—the very programs Congress sought to incentivize. Yet under the majority's rule, a prisoner like Mr. Bonnie, who successfully completes such programs during his 120-month drug sentence, receives no benefit whatsoever.

## CONCLUSION

For the reasons stated above, the Court should grant the petition for panel rehearing and rehearing en banc.

**[Signature Page Follows]**

22

Respectfully submitted,

s/ John L. Warren III
Patricia Richman
Office of the Federal Public Defender
for the District of Maryland
6411 Ivy Lane
Greenbelt, MD 20770
(301) 344-0600
patricia_richman@fd.org

John L. Warren III
Law Office of Bill Nettles
2008 Lincoln Street
Columbia, South Carolina 29201
(803)-814-2826
JW@billnettleslaw.com

*Counsel for Gregory Allen Bonnie*

**Dated:** December 18, 2025

23

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and 40(d)(2) because it was prepared using Microsoft Word's proportionally spaced Century Schoolbook typeface, with 14-point font.

I also certify that the brief complies with the type-volume limitation of Fed. R. App. P. 40(d)(3) because it contains 3,607 words, exclusive of the cover page, table of contents, table of authorities, certificates of counsel, signature block, and certificate of service.

s/ John L. Warren III<br>
John L. Warren III

24

25

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system on December 18, 2025. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ John L. Warren III
John L. Warren III
